1  **ALANA B. ANAYA, SBN 195758**
   **JONATHAN MALEK SBN 235125**
2  **ANAYA LAW GROUP**
   2629 Townsgate Road, Suite 140
3  Westlake Village, CA 91361
   Tel: (805) 230-9222
4  Fax: (805) 230-9221
   Email: alana@anayalawgroup.com
5
   Attorneys for Plaintiff,
6  VAZGEN KHACHATRYAN

7            **UNITED STATES BANKRUPTCY COURT**

8         **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

9   In re:                          ) **Bankruptcy No.  1:15-bk-11139-MB**
                                     )
10  SHAHEN MARTIROSIAN              ) **EMERGENCY MOTION**
                                     )
11                                   ) ADVERSARY NO. 16-AP-01091
                                     )
12                                   ) **PLAINTIFF'S EMERGENCY MOTION**
                                     ) **FOR A TEMPORARY RESTRAINING**
13                                   ) **ORDER PREVENTING DEFENDANT**
                                     ) **CITY NATIONAL FINANCE FROM**
14                                   ) **FORECLOSING ON PROPERTY**
                                     ) **COMMONLY KNOWN AS 4705**
15                                   ) **EXCELENTE, WOODLAND HILLS,**
                                     ) **CALIFORNIA; DECLARATION OF**
16                                   ) **ALANA ANAYA, DECLARATION OF**
                                     ) **VAZGEN KHACHATRYAN**
17                                   )
                                     )
18                                   )
                                     )
19                                   )
    _____  )
20                                   ) **EMERGENCY MOTION FOR TRO**
    VAZGEN KHACHATRYAN               ) DATE:
21                                   ) TIME:
             Plaintiff,              ) COURTROOM: 303
22  vs.                              )
    SHAHEN   MARTIROSIAN;   CPI  REAL)
23  ESTATE GROUP, INC., doing business as)
    REALTY    EXECUTIVES    PREMIERE)
24  ESCROW     DIVISION;    VIRGINIA)
    MARTIROSIAN;          ANAHIT)
25  HARUTYUNYAN;    4705    EXCELENTE)
    INC.,    a California corporation;  CITY)
26  NATIONAL  FINANCE, a  business entity)
    form unknown and DOES 1 to 100 inclusive,  )
27           Defendants
28  _____

        PLAINTIFF'S EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER          1

# TABLE OF CONTENTS

1.   Introduction ........................................................................................................ 4
2. Factual Background ............................................................................................. 4
A.  The Theft of $350,000.00 By Defendant SHAHEN MARTIROSIAN. ................ 4
B.   The Debtor Fraudulently Transferred the Property Beyond the Reach of
Creditors with a sham sale and Mortgage ................................................................ 6
C.   The sham forclsoure sale is set for December 28, 2016 ....................................... 7
D.   The Debtor Hid Behind the Fifth Amendment and Refused to Answer Questions
or Produce Documents Related to the Property ........................................................ 7
II.  Argument ............................................................................................................. 7
1.   Plaintiff has met his burden in demonstrating irreprable harm and success onf
the merits which warrant a temporary restraining order to maintin the status quo ... 7
A.   The causes of action for Breach of Fiduciary duty, Conversion and fraud ......... 8
I.   The facts applicable to Breach of Fiduciary Duty, Conversion and Fraud .............. 8
II.  Breach of Fiduciary Duty ...................................................................................... 9
III.   Conversion ........................................................................................................ 10
IV.   Fraud ................................................................................................................. 11
B.   The Causes of Action for Fraudulent Transfer and Cancelation of Instrument .. 11
I.   Fraudulent Transfer ............................................................................................. 11
II.  Cancelation of Instrument ................................................................................... 16
III.   THE COURT MAY DRAW AN INFERANCE BY THE ASSERTION OF THE
5TH AMENDMENT BY SHAHEN MATIROSIAN ................................................ 17
D.   PLAINTIFF WILL SUFFER IRREPARABLE HARM IF THE
FORECLOSURE SALE IS ALLOWED TO PROCEED AND THE BALANCE OF
EQUITIES ARE IN FAVOR OF THE PLAINTIFF .................................................. 18
E.   AN INJUNCTION IS IN THE PUBLIC INTEREST ....................................... 18
F.   F. THE COURT SHOULD EXCUSE PLAINTIFF FROM POSTING ANY
SECURITY UNDER RULE 65(c) ............................................................................. 19
3.   CONCLUSION .............................................................................................. 19

# TABLE OF AUTHORITIES

## Cases

*Amoco Production Co. v. Village of Gambell, Alaska* (1987) 480 US 531, 542, 107 S.Ct. 1396, 1402 ...................................................................................................................................8

*Baxter v. Palmigiano* (1976) 425 US 308, 318, 96 S.Ct. 1551, 1558.......................................17

Benasra v. Mitchell Silberberg Knapp LLP, 123 Cal.App.4th 1179, 1183 (2004) .................10

*Burlesci v. Petersen* 68 Cal.App.4th 1062, 1065 (Cal.App.4.Dist.1998) ...............................11

*Burlesci v. Petersen* 68 Cal.App.4th 1062,1065 (Cal.App.4.Dist.1998 ..................................10

*City of Los Angeles v. Superior Court* 85 Cal.App.3d 143, 149, 149 Cal.Rptr. 320, 323 (Cal.App.,1978). ...............................................................................................................11

*Curtis v. M & S Petroleum, Inc.* (5th Cir. 1999) 174 F3d 661, 675 .........................................17

*Dillworth* , 2011 Bankr. LEXIS 1846, at *6-7..........................................................................19

*Dogloo, Inc. v. Doskocil Mfg. Co., Inc.* (CD CA 1995) 893 F.Supp. 911, 917 ........................8

*Economy Refining & Service Co. v. Royal Nat'l Bank* (1971) 20 Cal.App.3d 434, 441 [97 Cal.Rptr. 706].............................................................................................................................13

*FDIC v. Fidelity & Deposit Co. of Maryland* (5th Cir. 1995) 45 F3d 969, 977......................17

*Filip v. Bucurenciu* (2005) 129 Cal.App.4th 825, 829 [28 Cal.Rptr.3d 884 ...........................13

*Garcia v. Yonkers School Dist.* (2nd Cir. 2009) 561 F3d 97, 107 .............................................8

*Gutierrez v. Holder* (9th Cir. 2011) 662 F3d 1083, 1091 ........................................................17

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.* (4th Cir. 1999) 174 F3d 411, 422......................8

*In re High Fructose Corn Syrup Antitrust Litig.* (7th Cir. 2002) 295 F3d 651, 663-664 .........18

*In re Infinity Bus. Group, Inc.*, 2012 Bankr. LEXIS 5287 (Bankr. D.S.C. June 1, 2012) .....................................................19

*In re Infinity Bus. Group, Inc.*, 2012 Bankr. LEXIS 5287, at *14 (Bankr. D.S.C. June 1, 2012) ...................................................................................................................................................19

*Lesperance v. N. Am. Aviation, Inc.,* 217 Cal. App. 2d 336, 345, 31 Cal. Rptr. 873, 878 (Ct. App. 1963). ..........................................................................................................................11

*LiButti v. United States* (2nd Cir. 1997) 107 F3d 110, 121 .....................................................17

*Mejia v. Reed* (2003) 31 Cal.4th 657, 663 [3 Cal.Rptr.3d 390, 74  P.3d 166].) ......................12

Pierce v. Lyman, 1 Cal.App.4th 1093, 1101 (1991)).................................................................10

*Stanley v. University of Southern Calif.* (9th Cir. 1994) 13 F3d 1313, 1320.............................8

*Weinberger v. Romero-Barcelo* (1982) 456 US 305, 312, 102 S.Ct. 1798, 1803 .....................8

*Winter v. Natural Resources Defense Council, Inc.* (2008) 555 US 7, 20, 129 S.Ct. 365, 374..8

## Statutes

11 U.S.C. § 105(a) ......................................................................................................................8

Civ. Code, § 3412 .....................................................................................................................17

Civil Code section 3439.01(b) ..................................................................................................12

*Civil Code Section 3439.04*......................................................................................................12

Civil Code section 3439.05 .......................................................................................................12

Federal Rule of Civil Procedure 65(b)........................................................................................7

## Rules

Bankruptcy Rule 7065 .................................................................................................................7

Fed. R. Civ. P. 65(b) ...................................................................................................................7

## 1.    INTRODUCTION

The debtor/defendant and other defendants have concocted a scheme to defraud this Court and the debtor's creditors by (a) fraudulently transferring title to real property commonly known as 4705 Excelente, Woodland Hills, California (the "Property") to a straw owner approximately 7 months ago for one third of the property's value without any monies being paid by the buyer (Defendant Anahit Harutunyan), (b) encumbering the Property with a bogus first lien (Defendant City National Finance) and (c) scheduling a foreclosure sale on the Property to occur on December 28, 2016 (the "Foreclosure Sale").  That this scheme is fraudulent and illegal which is manifested by the following undisputed facts:

1.  At the debtor's deposition on December 20, 2016, the debtor refused to answer any questions about the Property or the Foreclosure Sale, instead asserting his right under the Fifth Amendment against self-incrimination.

2.  On December 19, 2017, the debtor refused to produce documents related to the Property and the Foreclosure Sale pursuant to a validly issued subpoena, again objecting based on his Fifth Amendment right against self-incrimination.

3.  The debtor told Plaintiff that the Property had been fraudulently transferred to put the Property beyond the reach of the debtor's creditors.

4.  Despite the purported sale of the Property to Anahit Harutunyan (the straw buyer), the debtor and his family reside in the Property.  See Transcript of Deposition of SHAHEN MARTIROSIAN ("Transcript") at pages 9-10.

5.  The purported holder of the first lien deed of trust on the Property – City National Finance – has not registered to do business in the State of California and does not hold a California lender's license.

If the Foreclosure Sale is allowed to proceed, the plaintiff and the debtor's other creditors will be irreparably harmed.  Accordingly, Plaintiff respectfully requests this Court to enter an order enjoining this Foreclosure Sale resulting from two fraudulent transfers and sham sale.

## 2. FACTUAL BACKGROUND
### A.  THE THEFT OF $350,000.00 BY DEFENDANT SHAHEN MARTIROSIAN.

The Debtor fraudulently induced Plaintiff to give $350,000 for the purchase of a home, and then stole that money from Plaintiff.  The Debtor blatantly used this money to pay for his

luxurious lifestyle including but not limited to luxury cars for himself and his wife co-defendant Virginia Matirosian, pay his personal mortgage for his upscale home worth $1.8 million dollars, and for his personal entertainment which multiple subpoenas and discovery have revealed a serious ongoing gambling habit.  This business was finally shut down by the Bureau of Real Estate.

That the Debtor engaged in criminal and fraudulent activity is reflected in his unwillingness to testify at his deposition about his relationship with Plaintiff.  For example, the Debtor claimed a Fifth Amendment protection against self-incrimination and refused to answer the following questions at his deposition held on December 20, 2016 (see Declaration of Alana Anaya):

- When they met.  Transcript at 15.
- Where they met.  Id.
- Whether Debtor described himself as a real estate investor.  Transcript at 16.
- Any other details about conversations or offers of investment, including whether Debtor showed the Plaintiff any investment properties.  Id.

The transcript is replete with dozens of similar answers.  See Transcript pages [18-27].

Notably, the Defendant also refused to testify whether he used Plaintiff's money to pay the mortgage on the Property.  See Transcript at 27, lines 21-23. .

Defendants are nothing short of scam artists who have conspired together to keep 4705 Excelente, Woodland Hills, California ("The Property") out of the hands of Creditors.  This is also nothing short of an elaborate ruse.  This certainly is not the first time.  Defendant SHAHEN MARTIROSIAN, a former real estate broker and escrow company/real estate company owner, has a lengthy history of taking other peoples' money that are earmarked for real property transactions and using those funds for his personal use. Previously, Defendant SHAHEN MARTIROSIAN has deeded the subject property at issue to his wife in an attempt to keep the property out of the reach of creditors. Defendant SHAHEN MARTIROSIAN  and his wife VIRGINIA MARTIROSIAN were sued for fraudulent transfer relating to the Property. (See. LASC Case No. LC101698).

**B.    THE DEBTOR FRAUDULENTLY TRANSFERRED THE PROPERTY BEYOND THE REACH OF CREDITORS WITH A SHAM SALE AND MORTGAGE**

In order to protect The Property from creditors, the Defendants orchestrated a sham sale for an alleged $600,000.00 for a property valued at $1,800,000.00 or greater. The purported owner of the property is ANAHIT HARUTNYAN. See Transcript at 15. However, Haruntunyan does not live at the Property and never lived at the Property. Instead, the Debtor admittedly prepared a sham lease and claims he is paying $2200 per month in "rent," while Harutunyan's monthly mortgage payment is $6843 – with no explanation as to why Harutunyan would rent a house she recently acquired for a monthly loss of more than $4600 plus insurance, property taxes etc. Transcript at 58-59. However the Debtor is unaware of his making any actual rent payments within the last sixth months . Transcript at 61. Moreover, although he currently lives at the Property, the Debtor testified that he has never talked with Harutunyan, the purported owner. Transcript at 19. The evidence shows that the Debtor's wife has had access to Harutunyan's bank account and has made mortgage payments on behalf of Harutunyan. Transcript at 77-78. This is hardly an arm's length transaction.

The Debtor refused to answer questions about his relationship with Harutunyan, claiming his Fifth Amendment Privilege against self incrimination. For example:

- Claimed Fifth Amendment protection and refused to describe how he and Harutunyan met. Transcript at 15.

- While the debtor admitted sharing the same attorney, Jilbert Tahmazian, for the defense in this matter which is highly unusual if their defense is to be believed but he claimed a Fifth Amendment protection and refused to testify whether he is paying Harutunyan's legal fees. Transcript pg 17, lines 15-20, pg 18 lines 3-12

- Refused to describe how they met. See Transcript at 15.

Last, the Debtor/Defendant refused to produce documents demonstrating the legitimacy of the sale to Harutunyan despite a valid document request so requesting. See Document Request attached to Notice of Deposition and Defendant's Objections attached to the Declaration of Alana Anaya.

In furtherance of the fraudulent transfer, a Deed of trust was recorded by Defendant City National Finance, which conducted no underwriting for the alleged loans and produced only a loan application in response to discovery.   See Harutyunyan's loan application with Defendant City National Finance attached to the Declaration of Alana Anaya

**C.    THE SHAM FORECLOSURE SALE IS SET FOR DECEMBER 28, 2016**

The sham foreclosure sale is set for December 28, 2016, a restraining order is needed in order to preserve the status quo and to prevent irreparable injury to the Plaintiff.

**D.    THE DEBTOR HID BEHIND THE FIFTH AMENDMENT AND REFUSED TO ANSWER QUESTIONS OR PRODUCE DOCUMENTS RELATED TO THE PROPERTY**

The Defendant Shahen Matirosian's Deposition was taken on December 20, 2016. A rough transcript was requested and portions of which are attached hereto the Declaration of Alana Anaya as Exhibit N.   Additionally, the Defendant's objection to the document production on 5th amendment grounds is attached as Exhibit "M"

**II. ARGUMENT**

**1.    PLAINTIFF HAS MET HIS BURDEN IN DEMONSTRATING IRREPARABLE HARM AND SUCCESS ON THE MERITS WHICH WARRANT A TEMPORARY RESTRAINING ORDER TO MAINTAIN THE STATUS QUO**

Federal Rule of Civil Procedure 65(b), made applicable to this proceeding by Bankruptcy Rule 7065, provides that the Court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney if specific facts show that immediate and irreparable injury, loss or damage will result before the adverse party can be heard in opposition.  Fed. R. Civ. P. 65(b).  This Court also has the power pursuant to Section 105(a) of the Bankruptcy Code to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  *See* 11 U.S.C. § 105(a). Its sole purpose is to preserve the status quo pending hearing on the moving party's application for a preliminary injunction. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers* (1974) 415 US 423, 439, 94 S.Ct. 1113, 1124; *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.* (4th Cir. 1999) 174 F3d 411, 422; *Garcia v. Yonkers School Dist.* (2nd Cir. 2009) 561 F3d 97, 107.

An injunction is an equitable remedy. "The basis for injunctive relief (preliminary or permanent) in the federal courts has always been *irreparable injury* and the *inadequacy of legal remedies*." *Weinberger v. Romero-Barcelo* (1982) 456 US 305, 312, 102 S.Ct. 1798, 1803 (emphasis and parentheses added); *Stanley v. University of Southern Calif.* (9th Cir. 1994) 13 F3d 1313, 1320.

A plaintiff seeking a preliminary injunction "must establish": 1) "that he is *likely to succeed* on the merits"; 2) "that he is *likely to suffer irreparable harm* in the absence of preliminary relief";  3) "that the *balance of equities* tips in his favor"; and 4) "that an injunction is in *the public interest*." *Winter v. Natural Resources Defense Council, Inc*. (2008) 555 US 7, 20, 129 S.Ct. 365, 374 (emphasis added)

"In each case, a court must *balance* the competing claims of injury and must consider the *effect on each party* of the granting or withholding of the requested relief." *Amoco Production Co. v. Village of Gambell, Alaska* (1987) 480 US 531, 542, 107 S.Ct. 1396, 1402 (emphasis added); *Dogloo, Inc. v. Doskocil Mfg. Co., Inc.* (CD CA 1995) 893 F.Supp. 911, 917 (citing text).

In this case, the factors weigh heavily in favor of a temporary restraining order.

Plaintiff has filed a complaint for Breach of Fiduciary duty, Conversion, Fraudulent Transfer, Cancelation of Instrument and fraud.

**A.     THE CAUSES OF ACTION FOR BREACH OF FIDUCIARY DUTY, CONVERSION AND FRAUD**

**I.  THE FACTS APPLICABLE TO BREACH OF FIDUCIARY DUTY, CONVERSION AND FRAUD**

In June 2014, SHAHEN MATIROSIAN represented to Plaintiff that he is a professional real estate broker and owner of Realty Executive Premiere.  MATIROSIAN further represented to Plaintiff that he had a property in Chatsworth, California that he could facilitate for Plaintiff to purchase for $350,000.00.  In further of the representation, MATIROSIAN, presented Plaintiff with a purchase contract for 10000 Lubao Avenue, Chatsworth, California

and requested that Plaintiff provide REALTY EXECUTIVES PREMIERE ESCROW

division his purchase monies to be deposited into SHAHEN MATIROSIAN's escrow account

for the exclusive purpose of purchasing the property.

In October 2014 and November 2014, Plaintiff provided checks and wired funds in the

total sum of $350,500.00 payable to the order of Realty Executives Premiere and delivered to

SHAHEN MATIROSIAN.  At the time, SHAHEN MATIROSIAN fully convinced Plaintiff

by making intentional false representations that Realty Executives Premiere Escrow Division

was a legitimate escrow owned by SHAHEN MATIROSIAN to assist facilitate Plaintiff's

purchase  of the Chatsworth property.

Fully believing that there was in fact a real estate purchase transaction pending, Plaintiff

signed the purchase agreement for the 10000 Lubao Avenue property and gave his

$350,500.00 for the purchase of Lubao to  SHAHEN MATIROSIAN to place in escrow and a

deposit to purchase another real property commonly described as 1437 Highland, Glendale,

CA 91202.

At all times herein, there were never any real transactions occurring.  It was all a

preconceived scam by SHAHEN MATIROSIAN to steal Plaintiff's money.  SHAHEN

MATIROSIAN absconded with $350,500.00, of Plaintiff's funds which have yet to be repaid.

## II. Breach of Fiduciary Duty

To establish a cause of action for breach of fiduciary duty, a plaintiff must demonstrate

the existence of a fiduciary duty, breach of that duty, proximate causation, and resulting

damages. (Benasra v. Mitchell Silberberg Knapp LLP, 123 Cal.App.4th 1179, 1183 (2004);

Pierce v. Lyman, 1 Cal.App.4th 1093, 1101 (1991)).

The fiduciary duties of a real estate agent include the duties to obey the instructions of

the client, and to provide diligent and faithful service. (*Thomson v. Canyon* (2011) 198

Cal.App.4th 594, 607 [129 Cal.Rptr.3d 525].)

In this case,  SHAHEN MATIROSIAN claimed to be acting as an escrow agent for

the Plaintiff and thus owed Plaintiff a fiduciary duty.  SHAHEN MATIROSIAN then

breached that duty by absconded with $350,500.00, of Plaintiff's funds.  As a direct result,

Plaintiff was injured by the loss of his funds which have not been returned to him.

### III.    Conversion

"Conversion is the wrongful exercise of dominion over the property of
another. The elements of a conversion claim are: (1) the plaintiff's
ownership or right to possession of the property; (2) the defendant's
conversion by a wrongful act or disposition of property rights; and (3)
damages. **Conversion is a strict liability tort.** The foundation of the
action rests neither in the knowledge nor the intent of the defendant.
Instead, the tort consists in the breach of an absolute duty; the act of
conversion itself is tortious. Therefore, questions of the defendant's
good faith, lack of knowledge, and motive are ordinarily immaterial. (
*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 144
[271 Cal.Rptr. 146, 793 P.2d 479], and fn. 38; *Oakdale Village Group
v. Fong* (1996) 43 Cal.App.4th 539, 543-544 [50 Cal.Rptr.2d 810].)"
*Burlesci v. Petersen*  68 Cal.App.4th 1062,1065 (Cal.App.4.Dist.1998)
Emphasis Added

"The general rule is that "[t]he foundation for the action of conversion rests neither in

the knowledge nor the intent of the defendant. It rests upon the unwarranted interference by

defendant with the dominion over the property of the plaintiff from which injury to the latter

results. Therefore, neither good nor bad faith, neither care nor negligence, neither knowledge

nor ignorance, are the gist of the action."" ].)" *Burlesci v. Petersen*  68 Cal.App.4th 1062,

1065 (Cal.App.4.Dist.1998).

Conversion is a species of strict liability in which questions of good faith, lack of

knowledge and motive are ordinarily immaterial. *City of Los Angeles v. Superior Court*  85

Cal.App.3d 143, 149, 149 Cal.Rptr. 320, 323 (Cal.App.,1978).

In this case, Defendant SHAHEN MATIROSIAN absconded with $270,000.00, and

refused to return the funds upon demand. Therefore, Defendant SHAHEN MATIROSIAN is

liable for conversion and Plaintiff has established a reasonable probability for success on the

merits.

## IV.     Fraud

The elements of a cause of action for damages for fraud and deceit are: (1)

Representation; (2) falsity; (3) knowledge of falsity; (4) intent to deceive; (5) reliance and

resulting damage (causation). *Lesperance v. N. Am. Aviation, Inc.,* 217 Cal. App. 2d 336, 345,

31 Cal. Rptr. 873, 878 (Ct. App. 1963).

In this case, Defendant SHAHEN MATIROSIAN fabricated a real estate transaction

in order to obtain funds from the Plaintiff. Plaintiff relied on these representations and

entrusted  Defendant SHAHEN MATIROSIAN with the funds and then absconded with

$270,000.00 of Plaintiff's funds. Therefore, Plaintiff has established a reasonable probability

for success on the merits.

When Defendant SHAHEN MATIROSIAN was asked about the Lubao and Highland

transactions, Defendant SHAHEN MATIROSIAN plead the fifth amendment.  See Transcript

pages 19-28.  The inference that can be drawn from pleading the fifth is that Defendant

SHAHEN MATIROSIAN does not dispute plaintiff's contentions regarding the sham

transactions which were used by SHAHEN MATIROSIAN to fraudulently obtain the sum of

$370,000.00, from the Plaintiff.

### B.     THE CAUSES OF ACTION FOR FRAUDULENT TRANSFER AND CANCELATION OF INSTRUMENT
### I.  Fraudulent Transfer

"The UFTA permits defrauded creditors to reach property in the hands of a

transferee." *Mejia v. Reed* (2003) 31 Cal.4th 657, 663 [3 Cal.Rptr.3d 390, 74  P.3d 166].)

Civil Code section 3439.05 provides: "A transfer made or obligation incurred by a

debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the

obligation was incurred if the debtor made the transfer or incurred the obligation without

receiving a reasonably equivalent value in exchange for the transfer or obligation and the

debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or

obligation."

Civil Code section 3439.01(b) provides: " 'Claim' means a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."

The transfer is also fraudulent under California *Civil Code Section* 3439.04

which provides:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows:
(1) With actual intent to hinder, delay, or defraud any creditor of the debtor.
(2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor either:
(A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.
(B) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

(b) In determining actual intent under paragraph (1) of subdivision (a), consideration may be given, among other factors, to any or all of the following:
(1) Whether the transfer or obligation was to an insider.
(2) Whether the debtor retained possession or control of the property transferred after the transfer.
(3) Whether the transfer or obligation was disclosed or concealed.
(4) Whether before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.
(5) Whether the transfer was of substantially all the debtor's assets.
(6) Whether the debtor absconded.
(7) Whether the debtor removed or concealed assets.
(8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.
(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

(10) Whether the transfer occurred shortly before or shortly
after a substantial debt was incurred.
(11) Whether the debtor transferred the essential assets of the
business to a lienholder who transferred the assets to an insider
of the debtor.

"In order to constitute intent to defraud, it is not necessary that the transferor act

maliciously with the desire of causing harm to one or more creditors." *Economy Refining &*

*Service Co. v. Royal Nat'l Bank* (1971) 20 Cal.App.3d 434, 441 [97 Cal.Rptr. 706].. "A

fraudulent conveyance under the UFTA involves 'a transfer by the debtor of property to a

third person undertaken with the intent to prevent a creditor from reaching that interest to

satisfy its claim.' 'A transfer made . . . by a debtor is fraudulent as to a creditor, whether the

creditor's claim arose before or after the transfer was made, if the debtor made the transfer as

follows: [¶] (1) With actual intent to hinder, delay, or defraud any creditor of the debtor.' "

*Filip v. Bucurenciu* (2005) 129 Cal.App.4th 825, 829 [28 Cal.Rptr.3d 884], internal citations

omitted. "[The factors in Civil Code section 3439.04(b)] do not create a mathematical

formula to establish actual intent. There is no minimum number of factors that must be

present before the scales tip in favor of finding of actual intent to defraud. This list of factors

is meant to provide guidance to the trial court, not compel a finding one way or the other."

(*Filip, supra,* 129 Cal.App.4th at p. 834.).

In this case, the transfer of the Excellent property was fraudulent.  First, Defendant

SHAHEN MATIROSIAN transferred the property to his wife for no consideration.  See

Declaration of Alana Anaya  Ex  O.   VIRGINIA MARTIROSIAN then transferred the

property to ANAHIT HARUTUNYAN in a sham transaction.

The evidence produced by the Defendants provide convincing evidence that this

transaction is a sham.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

First, **The Defendants contend that ANAHIT HARUTUNYAN purchased the property as an arm's length transaction for a monthly mortgage payment of $6,843.30 and then agreed to lease the property to VIRGINIA MARTIROSIAN for only $2,200.00 per month. If Defendant HARUTUNYAN purchased the property for full value it does not make sense as to why she would lease the property at a minimum of a $5,000.00 loss each month.** See transcript at pgs 53-58. The lease payment clearly would not cover the monthly payments, or any property taxes, or insurance. It has been discovered that HARUTUNYAN lives in a small rental apartment in Hollywood, has no income or assets and has no ability to pay for the mortgage herself. She is the hand selected straw buyer of the Defendant to pull of this scam. The escrow documents reveal that she paid not a single dollar for the purchase, no down payment, not a single dollar associated with the entire transaction. That clearly is a red flag revealing fraud.

Second, the purchase contract required Defendant ANAHIT HARUTUNYAN to place a $200,000.00 deposit in escrow. However, the HUD-1 shows that no deposit was ever made and that the Defendant "lender" paid for the costs of the entire transaction. Neither Defendant ANAHIT HARUTUNYAN nor Defendants MATIROSIAN paid any costs out of pocket or deposited any funds in connection with the purported sale.

Third, Defendant SHAHEN MATIROSIAN claimed that there was a slab issue with the property, but without the slab issue the property would have been worth 1.7 million. He then testified that the property is now being listed for sale for 1.89, demonstrating that the "slab" issue was a fabrication in an attempt to justify the obscenely low "sales" price. See Transcript page 35.

1
2

The evidence from both the Wells Fargo subpoena on HARUTUNYAN's account and Defendant City National demonstrate the fraudulent transfer to be a sham.

3
4
5
6
7
8
9
10
11
12
13
14

First, the **only document produced by City National is a loan application from HARUTUNYAN which contains no information**. The lack of underwriting, or funding documentation from a "unrelated lender" demonstrates no underwriting at all. This is consistent with a loan being a sham in order to allow the Defendants to cash out of the property without having restore the money taken by them. The grand Matirosian plan was to remove title from the Matirosian family to a third party (HARUTUNYAN) and if that didnt work to drive away creditors, the Plan B was to proceed with a sham foreclosure for a last opportunity to cash out. The 6 month loan at the usurious 12.5% is to facilitate Plan B. This hard money expensive loan that paid for the entire purchase without a penny down or any underwriting his highly suspicious and in line with the defendants' transparent plan.

15
16
17
18
19
20
21
22

Second, City National contacted the Plaintiff directly at 11:00 p.m. on December 13, 2016, urging him to accept less than full payment of the funds owed to him and made false representations of the status of escrow. This conduct is contrary to that of a legitimate lender and clearly shows that City National is either aiding and abetting or has conspired with the other Defendants in a scheme to allow them to pull all of the equity out of the property and bypass the claims of the Plaintiff in this matter.

23
24
25
26
27
28

Third, the subpoenaed documents from Wells Fargo as well as documents obtained from counsel for the Defendants demonstrate further fraudulent intent. First, the accounts show that 4705 Excelente, Inc and the MARTIROSIANs utilize the same property address at issue for bank statements, utilities, property tax statements etc. Second, despite the sale, the MARTIROSIANS have admittedly continued to occupy the property without disruption and

have tried to sell the property for $1,800,000.00. Third, despite the claim of the arms length

transaction, the bank records from Wells Fargo reveal that the MARTIROSIANS have been

obtaining cashier's check from the account of HARTUNUYAN to make the payments on the

purported loan. The banking records also demonstrate that the account for 4705 Excelente, Inc

are for charges for personal expenses and gambling.  When asked about gambling, Defendant

SHAHEN MATIROSIAN plead the fifth.  Transcript page 27.   However, the records

attached from the casinos corroborates the contention that SHAHEN MATIROSIAN was

using the account of this allegedly unrelated LLC for his own personal usage.

 Fourth, the loan went into "default" in less than a year.   Fourth, the property was sold

significantly below market value.  In fact, it was sold for 1/3 of its fair market value. Fifth, the

account statements for  4705 EXCELENTE Inc demonstrate use by the MARTIROSIANS for

purchases and services in the area where they live, withdrawals and deposits in a branch

nearby the subject property as well as withdrawals for gambling from the alleged corporate

account.  This sloppiness of the defendants allows plaintiff to demonstrate to this court that

the whole sale to HARTUNYAN for $600,000.00 and pending foreclosure is all part of their

intended fraudulent scheme. Therefore, Plaintiff has demonstrated that he is likely to prevail

on the fraudulent transfer cause of action.

## II. CANCELATION OF INSTRUMENT

A written instrument, in respect to which there is a reasonable apprehension that if left

outstanding it may cause serious injury to a person against whom it is void or voidable, may,

upon his application, be so adjudged, and ordered to be delivered up or canceled. Civ. Code, §

3412.

As the transaction was a fraudulent transfer designed to prevent Plaintiff from

attaching the only asset of the Defendants. Plaintiff is entitled to cancellation of the Deeds

attached to the request for judicial notice.

### III.    THE COURT MAY DRAW AN INFERANCE BY THE ASSERTION OF THE 5TH AMENDMENT BY SHAHEN MATIROSIAN

Unlike criminal cases, adverse inferences may be drawn in a civil case from a person's invocation of the privilege against self-incrimination. *Baxter v. Palmigiano* (1976) 425 US 308, 318, 96 S.Ct. 1551, 1558—Fifth Amendment does not forbid adverse inferences against parties to civil action when they refuse to testify in response to probative evidence offered against them; *Curtis v. M & S Petroleum, Inc.* (5th Cir. 1999) 174 F3d 661, 675—adverse inference may be taken from corporate representative's invocation of Fifth Amendment privilege; *Gutierrez v. Holder* (9th Cir. 2011) 662 F3d 1083, 1091—adverse inferences permitted in deportation hearing].

An adverse inference may even be drawn from a *nonparty's* invocation of the Fifth Amendment privilege. *FDIC v. Fidelity & Deposit Co. of Maryland* (5th Cir. 1995) 45 F3d 969, 977; *LiButti v. United States* (2nd Cir. 1997) 107 F3d 110, 121—in action for wrongful levy against IRS, adverse inference drawn against daughter from father's invocation of privilege; *In re High Fructose Corn Syrup Antitrust Litig.* (7th Cir. 2002) 295 F3d 651, 663-664—evidence of corporate officers' refusal to answer questions about antitrust conspiracy could be used to establish existence of conspiracy by employer-manufacturer, but not other manufacturers.

In this case, as outlined above, Defendant SHAHEN MATIROSIAN asserted the 5th amendment privilege as to all items concerning his real estate activity, sham sales to lure innocent victims to deposit funds in an escrow account controlled by him, his usage of those funds for his own personal gain and his gambling activities.   Taken in conjunction with the corroborating evidence above.  The court may make a negative inference regarding the transfer and the loan.

### D.  PLAINTIFF WILL SUFFER IRREPARABLE HARM IF THE FORECLOSURE SALE IS ALLOWED TO PROCEED AND THE BALANCE OF EQUITIES ARE IN FAVOR OF THE PLAINTIFF

As this subject property is the **only** asset of the Defendants.  Plaintiff will not be able to recover when judgment is entered in his favor. Plaintiff will also be harmed as he will no longer be able to prosecute the fraudulent transfer action.

The balance of equities favor the Plaintiff as the Defendant will suffer no harm from the granting of the motion.   The property contains enough equity to more than compensate Defendant City National for any delay.

### E.      AN INJUNCTION IS IN THE PUBLIC INTEREST

The Defendants did not just defraud Plaintiff,  it has also defrauded the Court (there are also other adversary actions pending naming these defendants), and has abused and subverted the protections of the Bankruptcy Code.  For the Defendants to use a sham foreclosure sale to receive the proceeds of its fraud (for the second time) represents the culmination of its fraud. Additionally, should Plaintiff prevail in the action for fraudulent transfer, the property would be an asset of the bankruptcy estate and could be sold to the benefit of creditors.   The public interest requires that the Court enter a preliminary injunction to prevent that from happening.  *See NCR Corp.*, 1993 U.S. App. LEXIS 1402, at *6-7 ("the public interest would be served by issuing the injunction, as the injunction is necessary to prevent multi-state fraudulent schemes and to prevent the deprivation of remedies to NCR"); *In re Infinity Bus. Group, Inc.*, 2012 Bankr. LEXIS 5287, at *14 (Bankr. D.S.C. June 1, 2012) ("the egregious nature of the alleged defalcations against the Debtor and the effect of those wrongs on the public interest also convince the Court that issuance of a preliminary injunction in these circumstances is the proper course to allow the Trustee the opportunity to vindicate these alleged wrongs"); *Dillworth* , 2011 Bankr. LEXIS 1846, at *6-7 ("A preliminary injunction does not prevent the business of ServerPronto.com from proceeding.  It does not stop the Internet Services that are being supplied to the public.  It merely prevents the continuing transfers and diversion of the Debtors' assets to Leary and other Primary

1  Defendants offshore, and preserves them for the benefit of Debtors' creditors and

2  shareholders.  A preliminary injunction is clearly in the public interest.").

3      **F.**    **F. THE COURT SHOULD EXCUSE PLAINTIFF FROM POSTING
4  ANY SECURITY UNDER RULE 65(c)**

5  As set forth above, Defendants cannot suffer any appreciable harm from the requested

6  injunctive relief which seeks to preserve the status quo with the possibility of benefiting the

7  estate as a whole.  If, however, the Court requires some security, then Plaintiff requests that

8  the Court require security in a nominal amount.

9          **3.**     **CONCLUSION**

10  Given the overwhelming facts and evidence in this matter, the attempt of Defendant

11  City National Finance to foreclose on the subject property on December 28, 2016 should be

12  prevented to maintain the status quo in this matter and prevent the Defendants from carrying

13  out their ill conceived scheme to default creditors and cash out.

14

15  Dated:   12-22-16                   Anaya Law Group
                                  By __/s/Alana B. Anaya ___
16                                   Alana B. Anaya
17                                   Attorneys for the Plaintiff

18

19

20

21

22

23

24

25

26

27

28

# DECLARATION OF ALANA ANAYA

I, ALANA B. ANAYA, do declare and state as follows:

1.     I am an attorney at law, duly license to practice law in all courts in the State of California.   I have personal knowledge of the facts stated herein, if called upon, I could and would testify competently thereto.

1.     Attached hereto as **Exhibit "A"** is a copy of the Accusation of Defendant SHAHEN MARTIROSIAN, who surrendered his license before a trial on the accusation.

2.     Defendants MARTIROSIAN claimed to have received an offer from Defendant HARUTUNYAN dated May 7, 2015, which requires Defendant HARUTUNYAN to place a $200,000.00 deposit for the property.  Defendant HARUTUNYAN never paid the deposit and the HUD-1 for the sale shows that neither Defendants MARTIROSIAN or HARUTUNYAN paid for a single item related to the purported sale.  A true and correct copy of the HUD-1, portions of Defendant SHAHEN MARTIROSIAN's Deposition and portions of the sales contract are attached hereto as Exhibit "B"

3.     On July 24, 2015, and again on August 12, 2015, Defendant City National Finance recorded two deeds of trust which both list the Beneficiary as "City National Finance" with no indication as to the form of entity or where it was incorporated. Additionally, the information at the top left of the Deed of trust simply indicates "City National Finance P.O. Box 4192, Glendale, CA 91222". True and Correct copies of the Deeds of trust are attached hereto as Exhibit "C".

4.     The secured mortgage loan statement provided by counsel for HARUTUNYAN sets forth that the monthly payment due is $6,843.31.  However Defendant MARTIROSIAN (which admittedly prepared the lease) claims that he agreed to rent the property for $2,200.00, per month.  A true and correct copy of the lease and the mortgage loan statement provided by counsel for Defendants MARTIROSIAN and HARUTUNYAN are attached hereto as Exhibit "D."

5.     My office propounded discovery on City National Finance and the only

document produced was an incomplete loan application.  Defendant City National Finance clearly did no underwriting for this alleged loan. A true and correct copy of the discovery and responses thereto are attached hereto as Exhibit "E".

6.      I also issued a subpoena to Wells Fargo regarding the applications for the bank accounts for VIRGINIA MARTIROSIAN and 4705 EXCELENTE, INC.. Both accounts list the 4705 Excelente Dr.  as the address of record for both accounts, and were opened at the same branch close to the property by the same employee of Wells Fargo.  Additionally, the banking statements for 4705 EXCELENTE, INC. demonstrate that the account for the corporation is being used to make personal expenditures and for gambling.  A true and correct Copy of the account applications and bank statements are attached hereto as Exhibit "F".  The gambling charged match up with casinos frequented by SHAHEN MARTIROSIAN.  A true and correct copy of records from the casinos are attached hereto as Exhibit "G"

7.      Defendants  VIRGINIA  MARTIROSIAN  and  ANAHIT  HARUTUNYAN appear on the payments to City National Finance.  True and correct copies of the checks provided by counsel for Defendants  MARTIROSIAN are attached hereto as Exhibit "H".

8.      During the Deposition of Defendant  SHAHEN MARTIROSIAN  I asked him if he fabricated the transaction for 10000 Lubao Ave Chatsworth, CA and provided him with a copy of a contract attached hereto as Exhibit "I".  Defendant SHAHEN MARTIROSIAN plead the 5th amendment. I also asked him if he fabricated the transaction for 1437 Highland, Glendale, CA 91202, and he also plead the 5th amendment.  True and correct copies of the relevant portions of Defendant SHAHEN MARTIROSIAN 's deposition are attached hereto as Exhibit "J".

9.      The motion needs to be heard on an expedited basis as the foreclosure sale is set for December 28, 2016.  A copy of the notice of trustee's sale is attached hereto as Exhibit "K"

10.      A true and correct copy of the MLS listing showing that the property at issue has been listed for $1,895,000 million is attached hereto as Exhibit "L"

11.      In response  to  the  Notice  of  Deposition  and  Request  for  production  of

documents associated with this matter, SHAHEN MARTIROSIAN objected to producing any documents based on the Fifth Amendment.  A true and correct copy is attached hereto as Exhibit "M".

12.     The Deposition of SHAHEN MARTIROSIAN was taken December 20, 2016, the pages to the deposition transcript referenced in this motion are attached hereto as Exhibit "N".

13.     A true and correct copy of the Deed transferring the property from SHAHEN MARTIROSIAN to VIRGINIA MARTIROSIAN for zero consideration is attached hereto as Exhibit "O"

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 22th day of December, 2016  in Westlake Village, California.

_/s/Alana Anaya_____
ALANA ANAYA

Exhibit "A"

1   AMELIA V. VETRONE, Counsel (SBN 134612)
    Bureau of Real Estate
2   320 West 4th Street, Suite 350
3   Los Angeles, California 90013-1105

4   Telephone:     (213) 576-6982
  (Direct)       (213) 576-6940
5

**F I L E D**

**JUL 0 3 2015**

**BUREAU OF REAL ESTATE**

By _____

6

7

8               BEFORE THE BUREAU OF REAL ESTATE

9                  STATE OF CALIFORNIA

10                        * * *

| | |
|---|---|
| 11   In the Matter of the Accusation of   ) | No. H- 39870 LA |
| 12   COMMERCIAL PROPERTY       ) | A C C U S A T I O N |
| 13   INVESTMENT, INC. dba Realty     ) | |
|   Executives Premiere; and SHAHEN   ) | |
| 14   MARTIROSIAN, individually and     ) | |
|   as designated officer of Commercial   ) | |
| 15   Property Investment, Inc.,         ) | |
| 16                        ) | |
|              Respondents.     ) | |
| 17                        ) | |

18        The Complainant, Veronica Kilpatrick, a Deputy Real Estate Commissioner of

19 the State of California, acting in her official capacity, for cause of Accusation against

20 COMMERCIAL PROPERTY INVESTMENT, INC. dba Realty Executives Premiere, and

21 SHAHEN MARTIROSIAN, individually and as designated officer of Commercial Property

22 Investment, Inc. ("Respondents") alleges as follows:

23                          1.

24        All references to the "Code" are to the California Business and Professions Code

25 and all references to "Regulations" are to Title 10, Chapter 6, California Code of Regulations.

26 ///

27 ///

                       – 1 –

   ACCUSATION AGAINST COMMERCIAL PROPERTY INVESTMENT, INC. et. al.

2.

Respondent COMMERCIAL PROPERTY INVESTMENT, INC. ("CPII") is presently licensed and/or has license rights under the Real Estate Law, Part 1 of Division 4 of the California Business and Professions Code as a corporate real estate broker. Respondent was originally licensed as a corporate real estate broker on or about September 23, 2004, with Respondent SHAHEN MARTIROSIAN ("MARTIROSIAN") as its designated officer. Respondent MARTIROSIAN is the current designated officer of CPII which has operated the licensed fictitious business of Realty Executives Premiere since February 6, 2007. The corporate real estate broker license of CPII is due to expire on December 15, 2016.

3.

Respondent MARTIROSIAN is presently licensed and/or has license rights under the Real Estate Law, Part 1 of Division 4 of the California Business and Professions Code as a real estate broker. Respondent MARTIROSIAN was originally licensed as a real estate salesperson on August 11, 1998, and as a real estate broker on July 21, 2004. MARTIROSIAN's real estate broker license is due to expire on July 20, 2016.

4.

At all times mentioned, in the Van Nuys, County of Los Angeles, Respondents engaged in the business of, acted in the capacity of, advertised, or assumed to act as real estate brokers within the meaning of Code Section 10131(a), including the solicitation for listings of and the negotiation of the purchase and sale of real property as the agent of others by and through licensed corporate real estate broker CPII, and the conducting of broker-controlled escrow activities under the real estate broker license of Respondent CPII pursuant to Financial Code Section 17006(a)(4).

///

///

///

///

– 2 –

ACCUSATION AGAINST COMMERCIAL PROPERTY INVESTMENT, INC. et. al.

## FIRST CAUSE OF ACCUSATION

### (AUDIT OF CPII)

5.

On March 30, 2015, the Bureau of Real Estate ("Bureau") completed an audit examination of the books and records of Respondent CPII, with regard to the broker-controlled escrow activities described in paragraph 4, above. The audit examination covered the period of time from January 1, 2013, to June 30, 2014. The primary purpose of the examination was to determine Respondents' compliance with the Real Estate Law. The audit examination revealed numerous violations of the Code and the Regulations as set forth in the following paragraphs, and more fully discussed in Audit Report LA140021 and the exhibits and work papers attached to said audit reports.

Bank and Trust Accounts

6.

At all times herein relevant, in connection with the activities described in Paragraph 4, above, CPII accepted or received funds including funds to be held in trust ("trust funds") from or on behalf of actual or prospective parties in connection with the purchase and sale of real property. Thereafter CPII made deposits and disbursements of such trust funds. From time to time herein mentioned during the audit period, said trust funds were deposited and/or maintained by CPII in the following bank accounts:

CPI Real Estate Group, Inc.
Realty Executives Premiere Escrow Division
Account No. 325XXXX (Redacted for security)
Bank of America
Wilmington, DE

(B/A #1 – general operating account where trust funds were deposited and disbursed)

///

///

///

– 3 –
ACCUSATION AGAINST COMMERCIAL PROPERTY INVESTMENT, INC. et. al.

Realty Executives Premiere Escrow Division Trust Account
Account No. 802XXXX (Redacted for security)
East West Bank
Unknown address

(T/A #1 – CPII's trust account used to deposit escrow trust funds – Account closed)

Violations

7.

With respect to the licensed activities referred to in Paragraph 4, and the audit examination including the exhibits and work papers referenced in Paragraph 5, it is alleged that Respondents:

(a)    Permitted, allowed or caused the disbursement of trust funds from bank account B/A #1 to fall to an amount which, as of June 30, 2014, was $507,423.73 less than the existing aggregate trust fund liability to the owners of said funds, without first obtaining the prior written consent of the owners of said funds in violation of Code Section 10145 and Regulations 2832.1 and 2951;

(b)    Failed to maintain a complete and accurate control record of trust funds received in violation of Code Section 10145 and Regulations 2831, 2950(d), and 2951;

(c)    Failed to maintain a separate record for each beneficiary of trust funds in violation of Code Section 10145 and Regulations 2831.1, 2950(d), and 2951;

(d)    Failed to perform a monthly reconciliation of the separate record to the control record of trust funds handled through all bank accounts in violation of Code Section 10145 and Regulations 2831.2, 2950(d), and 2951;

(e)    Placed trust funds received into general bank account B/A #1 which is not designated as a trust account in the name of the broker in violation of Code Section 10145 and Regulations 2832 and 2951;

(f)    Converted trust funds to their own use by depositing trust funds received in escrow into general operating account, B/A #1, in violation of Code Sections 10145, 10176(i), and/or 10177(g) and Regulation 2950(g).

– 4 –

ACCUSATION AGAINST COMMERCIAL PROPERTY INVESTMENT, INC. et. al.

       (g)    Mixed and commingled trust funds with Respondents' general funds by depositing trust funds into general account B/A #1 and disbursing those trust funds without written authorization from the owner of such funds in violation of Code Sections 10145 and 10176(e) and Regulations 2835, 2950(d) and 2951;

       (h)    Conducted activities that require a real estate license using the fictitious business name "CPI Real Estate Group Inc." without first licensing that fictitious business name with the Bureau in violation of Code Section 10159.5 and Regulation 2731.

       (i)    Failed to retain books, accounts, and records regarding real estate transactions and refused to make such records available to the Real Estate Commissioner's representative, to wit: the auditor, in violation of Code Section 10148;

       (j)    As to Respondent MARTIROSIAN, failed to exercise reasonable supervision over the activities of CPII, and over its employees, to ensure compliance with the Real Estate Laws and the Commissioner's Regulations in violation of Code Sections 10159.2 and 10177(h) and Regulation 2725.

8.

       The conduct of Respondents described in Paragraph 7, above, violated the Code and the Regulations as set forth below:

| PARAGRAPH | PROVISIONS VIOLATED |
| --- | --- |
| 7(a) | Code Section 10145 |
| | Regulations 2832.1 and 2951 |
| | |
| 7(b) | Code Section 10145 |
| | Regulations 2831, 2950(d), and 2951 |
| | |
| 7(c) | Code Section 10145 |
| | Regulations 2831.1, 2950(d), and 2951 |

– 5 –

ACCUSATION AGAINST COMMERCIAL PROPERTY INVESTMENT, INC. et. al.

7(d)                              Code Section 10145

                                  Regulations 2831.2, 2950(d), and 2951


7(e)                              Code Section 10145

                                  Regulations 2832 and 2951


7(f)                              Code Sections 10145, 10176(i), and/or 10177(g)

                                  Regulation 2950(g)


7(g)                              Code Sections 10145 and 10176(e)

                                  Regulations 2835, 2950(d) and 2951


7(h)                              Regulation 2731


7(i)                              Code Section 10148


7(j)                              Code Sections 10159.2 and 10177(h)

                                  Regulation 2725


Each of the foregoing violations constitute cause for the suspension or revocation of the real estate license and license rights of Respondents under the provisions of Code Sections 10176(e), 10176(i), 10177(d), 10177(g), and/or 10177(h).

<u>SECOND CAUSE OF ACCUSATION</u>

(Conversion of Trust Funds)

9.

On or about April 16, 2014, Respondents entered into a residential real estate purchase agreement as the real estate broker representing the buyer for real property located at

– 6 –

ACCUSATION AGAINST COMMERCIAL PROPERTY INVESTMENT, INC. et. al.

1  6871 Valley Circle Blvd. #3 in West Hills, California. The escrow for the transaction was

2  performed by the broker controlled escrow Realty Executives Premiere, the licensed fictitious

3  business name of CPII.

10.

5  At the conclusion of the transaction, Respondents issued a check for the sales

6  proceeds in the amount of $401,031.16 to Loren and Scott B., the sellers. At the time the check

7  was issued, Respondents had insufficient funds in bank account B/A #1 to honor that amount.

8  Thereafter, Respondent failed and refused to deposit funds into B/A #1 sufficient to enable the

9  sellers to obtain the proceeds from the sale of their real property.

11.

11  The failure and refusal of Respondents to pay purchase moneys entrusted to

12  them in connection with a real estate transaction is a conversion of such funds in violation of

13  Code Sections 10145, 10176(e), 10176(i) and/or 10177(g) and subjects the real estate licenses

14  and license rights of Respondents CPII and MARTIROSIAN to suspension or revocation

15  pursuant to Code Sections 10176(e), 10176(i), 10177(d) and/or 10177(g).

12.

17  Respondents' activities constitute a course of conduct which includes the

18  activities described in paragraphs 9 and 10, above, by way of example, but is by no means

19  limited to those named consumers and their experiences.

## THIRD CAUSE OF ACCUSATION

(Suspension of Corporation Status – CPII)

13.

24  In or about April, 2015, the Franchise Tax Board of the State of California suspended

25  the powers, rights and privileges of Respondent CPII pursuant to the provisions of the

26  California Revenue and Taxation Code. The corporate powers, rights and privileges of

27  Respondent CPII remain suspended to date.

– 7 –

ACCUSATION AGAINST COMMERCIAL PROPERTY INVESTMENT, INC. et. al.

14.

The conduct of Respondent CPII as alleged above, is in violation of Section 2742(c) of Title 10, Chapter 6, California Code of Regulations, and subjects its real estate license and license rights to suspension or revocation pursuant to Code Section 10177(d) and 10177(f).

15.

California Business and Professions Code Section 10106 provides, in pertinent part, that in any order issued in resolution of a disciplinary proceeding before the Bureau, the Commissioner may request the administrative law judge to direct a licensee found to have committed a violation of this part to pay a sum not to exceed the reasonable costs of investigation and enforcement of the case.

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

– 8 –

ACCUSATION AGAINST COMMERCIAL PROPERTY INVESTMENT, INC. et. al.

1   WHEREFORE, Complainant prays that a hearing be conducted on the

2   allegations of this Accusation and that upon proof thereof, a decision be rendered imposing

3   disciplinary action against all the licenses and license rights of Respondents COMMERCIAL

4   PROPERTY INVESTMENT, INC. dba Realty Executives Premiere, and SHAHEN

5   MARTIROSIAN, individually and as designated officer of Commercial Property Investment,

6   Inc. under the Real Estate Law (Part 1 of Division 4 of the Business and Professions Code), for

7   the costs of investigation and enforcement as provided by law, and for such other and further

8   relief as may be proper under other applicable provisions of law.

9   Dated at San Diego, California: _May 29, 2015_.

10

11

12

13   Veronica Kilpatrick
     Deputy Real Estate Commissioner

14

15

16

17

18

19

20

21

22

23

24

25   cc:   Commercial Property Investment, Inc.
           Shahen Martirosian
26         Veronica Kilpatrick
           Audits – Godswill Keraoru
27         Sacto.

– 9 –

ACCUSATION AGAINST COMMERCIAL PROPERTY INVESTMENT, INC. et. al.

# Exhibit "B"

**RESIDENTIAL PURCHASE AGREEMENT
AND JOINT ESCROW INSTRUCTIONS**
(C.A.R. Form RPA-CA, Revised 11/14 )

Date Prepared: <u>05/07/2015</u>

**1. OFFER:**
   **A.** THIS IS AN OFFER FROM <u>*Anahit Harutyunyan*</u> ("Buyer").
   **B.** THE REAL PROPERTY to be acquired is <u>*4705 Excelente Dr, Woodland Hills, CA 91364*</u> , situated in
     <u>*Woodland Hills*</u> (City), <u>*Los Angeles*</u> (County), California, <u>*91364*</u> (Zip Code), Assessor's Parcel No. <u>*2076-009-031*</u> ("Property").
   **C.** THE PURCHASE PRICE offered is <u>*Six Hundred Thousand*</u>
     Dollars $ <u>600,000.00</u>
   **D.** CLOSE OF ESCROW shall occur on ☐ _____ (date) or ☒ <u>30</u> Days After Acceptance).
   **E.** Buyer and Seller are referred to herein as the "Parties." Brokers are not Parties to this Agreement.

**2. AGENCY:**
   **A.** DISCLOSURE: The Parties each acknowledge receipt of a ☒ "Disclosure Regarding Real Estate Agency Relationships"
     (C.A.R. Form AD).
   **B.** CONFIRMATION: The following agency relationships are hereby confirmed for this transaction:
     Listing Agent <u>*National Properties*</u> (Print Firm Name) is the agent of (check one):
     ☒ the Seller exclusively; or ☐ both the Buyer and Seller.
     Selling Agent <u>*Citilink Realty Group*</u> (Print Firm Name) (if not the same as the
     Listing Agent) is the agent of (check one): ☒ the Buyer exclusively; or ☐ the Seller exclusively; or ☐ both the Buyer and Seller.
   **C.** POTENTIALLY COMPETING BUYERS AND SELLERS: The Parties each acknowledge receipt of a ☒ "Possible
     Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).

**3. FINANCE TERMS:** Buyer represents that funds will be good when deposited with Escrow Holder.
   **A.** INITIAL DEPOSIT: Deposit shall be in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ <u>10,000.00</u>
     **(1)** Buyer Direct Deposit: Buyer shall deliver deposit directly to Escrow Holder by electronic funds
     transfer, ☐ cashier's check, ☐ personal check, ☐ other _____ within 3 business days
     after Acceptance (or _____ );
     **OR (2)** ☐ Buyer Deposit with Agent: Buyer has given the deposit by personal check (or _____ )
     to the agent submitting the offer (or to _____ ), made payable to
     _____ . The deposit shall be held uncashed until Acceptance and then deposited
     with Escrow Holder within 3 business days after Acceptance (or _____ ).
     Deposit checks given to agent shall be an original signed check and not a copy.
     (Note: Initial and increased deposits checks received by agent shall be recorded in Broker's trust fund log.)
   **B.** INCREASED DEPOSIT: Buyer shall deposit with Escrow Holder an increased deposit in the amount of . . . . . . . . $ _____
     within _____ Days After Acceptance (or _____ ).
     If the Parties agree to liquidated damages in this Agreement, they also agree to incorporate the increased
     deposit into the liquidated damages amount in a separate liquidated damages clause (C.A.R. Form
     RID) at the time the increased deposit is delivered to Escrow Holder.
   **C.** ☐ ALL CASH OFFER: No loan is needed to purchase the Property. This offer is NOT contingent on Buyer
     obtaining a loan. Written verification of sufficient funds to close this transaction IS ATTACHED to this offer or
     ☐ Buyer shall, within 3 (or _____ ) Days After Acceptance, Deliver to Seller such verification.
   **D.** LOAN(S):
     **(1)** FIRST LOAN: in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ <u>390,000.00</u>
     This loan will be conventional financing or ☐ FHA, ☐ VA, ☐ Seller financing (C.A.R. Form SFA),
     ☐ assumed financing (C.A.R. Form AFA), ☒ Other <u>*private*</u> . This loan shall be at a fixed
     rate not to exceed _____ % or, ☐ an adjustable rate loan with initial rate not to exceed _____ %.
     Regardless of the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount.
     **(2)** ☐ SECOND LOAN in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____
     This loan will be conventional financing or ☐ Seller financing (C.A.R. Form SFA), ☐ assumed
     financing (C.A.R. Form AFA), ☐ Other _____ . This loan shall be at a fixed rate not to
     exceed _____ % or, ☐ an adjustable rate loan with initial rate not to exceed _____ %. Regardless of
     the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount.
     **(3)** FHA/VA: For any FHA or VA loan specified in 3D(1), Buyer has 17 (or _____ ) Days After Acceptance
     to Deliver to Seller written notice (C.A.R. Form FVA) of any lender-required repairs or costs that
     Buyer requests Seller to pay for or otherwise correct. Seller has no obligation to pay or satisfy lender
     requirements unless agreed in writing. A FHA/VA amendatory clause (C.A.R. Form FVAC) shall be a
     part of this transaction.
   **E.** ADDITIONAL FINANCING TERMS: _____
     _____
   **F.** BALANCE OF DOWN PAYMENT OR PURCHASE PRICE in the amount of . . . . . . . . . . . . . . . . . . . . . $ <u>200,000.00</u>
     to be deposited with Escrow Holder pursuant to Escrow Holder instructions.
   **G.** PURCHASE PRICE (TOTAL): . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ <u>600,000.00</u>

Buyer's Initials ( <u>H.A</u> )( _____ )               Seller's Initials ( <u>VM</u> )( _____ )

© 1991-2014, California Association of REALTORS®, Inc.

**RPA-CA REVISED 11/14 (PAGE 1 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 1 OF 10)**

**32. ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property, or has the authority to execute this Agreement. Seller accepts the above offer, and agrees to sell the Property on the above terms and conditions. Seller has read and acknowledges receipt of a Copy of this Agreement, and authorizes Broker to Deliver a Signed Copy to Buyer.

☐ (If checked) **SELLER'S ACCEPTANCE IS SUBJECT TO ATTACHED COUNTER OFFER** (C.A.R. Form SCO or SMCO) DATED: _____

☐ One or more Sellers is signing this Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD) for additional terms.

Date _____ SELLER _____

**(Print name)** *Virginia Martirossian*

Date _____ SELLER _____

**(Print name)** _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA).

(_____ / _____)   **(Do not initial if making a counter offer.) CONFIRMATION OF ACCEPTANCE:** A Copy of Signed Acceptance was
(Initials)   personally received by Buyer or Buyer's authorized agent on (date) _____ at _____
   ☐ AM/ ☐ PM. A binding Agreement is created when a Copy of Signed Acceptance is personally received by Buyer or Buyer's authorized agent whether or not confirmed in this document. Completion of this confirmation is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that Confirmation of Acceptance has occurred.

---

**REAL ESTATE BROKERS:**
A. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.
B. Agency relationships are confirmed as stated in paragraph 2.
C. If specified in paragraph 3A(2), Agent who submitted the offer for Buyer acknowledges receipt of deposit.
D. **COOPERATING BROKER COMPENSATION:** Listing Broker agrees to pay Cooperating Broker **(Selling Firm)** and Cooperating Broker agrees to accept, out of Listing Broker's proceeds in escrow, the amount specified in the MLS, provided Cooperating Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS. If Listing Broker and Cooperating Broker are not both Participants of the MLS, or a reciprocal MLS, in which the Property is offered for sale, then compensation must be specified in a separate written agreement (C.A.R. Form CBC). Declaration of License and Tax (C.A.R. Form DLT) may be used to document that tax reporting will be required or that an exemption exists.

Real Estate Broker (Selling Firm) *Citilink Realty Group*                                   CalBRE Lic. # *01888922*
By _____ *Vahag Vic Arutyunyan*  CalBRE Lic. # *01506788*     Date *05/07/2015*
By _____ CalBRE Lic. # _____          Date _____
Address *221 e glenoaks blvd #222*                          City _____     State *ca*   Zip *91207*
Telephone *(818)230-5777*       Fax *(818)230-7757*       E-mail *vic@citilinkrealty.com*
Real Estate Broker (Listing Firm) *National Properties*                               CalBRE Lic. # *01913171*
By _____ *Arthur Ambarchyan*  CalBRE Lic. # *01351863*     Date *5/7/15*
By _____ CalBRE Lic. # _____          Date _____
Address *101 n brand ste ph 1920*                          City _____     State *ca*   Zip *91203*
Telephone *(818)230-3028*       Fax *(818)230-3029*       E-mail *arthur@natprops.com*

---

**ESCROW HOLDER ACKNOWLEDGMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, ☐ a deposit in the amount of $ _____ ),
counter offer numbers _____ ☐ Seller's Statement of Information and _____ , and agrees to act as Escrow Holder subject to paragraph 20 of this Agreement, any supplemental escrow instructions and the terms of Escrow Holder's general provisions.

Escrow Holder is advised that the date of Confirmation of Acceptance of the Agreement as between Buyer and Seller is _____

Escrow Holder _____          Escrow # _____
By _____          Date _____
Address _____
Phone/Fax/E-mail _____
Escrow Holder has the following license number # _____
☐ Department of Business Oversight, ☐ Department of Insurance, ☐ Bureau of Real Estate.

---

**PRESENTATION OF OFFER:** (_____) (_____) Listing Broker presented this offer to Seller on _____ (date).
   Broker or Designee Initials

---

**REJECTION OF OFFER:** (_____) (_____) No counter offer is being made. This offer was rejected by Seller on _____ (date).
   Seller's Initials

---

©1991- 2014, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:                                  Buyer's Acknowledge that page 10 is part of
REAL ESTATE BUSINESS SERVICES, INC.                            this Agreement ( *H. H.* ) ( _____ )
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020
**RPA-CA REVISED 11/14 (PAGE 10 of 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 10 OF 10)**



**ASSOCIATION OF REALTORS®**

# DISCLOSURE REGARDING
## REAL ESTATE AGENCY RELATIONSHIP
### (Selling Firm to Buyer)
(As required by the Civil Code)
(C.A.R. Form AD, Revised 12/14)

☐ (If checked) This form is being provided in connection with a transaction for a leasehold interest exceeding one year as per Civil Code section 2079.13(k) and (m).

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

**SELLER'S AGENT**

A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:

To the Seller: A Fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.

To the Buyer and the Seller:

(a) Diligent exercise of reasonable skill and care in performance of the agent's duties.

(b) A duty of honest and fair dealing and good faith.

(c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**BUYER'S AGENT**

A selling agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:

To the Buyer: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.

To the Buyer and the Seller:

(a) Diligent exercise of reasonable skill and care in performance of the agent's duties.

(b) A duty of honest and fair dealing and good faith.

(c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties.

An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**AGENT REPRESENTING BOTH SELLER AND BUYER**

A real estate agent, either acting directly or through one or more associate licensees, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.

In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:

(a) A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.

(b) Other duties to the Seller and the Buyer as stated above in their respective sections.

In representing both Seller and Buyer, the agent may not, without the express permission of the respective party, disclose to the other party that the Seller will accept a price less than the listing price or that the Buyer will pay a price greater than the price offered.

The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect his or her own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. **This disclosure form includes the provisions of Sections 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully. I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE BACK (OR A SEPARATE PAGE).**

☒ Buyer ☐ Seller ☐ Landlord ☐ Tenant _____ Date _05/07/2015_
                                Anahit Harutyunyan

☐ Buyer ☐ Seller ☐ Landlord ☐ Tenant _____ Date _____

Agent _____ *Citilink Realty Group* _____ BRE Lic. # _01888922_
                   Real Estate Broker (Firm)

By _____ BRE Lic. # _01506788_ _____ Date _05/07/2015_
   (Salesperson or Broker-Associate)  *Vahag Vic Arutyunyan*

**Agency Disclosure Compliance (Civil Code §2079.14):**

• When the listing brokerage company also represents Buyer/Tenant: The Listing Agent shall have one AD form signed by Seller/Landlord and a different AD form signed by Buyer/Tenant.

• When Seller/Landlord and Buyer/Tenant are represented by different brokerage companies: (i) the Listing Agent shall have one AD form signed by Seller/Landlord and (ii) the Buyer's/Tenant's Agent shall have one AD form signed by Buyer/Tenant and either that same or a different AD form presented to Seller/Landlord for signature prior to presentation of the offer. If the same form is used, Seller may sign here:

                               _05/07/2015_

Seller/Landlord _____ Date _5/7/2015_    Seller/Landlord _____ Date _____
*Virginia Martirossian*

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1991-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

AD REVISED 12/14 (PAGE 1 OF 2)

Reviewed by _____ Date _____

## DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 1 OF 2)

National Properties 101 N. Brand Blvd Suite 1920 Glendale, CA 91203    Phone: 818.230.3226    Fax: 818.286.1500    Anahit-Excelox
Arthur Ambarchyan                Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

**A. SETTLEMENT STATEMENT (HUD-1)**

OMB Approval No. 2502-0265

ESTIMATED

Printed: July 22, 2015   11:32am

**B. Type of Loan**

| | | |
|---|---|---|
| 1. [ ]FHA 2.[ ]RHS 3.[ ]Conv. Unins. 4.[ ]VA 5. [ ]Conv. Ins. | 6. File Number 000512-RN | 7. Loan Number |
| | | Mortgage Insurance Number |

**C. Note:** This form is furnished to give you a statement of the actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(P.O.C.)" were paid outside of the closing; they are shown here for informational purposes and are not included in the totals.

| D. Name and Address of Borrower | E. Name and Address of Seller | F. Name and Address of Lender |
|---|---|---|
| Anahit Harutyunyan | Virginia Martirossian | PAnchores Mtg Inc. |
| 1083 E. Santa Anita Burbank, CA .91202 | 4705 Excelento Drive Woodland Hills, CA. 91364 | , CA |

| G. PROPERTY LOCATION | H. Settlement Agent |
|---|---|
| 4705 Excelento Drive Woodland Hills, CA 91364 | Escrow on Brand, a Non-Independent Broker Escrow 101 N. Brand Blvd., #1920, Glendale, CA 91203 Phone: (818) 230-3777 |
| | Place of Settlement |
| | 101 N. Brand Blvd., #1920 Glendale, CA 91203 |

| I. Settlement Date |
|---|
| Close Date July 23, 2015 |

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER** | | **400. GROSS AMOUNT DUE TO SELLER** | |
| 101. Contract Sales Price | | 401. Contract sales price | 600,000.00 |
| 102. Personal Property | | 402. Personal property | |
| 103. Settl. Chrgs. to Borrower (line 1400) | 0.00 | 403. Allocation from Buyer 2nd payoff | 4,260.00 |
| 104. | | 404. | |
| 105. | | 405. | |
| **Adjustments for items paid by Seller in advance** | | **Adjustments for items paid by seller in advance** | |
| 106. City/Town Taxes | | 406. City/Town taxes | |
| 107. County Taxes | | 407. County taxes | |
| 108. Assessments | | 408. Per diem at $373.32 from 07/23/2015 to 07/23/2015 | 373.32 |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 120. Gross Amount Due From Borrower | 0.00 | 420. Gross Amount Due to Seller | 604,633.32 |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER** | |
| 201. Deposits or Earnest Money. | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan | | 502. Settl. chrgs. to seller (line 1400) | 45,431.33 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff to NationStar | 549,301.99 |
| 205. | | 505. Payoff to Chase | 9,900.00 |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| **Adjustments for items unpaid by seller** | | **Adjustments for items unpaid by seller** | |
| 210. City/Town taxes | | 510. City/Town taxes | |
| 211. County taxes | | 511. County taxes | |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. Total Paid By/For Borrower | 0.00 | 520. Total Reductions in Amount Due Seller | 604,633.32 |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER** | | **600. CASH AT SETTLEMENT FROM/TO SELLER** | |
| 301. Gross Amounts due from Borrower (line 120) | 0.00 | 601. Gross amount due to Seller (line 420) | 604,633.32 |
| 302. Less amounts paid by/for Borrower (line 220) | 0.00 | 602. Less reductions in amount due Seller (line 520) | 604,633.32 |
| 303. Cash [ ] From Borrower [ ] To Borrower | 0.00 | 603. Cash [ ] To Seller [ ] From Seller | 0.00 |

The Public Reporting Burden for this collection of information is estimated at 35 minutes per response for collection, reviewing, and reporting the data. This agency may not collect this information, and you are not required to complete this form, unless it displays a currently valid OMB control number. No confidentiality is assured; this disclosure is mandatory. This is designed to provide the parties to a RESPA covered transaction with information during the settlement process.

Party Paying POC Legend - (B*) Buyer/Borrower (S*) Seller (L*) Lender (LB*) Loan Broker          [B]Buyer/Borrower    [S]Seller

| D. Name and Address of Borrower | E. Name and Address of Seller | F. Name and Address of Lender |
|---|---|---|
| Anahit Harutyunyan | Virginia Martirossian | TBD |
| 1083 E. Santa Anita Burbank, CA 91202 | 4705 Excelente Drive Woodland Hills, CA 91364 | , CA |

| G. PROPERTY LOCATION | H. Settlement Agent | |
|---|---|---|
| 4705 Excelente Drive Woodland Hills, CA 91364 | Escrow on Brand, a Non-Independent Broker Escrow 101 N. Brand Blvd., #1920, Glendale, CA 91203 Phone: (818) 230-3777 | |
| | Place of Settlement | I. Settlement Date |
| | 101 N. Brand Blvd., #1920 Glendale, CA 91203 | Close Date July 20, 2015 |

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER** | | **400. GROSS AMOUNT DUE TO SELLER** | |
| 101. Contract Sales Price | | 401. Contract sales price | 600,000.00 |
| 102. Personal Property | | 402. Personal property | |
| 103. Settl. Chrgs. to Borrower (line 1400) | 0.00 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| **Adjustments for items paid by seller in advance** | | **Adjustments for items paid by seller in advance** | |
| 106. City/Town Taxes | | 406. City/Town taxes | |
| 107. County Taxes | | 407. County taxes | |
| 108. Assessments | | 408. Assessments | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | 600,000.00 |
| 120. Gross Amount Due From Borrower | 0.00 | 420. Gross Amount Due to Seller | |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER** | |
| 201. Deposits or Earnest Money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan | | 502. Settl. chrgs. to seller (line 1400) | 45,545.33 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) subject to | |
| 204. | | 504. Payoff to NationStar | 548,314.67 |
| 205. | | 505. Payoff to Chase | 5,640.00 |
| 206. | | 506. Payoff to HOA | 500.00 |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| **Adjustments for items unpaid by seller** | | **Adjustments for items unpaid by seller** | |
| 210. City/Town taxes | | 510. City/Town taxes | |
| 211. County taxes | | 511. County taxes | |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. Total Paid By/For Borrower | 0.00 | 520. Total Reductions in Amount Due Seller | 600,000.00 |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER** | | **600. CASH AT SETTLEMENT FROM/TO SELLER** | |
| 301. Gross Amounts due from Borrower (line 120) | 0.00 | 601. Gross amount due to Seller (line 420) | 600,000.00 |
| 302. Less amounts paid by/for Borrower (line 220) | 0.00 | 602. Less reductions in amount due Seller (line 520) | 600,000.00 |
| 303. Cash [ ] From Borrower [ ] To Borrower | 0.00 | 603. Cash [ ] To Seller [ ] From Seller | 0.00 |

| 800. | ITEMS PAYABLE IN CONNECTION WITH LOAN | | | | |
|---|---|---|---|---|---|
| 801. | Our origination charge | (from GFE #1) | | | |
| 802. | Your credit or charge (points) for the specific interest rate chosen | (from GFE #2) | | | |
| 803. | Your adjusted origination charges | (from GFE #A) | | | |
| 804. | Appraisal fee | (from GFE #3) | | | |
| 805. | Credit report | (from GFE #3) | | | |
| 806. | Tax service | (from GFE #3) | | | |
| 807. | Flood certification | (from GFE #3) | | | |
| 808. | Condo certification | (from GFE #3) | | | |
| 809. | | | | | |
| 810. | | | | | |
| 811. | | | | | |
| 900. | ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE | | | | |
| 901. | Daily interest charges from | (from GFE #10) | | | |
| 902. | Mortgage insurance premium for | (from GFE #3) | | | |
| 903. | Homeowner's insurance | (from GFE #11) | | | |
| 904. | | | | | |
| 905. | | | | | |
| 1000. | RESERVES DEPOSITED WITH LENDER | | | | |
| 1001. | Initial deposit for your escrow account | (from GFE #9) | | | |
| 1002. | Homeowner's insurance | | | | |
| 1003. | Mortgage insurance | | | | |
| 1004. | Property taxes | | | | |
| 1005. | City taxes | | | | |
| 1006. | Assessments | | | | |
| 1007. | Misc. Impound | | | | . |
| 1008. | | | | | |
| 1009. | Aggregate Adjustment | | | | |
| 1100. | ESCROW AND TITLE CHARGES | | | | |
| 1101. | Title services and lender's title insurance | (from GFE #4) | | | |
| 1102. | Settlement or closing fee to Escrow on Brand, a Non-Independent Broker Escrow | | | | 1,450.0 |
| 1103. | Owner's title insurance to PACIFIC COAST TITLE COMPANY | (from GFE #5) | | | 2,250.0 |
| 1104. | Lender's title insurance (plus Endorsements) | | | | |
| 1105. | Lender's title policy limit $ | | | | |
| 1106. | Owner's title policy limit $ | | | | |
| 1107. | Agent's portion of the total title insurance premium $ | | | | |
| 1108. | Underwriter's portion of the total title insurance premium $ | | | | |
| 1109. | Tax Service Fee to PACIFIC COAST TITLE COMPANY | | | | 111.3 |
| 1110. | Escrow Fee to Escrow on Brand, a Non-Independent Broker Escrow  [S]$1,450.00 (to line 1102) | | | | |
| 1111. | | | | | |
| 1112. | | | | | |
| 1113. | | | | | |
| 1114. | | | | | |
| 1115. | | | | | |
| 1200. | GOVERNMENT RECORDING AND TRANSFER CHARGES | | | | |
| 1201. | Government recording charges | (from GFE #7) | | | |
| 1202. | Deed $   Mortgage $   Release $ | | | | |
| 1203. | Transfer Tax | (from GFE #8) | | | |
| 1204. | City/County tax/stamps | | | | 3,360.0 |
| 1205. | State tax/stamps | | | | |
| 1206. | | | | | |
| 1300. | ADDITIONAL SETTLEMENT CHARGES | | | | |
| 1301. | Required services that you can shop for | (from GFE #6) | | | |
| 1302. | Unspecified Charge to Property ID | | | | 114.0 |
| 1303. | Allocation from Agent to 2nd Payoff | | | | 2,260.0 |
| 1304. | | | | | |
| 1305. | | | | | |

| 800. | ITEMS PAYABLE IN CONNECTION WITH LOAN | | | |
|------|----|----|----|----|
| 801. | Our origination charge | (from GFE #1) | | |
| 802. | Your credit or charge (points) for the specific interest rate chosen | (from GFE #2) | | |
| 803. | Your adjusted origination charges | (from GFE #A) | | |
| 804. | Appraisal fee | (from GFE #3) | | |
| 805. | Credit report | (from GFE #3) | | |
| 806. | Tax service | (from GFE #3) | | |
| 807. | Flood certification | (from GFE #3) | | |
| 808. | Condo certification | (from GFE #3) | | |
| 809. | | | | |
| 810. | | | | |
| 811. | | | | |
| 900. | ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE | | | |
| 901. | Daily interest charges from | (from GFE #10) | | |
| 902. | Mortgage insurance premium for | (from GFE #3) | | |
| 903. | Homeowner's insurance | (from GFE #11) | | |
| 904. | | | | |
| 905. | | | | |
| 1000. | RESERVES DEPOSITED WITH LENDER | | | |
| 1001. | Initial deposit for your escrow account | (from GFE #9) | | |
| 1002. | Homeowner's insurance | | | |
| 1003. | Mortgage insurance | | | |
| 1004. | Property taxes | | | |
| 1005. | City taxes | | | |
| 1006. | Assessments | | | |
| 1007. | Misc. Impound | | | |
| 1008. | | | | |
| 1009. | Aggregate Adjustment | | | |
| 1100. | ESCROW AND TITLE CHARGES | | | |
| 1101. | Title services and lender's title insurance to PACIFIC COAST TITLE COMPANY | (from GFE #4) | 3,260.00 | |
| 1102. | Settlement or closing fee to Escrow on Brand, a Non-Independent Broker Escrow [B]$1,810.00 (to line 1101) | | | |
| 1103. | Owner's title insurance | (from GFE #5) | | |
| 1104. | Lender's title insurance (plus Endorsements) to PACIFIC COAST TITLE COMPANY [B]$1,240.00 (to line 1101) | | | |
| 1105. | Lender's title policy limit $ | | | |
| 1106. | Owner's title policy limit $ | | | |
| 1107. | Agent's portion of the total title insurance premium $ | | | |
| 1108. | Underwriter's portion of the total title insurance premium $ | | | |
| 1109. | ALTA Loan Policy + Endorsements to PACIFIC COAST TITLE COMPANY [B]$1,240.00 (to line 1104) | | | |
| 1110. | Sub Escrow Fee to PACIFIC COAST TITLE COMPANY [B]$125.00 (to line 1101) | | | |
| 1111. | Wire Fee to PACIFIC COAST TITLE COMPANY [B]$85.00 (to line 1101) | | | |
| 1112. | Escrow Fee to Escrow on Brand, a Non-Independent Broker Escrow [B]$1,450.00 (to line 1102) | | | |
| 1113. | Loan Tie-In Fee to Escrow on Brand, a Non-Independent Broker Escrow [B]$275.00 (to line 1102) | | | |
| 1114. | Messenger Fee to Escrow on Brand, a Non-Independent Broker Escrow [B]$85.00 (to line 1102) | | | |
| 1115. | | | | |
| 1200. | GOVERNMENT RECORDING AND TRANSFER CHARGES | | | |
| 1201. | Government recording charges | (from GFE #7) | 150.00 | |
| 1202. | Deed $ Mortgage $ Release $ | | | |
| 1203. | Transfer Tax | (from GFE #8) | | |
| 1204. | City/County tax/stamps | | | |
| 1205. | State tax/stamps | | | |
| 1206. | | | | |
| 1300. | ADDITIONAL SETTLEMENT CHARGES | | | |
| 1301. | Required services that you can shop for | (from GFE #6) | | |
| 1302. | | | | |

# Exhibit "C"

**This page is part of your document - DO NOT DISCARD**



## 20150905836



**Pages:**
**0007**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**07/24/15 AT 02:14PM**

| | |
|---|---|
| FEES: | 58.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 58.00 |



**L E A D S H E E T**



201507243280072

00010913362



006983350

**SEQ:**
**02**

**DAR - Counter (Upfront Scan)**



**THIS FORM IS NOT TO BE DUPLICATED**



RECORDING REQUESTED BY:
*Pacific* Coast Title

MAIL TAX STATEMENTS AND
WHEN RECORDED MAIL TO:
City National Finance
P.O. Box 4192
Glendale, CA 91222

Escrow: 512-RN  Order: 98816057-88

APN: 2076-009-031                    SPACE ABOVE THIS LINE IS FOR RECORDER'S USE

# DEED OF TRUST AND ASSIGNMENT OF RENTS

**This DEED OF TRUST**, made July 15, 2015, between Anahit Harutyunyan, herein called Trustor, whose address is 4705 Excelente Drive, Los Angeles, CA 91364 and Orange Coast Title herein called TRUSTEE, and City National Finance, herein called BENEFICIARY,

**WITNESSETH:** That Trustor IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS TO TRUSTEE IN TRUST, WITH POWER OF SALE, that property in the County of Los Angeles, State of California, described as:

4705 Excelente Drive, Los Angeles, CA 91364.

Legal Descriptions: SEE EXHIBIT "A", ATTACHED HERETO AND MADE A PART HEREOF.

**TOGETHER WITH** the rents, issues and profits thereof, SUBJECT, HOWEVER, to the right, power and authority hereinafter given to and conferred upon Beneficiary by paragraph (10) of the provisions incorporated herein by reference to collect and apply such rents, issues and profits.

**For the Purpose of Securing:** (1) Performance of each agreement of Trustor incorporated by reference or contained herein. (2) Payment of the indebtedness evidenced by one promissory note of even date herewith, and any extension or renewal thereof, in the **PRINCIPAL SUM OF $600,000.00** executed by Trustor in favor of Beneficiary or order. (3) Payment of such further sums as the then record owner of said property hereafter may borrow from Beneficiary, when evidenced by another note (or notes) reciting it so secured.

The following is a copy of provisions (1) to (14), inclusive, of the fictitious Deed of Trust, recorded in each county in California, as stated in the foregoing Deed of Trust and incorporated by reference in said Deed of Trust as being a part thereof as set forth at length therein.

**To protect the Security of this Deed of Trust, Trustor Agrees:**
(1) To keep said property in good condition and repair; not to remove or demolish any building thereon; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefor; to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon; not to commit or permit waste thereof; not to commit, suffer or permit any act upon said property in violation of law; to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said property may be reasonably necessary, the specific enumerations herein not excluding the general.

(2) To provide, maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon any indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(3) To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed.

(4) To pay: at least ten days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock; when due, all encumbrances, charges and liens, with interest, on said property or any part thereof, which appear to be prior or superior hereto; all costs, fees and expenses of this Trust.

*H. H*

Page 2 of 4

Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do, without notice to or demand upon Trustor, and without releasing Trustor from any obligation hereof, may: make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.

(5) To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the amount allowed by law in effect at the date hereof, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.

(6) That any award of damages in connection with condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such monies received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

(7) That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

(8) That at any time or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed and said note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of said property; consent to the making of any map or plat thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

(9) That upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed and said note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto". Five years after issuance of such full reconveyance, Trustee may destroy said note and this Deed (unless directed in such request to retain them).

(10) That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of these Trusts, to collect the rents, issues and profits of said property, reserving onto Trustor the right, prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable. Upon any such default, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in his own name sue for or otherwise collect such rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon any indebtedness secured hereby, and in such order as Beneficiary may determine. The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(11) That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed, said note and all documents evidencing expenditures secured hereby.

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

*H.A*

Page 3 of 4

(12) Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed is recorded and the name and address of the new Trustee.

(13) That this Deed applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner and holder, including pledgees, of the note secured hereby, whether or not named as Beneficiary herein. In this Deed, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(14) That Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

Dated: 07/15/2015

Anahit Harutyunyan, Trustor

---

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |
| --- |

STATE OF CALIFORNIA          )
                             )ss
COUNTY OF LOS ANGELES        )

On _July 22, 2015_ _____ before me _David Shahnazaryan_ , Notary Public,

personally appeared _Anahit Harutyunyan_ 
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

DAVID SHAKHNAZARYAN
Commission # 2080440
Notary Public - California
Los Angeles County
My Comm. Expires Sep 1 20...

SPACE ABOVE RESERVED FOR NOTARY SEAL

**ACKNOWLEDGMENT**

A notary public or other officer completing this
certificate verifies only the identity of the
individual who signed the document to which this
certificate is attached, and not the truthfulness,
accuracy, or validity of that document.

State of California

County of _____ *Los Angeles* _____

On _*July 22, 15*_ before me, _*David Shakhnazaryan*_,
A Notary Public personally appeared _*Anahit Karutyunyan*_
_____

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged to me that he/she/they executed
the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

DAVID SHAKHNAZARYAN
Commission # 2080440
Notary Public - California
Los Angeles County
My Comm. Expires Sep 1, 2018

(Seal)

**DO NOT RECORD**

**REQUEST FOR FULL RECONVEYANCE**
**To be used only when note has been paid.**

A reconveyance will be issued upon presentation to _____ of this request properly signed and accompanied by the reconveyance fee, the Deed of Trust, the original Note or Notes secured by said Deed of Trust, and any receipt or document evidencing any other indebtedness secured thereby.

TO:_____, TRUSTEE:

The undersigned is the legal owner and holder of all indebtedness secured by the within Deed of Trust. All sums secured by said Deed of Trust have been fully paid and satisfied; and you are hereby requested and directed, on payment to you of any sums owing to you under the terms of said Deed of Trust, to cancel all evidences of indebtedness, secured by said Deed of Trust, delivered to you herewith, together with the said Deed of Trust, and to reconvey, without warranty, to the parties designated by the terms of said Deed of Trust, all the estate now held by you under the same.

Dated: _____

_____        MAIL TAX RECONVEYANCE TO:
Beneficiary Name:

_____        _____
Beneficiary Name:                                _____

_____        _____
Beneficiary Name:                                _____

_____
Beneficiary Name:

Do not lose or destroy this Deed of Trust OR THE NOTE which it secures.  Both must be delivered to the Trustee at
_____ for cancellation before reconveyance will be made.

PRELIMINARY REPORT                                          Pacific Coast Title Company
                                                           ORDER NO.: 98816057-88

**LEGAL DESCRIPTION**

**EXHIBIT "A"**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 209 DF TRACT NO. 9098, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 132, PAGE(S) 14 THROUGH 36 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM ALL OIL, GAS AND MINERAL RIGHTS IN AND UNDER SAID LAND, WITHOUT RIGHT OF INGRESS AND EGRESS UPON THE SURFACE OR WITHIN 500 FEET OF THE SURFACE DF SAID LAND, BY DEED RECORDED IN BOOK D271 PAGE 282, OFFICIAL RECORDS.

This page is part of your document - DO NOT DISCARD

 



**20150988019**



Pages:
0005

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**08/12/15 AT 12:32PM**

| | |
|---|---|
| FEES: | 52.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 52.00 |





**L E A D S H E E T**



201508120940010

**00010992140**



007017872

**SEQ:**
**01**

**DAR - Counter (Upfront Scan)**



**THIS FORM IS NOT TO BE DUPLICATED**



RECORDING REQUESTED BY:
Pacific Coast Title (*.*)

MAIL TAX STATEMENTS AND
WHEN RECORDED MAIL TO:
City National Finance
P.O. Box 4192
Glendale, CA 91222

Escrow: 512-RN  Order: 98816057-88-C

APN: 2076-009-031

SPACE ABOVE THIS LINE IS FOR RECORDER'S USE

# DEED OF TRUST AND ASSIGNMENT OF RENTS

**This DEED OF TRUST,** made July 15, 2015, between Anahit Harutyunyan, herein called Trustor, whose address is 4705 Excelente Drive, Los Angeles, CA 91364 and Pacific Coast Title herein called TRUSTEE, and City National Finance, herein called BENEFICIARY,

**WITNESSETH:** That Trustor IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS TO TRUSTEE IN TRUST, WITH POWER OF SALE, that property in the County of Los Angeles, State of California, described as:

4705 Excelente Drive, Los Angeles, CA 91364.

Legal Descriptions: SEE EXHIBIT "A", ATTACHED HERETO AND MADE A PART HEREOF.

**TOGETHER WITH** the rents, issues and profits thereof, SUBJECT, HOWEVER, to the right, power and authority hereinafter given to and conferred upon Beneficiary by paragraph (10) of the provisions incorporated herein by reference to collect and apply such rents, issues and profits.

**For the Purpose of Securing:** (1) Performance of each agreement of Trustor incorporated by reference or contained herein. (2) Payment of the indebtedness evidenced by one promissory note of even date herewith, and any extension or renewal thereof, in the **PRINCIPAL SUM OF $108,656.25** executed by Trustor in favor of Beneficiary or order. (3) Payment of such further sums as the then record owner of said property hereafter may borrow from Beneficiary, when evidenced by another note (or notes) reciting it so secured.

The following is a copy of provisions (1) to (14), inclusive, of the fictitious Deed of Trust, recorded in each county in California, as stated in the foregoing Deed of Trust and incorporated by reference in said Deed of Trust as being a part thereof as set forth at length therein.

**To protect the Security of this Deed of Trust, Trustor Agrees:**
(1) To keep said property in good condition and repair; not to remove or demolish any building thereon; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefor; to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon; not to commit or permit waste thereof; not to commit, suffer or permit any act upon said property in violation of law; to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said property may be reasonably necessary, the specific enumerations herein not excluding the general.

(2) To provide, maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon any indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(3) To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed.

(4) To pay: at least ten days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock; when due, all encumbrances, charges and liens, with interest, on said property or any part thereof, which appear to be prior or superior hereto; all costs, fees and expenses of this Trust.

*H.A*
*PAGE 1 OF 4*

Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do, without notice to or demand upon Trustor, and without releasing Trustor from any obligation hereof, may: make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.

(5) To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the amount allowed by law in effect at the date hereof, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.

(6) That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such monies received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

(7) That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

(8) That at any time or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed and said note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of said property; consent to the making of any map or plat thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

(9) That upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed and said note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto". Five years after issuance of such full reconveyance, Trustee may destroy said note and this Deed (unless directed in such request to retain them).

(10) That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of these Trusts, to collect the rents, issues and profits of said property, reserving onto Trustor the right, prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable. Upon any such default, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in his own name sue for or otherwise collect such rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon any indebtedness secured hereby, and in such order as Beneficiary may determine. The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(11) That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed, said note and all documents evidencing expenditures secured hereby.

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

H. A

(12) Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed is recorded and the name and address of the new Trustee.

(13) That this Deed applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner and holder, including pledgees, of the note secured hereby, whether or not named as Beneficiary herein. In this Deed, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(14) That Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

Dated: <u>07/15/2015</u>

Anahit Harutyunyan, Trustor

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

STATE OF CALIFORNIA )
)ss
COUNTY OF LOS ANGELES )

on <u>July 27th, 2015</u> before me <u>A. Alsibai</u>, Notary Public,

personally appeared <u>Anahit Harutyunyan</u> who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

> A. ALSIBAI
> COMM. #1948723
> Notary Public - California
> Orange County
> My Comm. Expires Aug. 19, 2015

SPACE ABOVE RESERVED FOR NOTARY SEAL

PRELIMINARY REPORT                                    Pacific/Coast/Title Company
                                                      Updated W.O.: 9061E057-88

LEGAL DESCRIPTION

EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF LOS ANGELES, STATE OF
CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 209 OF TRACT NO. 9098, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF
CALIFORNIA, AS PER MAP RECORDED IN BOOK 132, PAGE(S) 14 THROUGH 36 INCLUSIVE OF MAPS, IN THE
OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM ALL OIL, GAS AND MINERAL RIGHTS IN AND UNDER SAID LAND, WITHOUT RIGHT OF
INGRESS AND EGRESS UPON THE SURFACE OR WITHIN 500 FEET OF THE SURFACE OF SAID LAND, BY DEED
RECORDED IN BOOK D271 PAGE 282, OFFICIAL RECORDS.

# Exhibit "D"

## Secured Mortgage Loan Statement

**CITY NATIONAL FINANCE**
POST OFFICE BOX 4192
GLENDALE, CA 91202

**PHONE: (877) 878-1029**

DATE: 09-08-2015

ANAHIT HARUTYUNYAN
4705 EXCELENTE DRIVE
WOODLAND HILLS, CA 91364

| | |
|---|---|
| NUMBER: | █████245 |
| TYPE: | OPEN END |
| DATE OF LOAN: | 07-15-2015 |
| AMOUNT OF LOAN: | $600,000.00 |
| FINAL DRAW DATE: | 01-15-2016 |
| DRAW TERM: | 6 MONTHS |
| APR: | 12.5000% |
| NEXT CHANGE DATE: | 01-15-2016 |

### CREDIT LINE FUNDS AVAILABLE

| ORIGINAL AMOUNT: | $600,000.00 | DRAWS TO DATE: | $708,656.25 |
|---|---|---|---|

| DATE | AMOUNT OF DRAW | CHECK NUMBER/TRANS ID | LINE BALANCE |
|---|---|---|---|
| 07-15-2015 | $600,000.00 | 4059000611178955 | $600,000.00 |
| 07-20-2015 | $108,656.25 | 40601508120940010 | $108,656.25 |

### CREDIT LINE LOAN REPAYMENT STATEMENT

| TOTAL AMOUNT DUE: | $6,843.31 | EFFECTIVE DATE: | 08-16-2015 |
|---|---|---|---|

| PERIOD | INT RATE | DAILY PERIODIC RATE | FINANCE CHARGE |
|---|---|---|---|
| 07-15-2015 TO 08-15-2015 | 12.50000% | 0.0010416% | $6,843.75 |

| DATE | DESCRIPTION | AMOUNT | INTEREST | PRINCIPAL | LOAN BALANCE |
|---|---|---|---|---|---|
| 08-15-2015 | PAYMENT/SVC | $6,843.31 | $6,843.31 | $0.00 | $708,656.25 |
| 08-2-2015 | PMT/ TAX | $0.00 | | | $708,656.25 |
| 06-20-2015 | PMT/INT | $0.00 | | | $708,656.25 |
| 08-21-2015 | END BALANCE | | | | $708,656.25 |

---

### CREDIT LINE LOAN PAYMENT COUPON
#### PLEASE DETACH AND RETURN THIS PORTION WITH YOUR PAYMENT

CITY NATIONAL FINANCE
P.O. BOX 4192
GLENDALE, CA 91202

| | |
|---|---|
| LOAN ACCOUNT NUMBER: | ████45 |
| STATEMENT DATE: | 09-08-2015 |
| PAYMENT DUE DATE: | 09-15-2015 |
| CURRENT PAYMENT: | $6,843.31 |
| PAST DUE PAYMENT: | $0.00 |
| LATE FEE: | $0.00 |
| TOTAL DUE: | $6,843.31 |



**CALIFORNIA ASSOCIATION OF REALTORS®**

## RESIDENTIAL LEASE OR
## MONTH-TO-MONTH RENTAL AGREEMENT
(C.A.R. Form LR, Revised 12/15)

Date: _08/02/2015_ _Anahit Harutyunyan_ ("Landlord") and
_Virginia Martirossian_ ("Tenant") agree as follows:

**1. PROPERTY:**
  A. Landlord rents to Tenant and Tenant rents from Landlord, the real property and improvements described as: _4705 Excelente Dr, Woodland Hills, 91364_ ("Premises").
  B. The Premises are for the sole use as a personal residence by the following named person(s) only: _Carolina Sarkissian_

  C. The following personal property, maintained pursuant to paragraph 11, is included: _____ or ☐ (if checked) the personal property on the attached addendum.
  D. The Premises may be subject to a local rent control ordinance _____

**2. TERM:** The term begins on (date) _____ ("Commencement Date"). (Check A or B.)
  ☐ A. **Month-to-Month:** and continues as a month-to-month tenancy. Tenant may terminate the tenancy by giving written notice at least 30 days prior to the intended termination date. Landlord may terminate the tenancy by giving written notice as provided by law. Such notices may be given on any date.
  ☒ B. **Lease:** and shall terminate on (date) _August 3, 2016_ at _5_ ☐ AM ☒ PM. Tenant shall vacate the Premises upon termination of the Agreement, unless: (i) Landlord and Tenant have extended this Agreement in writing or signed a new agreement; (ii) mandated by local rent control law; or (iii) Landlord accepts Rent from Tenant (other than past due Rent), in which case a month-to-month tenancy shall be created which either party may terminate as specified in paragraph 2A. Rent shall be at a rate agreed to by Landlord and Tenant, or as allowed by law. All other terms and conditions of this Agreement shall remain in full force and effect.

**3. RENT:** "Rent" shall mean all monetary obligations of Tenant to Landlord under the terms of the Agreement, except security deposit.
  A. Tenant agrees to pay $ _2,200.00_ per month for the term of the Agreement.
  B. Rent is payable in advance on the 1st (or _____ ) day of each calendar month, and is delinquent on the next day.
  C. If Commencement Date falls on any day other than the day Rent is payable under paragraph 3B, and Tenant has paid one full month's Rent in advance of Commencement Date, Rent for the second calendar month shall be prorated and Tenant shall pay 1/30th of the monthly rent per day for each day remaining in prorated second month.
  D. PAYMENT: Rent shall be paid by ☒ personal check, ☐ money order, ☐ cashier's check, or ☐ other _____ to (name) _Anahit Harutyunyan_, (phone) _____ at (address) _____ (or at any other location subsequently specified by Landlord in writing to Tenant) (and ☐ if checked, rent may be paid personally, between the hours of _____ and _____ on the following days _____ ). If any payment is returned for non-sufficient funds ("NSF") or because tenant stops payment, then, after that: (i) Landlord may, in writing, require Tenant to pay Rent in cash for three months and (ii) all future Rent shall be paid by ☐ money order, or ☐ cashier's check.
  E. Rent payments received by Landlord shall be applied to the earliest amount(s) due or past due.

**4. SECURITY DEPOSIT:**
  A. Tenant agrees to pay $ _5,000.00_ as a security deposit. Security deposit will be ☐ transferred to and held by the Owner of the Premises, or ☐ held in Owner's Broker's trust account.
  B. All or any portion of the security deposit may be used, as reasonably necessary, to: (i) cure Tenant's default in payment of Rent (which includes Late Charges, NSF fees or other sums due); (ii) repair damage, excluding ordinary wear and tear, caused by Tenant or by a guest or licensee of Tenant; (iii) clean Premises, if necessary, upon termination of the tenancy; and (iv) replace or return personal property or appurtenances. SECURITY DEPOSIT SHALL NOT BE USED BY TENANT IN LIEU OF PAYMENT OF LAST MONTH'S RENT. If all or any portion of the security deposit is used during the tenancy, Tenant agrees to reinstate the total security deposit within five days after written notice is delivered to Tenant. Within 21 days after Tenant vacates the Premises, Landlord shall: (1) furnish Tenant an itemized statement indicating the amount of any security deposit received and the basis for its disposition and supporting documentation as required by California Civil Code § 1950.5(g); and (2) return any remaining portion of the security deposit to Tenant.
  C. Security deposit will not be returned until all Tenants have vacated the Premises and all keys returned. Any security deposit returned by check shall be made out to all Tenants named on this Agreement, or as subsequently modified.
  D. No interest will be paid on security deposit unless required by local law.
  E. If the security deposit is held by Owner, Tenant agrees not to hold Broker responsible for its return. If the security deposit is held in Owner's Broker's trust account and Broker's authority is terminated before expiration of this Agreement, and security deposit is released to someone other than Tenant, then Broker shall notify Tenant, in writing, where and to whom the security deposit has been released. Once Tenant has been provided such notice, Tenant agrees not to hold Broker responsible for the security deposit.

**5. MOVE-IN COSTS RECEIVED/DUE:** Move-in funds made payable to _____ shall be paid by ☐ personal check, ☐ money order, or ☐ cashier's check.

| Category | Total Due | Payment Received | Balance Due | Date Due |
|---|---|---|---|---|
| Rent from _08/03/2015_ to _09/03/2015_ (date) | | $7,200.00 | $(7,200.00) | |
| *Security Deposit | $5,000.00 | | $5,000.00 | |
| Other | | | | |
| Other | | | | |
| Total | $5,000.00 | $7,200.00 | $(2,200.00) | |

*The maximum amount Landlord may receive as security deposit, however designated, cannot exceed two months' Rent for unfurnished premises, or three months' Rent for furnished premises.

Tenant's Initials ( _V.M._ ) ( _____ )     Landlord's Initials ( _A. H._ ) ( _____ )

© 2015, California Association of REALTORS®, Inc.

LR REVISED 12/15 (PAGE 1 OF 6)
**RESIDENTIAL LEASE OR MONTH-TO-MONTH RENTAL AGREEMENT (LR PAGE 1 OF 6)**

Realty Executives 14049 Victory Blvd #100 Van Nuys, CA 91411     Phone: 818-705-6325     Fax: 818-761-7276     Untitled
Sashen Bardradian     Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

Premises: *4705 Excelente Dr, Woodland Hills,  91364*                                      Date: *August 2, 2015*

**6.  LATE CHARGE; RETURNED CHECKS:**
  A.  Tenant acknowledges either late payment of Rent or issuance of a returned check may cause Landlord to incur costs and expenses, the exact amounts of which are extremely difficult and impractical to determine. These costs may include, but are not limited to, processing, enforcement and accounting expenses, and late charges imposed on Landlord. If any installment of Rent due from Tenant is not received by Landlord within 5
    (or _____ ) calendar days after the date due, or if a check is returned, Tenant shall pay to Landlord, respectively, an additional sum of $ _____ or _____ % of the Rent due as a Late Charge and $25.00 as a NSF fee for the first returned check and $35.00 as a NSF fee for each additional returned check, either or both of which shall be deemed additional Rent.
  B.  Landlord and Tenant agree that these charges represent a fair and reasonable estimate of the costs Landlord may incur by reason of Tenant's late or NSF payment. Any Late Charge or NSF fee due shall be paid with the current installment of Rent. Landlord's acceptance of any Late Charge or NSF fee shall not constitute a waiver as to any default of Tenant. Landlord's right to collect a Late Charge or NSF fee shall not be deemed an extension of the date Rent is due under paragraph 3 or prevent Landlord from exercising any other rights and remedies under this Agreement and as provided by law.

**7.  PARKING: (Check A or B)**
  [X] A.  Parking is permitted as follows: _____
    The right to parking [ ] is [ ] is not included in the Rent charged pursuant to paragraph 3. If not included in the Rent, the parking rental fee shall be an additional $ _____ per month. Parking space(s) are to be used for parking properly licensed and operable motor vehicles, except for trailers, boats, campers, buses or trucks (other than pick-up trucks). Tenant shall park in assigned space(s) only. Parking space(s) are to be kept clean. Vehicles leaking oil, gas or other motor vehicle fluids shall not be parked on the Premises. Mechanical work or storage of inoperable vehicles is not permitted in parking space(s) or elsewhere on the Premises.
  OR [ ] B.  Parking is not permitted on the Premises.

**8.  STORAGE: (Check A or B)**
  [ ] A.  Storage is permitted as follows: _____
    The right to separate storage space [ ] is, [ ] is not, included in the Rent charged pursuant to paragraph 3. If not included in the Rent, storage space fee shall be an additional $ _____ per month. Tenant shall store only personal property Tenant owns, and shall not store property claimed by another or in which another has any right, title or interest. Tenant shall not store any improperly packaged food or perishable goods, flammable materials, explosive, hazardous waste or other inherently dangerous material, or illegal substances.
  OR [ ] B.  Except for Tenant's personal property, contained entirely within the Premises, storage is not permitted on the Premises.

**9.  UTILITIES:** Tenant agrees to pay for all utilities and services, and the following charges: _____ except _____, which shall be paid for by Landlord. If any utilities are not separately metered, Tenant shall pay Tenant's proportional share, as reasonably determined and directed by Landlord. If utilities are separately metered, Tenant shall place utilities in Tenant's name as of the Commencement Date. Landlord is only responsible for installing and maintaining one usable telephone jack and one telephone line to the Premises. Tenant shall pay any cost for conversion from existing utilities service provider.

**10.  CONDITION OF PREMISES:** Tenant has examined Premises and, if any, all furniture, furnishings, appliances, landscaping and fixtures, including smoke detector(s).
  **(Check all that apply:)**
  [ ] A.  Tenant acknowledges these items are clean and in operable condition, with the following exceptions: _____
    _____
  [ ] B.  Tenant's acknowledgment of the condition of these items is contained in an attached statement of condition (C.A.R. Form MIMO).
  [ ] C.  (i) Landlord will Deliver to Tenant a statement of condition (C.A.R. Form MIMO) [ ] within 3 days after execution of this Agreement, [ ] prior to the Commencement Date, [ ] within 3 days after the Commencement Date.
    (ii) Tenant shall complete and return the MIMO to Landlord within 3 (or _____ ) days after Delivery. Tenant's failure to return the MIMO within that time shall conclusively be deemed Tenant's Acknowledgement of the condition as stated in the MIMO.
  [ ] D.  Tenant will provide Landlord a list of items that are damaged or not in operable condition within 3 (or _____ ) days after Commencement Date, not as a contingency of this Agreement but rather as an acknowledgement of the condition of the Premises.
  [ ] E.  Other: _____

**11.  MAINTENANCE USE AND REPORTING:**
  A.  Tenant shall properly use, operate and safeguard Premises, including, if applicable, any landscaping, furniture, furnishings and appliances, and all mechanical, electrical, gas and plumbing fixtures, carbon monoxide devices and smoke alarms, and keep them and the Premises clean, sanitary and well ventilated. Tenant shall be responsible for checking and maintaining all carbon monoxide detectors and any additional phone lines beyond the one line and jack that Landlord shall provide and maintain. Tenant shall immediately notify Landlord, in writing, of any problem, malfunction or damage with any item including carbon monoxide devices and smoke alarms on the property. Tenant shall be charged for all repairs or replacements caused by Tenant, pets, guests or licensees of Tenant, excluding ordinary wear and tear. Tenant will be charged for all damage to Premises as a result of failure to report a problem in a timely manner. Tenant shall be charged for repair of drain blockages or stoppages, unless caused by defective plumbing parts or tree roots invading sewer lines.
  B.  [ ] Landlord [X] Tenant shall water the garden, landscaping, trees and shrubs, except: _____
    _____
  C.  [ ] Landlord [X] Tenant shall maintain the garden, landscaping, trees and shrubs, except: _____
    _____
  D.  [ ] Landlord [X] Tenant shall maintain _____
  E.  Landlord and Tenant agree that State or local water use restrictions shall supersede any obligation of Landlord or Tenant to water or maintain any garden, landscaping, trees or shrubs pursuant to 11B, 11C, and 11D.
  F.  Tenant's failure to maintain any item for which Tenant is responsible shall give Landlord the right to hire someone to perform such maintenance and charge Tenant to cover the cost of such maintenance.
  G.  The following items of personal property are included in the Premises without warranty and Landlord will not maintain, repair or replace them: _____

Tenant's Initials ( √M ) ( _____ )                          Landlord's Initials ( AH ) ( _____ )



LR REVISED 12/15 (PAGE 2 OF 6)
**RESIDENTIAL LEASE OR MONTH-TO-MONTH RENTAL AGREEMENT (LR PAGE 2 OF 6)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.ziplogix.com

Premises: *4705 Excelente Dr, Woodland Hills   91364*                          Date: *August 2, 2015*

**12. NEIGHBORHOOD CONDITIONS:** Tenant is advised to satisfy him or herself as to neighborhood or area conditions, including schools, proximity and adequacy of law enforcement, crime statistics, proximity of registered felons or offenders, fire protection, other governmental services, availability, adequacy and cost of any wired, wireless internet connections or other telecommunications or other technology services and installations, proximity to commercial, industrial or agricultural activities, existing and proposed transportation, construction and development that may affect noise, view, or traffic, airport noise, noise or odor from any source, wild and domestic animals, other nuisances, hazards, or circumstances, cemeteries, facilities and condition of common areas, conditions and influences of significance to certain cultures and religions, and personal needs, requirements and preferences of Tenant.

**13. PETS:** Unless otherwise provided in California Civil Code §54.2, no animal or pet shall be kept on or about the Premises without Landlord's prior written consent, □ except as provided for in the attached Pet Addendum (C.A.R. Form PET).

**14.** □ (If checked) **NO SMOKING:** No smoking of any substance is allowed on the Premises or common areas. If smoking does occur on the Premises or common areas, (i) Tenant is responsible for all damage caused by the smoking including, but not limited to stains, burns, odors and removal of debris; (ii) Tenant is in breach of this Agreement; (iii) Tenant, guests, and all others may be required to leave the Premises; and (iv) Tenant acknowledges that in order to remove odor caused by smoking, Landlord may need to replace carpet and drapes and paint the entire premises regardless of when these items were last cleaned, replaced, or repainted. Such actions and other necessary steps will impact the return of any security deposit. The Premises or common areas may be subject to a local non-smoking ordinance.

**15. RULES/REGULATIONS:**
A. Tenant agrees to comply with all Landlord rules and regulations that are at any time posted on the Premises or delivered to Tenant. Tenant shall not, and shall ensure that guests and licensees of Tenant shall not, disturb, annoy, endanger or interfere with other tenants of the building or neighbors, or use the Premises for any unlawful purposes, including, but not limited to, using, manufacturing, selling, storing or transporting illicit drugs or other contraband, or violate any law or ordinance, or commit a waste or nuisance on or about the Premises.
B. □ (If applicable, check one)
   □ 1. Landlord shall provide Tenant with a copy of the rules and regulations within _____ days or _____
OR □ 2. Tenant has been provided with, and acknowledges receipt of, a copy of the rules and regulations.

**16.** □ (If checked) **CONDOMINIUM; PLANNED UNIT DEVELOPMENT:**
A. The Premises are a unit in a condominium, planned unit development, common interest subdivision or other development governed by a homeowners' association ("HOA"). The name of the HOA is _____. Tenant agrees to comply with all HOA covenants, conditions and restrictions, bylaws, rules and regulations and decisions ("HOA Rules"). Landlord shall provide Tenant copies of HOA Rules, if any. Tenant shall reimburse Landlord for any fines or charges imposed by HOA or other authorities, due to any violation by Tenant, or the guests or licensees of Tenant.
B. (Check one)
   □ 1. Landlord shall provide Tenant with a copy of the HOA Rules within _____ days
   or
OR □ 2. Tenant has been provided with, and acknowledges receipt of, a copy of the HOA Rules.

**17. ALTERATIONS; REPAIRS:** Unless otherwise specified by law or paragraph 29C, without Landlord's prior written consent, (i) Tenant shall not make any repairs, alterations or improvements in or about the Premises including: painting, wallpapering, adding or changing locks, installing antenna or satellite dish(es), placing signs, displays of exhibits, or using screws, fastening devices, large nails or adhesive materials; (ii) Landlord shall not be responsible for the costs of alterations or repairs made by Tenant; (iii) Tenant shall not deduct from Rent the costs of any repairs, alterations or improvements; and (iv) any deduction made by Tenant shall be considered unpaid Rent.

**18. KEYS; LOCKS:**
A. □ Tenant acknowledges receipt of (or Tenant will receive □ prior to the Commencement Date, or □ _____):
   □ ____ key(s) to Premises,                              □ ____ remote control device(s) for garage door/gate opener(s),
   □ ____ key(s) to mailbox,
   □ ____ key(s) to common area(s),
B. Tenant acknowledges that locks to the Premises □ have, □ have not, been re-keyed.
C. If Tenant re-keys existing locks or opening devices, Tenant shall immediately deliver copies of all keys to Landlord. Tenant shall pay all costs and charges related to loss of any keys or opening devices. Tenant may not remove locks, even if installed by Tenant.

**19. ENTRY:**
A. Tenant shall make Premises available to Landlord or Landlord's representative for the purpose of entering to make necessary or agreed repairs, (including, but not limited to, installing, repairing, testing, and maintaining smoke detectors and carbon monoxide devices, and bracing, anchoring or strapping water heaters), decorations, alterations, or improvements, or to supply necessary or agreed services, or to show Premises to prospective or actual purchasers, tenants, mortgagees, lenders, appraisers, or contractors.
B. Landlord and Tenant agree that 24-hour written notice shall be reasonable and sufficient notice, except as follows: (1) 48-hour written notice is required to conduct an inspection of the Premises prior to the Tenant moving out, unless the Tenant waives the right to such notice. (2) If Landlord has in writing informed Tenant that the Premises are for sale and that Tenant will be notified orally to show the premises (C.A.R. Form NSE), then, for the next 120 days following the delivery of the NSE, notice may be given orally to show the Premises to actual or prospective purchasers. (3) No written notice is required if Landlord and Tenant orally agree to an entry for agreed services or repairs if the date and time of entry are within one week of the oral agreement. (4) No notice is required: (i) to enter in case of an emergency; (ii) if the Tenant is present and consents at the time of entry; or (iii) if the Tenant has abandoned or surrendered the Premises.
C. □ (If checked) Tenant authorizes the use of a keysafe/lockbox to allow entry into the Premises and agrees to sign a keysafe/lockbox addendum (C.A.R. Form KLA).

**20. SIGNS:** Tenant authorizes Landlord to place FOR SALE/LEASE signs on the Premises.

**21. ASSIGNMENT; SUBLETTING:** Tenant shall not sublet all or any part of Premises, or assign or transfer this Agreement or any interest in it, without Landlord's prior written consent. Unless such consent is obtained, any assignment, transfer or subletting of Premises or this Agreement or tenancy, by voluntary act of Tenant, operation of law or otherwise, shall, at the option of Landlord, terminate this Agreement. Any proposed assignee, transferee or sublessee shall submit to Landlord an application and credit information for Landlord's approval and, if approved, sign a separate written agreement with Landlord and Tenant. Landlord's consent to any one assignment, transfer or sublease, shall not be construed as consent to any subsequent assignment, transfer or sublease and does not release Tenant or Tenant's obligations under this Agreement.

Tenant's Initials ( *VM* ) ( _____ )                     Landlord's Initials ( *A.H* ) ( _____ )

LR REVISED 12/15 (PAGE 3 OF 6)

**RESIDENTIAL LEASE OR MONTH-TO-MONTH RENTAL AGREEMENT (LR PAGE 3 OF 6)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com                 Untitled

Premises: _4705 Excelente Dr. Woodland Hills_, _91364_                                    Date: _August 2, 2015_

22. **JOINT AND INDIVIDUAL OBLIGATIONS:** If there is more than one Tenant, each one shall be individually and completely responsible for the performance of all obligations of Tenant under this Agreement, jointly with every other Tenant, and individually, whether or not in possession.

23. ☐ **LEAD-BASED PAINT (if checked):** Premises were constructed prior to 1978. In accordance with federal law, Landlord gives and Tenant acknowledges receipt of the disclosures on the attached form (C.A.R. Form FLD) and a federally approved lead pamphlet.

24. ☐ **MILITARY ORDNANCE DISCLOSURE:** (If applicable and known to Landlord) Premises are located within one mile of an area once used for military training, and may contain potentially explosive munitions.

25. ☐ **PERIODIC PEST CONTROL:** Landlord has entered into a contract for periodic pest control treatment of the Premises and shall give Tenant a copy of the notice originally given to Landlord by the pest control company.

26. ☐ **METHAMPHETAMINE CONTAMINATION:** Prior to signing this Agreement, Landlord has given Tenant a notice that a health official has issued an order prohibiting occupancy of the property because of methamphetamine contamination. A copy of the notice and order are attached.

27. **MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at www.meganslaw.ca.gov. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Landlord nor Brokers, if any, are required to check this website. If Tenant wants further information, Tenant should obtain information directly from this website.)

28. **POSSESSION:**

A. Tenant is not in possession of the Premises. If Landlord is unable to deliver possession of Premises on Commencement Date, such Date shall be extended to the date on which possession is made available to Tenant. If Landlord is unable to deliver possession within 5 (or ☐ _____) calendar days after agreed Commencement Date, Tenant may terminate this Agreement by giving written notice to Landlord, and shall be refunded all Rent and security deposit paid. Possession is deemed terminated when Tenant has returned all keys to the Premises to Landlord.

B. ☐ Tenant is already in possession of the Premises.

29. **TENANT'S OBLIGATIONS UPON VACATING PREMISES:**

A. Upon termination of this Agreement, Tenant shall: (i) give Landlord all copies of all keys or opening devices to Premises, including any common areas; (ii) vacate and surrender Premises to Landlord, empty of all persons; (iii) vacate any/all parking and/or storage space; (iv) clean and deliver Premises, as specified in paragraph C below, to Landlord in the same condition as referenced in paragraph 10; (v) remove all debris; (vi) give written notice to Landlord of Tenant's forwarding address; and (vii)

B. All alterations/improvements made by or caused to be made by Tenant, with or without Landlord's consent, become the property of Landlord upon termination. Landlord may charge Tenant for restoration of the Premises to the condition it was in prior to any alterations/improvements.

C. Right to Pre-Move-Out Inspection and Repairs: (i) After giving or receiving notice of termination of a tenancy (C.A.R. Form NTT), or before the end of a lease, Tenant has the right to request that an inspection of the Premises take place prior to termination of the lease or rental (C.A.R. Form NRI). If Tenant requests such an inspection, Tenant shall be given an opportunity to remedy identified deficiencies prior to termination, consistent with the terms of this Agreement. (ii) Any repairs or alterations made to the Premises as a result of this inspection (collectively, "Repairs") shall be made at Tenant's expense. Repairs may be performed by Tenant or through others, who have adequate insurance and licenses and are approved by Landlord. The work shall comply with applicable law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. (iii) Tenant shall: (a) obtain receipts for Repairs performed by others; (b) prepare a written statement indicating the Repairs performed by Tenant and the date of such Repairs; and (c) provide copies of receipts and statements to Landlord prior to termination. Paragraph 29C does not apply when the tenancy is terminated pursuant to California Code of Civil Procedure § 1161(2), (3) or (4).

30. **BREACH OF CONTRACT; EARLY TERMINATION:** In addition to any obligations established by paragraph 29, in the event of termination by Tenant prior to completion of the original term of the Agreement, Tenant shall also be responsible for lost Rent, rental commissions, advertising expenses and painting costs necessary to ready Premises for re-rental. Landlord may withhold any such amounts from Tenant's security deposit.

31. **TEMPORARY RELOCATION:** Subject to local law, Tenant agrees, upon demand of Landlord, to temporarily vacate Premises for a reasonable period, to allow for fumigation (or other methods) to control wood destroying pests or organisms, or other repairs to Premises. Tenant agrees to comply with all instructions and requirements necessary to prepare Premises to accommodate pest control, fumigation or other work, including bagging or storage of food and medicine, and removal of perishables and valuables. Tenant shall only be entitled to a credit of Rent equal to the per diem Rent for the period of time Tenant is required to vacate Premises.

32. **DAMAGE TO PREMISES:** If, by no fault of Tenant, Premises are totally or partially damaged or destroyed by fire, earthquake, accident or other casualty that render Premises totally or partially uninhabitable, either Landlord or Tenant may terminate this Agreement by giving the other written notice. Rent shall be abated as of the date Premises become totally or partially uninhabitable. The abated amount shall be the current monthly Rent prorated on a 30-day period. If the Agreement is not terminated, Landlord shall promptly repair the damage, and Rent shall be reduced based on the extent to which the damage interferes with Tenant's reasonable use of Premises. If damage occurs as a result of an act of Tenant or Tenant's guests, only Landlord shall have the right of termination, and no reduction in Rent shall be made.

33. **INSURANCE:** Tenant's or guest's personal property and vehicles are not insured by Landlord, manager or, if applicable, HOA, against loss or damage due to fire, theft, vandalism, rain, water, criminal or negligent acts of others, or any other cause. Tenant is advised to carry Tenant's own insurance (renter's insurance) to protect Tenant from any such loss or damage. Tenant shall comply with any requirement imposed on Tenant by Landlord's insurer to avoid: (i) an increase in Landlord's insurance premium (or Tenant shall pay for the increase in premium); or (ii) loss of insurance.

34. **WATERBEDS/PORTABLE WASHERS:** Tenant shall not use or have waterbeds on the Premises unless: (i) Tenant obtains a valid waterbed insurance policy; (ii) Tenant increases the security deposit in an amount equal to one-half of one month's Rent; and (iii) the bed conforms to the floor load capacity of Premises. Tenant shall not use on the Premises ☐ Portable Dishwasher ☐ Portable Washing Machine.

35. **WAIVER:** The waiver of any breach shall not be construed as a continuing waiver of the same or any subsequent breach.

Tenant's Initials ( _VM_ ) ( _____ )                    Landlord's Initials ( _A.H._ ) ( _____ )

LR REVISED 12/15 (PAGE 4 OF 6)

**RESIDENTIAL LEASE OR MONTH-TO-MONTH RENTAL AGREEMENT (LR PAGE 4 OF 6)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

Premises: _4705 Excelente Dr, Woodland Hills, 91364_                                    Date: _August 2, 2015_

36. **NOTICE:** Notices may be served at the following address, or at any other location subsequently designated:
Landlord: _____    Tenant: _____

37. **TENANT ESTOPPEL CERTIFICATE:** Tenant shall execute and return a tenant estoppel certificate delivered to Tenant by Landlord or Landlord's agent within 3 days after its receipt. Failure to comply with this requirement shall be deemed Tenant's acknowledgment that the tenant estoppel certificate is true and correct, and may be relied upon by a lender or purchaser.

38. **REPRESENTATION**
   A. **TENANT REPRESENTATION; OBLIGATIONS REGARDING OCCUPANTS; CREDIT:** Tenant warrants that all statements in Tenant's rental application are accurate. Landlord requires all occupants 18 years of age or older and all emancipated minors to complete a lease rental application. Tenant acknowledges this requirement and agrees to notify Landlord when any occupant of the Premises reaches the age of 18 or becomes an emancipated minor. Tenant authorizes Landlord and Broker(s) to obtain Tenant's credit report periodically during the tenancy in connection with the modification or enforcement of this Agreement. Landlord may cancel this Agreement: (i) before occupancy begins; (ii) upon disapproval of the credit report(s); or (iii) at any time, upon discovering that information in Tenant's application is false. A negative credit report reflecting on Tenant's record may be submitted to a credit reporting agency if Tenant fails to fulfill the terms of payment and other obligations under this Agreement.
   B. **LANDLORD REPRESENTATIONS:** Landlord warrants that, unless otherwise specified in writing, Landlord is unaware of (i) any recorded Notices of Default affecting the Premises; (ii) any delinquent amounts due under any loan secured by the Premises; and (iii) any bankruptcy proceeding affecting the Premises.

39. **MEDIATION:**
   A. Consistent with paragraphs B and C below, Landlord and Tenant agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to court action. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party commences an action without first attempting to resolve the matter through mediation, or refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action.
   B. The following matters are excluded from mediation: (i) an unlawful detainer action; (ii) the filing or enforcement of a mechanic's lien; and (iii) any matter within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver of the mediation provision.
   C. Landlord and Tenant agree to mediate disputes or claims involving Listing Agent, Leasing Agent or property manager ("Broker"), provided Broker shall have agreed to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to such Broker. Any election by Broker to participate in mediation shall not result in Broker being deemed a party to this Agreement.

40. **ATTORNEY FEES:** In any action or proceeding arising out of this Agreement, the prevailing party between Landlord and Tenant shall be entitled to reasonable attorney fees and costs, collectively not to exceed $1,000 (or $_____), except as provided in paragraph 39A.

41. **C.A.R. FORM:** C.A.R. Form means the specific form referenced or another comparable form agreed to by the parties.

42. **OTHER TERMS AND CONDITIONS; SUPPLEMENTS:** ☐ Interpreter/Translator Agreement (C.A.R. Form ITA);
☐ Keysafe/Lockbox Addendum (C.A.R. Form KLA); ☐ Lead-Based Paint and Lead-Based Paint Hazards Disclosure (C.A.R. Form FLD);
☐ Landlord in Default Addendum (C.A.R. Form LID)

The following ATTACHED supplements are incorporated in this Agreement: _____

43. **TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the parties are incorporated in this Agreement. Its terms are intended by the parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed except in writing. This Agreement is subject to California landlord-tenant law and shall incorporate all changes required by amendment or successors to such law. This Agreement and any supplement, addendum or modification, including any copy, may be signed in two or more counterparts, all of which shall constitute one and the same writing.

44. **AGENCY:**
   A. **CONFIRMATION:** The following agency relationship(s) are hereby confirmed for this transaction:
   Listing Agent: (Print firm name) _____
   is the agent of (check one): ☐ the Landlord exclusively; or ☐ both the Landlord and Tenant.
   Leasing Agent: (Print firm name) _____
   (if not same as Listing Agent) is the agent of (check one): ☐ the Tenant exclusively; or ☐ the Landlord exclusively; or ☐ both the Tenant and Landlord.
   B. **DISCLOSURE:** ☐ (If checked): The term of this lease exceeds one year. A disclosure regarding real estate agency relationships (C.A.R. Form AD) has been provided to Landlord and Tenant, who each acknowledge its receipt.

45. ☐ **TENANT COMPENSATION TO BROKER:** Upon execution of this Agreement, Tenant agrees to pay compensation to Broker as specified in a separate written agreement between Tenant and Broker.

46. ☐ **INTERPRETER/TRANSLATOR:** The terms of this Agreement have been interpreted for Tenant into the following language: _____. Landlord and Tenant acknowledge receipt of the attached interpreter/translator agreement (C.A.R. Form ITA).

Tenant's Initials ( _VM_ )( _____ )                    Landlord's Initials ( _HH_ )( _____ )

LR REVISED 12/16 (PAGE 5 OF 6)
**RESIDENTIAL LEASE OR MONTH-TO-MONTH RENTAL AGREEMENT (LR PAGE 5 OF 6)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com    Untitled

Premises: *4705 Excelente Dr, Woodland Hills, 91364*                    Date: *August 2, 2015*

47. **NOTICE OF RIGHT TO RECEIVE FOREIGN LANGUAGE TRANSLATION OF LEASE/RENTAL AGREEMENTS:** California Civil Code requires a landlord or property manager to provide a tenant with a foreign language translation copy of a lease or rental agreement. If the agreement was negotiated primarily in Spanish, Chinese, Korean, Tagalog or Vietnamese. If applicable, every term of the lease/rental needs to be translated except for, among others, names, dollar amounts and dates written as numerals, and words with no generally accepted non-English translation.

48. **OWNER COMPENSATION TO BROKER:** Upon execution of this Agreement, Owner agrees to pay compensation to Broker as specified in a separate written agreement between Owner and Broker (C.A.R. Form LL or LCA).

49. **RECEIPT:** If specified in paragraph 5, Landlord or Broker, acknowledges receipt of move-in funds.

Landlord and Tenant acknowledge and agree Brokers: (a) do not guarantee the condition of the Premises; (b) cannot verify representations made by others; (c) cannot provide legal or tax advice; (d) will not provide other advice or information that exceeds the knowledge, education or experience required to obtain a real estate license. Furthermore, if Brokers are not also acting as Landlord in this Agreement, Brokers: (e) do not decide what rental rate a Tenant should pay or Landlord should accept; and (f) do not decide upon the length or other terms of tenancy. Landlord and Tenant agree that they will seek legal, tax, insurance and other desired assistance from appropriate professionals.

Tenant agrees to rent the Premises on the above terms and conditions.

Tenant _____ *Virginia Martirossian* Date 08/02/2015
Address _____ City _____ State _____ Zip _____
Telephone _____ Fax _____ E-mail _____
Tenant _____ Date _____
Address _____ City _____ State _____ Zip _____
Telephone _____ Fax _____ E-mail _____

☐ **GUARANTEE:** In consideration of the execution of this Agreement by and between Landlord and Tenant and for valuable consideration, receipt of which is hereby acknowledged, the undersigned ("Guarantor") does hereby: (i) guarantee unconditionally to Landlord and Landlord's agents, successors and assigns, the prompt payment of Rent or other sums that become due pursuant to this Agreement, including any and all court costs and attorney fees included in enforcing the Agreement; (ii) consent to any changes, modifications or alterations of any term in this Agreement agreed to by Landlord and Tenant; and (iii) waive any right to require Landlord and/or Landlord's agents to proceed against Tenant for any default occurring under this Agreement before seeking to enforce this Guarantee.

Guarantor (Print Name) _____
Guarantor _____ Date _____
Address _____ City _____ State _____ Zip _____
Telephone _____ Fax _____ E-mail _____

Landlord agrees to rent the Premises on the above terms and conditions.

Landlord _____ Date _____ Landlord _____ Date 08/02/2015
   *Arshit Harutyunyan*
Address _____
Telephone _____ Fax _____ E-mail _____

**REAL ESTATE BROKERS:**
A. Real estate brokers who are not also Landlord under this Agreement are not parties to the Agreement between Landlord and Tenant.
B. Agency relationships are confirmed in paragraph 44.
C. **COOPERATING BROKER COMPENSATION:** Listing Broker agrees to pay Cooperating Broker (Leasing Firm) and Cooperating Broker agrees to accept: (i) the amount specified in the MLS, provided Cooperating Broker is a Participant of the MLS in which the Property is offered for sale or lease or a reciprocal MLS; or (ii) ☐ (if checked) the amount specified in a separate written agreement between Listing Broker and Cooperating Broker.

Real Estate Broker (Listing Firm) _____ CalBRE Lic. # _____
By (Agent) _____ CalBRE Lic. # _____ Date _____
Address _____ City _____ State _____ Zip _____
Telephone _____ Fax _____ E-mail _____
Real Estate Broker (Leasing Firm) _____ CalBRE Lic. # _____
By (Agent) _____ CalBRE Lic. # _____ Date _____
Address _____ City _____ State _____ Zip _____
Telephone _____ Fax _____ E-mail _____

© 2015, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

**LR REVISED 12/15 (PAGE 6 OF 6)**
**RESIDENTIAL LEASE OR MONTH-TO-MONTH RENTAL AGREEMENT (LR PAGE 6 OF 6)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

# SUBSTITUTE SECURED PROPERTY TAX BILL

### JULY 1, 2015 TO JUNE 30, 2016

CRT: V@10
V@10

LOS ANGELES COUNTY TAX COLLECTOR
225 North Hill Street, Los Angeles, CA 90012
FOR ASSISTANCE CALL 1(213) 974-2111 OR 1(888) 807-2111, ON THE WEB at lacountypropertytax.com

2076 009 031
HARUTYUNYAN, ANAHIT
4705 EXCELENTE DR
WOODLAND HILLS CA 91364-4008

ELECTRONIC FUND TRANSFER NUMBER
ID#:19 2076 009 031 8 YR:15 SEQ:0003

SITUS ADDRESS:
4705 EXCELENTE DR
LOS ANGELES CA 91364-4008

| ASSESSOR'S I.D. NO. | | | | | 1ST INSTALLMENT 10% Penalty After | 2ND INSTALLMENT 10% Penalty + $10.00 Cost After | TOTAL TAX |
|---|---|---|---|---|---|---|---|
| Map Book | Page | Parcel | Year | Seq. No. | | | |
| 2076 | 009 | 031 | 15 | 000 | 12 10 15 | 04 10 16 | |
| TAX | | | | | 8172 69 | 8172 67 | 16345 36 |
| PENALTY | | | | | | | |
| TOTAL | | | | | | | |
| NET PD/REF | | | | | | | |
| DUE | | | | | | | |

| ROLL YEAR | CURRENT ASSESSED VALUE | PRIOR ASSESSED VALUE | TAXABLE VALUE |
|---|---|---|---|
| LAND | 701820 | | 701820 |
| IMPROVEMENTS | 573245 | | 573245 |
| FIXTURES | | | |

ANY RETURNED PAYMENT MAY BE SUBJECT TO A FEE UP TO $50.00.

| | | |
|---|---|---|
| AUTH. NO.: 000153 LC | TOTAL | 1275065 |
| | LESS EXEMPTION | |
| PRINT DATE: 11 12 15 | NET TAXABLE VALUE | 1275065 |

---

ANNUAL

HARUTYUNYAN, ANAHIT
4705 EXCELENTE DR
WOODLAND HILLS CA 91364-4008

000153 LC

PAY THIS
AMOUNT BY: 04 10 16

| USE THESE NUMBERS ON ALL PAYMENTS AND CORRESPONDENCE | | | | | |
|---|---|---|---|---|---|
| ASSESSOR'S I.D. NO. | | | | | Pay Key |
| Map Book | Page | Parcel | Year | Seq. No. | |
| 2076 | 009 | 031 | 15 | 000 | 2 |
| 2ND INSTALLMENT | | | | INDICATE AMOUNT PAID | |
| 8172 67 | | | | | |

53910

If not paid by add penalty and cost 04 10 16
of
to 2nd installm 827 26

for a total of 8999 93

MAKE PAYMENT PAYABLE TO:
Please write the ASSESSOR'S I.D. NO. on the lower left corner of your payment.

LOS ANGELES COUNTY TAX COLLECTOR
P.O. BOX 54018
LOS ANGELES, CA 90054-0018

CRT: V@10
V@10

2   1651500032076009031000081726700008999391020411

## DETACH AND MAIL THIS STUB WITH 2ND INSTALLMENT PAYMENT

---

ANNUAL

HARUTYUNYAN, ANAHIT
4705 EXCELENTE DR
WOODLAND HILLS CA 91364-4008

000153 LC

PAY THIS
AMOUNT BY: 12 10 15

| USE THESE NUMBERS ON ALL PAYMENTS AND CORRESPONDENCE | | | | | |
|---|---|---|---|---|---|
| ASSESSOR'S I.D. NO. | | | | | Pay Key |
| Map Book | Page | Parcel | Year | Seq. No. | |
| 2076 | 009 | 031 | 15 | 000 | |
| 1ST INSTALLMENT | | | | INDICATE AMOUNT PAID | |
| 8172 69 | | | | | |

73912

If not paid by add penalty 12 10 15
of
to 1st installm 817 26

for a total of 8989 95

MAKE PAYMENT PAYABLE TO:
Please write the ASSESSOR'S I.D. NO. on the lower left corner of your payment.

LOS ANGELES COUNTY TAX COLLECTOR
P.O. BOX 54018
LOS ANGELES, CA 90054-0018

CRT: V@10
V@10

1   1571500032076009031000081726900008989591211210

# Exhibit "E"

BENJAMIN A. YRUNGARAY, ESQ., SBN 256224
**DE NOVO LAW FIRM**
5295 Arlington Ave
Riverside, CA 92504
Tel: (951) 801-5570
Fax: (877) 932-6223

Attorneys for Defendant: CITY NATIONAL FINANCE

## UNITED STATES BANKRUPTY COURT -CENTRAL DISTRICT OF CALIFORNIA

### SAN FERNANDO VALLEY

| | |
|---|---|
| In re Shahen Martirosian | Bamkruptcy No. 1:15-bk-111390MB |
| Debtors | Advesary No. 1:16-ap-01091-MB |
| Vazgen Khachatryan, | **RESPONSES TO REQUEST FOR PRODUCTION OF DOCUMENTS (SET ONE)** |
| Plaintiff, | |
| vs. | |
| Shahen Martirosian; CPI Rela Estate Group, Inc. doing business as Realty Executives Premiere Escrow Division; Virginia Martirosian; Anahit Harutyunyan; 4705 Escelente Inc., a California corporation; City National Finance, a business entity form unknown and DOES 1 – 100 inclusive, | |
| Defendants. | |

**RESPONDING PARTY:** **VAZGEN KHACHATRYN**

**PROPOUNDING PARTY: CITY NATIONAL FINANCE**

**SET NO:** **ONE**

## PRELIMINARY STATEMENT

Investigation and discovery by the defendant herein is continuing in nature. As discovery proceeds, witnesses, facts and evidence may be discovered which are not set forth herein, but which may have been responsive to an interrogatory. Facts and evidence not known may be imperfectly

1

understood or the relevance or consequences of such facts and evidence may be imperfectly understood and, accordingly, such facts and evidence may, in good faith, not be included in the following responses.

The defendant reserves all rights to refer to, conduct discovery with reference to, or offer into evidence at the time of trial, any and all such witnesses, facts and evidence not withstanding the evidence or reference to such witnesses, facts and evidence in these responses. In addition, this defendant assumes no obligation to voluntarily supplement or amend these responses to reflect witnesses, facts and evidence discovered following the filing of these responses. Finally, because some of these responses may have been ascertained by defendant's attorneys and investigators, defendant may not have personal knowledge of the information from which these responses are derived.

## RESPONSES TO REQUEST FOR PRODUCTION
## OF DOCUMENTS AND TANGIBLE THINGS

**REQUEST FOR PRODUCTION NO. 1:**

Produce the entire loan file for property commonly referred to as 4705 Excelente Drive, Woodland Hills CA 91364.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

Objection, vague, ambiguous, and overbroad. Nevertheless, Responding Party will answer. The entire loan file in Responding Party's possession or control is attached. After a thorough review and research, the attached documents constitute the entire loan file.

**REQUEST FOR PRODUCTION NO. 2:**

Produce any and all loan applications submitted to you to finance property commonly referred to as 4705 Excelente Drive, Woodland Hills CA 91364.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

After a thorough review, Responding Party is unable to locate any documents responsive to this request. Responding Party believes that no such documents exist.

**REQUEST FOR PRODUCTION NO. 3:**

Produce any and all documents between you and Anahit Harutyauanyan between 2014 to present.

1   **RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

2   Objection, vague, ambiguous and overbroad. Nevertheless, and without waiving said objection,

3   Responding Party will respond. Responding Party is in possession of Lender's closing instructions,

4   social security card, driver's license, a Promissory Note in the amount of $600,000, and a Promissory

5   Note in the amount of $108,656.25 and has attached copies.

6   **REQUEST FOR PRODUCTION NO. 4:**

7   Produce any and all documents between you and Shahen Martirosian between 2014 to present.

8   **RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

9   After a thorough review, Responding Party is unable to locate any documents responsive to this

10   request. Responding Party believes that no such documents exist.

11   **REQUEST FOR PRODUCTION NO. 5:**

12   Produce any and all documents between you and Virginia Martirosian between 2014 to present.

13   **RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

14   After a thorough review, Responding Party is unable to locate any documents responsive to this

15   request. Responding Party believes that no such documents exist.

16   **REQUEST FOR PRODUCTION NO. 6:**

17   Produce any and all documents between you and Shahen Martirosian between 2014 to present.

18   **RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

19   After a thorough review, Responding Party is unable to locate any documents responsive to this

20   request. Responding Party believes that no such documents exist.

21   **REQUEST FOR PRODUCTION NO. 7:**

22   Produce any and all documents between you and CPI REAL ESTATE GROUP dba REALTY

23   EXECUTIVES PREMIERE ESCROW DIVISION between 2014 to present.

24   **RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

25   After a thorough review, Responding Party is unable to locate any documents responsive to this

26   request. Responding Party believes that no such documents exist.

27   **REQUEST FOR PRODUCTION NO. 8:**

28

1    Produce any and all documents evidencing communications between you and Anahit Harutyuanyan

2    between 2014 to present.

3    **RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

4    Objection, vague, ambiguous and overbroad.   Nevertheless, and without waiving said objection,

5    Responding Party will respond.  Responding Party is in possession of Lender's closing instructions,

6    social security card, driver's license, a Promissory Note in the amount of $600,000, and a Promissory

7    Note in the amount of $108,656.25 and has attached copies.

8    **REQUEST FOR PRODUCTION NO. 9:**

9    Produce any and all documents evidencing communications between you and Shahen Martirosian

10   between 2014 to present.

11   **RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

12   After a thorough review, Responding Party is unable to locate any documents responsive to this

13   request.  Responding Party believes that no such documents exist.

14   **REQUEST FOR PRODUCTION NO. 10:**

15   Produce any and all documents evidencing communications between you and Virginia Martirosian

16   between 2014 to present.

17   **RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

18   After a thorough review, Responding Party is unable to locate any documents responsive to this

19   request.  Responding Party believes that no such documents exist.

20   **REQUEST FOR PRODUCTION NO. 11:**

21   Produce any and all documents evidencing communications between you and Shahen Martirosian

22   between 2014 to present.

23   **RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

24   After a thorough review, Responding Party is unable to locate any documents responsive to this

25   request.  Responding Party believes that no such documents exist.

26   **REQUEST FOR PRODUCTION NO. 12:**

27   Produce any and all documents evidencing communications between you and CPI REAL ESTATE

28   GROUP dba REALTY EXECUTIVES PREIRE ESCROW DIVISION between 2014 to present.

1  **RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

2  After a thorough review, Responding Party is unable to locate any documents responsive to this

3  request. Responding Party believes that no such documents exist.

4  **REQUEST FOR PRODUCTION NO. 13**

5  Produce a copy of YOUR articles of incorporation for submitted to the California Secretary of State.

6  **RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

7  Responding Party has attached a copy of the articles of incorporation filed with the California

8  Secretary of State.

9  **REQUEST FOR PRODUCTION NO. 14:**

10  Produce a copy of your articles of incorporation for submitted to the Nevada Secretary of State.

11  **RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

12  Responding Party has attached a copy of the articles of incorporation filed with the California

13  Secretary of State.

14  **REQUEST FOR PRODUCTION NO. 15:**

15  Produce any and all documents in your file for underwriting or considering the loan for property

16  commonly referred to as 4705 Excelente Drive, Woodland Hills, CA 91364 in the last 24 months

17  including but not limited to credit reports, bank statements, W2, 1099, brokerage account statements

18  for borrower Anahit Harutyuanyan.

19  **RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

20  Responding Party is in possession of Lender's closing instructions, social security card, driver's

21  license, a Promissory Note in the amount of $600,000, and a Promissory Note in the amount of

22  $108,656.25 and has attached copies.

23

24  DATED: December 6, 2016               DE NOVO LAW FIRM

25                                        By: _____

26                                            Benjamin A. Youngaray, Esq.
                                              Attorney for City National Finance

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

RESPONSES TO REQUEST FOR PRODUCTION

# VERIFICATION

I have read the foregoing **RESPONSES TO REQUEST FOR PRODUCTION OF DOCUMENTS – SET ONE**, Riverside Superior Court Case No: 1:15-bk-11139-MB and know its contents.

☒    I am a party to this action.  The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and to those matters I believe them to be true.

☒    I am ☐ an officer ☐ a partner ☒ an authorized representative of a party to this action, and am authorized to make this verification for and on its behalf, and I make this verification for that reason.

☒    I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

☐    The matters stated in the foregoing document are true of my own knowledge except as to those matters that are stated on information and belief, and as to those matters I believe them to be true.

☐    I am one of the attorneys for _____, a party to this action.  Such party is absent from the county of aforesaid where such attorneys have their offices, and I make this verification for and on behalf of that party for that reason.  I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

Executed on December 5, 2016 at Los Angeles, CA.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

_____J. David_____          _____
Type or Print Name                                                      Signature

## PROOF OF SERVICE

### STATE OF CALIFORNIA, COUNTY OF RIVERSIDE
Vazgen Khachatryan v. Shahen Martirosian et. al.
Adv. No.: 1:16-ap-01091-MB

I am employed in the County of Riverside, State of California.  I am over the age of 18 years and not a party to the within action. My business address is DE NOVO LAW FIRM, 5295 Arlington Ave., Riverside, CA 92504.  My email address is: attorney@denovofirm.com.

**ON December 7, 2016, I SERVED THE FOREGOING DOCUMENT DESCRIBED AS RESPONSES TO REQUEST FOR PRODUCTION DOCUMENTS** on all interested parties in this action as follows:

☒    by placing the original and/or a true copy thereof enclosed in (a) sealed envelope(s), addressed as follows:

SEE ATTACHED MAILING LIST

☒    **BY REGULAR MAIL:** I deposited such envelope in the mail for pick up by the U.S. P Service in Riverside, California.   The envelope was mailed with postage thereon prepaid.
I am "readily familiar" with the firm's practice of collection and processing correspond for mailing.  It is deposited with the U.S. Postal Service on that same day in the ordi course of business.  I am aware that on motion of the party served, service is presumed in if postal cancellation date or postage meter date is more than one (1) day after date of de for mailing in affidavit.

☐    **BY FACSIMILE MACHINE:**  I transmitted a true copy of said document(s) by facsi machine, and no error was reported.  Said fax transmission(s) were directed as indicate the service list.

☐    **BY OVERNIGHT MAIL:** I deposited such documents at the ☐ UPS  ☐Federal Expre: ☒ USPS  ☐ _____Drop Box located at _____
The envelope was deposited with delivery fees thereon fully prepaid.

☐    **BY PERSONAL SERVICE:**  I caused such envelope(s) to be delivered by hand to the a addressee(s).

☒    (Federal)  I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made.  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on **December 7, 2016** at Riverside, California.

Benjamin Yrungaray

1

2   Alana B. Anaya
    Anaya Law Group
3   2629 Townsgate Road, Suite 140
    Westlake Village, CA 91361
4

5   Jilbert Tahmazian
    Law Offices of Jilbert Tahmazian
6   1518 West Glenoaks Blvd.
    Glendale, CA 91201
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1 | BENJAMIN A. YRUNGARAY, ESQ., SBN 256224
**DE NOVO LAW FIRM**
2 | 5295 Arlington Ave
Riverside, CA 92504
3 | Tel: (951) 801-5570
Fax: (877) 932-6223

4

5 | Attorneys for Defendant: CITY NATIONAL FINANCE

6

7 | UNITED STATES BANKRUPTY COURT -CENTRAL DISTRICT OF CALIFORNIA

8 | SAN FERNANDO VALLEY

9 | In re Shahen Martirosian                    | Bamkruptcy No. 1:15-bk-111390MB

10 | Debtors                                      | Advesary No. 1:16-ap-01091-MB

11 | Vazgen Khachatryan,                          | **SUPPLEMENTAL RESPONSE TO**
                                                 | **REQUEST FOR PRODUCTION OF**
12 | Plaintiff,                                   | **DOCUMENTS**
                                                 | **(SET ONE)**
    vs.
13
    Shahen Martirosian; CPI Rela Estate Group,
14 | Inc. doing business as Realty Executives
    Premiere Escrow Division; Virginia
15 | Martirosian; Anahit Harutyunyan; 4705
    Escelente Inc., a California corporation; City
16 | National Finance, a business entity form
    unknown and DOES 1 – 100 inclusive,
17
                    Defendants.
18

19

20

21 | RESPONDING PARTY:    VAZGEN KHACHATRYN

22 | PROPOUNDING PARTY:  CITY NATIONAL FINANCE

23 | SET NO:               ONE

24

25 | **PRELIMINARY STATEMENT**

26 |     Investigation and discovery by the defendant herein is continuing in nature.  As discovery

27 | proceeds, witnesses, facts and evidence may be discovered which are not set forth herein, but which

28 | may have been responsive to an interrogatory.  Facts and evidence not known may be imperfectly

1

RESPONSES TO REQUEST FOR PRODUCTION

1  understood or the relevance or consequences of such facts and evidence may be imperfectly

2  understood and, accordingly, such facts and evidence may, in good faith, not be included in the

3  following responses.

4  The defendant reserves all rights to refer to, conduct discovery with reference to, or offer into evidence

5  at the time of trial, any and all such witnesses, facts and evidence not withstanding the evidence or

6  reference to such witnesses, facts and evidence in these responses.  In addition, this defendant assumes

7  no obligation to voluntarily supplement or amend these responses to reflect witnesses, facts and

8  evidence discovered following the filing of these responses.  Finally, because some of these responses

9  may have been ascertained by defendant's attorneys and investigators, defendant may not have

10  personal knowledge of the information from which these responses are derived.

11  ## SUPPLEMENTAL RESPONSES TO REQUEST FOR PRODUCTION

12  ## OF DOCUMENTS AND TANGIBLE THINGS

13

14  **REQUEST FOR PRODUCTION NO. 2:**

15  Produce any and all loan applications submitted to you to finance property commonly referred to as

16  4705 Excelente Drive, Woodland Hills CA 91364.

17  **RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

18  Responding Party is in possession of a loan application and the application is attached hereto.

19

20  DATED: December 6, 2016                    DE NOVO LAW FIRM

21                                                                      By: _____

22                                                                            Benjamin A. Yrungaray, Esq.
                                                                               Attorney for City National Finance

23

24

25

26

27

28

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF RIVERSIDE
Vazgen Khachatryan v. Shahen Martirosian et. al.
Adv. No.: 1:16-ap-01091-MB

I am employed in the County of Riverside, State of California. I am over the age of 18 years and not a party to the within action. My business address is DE NOVO LAW FIRM, 5295 Arlington Ave., Riverside, CA 92504. My email address is: attorney@denovofirm.com.

ON December 14, 2016, I SERVED THE FOREGOING DOCUMENT DESCRIBED AS SUPPLEMENTAL RESPONSES TO REQUEST FOR PRODUCTION DOCUMENTS on all interested parties in this action as follows:

☒     by placing the original and/or a true copy thereof enclosed in (a) sealed envelope(s), addressed as follows:

SEE ATTACHED MAILING LIST

☒     **BY REGULAR MAIL:** I deposited such envelope in the mail for pick up by the U.S. P Service in Riverside, California. The envelope was mailed with postage thereon prepaid.
I am "readily familiar" with the firm's practice of collection and processing correspond for mailing. It is deposited with the U.S. Postal Service on that same day in the ordi course of business. I am aware that on motion of the party served, service is presumed in if postal cancellation date or postage meter date is more than one (1) day after date of de for mailing in affidavit.

☐     **BY FACSIMILE MACHINE:** I transmitted a true copy of said document(s) by facsi machine, and no error was reported. Said fax transmission(s) were directed as indicate the service list.

☐     **BY OVERNIGHT MAIL:** I deposited such documents at the ☐ UPS ☐Federal Expre: ☒ USPS ☐ _____ Drop Box located at _____
The envelope was deposited with delivery fees thereon fully prepaid.

☐     **BY PERSONAL SERVICE:** I caused such envelope(s) to be delivered by hand to the a addressee(s).

☒     (Federal)  I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on **December 14, 2016** at Riverside, California.

Benjamin Yrungaray

Proof of Service

1

2    Alana B. Anaya
     Anaya Law Group
3    2629 Townsgate Road, Suite 140
     Westlake Village, CA 91361
4
5    Jilbert Tahmazian
     Law Offices of Jilbert Tahmazian
6    1518 West Glenoaks Blvd.
     Glendale, CA 91201
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                              Proof of Service

# Uniform Residential Loan Application

# Exhibit "F"

# Wells Fargo Combined Statement of Accounts



Primary account number:  51 ▫ November 1, 2015 - November 30, 2015 ▫ Page 1 of 7

**REDACTED INFORMATION FALLS OUTSIDE THE SCOPE OF THE ORDER**

4705 EXCELENTE, INC
4705 EXCELENTE DR
WOODLAND HILLS CA 91364-4008

## Questions?

*Available by phone 24 hours a day, 7 days a week:*
Telecommunications Relay Services calls accepted
**1-800-CALL-WELLS** (1-800-225-5935)

*TTY:* 1-800-877-4833
*En español:* 1-877-337-7454

*Online:* wellsfargo.com/biz

*Write:* Wells Fargo Bank, N.A. (114)
P.O. Box 6995
Portland, OR 97228-6995

## Your Business and Wells Fargo

Cash flow is one of the most critical components of success for a small or
mid-sized business. Achieving a positive cash flow does not come by chance.
Learn more about managing cash flow by visiting wellsfargoworks.com.

## Account options

*A check mark in the box indicates you have these convenient
services with your account(s). Go to wellsfargo.com/biz or
call the number above if you have questions or if you would
like to add new services.*

| | |
|---|---|
| Business Online Banking | ☐ |
| Online Statements | ☐ |
| Business Bill Pay | ☐ |
| Business Spending Report | ☐ |
| Overdraft Protection | ☐ |

## Summary of accounts

### Checking/Prepaid and Savings

| Account | Page | Account number | Ending balance last statement | Ending balance this statement |
|---|---|---|---|---|
| Wells Fargo Business Choice Checking | 2 | 51 | 2,781.58 | 3,025.34 |
| Business Market Rate Savings | 4 | 9048 | -4.00 | -10.00 |

Primary account number:  8711811151  ☒ November 1, 2015 - November 30, 2015  ■ Page 2 of 7



# Wells Fargo Business Choice Checking

## Activity summary

| | |
|---|---|
| Beginning balance on 11/1 | $2,781.58 |
| Deposits/Credits | 3,100.00 |
| Withdrawals/Debits | - 2,856.24 |
| Ending balance on 11/30 | **$3,025.34** |
| Average ledger balance this period | $205.96 |

Account number: ▮▮▮▮1

4705 EXCELENTE, INC

*California account terms and conditions apply*

For Direct Deposit use
Routing Number (RTN): 121042882

For Wire Transfers use
Routing Number (RTN): 121000248

### Overdraft Protection

This account is not currently covered by Overdraft Protection. If you would like more information regarding Overdraft Protection and eligibility requirements please call the number listed on your statement or visit your Wells Fargo store.

## Transaction history

| Date | Check Number | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|---|---|---|---|---|---|
| 11/2 | | Purchase authorized on 10/30 Mb Fin Svcs 800-654-6222 MI S465302594939543 Card 5879 | | 2,680.74 | 100.84 |
| 11/3 | | Non-WF ATM Withdrawal authorized on 11/02 777 San Manuel 60344Casml Highland Ab 003053072572897793 ATM ID Casmix28 Card 5879 | | 104.00 | |
| 11/3 | | Non-Wells Fargo ATM Transaction Fee | | 2.50 | -5.66 |
| 11/4 | | Overdraft Fee for a Transaction Posted on 11/03 $104.00 Non-WF ATM Withdrawal authorized on 11/02 777 San Manuel 60344Casml Highland Ab | | 35.00 | -40.66 |
| 11/16 | | Deposit | 100.00 | | 59.34 |
| 11/27 | | Dr-Right of Setoff to Dep Acct Ending IN 0690 | | 20.00 | 39.34 |
| 11/30 | | Edeposit IN Branch/Store 11/30/15 03:04:56 Pm 23325 Mulholland Dr Woodland Hills CA 5879 | 3,000.00 | | |
| 11/30 | | Monthly Service Fee | | 14.00 | 3,025.34 |
| **Ending balance on 11/30** | | | | | **3,025.34** |
| **Totals** | | | **$3,100.00** | **$2,856.24** | |

*The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed.*

## Monthly service fee summary

For a complete list of fees and detailed account information, please see the Wells Fargo Fee and Information Schedule and Account Agreement applicable to your account or talk to a banker. Go to wellsfargo.com/feefaq to find answers to common questions about the monthly service fee on your account.

| Fee period 11/01/2015 - 11/30/2015 | Standard monthly service fee $14.00 | You paid $14.00 | |
|---|---|---|---|
| How to avoid the monthly service fee | Minimum required | This fee period | |
| Have any **ONE** of the following account requirements | | | |
| · Average ledger balance | $7,500.00 | $205.96 | ☐ |
| · Qualifying transaction from a linked Wells Fargo Business Payroll Services account | 1 | 0 | ☐ |
| · Qualifying transaction from a linked Wells Fargo Merchant Services account | 1 | 0 | ☐ |
| · Total number of posted Wells Fargo Debit Card purchases and/or payments | 10 | 1 | ☐ |
| · Enrollment in a linked Direct Pay service through Wells Fargo Business Online | 1 | 0 | ☐ |
| · Combined balances in linked accounts, which may include | $10,000.00 | | ☐ |

# Wells Fargo Combined Statement of Accounts



Primary account number: ▮▮▮▮51 ▪ October 1, 2015 - October 31, 2015 ▪ Page 1 of **7**

**REDACTED INFORMATION FALLS OUTSIDE THE SCOPE OF THE ORDER**

4705 EXCELENTE, INC
4705 EXCELENTE DR
WOODLAND HILLS CA 91364-4008

## Questions?

*Available by phone 24 hours a day, 7 days a week:*
Telecommunications Relay Services calls accepted
**1-800-CALL-WELLS** (1-800-225-5935)

*TTY:* 1-800-877-4833
*En español:* 1-877-337-7454

*Online:* wellsfargo.com/biz

*Write:* Wells Fargo Bank, N.A. (114)
P.O. Box 6995
Portland, OR 97228-6995

## Your Business and Wells Fargo

The plans you establish today will shape your business far into the future. The
heart of the planning process is your business plan. Take the time now to build a
strong foundation. Find out more at wellsfargoworks.com/business-plan-center.

## Account options

*A check mark in the box indicates you have these convenient
services with your account(s). Go to wellsfargo.com/biz or
call the number above if you have questions or if you would
like to add new services.*

Business Online Banking ☐
Online Statements ☐
Business Bill Pay ☐
Business Spending Report ☐
Overdraft Protection ☐

# Summary of accounts

## Checking/Prepaid and Savings

| Account | Page | Account number | Ending balance last statement | Ending balance this statement |
|---|---|---|---|---|
| Wells Fargo Business Choice Checking | 2 | ▮▮▮▮51 | 3,000.57 | 2,781.58 |
| Business Market Rate Savings | 5 | ▮▮▮▮▮48 | 2.00 | -4.00 |

Primary account number: ████51    ☑ October 1, 2015 - October 31, 2015    ■ Page 2 of 7



# Wells Fargo Business Choice Checking

## Activity summary

| | |
|---|---|
| Beginning balance on 10/1 | $3,000.57 |
| Deposits/Credits | 2,700.00 |
| Withdrawals/Debits | - 2,918.99 |
| **Ending balance on 10/31** | **$2,781.58** |
| | |
| Average ledger balance this period | $486.92 |

Account number: ████1151

4705 EXCELENTE, INC

*California account terms and conditions apply*

For Direct Deposit use
Routing Number (RTN): 121042882

For Wire Transfers use
Routing Number (RTN): 121000248

### Overdraft Protection

This account is not currently covered by Overdraft Protection. If you would like more information regarding Overdraft Protection and eligibility requirements please call the number listed on your statement or visit your Wells Fargo store.

## Transaction history

| Date | Check Number | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|---|---|---|---|---|---|
| 10/1 | | Purchase authorized on 09/30 Mb Fin Svcs 800-654-6222 MI S585272598027317 Card 5879 | | 2,680.74 | 319.83 |
| 10/2 | | Purchase authorized on 10/02 Ulta 3 West Hills CA P00585275854672312 Card 5879 | | 29.40 | 290.43 |
| 10/5 | | Purchase authorized on 10/03 Een Jug Liquor Woodland Hill CA P00465277007853635 Card 5879 | | 126.96 | 163.47 |
| 10/16 | | Purchase authorized on 10/16 Vallarta Supermark Canoga Park CA P00385289698845444 Card 5879 | | 45.56 | |
| 10/16 | | Purchase authorized on 10/16 Victory Produce Canoga Park CA P00000000259236820 Card 5879 | | 36.33 | 81.58 |
| 10/26 | | Deposit | 2,700.00 | | 2,781.58 |
| **Ending balance on 10/31** | | | | | **2,781.58** |
| **Totals** | | | **$2,700.00** | **$2,918.99** | |

*The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed.*

## Monthly service fee summary

For a complete list of fees and detailed account information, please see the Wells Fargo Fee and Information Schedule and Account Agreement applicable to your account or talk to a banker. Go to wellsfargo.com/feefaq to find answers to common questions about the monthly service fee on your account.

| Fee period 10/01/2015 - 10/31/2015 | Standard monthly service fee $14.00 | You paid $0.00 |
|---|---|---|

The fee is waived (or discounted) by the bank for this fee period. For the next fee period you must meet an account requirement to avoid the fee, or receive the discount when applicable.

| How to avoid the monthly service fee Have any **ONE** of the following account requirements | Minimum required | This fee period |
|---|---|---|
| · Average ledger balance | $7,500.00 | $487.00 ☐ |
| · Qualifying transaction from a linked Wells Fargo Business Payroll Services account | 1 | 0 ☐ |
| · Qualifying transaction from a linked Wells Fargo Merchant Services account | 1 | 0 ☐ |
| · Total number of posted Wells Fargo Debit Card purchases and/or payments | 10 | 5 ☐ |
| – Enrollment in a linked Direct Pay service through Wells Fargo Business Online | 1 | 0 ☐ |
| · Combined balances in linked accounts, which may include | $10,000.00 | ☐ |

Primary account number: ███ 151   ☒ October 1, 2015 - October 31, 2015   ☒ Page 3 of 7



## Monthly service fee summary (continued)

How to avoid the monthly service fee

- Average ledger balances in business checking, savings, and time accounts
- Most recent statement balance of Wells Fargo business credit cards, Wells Fargo Business Secured Credit Card, BusinessLine® line of credit, Wells Fargo Small Business Advantage® line of credit , Working Capital Line of Credit, Advancing Term Line of Credit, and BusinessLoan® term loan
- Combined average daily balances from the previous month for Wells Fargo Business PrimeLoan®", Commercial Equity Loan, Commercial Refinance Loan, Commercial Purchase Loan, Commercial Equity Line of Credit, Small Business Advantage® loan, Equipment Express® loan, and Equipment Express® Single Event loan

wxwx

Minimum required          This fee period

## Account transaction fees summary

| Service charge description | Units used | Units included | Excess units | Service charge per excess units ($) | Total service charge ($) |
|---|---|---|---|---|---|
| Cash Deposited ($) | 2,700 | 7,500 | 0 | 0.0030 | 0.00 |
| Transactions | 1 | 200 | 0 | 0.50 | 0.00 |
| **Total service charges** | | | | | **$0.00** |

☐   **Your feedback matters**

Share your compliments and complaints so we can better serve you.

Call us at 1-844-WF1-CARE (1-844-931-2273) or visit wellsfargo.com/feedback.

**Other Wells Fargo Benefits**

**Spread some joy with customizable Wells Fargo Visa® Gift Cards**

**Order early and have your shipping fees waived for bulk orders of 25 cards or more**

Wells Fargo Visa Gift Cards make great holiday gifts for your employees and allow you to:
- Customize the cards with a message or your company name.
- Choose any denomination between $25 and $500.
- Give with confidence, knowing the money never expires.

Get started on your holiday shopping today! Order your gift cards online at wellsfargo.com/giftcard.      Offer valid from October 19,
**2015 through November 20, 2015.**



# IMPORTANT ACCOUNT INFORMATION

Good News! Effective October 22, 2015, you will have quicker access to funds from your check deposits. All or a portion of your check deposits may be immediately available for your use on the day of deposit. You can use those funds to withdraw cash, complete transfers and make debit card transactions.

# Wells Fargo Combined Statement of Accounts



Primary account number: ███ 151 ▪ September 1, 2015 - September 30, 2015 ▪ Page 1 of 7

**REDACTED INFORMATION FALLS OUTSIDE THE SCOPE OF THE ORDER**

4705 EXCELENTE, INC
4705 EXCELENTE DR
WOODLAND HILLS CA 91364-4008

## Questions?

*Available by phone 24 hours a day, 7 days a week:*
Telecommunications Relay Services calls accepted
**1-800-CALL-WELLS** (1-800-225-5935)

*TTY:* 1-800-877-4833
*En español:* 1-877-337-7454

*Online:* wellsfargo.com/biz

*Write:* Wells Fargo Bank, N.A. (114)
P.O. Box 6995
Portland, OR  97228-6995

## Your Business and Wells Fargo

The plans you establish today will shape your business far into the future. The heart of the planning process is your business plan. Take the time now to build a strong foundation. Find out more at wellsfargoworks.com/business-plan-center.

## Account options

*A check mark in the box indicates you have these convenient services with your account(s). Go to wellsfargo.com/biz or call the number above if you have questions or if you would like to add new services.*

| | |
|---|---|
| Business Online Banking | ☐ |
| Online Statements | ☐ |
| Business Bill Pay | ☐ |
| Business Spending Report | ☐ |
| Overdraft Protection | ☐ |

The Wells Fargo Mobile App is now available in Spanish!

You can securely manage your finances virtually anytime, anywhere in Spanish.
Once you have downloaded the latest version of the Wells Fargo Mobile® App from Google Play or the Apple App Store, go to Mobile Settings and set your language preference to Spanish.

## Summary of accounts

### Checking/Prepaid and Savings

| Account | Page | Account number | Ending balance last statement | Ending balance this statement |
|---|---|---|---|---|
| Wells Fargo Business Choice Checking | 2 | ███151 | 260.54 | 3,000.57 |

Primary account number: 151   ☑ September 1, 2015 - September 30, 2015   ■ Page 2 of 7



**REDACTED INFORMATION FALLS OUTSIDE THE SCOPE OF THE ORDER**

*Summary of accounts (continued)*

| Account | Page | Account number | Ending balance last statement | Ending balance this statement |
|---|---|---|---|---|
| Business Market Rate Savings | 5 | ██████8 | -12.00 | 2.00 |

# Wells Fargo Business Choice Checking

## Activity summary

| | |
|---|---|
| Beginning balance on 9/1 | $260.54 |
| Deposits/Credits | 3,340.00 |
| Withdrawals/Debits | - 599.97 |
| **Ending balance on 9/30** | **$3,000.57** |
| Average ledger balance this period | $285.39 |

Account number: ██████151

4705 EXCELENTE, INC

*California account terms and conditions apply*

For Direct Deposit use
Routing Number (RTN): 121042882

For Wire Transfers use
Routing Number (RTN): 121000248

### Overdraft Protection
This account is not currently covered by Overdraft Protection. If you would like more information regarding Overdraft Protection and eligibility requirements please call the number listed on your statement or visit your Wells Fargo store.

## Transaction history

| Date | Check Number | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|---|---|---|---|---|---|
| 9/8 | | Purchase authorized on 09/04 Old Fashion Deli Glendale CA S00524778460979 Card 5879 | | 84.97 | |
| 9/8 | | Non-WF ATM Withdrawal authorized on 09/06 Barona Sage Rigultron Pro Lakeside CA 00305249571482460 ATM ID Scs2Tw90 Card 5879 | | 100.00 | |
| 9/8 | | Non-Wells Fargo ATM Transaction Fee | | 2.50 | |
| 9/8 | | Non-WF ATM Withdrawal authorized on 09/06 Barona Lima Lefultron Pro Lakeside CA 00465249587878565 ATM ID F920Td43 Card 5879 | | 100.00 | |
| 9/8 | | Non-Wells Fargo ATM Transaction Fee | | 2.50 | |
| 9/8 | | Non-WF ATM Withdrawal authorized on 09/06 Barona Lima Lefultron Pro Lakeside CA 00485249748089734 ATM ID F926Td43 Card 5879 | | 100.00 | |
| 9/8 | | Non-Wells Fargo ATM Transaction Fee | | 2.50 | |
| 9/8 | | Non-WF ATM Withdrawal authorized on 09/06 Barona Cage Atmultron Pro Lakeside CA 00585249767641276 ATM ID F926Td53 Card 5879 | | 100.00 | |
| 9/8 | | Non-Wells Fargo ATM Transaction Fee | | 2.50 | -234.43 |
| 9/9 | | Overdraft Fee for a Transaction Posted on 09/08 $100.00 Non-WF ATM Withdrawal authorized on 09/06 Barona Lima Lefultron Pro Lakeside CA | | 35.00 | |
| 9/9 | | Overdraft Fee for a Transaction Posted on 09/08 $100.00 Non-WF ATM Withdrawal authorized on 09/06 Barona Lima Lefultron Pro Lakeside CA | | 35.00 | |
| 9/9 | | Overdraft Fee for a Transaction Posted on 09/08 $100.00 Non-WF ATM Withdrawal authorized on 09/06 Barona Cage Atmultron Pro Lakeside CA | | 35.00 | -339.43 |

Primary account number: ███151    ☒ September 1, 2015 - September 30, 2015    ☒ Page 3 of 7



## Transaction history (continued)

| Date | Check Number | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|------|-------|-------------|----------|------------|----------|
| 9/15 | | Edeposit IN Branch/Store 09/15/15 01:53:22 Pm 1534 N Vermont Ave Los Angeles CA 5879 | 340.00 | | 0.57 |
| 9/28 | | Deposit | 2,000.00 | | |
| 9/28 | | Deposit | 1,000.00 | | 3,000.57 |
| Ending balance on 9/30 | | | | | 3,000.57 |
| Totals | | | $3,340.00 | $599.97 | |

*The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed.*

## Monthly service fee summary

For a complete list of fees and detailed account information, please see the Wells Fargo Fee and Information Schedule and Account Agreement applicable to your account or talk to a banker. Go to wellsfargo.com/feefaq to find answers to common questions about the monthly service fee on your account.

| Fee period 09/01/2015 - 09/30/2015 | Standard monthly service fee $14.00 | You paid $0.00 |
|------|------|------|

The fee is waived (or discounted) by the bank for this fee period. For the next fee period you must meet an account requirement to avoid the fee, or receive the discount when applicable.

| How to avoid the monthly service fee<br>Have any ONE of the following account requirements | Minimum required | This fee period |
|------|------|------|
| · Average ledger balance | $7,500.00 | $285.00 ☐ |
| · Qualifying transaction from a linked Wells Fargo Business Payroll Services account | 1 | 0 ☐ |
| · Qualifying transaction from a linked Wells Fargo Merchant Services account | 1 | 0 ☐ |
| · Total number of posted Wells Fargo Debit Card purchases and/or payments | 10 | 1 ☐ |
| · Enrollment in a linked Direct Pay service through Wells Fargo Business Online | 1 | 0 ☐ |
| · Combined balances in linked accounts, which may include | $10,000.00 | ☐ |
| - Average ledger balances in business checking, savings, and time accounts | | |
| - Most recent statement balance of Wells Fargo business credit cards, Wells Fargo Business Secured Credit Card, BusinessLine⁶ line of credit, Wells Fargo Small Business Advantage⁸ line of credit , Working Capital Line of Credit, Advancing Term Line of Credit, and BusinessLoan⁸ term loan | | |
| - Combined average daily balances from the previous month for Wells Fargo Business PrimeLoan℠, Commercial Equity Loan, Commercial Refinance Loan, Commercial Purchase Loan, Commercial Equity Line of Credit, Small Business Advantage⁸ loan, Equipment Express⁶ loan, and Equipment Express⁶ Single Event loan | | |

wx/wx

## Account transaction fees summary

| Service charge description | Units used | Units included | Excess units | Service charge per excess units ($) | Total service charge ($) |
|------|------|------|------|------|------|
| Cash Deposited ($) | 3,300 | 7,500 | 0 | 0.0030 | 0.00 |
| Transactions | 3 | 200 | 0 | 0.50 | 0.00 |
| **Total service charges** | | | | | **$0.00** |

# Wells Fargo Combined Statement of Accounts



Primary account number: ██████51   ☒ August 1, 2015 - August 31, 2015   ☒ Page 1 of 7

**REDACTED INFORMATION FALLS OUTSIDE THE SCOPE OF THE ORDER**

4705 EXCELENTE, INC
4705 EXCELENTE DR
WOODLAND HILLS CA 91364-4008

## Questions?

*Available by phone 24 hours a day, 7 days a week:*
Telecommunications Relay Services calls accepted

**1-800-CALL-WELLS** (1-800-225-5935)

*TTY:* 1-800-877-4833
*En español:* 1-877-337-7454

*Online:* wellsfargo.com/biz

*Write:* Wells Fargo Bank, N.A. (114)
P.O. Box 6995
Portland, OR 97228-6995

## Your Business and Wells Fargo

The plans you establish today will shape your business far into the future. The heart of the planning process is your business plan. Take the time now to build a strong foundation. Find out more at wellsfargoworks.com/business-plan-center.

## Account options

*A check mark in the box indicates you have these convenient services with your account(s). Go to wellsfargo.com/biz or call the number above if you have questions or if you would like to add new services.*

| | |
|---|---|
| Business Online Banking | ☐ |
| Online Statements | ☐ |
| Business Bill Pay | ☐ |
| Business Spending Report | ☐ |
| Overdraft Protection | ☐ |

---

The Wells Fargo Mobile App is now available in Spanish!

You can securely manage your finances virtually anytime, anywhere in Spanish.
Once you have downloaded the latest version of the Wells Fargo Mobile® App from Google Play or the Apple App Store, go to Mobile Settings and set your language preference to Spanish.

---

# Summary of accounts

## Checking/Prepaid and Savings

| Account | Page | Account number | Ending balance last statement | Ending balance this statement |
|---|---|---|---|---|
| Wells Fargo Business Choice Checking | 2 | ████51 | 3,150.00 | 260.54 |

Primary account number: 151   ☒ August 1, 2015 - August 31, 2015   ☒ Page 2 of 7



**REDACTED INFORMATION FALLS OUTSIDE THE SCOPE OF THE ORDER**

---

*Summary of accounts (continued)*

| Account | Page | Account number | Ending balance last statement | Ending balance this statement |
|---|---|---|---|---|
| Business Market Rate Savings | 5 | ███48 | -6.00 | -12.00 |

# Wells Fargo Business Choice Checking

## Activity summary

| | |
|---|---|
| Beginning balance on 8/1 | 53,150.00 |
| Deposits/Credits | 3,277.80 |
| Withdrawals/Debits | - 6,167.26 |
| **Ending balance on 8/31** | **$260.54** |
| Average ledger balance this period | 5906.86 |

Account number: 8711811151

4705 EXCELENTE, INC

*California account terms and conditions apply*

For Direct Deposit use
Routing Number (RTN): 121042882

For Wire Transfers use
Routing Number (RTN): 121000248

### Overdraft Protection

This account is not currently covered by Overdraft Protection. If you would like more information regarding Overdraft Protection and eligibility requirements please call the number listed on your statement or visit your Wells Fargo store.

---

## Transaction history

| Date | Check Number | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|---|---|---|---|---|---|
| 8/3 | | Purchase authorized on 08/01 Mb Fin Svcs 800-654-6222 MI S385212597137989 Card 5879 | | 2,680.74 | 469.26 |
| 8/11 | | Purchase authorized on 08/11 Arco #67008 Woodland Hill CA P0046522731793675 Card 5879 | | 54.03 | |
| 8/11 | | Purchase authorized on 08/11 Wholefds Wdh 10 21347 Woodland Hill CA P00585223755565743 Card 5879 | | 15.25 | 399.98 |
| 8/12 | | Deposit | 277.80 | | |
| 8/12 | | Purchase authorized on 08/11 Ralphs 4754 Commons WA Calabasas CA P00585224089539481 Card 5879 | | 15.46 | |
| 8/12 | | Purchase authorized on 08/11 Starbucks #18669 W Woodland Hill CA S385224104484649 Card 5879 | | 7.90 | 654.42 |
| 8/13 | | Purchase authorized on 08/12 Marshalls Marshalls Encino CA P00305225067316461 Card 5879 | | 38.14 | |
| 8/13 | | Purchase authorized on 08/12 Ross Stores #39 Tarzana CA P00000000354947094 Card 5879 | | 16.34 | |
| 8/13 | | Purchase authorized on 08/12 Ross Stores #39 Tarzana CA P00000000743117004 Card 5879 | | 14.16 | |
| 8/13 | | Purchase authorized on 08/12 Ralphs 4754 Commons WA Calabasas CA P00585225165634696 Card 5879 | | 28.66 | 557.12 |
| 8/14 | | Purchase authorized on 08/11 Clg Star #3 Woodland Hill CA S305224097949415 Card 5879 | | 63.06 | 494.06 |
| 8/17 | | Purchase authorized on 08/16 USA 63221 Woodland Hill CA P00305228778127113 Card 5879 | | 48.64 | |
| 8/17 | | Purchase authorized on 08/16 Smartnfinal324 Woodland Hill CA P00000000643352837 Card 5879 | | 84.69 | 360.73 |
| 8/21 | | Purchase authorized on 08/21 Arco #67008 Woodland Hill CA P00305233823887535 Card 5879 | | 61.56 | |

Primary account number:  51 ☒ August 1, 2015 - August 31, 2015 ☒ Page 3 of 7



## Transaction history (continued)

| Date | Check Number | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|------|-------|-------------|----------|-----------|--------|
| 8/21 | | ATM Withdrawal authorized on 08/21 23325 Mulholland Driv Woodland Hill CA 0007155 ATM ID 1753D Card 5879 | | 40.00 | 259.17 |
| 8/24 | | Purchase authorized on 08/20 Sadaf Restaurant Encino CA S585232692473633 Card 5879 | | 85.15 | |
| 8/24 | | Purchase authorized on 08/21 Office Depot 00 6227 T Woodland Hill CA F00585234099129028 Card 5879 | | 57.74 | 116.28 |
| 8/27 | | Deposit | 3,000.00 | | 3,116.28 |
| 8/28 | | Purchase authorized on 08/27 Sq *Ani's Unique G Glendale CA S385239714907608 Card 5879 | | 110.00 | 3,006.28 |
| 8/31 | | Purchase authorized on 08/28 Nails to Adore Woodland Hill CA S465241056160415 Card 5879 | | 65.00 | |
| 8/31 | | Purchase authorized on 08/29 Mb Fin Svcs 800-654-6222 MI S385240611509549 Card 5879 | | 2,680.74 | 260.54 |
| Ending balance on 8/31 | | | | | 260.54 |
| Totals | | | $3,277.80 | $6,167.26 | |

*The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed.*

## Monthly service fee summary

For a complete list of fees and detailed account information, please see the Wells Fargo Fee and Information Schedule and Account Agreement applicable to your account or talk to a banker. Go to wellsfargo.com/feefaq to find answers to common questions about the monthly service fee on your account.

| Fee period 08/01/2015 - 08/31/2015 | Standard monthly service fee $14.00 | | You paid $0.00 | |
|---|---|---|---|---|
| How to avoid the monthly service fee | | Minimum required | This fee period | |
| Have any ONE of the following account requirements | | | | |
| · Average ledger balance | | $7,500.00 | $907.00 | ☐ |
| · Qualifying transaction from a linked Wells Fargo Business Payroll Services account | | 1 | 0 | ☐ |
| · Qualifying transaction from a linked Wells Fargo Merchant Services account | | 1 | 0 | ☐ |
| · Total number of posted Wells Fargo Debit Card purchases and/or payments | | 10 | 18 | ☑ |
| · Linked Direct Pay Service through Wells Fargo Business Online | | 1 | 0 | ☐ |
| · Combined balances in linked accounts, which may include | | $10,000.00 | | ☐ |
| - Average ledger balances in business checking, savings, and time accounts | | | | |
| - Most recent statement balance of business credit card, Wells Fargo Secured Credit Card, BusinessLine® line of credit, Secured BusinessLine® line of credit, Wells Fargo Express Equity® line of credit, and Wells Fargo BusinessLoan® term loan | | | | |
| - Combined average daily balances from the previous month for Business PrimeLoan™, Wells Fargo Express Equity® loan, Wells Fargo Express Refi® loan, Wells Fargo Purchase Advantage℠ loan, Wells Fargo Small Business Advantage® line of credit, Equipment Express® loan, and Equipment Express® Single Even t loan | | | | |

wx/wx

## Account transaction fees summary

| Service charge description | Units used | Units included | Excess units | Service charge per excess units ($) | Total service charge ($) |
|---|---|---|---|---|---|
| Cash Deposited ($) | 3,000 | 7,500 | 0 | 0.0030 | 0.00 |
| Transactions | 3 | 200 | 0 | 0.50 | 0.00 |
| **Total service charges** | | | | | **$0.00** |

# Consumer Account Application



| | |
|---|---|
| Bank Name: | Store Name: |
| WELLS FARGO BANK, N.A. | EL CAMINO CENTER |
| Banker Name: | Officer/Portfolio Number: | Date: |
| BEHRANG GOLBAD | CD304 | 10/15/2015 |
| Banker Phone: | Store Number: | Banker AU: | Banker MAC: |
| 818/222-3873 | 04842 | 0065859 | E3149-010 |

To help the government fight the funding of terrorism and money laundering activities, U.S. Federal law requires financial institutions to obtain, verify, and record information that identifies each person (individuals and businesses) who opens an account. What this means for you: When you open an account, we will ask for your name, address, date of birth and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

## New Account Information

| Product Name: | Account Number: | Product: |
|---|---|---|
| Wells Fargo Everyday Checking | ████02 | DDA |

| Purpose of Account: | Minor: | COID: |
|---|---|---|
| Personal/Household | | 114 |

| New Account Kit: | Checking/Savings Bonus Offer Available: |
|---|---|
| Electronic Delivery | NO |

## Related Customers

| Customer Name: | Account Relationship: |
|---|---|
| VIRGINIA MARTIROSSIAN | Sole Owner |

## Statement Mailing Information

| Customer(s) Listed on Statement: | Statement Mailing Address: |
|---|---|
| VIRGINIA MARTIROSSIAN | 4705 EXCELENTE DR |
| | Address Line 2: |
| | |
| | City: | State: |
| | WOODLAND HILLS | CA |
| | ZIP/Postal Code: | Country: |
| | 91364-4008 | US |



2W02-000775917308-01

Consumer Account Application

## Customer 1 Information

| | |
|---|---|
| Customer Name: | Street Address: |
| VIRGINIA MARTIROSSIAN | 4705 EXCELENTE DR |
| Customer Number (ECN): ████16 | Address Line 2: |
| Account Relationship: | Address Line 3: |
| Sole Owner | |

| Taxpayer Identification Number (TIN): ████01 | TIN Type: SSN | Date of Birth: ████954 | City: WOODLAND HILLS | State: CA |
|---|---|---|---|---|

| Primary ID Type: DLIC | Primary ID Description: C3907734 | | ZIP/Postal Code: 91364-4008 | Country: US | Time at this address: 14 Year(s)  8 Month(s) |
|---|---|---|---|---|---|

| Primary ID St/Cty/Prov: CA | Primary ID Issue Date: 11/08/2013 | Primary ID Expiration Date: 12/05/2018 | Directional Address: |
|---|---|---|---|
| | | | (Document when no physical residence, business or alternate street address.) |

| Secondary ID Type: OTHR DC | Secondary ID Description: CHASE DEBIT | |
|---|---|---|

| Secondary ID State/Country: | Secondary ID Issue Date: | Secondary ID Expiration Date: 05/01/2017 | Previous Street Address: |
|---|---|---|---|

| Home Phone: 818/324-4485 | Business Phone: 818/324-4485 | City: | State: |
|---|---|---|---|

| Current Employer: COMMERCIAL PROPERTY INVEST | ZIP/Postal Code: | Country: | Time at this address: Year(s)  Month(s) |
|---|---|---|---|

| Check Reporting: NO RECORD | Country of Citizenship: US |
|---|---|

## Customer Signatures

Everything I have stated in this application is correct. You are authorized to make any inquiries that you consider appropriate to determine if you should open or maintain the account. This may include ordering a credit report or other report (i.e. information from any motor vehicle department or other state agency) on me. **I have received a copy of the applicable account agreement and the privacy policy (each may be amended from time to time) and agree to be bound by their terms.** I also agree to the terms of the dispute resolution program described in the foregoing agreements. **Under the dispute resolution program, our disputes will be decided before one or more neutral persons in an arbitration proceeding and not by a jury trial or a trial before a judge.**

Customer 1 Name

VIRGINIA MARTIROSSIAN

Customer 1 Signature



☐ Submit manually
☐ Signature not required

Date: 10/15/2015

# Business Account Application

**WELLS FARGO**

| | |
|---|---|
| Bank Name: | Store Name: |
| WELLS FARGO BANK, N.A. | EL CAMINO CENTER |
| Banker Name: | Officer/Portfolio Number: | Date: |
| BEHRANG GOLBAD | CD304 | 06/02/2015 |
| Banker Phone: | Store Number: | Banker ID: | Banker MAC: |
| 818/222-3873 | 04842 | 0065859 | E3149-010 |

To help the government fight the funding of terrorism and money laundering activities, U.S. Federal law requires financial institutions to obtain, verify, and record information that identifies each person (individuals and businesses) who opens an account. What this means for you: When you open an account, we will ask for your name, address, date of birth and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

## New Account Information

[X] New Deposit Account(s) Only        [ ] New Deposit Account(s) and Business Credit Card

| Account 1 Product Name: | | | Purpose of Account 1: | |
|---|---|---|---|---|
| Wells Fargo Business Choice Checking | | | General Operating Account | |
| COID: | Product: | Account Number: | Opening Deposit: | Type of Funds: |
| 114 | DDA | ████51 | $50.00 | CACK |

| Account 2 Product Name: | | | Purpose of Account 2: | |
|---|---|---|---|---|
| Business Market Rate Savings | | | Savings | |
| COID: | Product: | Account Number: | Opening Deposit: | Type of Funds: |
| 114 | DDA | ████69 | $50.00 | CACK |

| Account 3 Product Name: | | | Purpose of Account 3: | |
|---|---|---|---|---|
| Wells Fargo Simple Business Checking | | | General Operating Account | |
| COID: | Product: | Account Number: | Opening Deposit: | Type of Funds: |
| 114 | DDA | ████590 | $50.00 | CACK |

| Account 4 Product Name: | | | Purpose of Account 4: | |
|---|---|---|---|---|
| Business Market Rate Savings | | | Savings | |
| COID: | Product: | Account Number: | Opening Deposit: | Type of Funds: |
| 114 | DDA | ████0048 | $50.00 | CACK |

| New Account Kit: | Checking/Savings Bonus Offer Available: | Bonus Offer Code: |
|---|---|---|
| ████6158 | YES | BIZD25 |

## Related Customer Information

| Customer 1 Name: | Account Relationship: |
|---|---|
| 4705 EXCELENTE, INC | Sole Owner |
| Enterprise Customer Number (ECN): | |
| ████261 | |

| Customer 2 Name: | Account Relationship: |
|---|---|
| ANAHIT HARUTYUNYAN | Signer |
| Enterprise Customer Number (ECN): | |
| ████362 | |



2W02-000742939658-01

Business Account Application

## Checking/Savings Statement Mailing Information

| Name(s) and Information Listed on Statement: | Statement Mailing Address: | |
|---|---|---|
| 4705 EXCELENTE, INC | 4705 EXCELENTE DR | |
| | Address Line 2: | |
| | City: | State: |
| | WOODLAND HILLS | CA |
| | ZIP/Postal Code: | Country: |
| | 91364-4008 | US |



2W02-000742939658-02

Business Account Application

## Customer 1 Information

| | |
|---|---|
| Customer Name: | Street Address: |
| 4705 EXCELENTE, INC | 4705 EXCELENTE DR |
| Enterprise Customer Number (ECN): | Address Line 2: |
| ██████████ | |
| Account Relationship: | Address Line 3: |
| Sole Owner | |
| Taxpayer Identification Number (TIN):  TIN Type: | City:                                State: |
| ████████  EIN | WOODLAND HILLS                       CA |
| Business Type: | ZIP/Postal Code:                     Country: |
| Corporation Type S | 91364-4008                          US |
| Business Sub-Type/Tax Classification:   Non-Profit: | Business Phone:          Fax: |
| Corporation                   No | 310/871-8859 |
| Date Originally Established:  Current Ownership Since:  Number of Employees: | Cellular Phone:          Pager: |
| 01/01/2001                                1 | |
| Annual Gross Sales:   Year Sales Reported:   Fiscal Year End: | e-Mail Address: |
| $500,000.00          01/01/2001 | |
| Primary Financial Institution:   Number of Locations: | Website: |
| 1 | |
| Primary State 1:   Primary State 2:   Primary State 3: | Sales Market: |
| | LOCAL |
| Primary Country 1:   Primary Country 2:   Primary Country 3: | |

Industry:

Finance and Insurance

Description of Business:

Financial Consultant

Major Suppliers/Customers:

## Bank Use Only

| | | |
|---|---|---|
| Name/Entity Verification: | Address Verification: | BACC Reference Number: |
| Secretary of State | | 6151530004034 |
| Document Filing Number/Description:   Filing Country:   Filing State: | Filing Date: | Expiration Date: |
| C3786159                    US          CA | 05/11/2015 | |
| Country of Registration:   State of Registration:   International Transactions: | | Check Reporting: |
| US             CA | | NO RECORD |

| | |
|---|---|
| Customer 1 Name: | Internet Gambling Business?: |
| 4705 EXCELENTE, INC | No |

Business Account Application

## Owner/Key Individual 1 Information

| Customer Name: | Residence Address: |
|---|---|
| ANAHIT HARUTYUNYAN | 4705 EXCELENTE DR |

| Business Relationship: | Address Line 2: |
|---|---|
| Key Executive with Control of the Entity | |

| Position/Title: | Date of Birth: | Enterprise Customer Number (ECN): | Address Line 3: |
|---|---|---|---|
| CEO | ▮▮▮▮ | 153940240009362 | |

| Taxpayer Identification Number (TIN): | TIN Type: | City: | State: |
|---|---|---|---|
| ▮▮▮▮ | SSN | WOODLAND HILLS | CA |

| Primary ID Type: | Primary ID Description: | ZIP/Postal Code: | Country: |
|---|---|---|---|
| DLIC | D5729172 | 91364-4008 | US |

| Primary ID St/Ctry/Prov: | Primary ID Issue Date: | Primary ID Expiration Date: | Check Reporting: |
|---|---|---|---|
| CA | ▮▮▮▮ 2014 | 03/11/2019 | NO RECORD |

| Secondary ID Type: | Secondary ID Description: |
|---|---|
| OTHR DC | CHASE |

| Secondary ID State/Country: | Secondary ID Issue Date: | Secondary ID Expiration Date: |
|---|---|---|
| | | 03/31/2017 |

| Country of Citizenship: | Permanently Resides in US: |
|---|---|
| US | |



2W02-000742939658-04

Wells Fargo Confidential

## Certificate of Authority

Each person who signs the "Certified/Agreed To" section of this Application certifies that:

**A. The Customer's use of any Bank deposit account, product or service will confirm the Customer's receipt of, and agreement to be bound by, the Bank's applicable fee and information schedule and account agreement that includes the Arbitration Agreement under which any dispute between the Customer and the Bank relating to the Customer's use of any Bank deposit account, product or service will be decided in an arbitration proceeding before a neutral arbitrator as described in the Arbitration Agreement and not by a jury or court trial.**

B. Each person who signs the "Certified/Agreed To" section of this Application or whose name, any applicable title and specimen signature appear in the "Authorized Signers - Signature Capture" section of this Application is authorized on such terms as the Bank may require to:

(1) Enter into, modify, terminate and otherwise in any manner act with respect to accounts at the Bank and agreements with the Bank or its affiliates for accounts and/or services offered by the Bank or its affiliates (other than letters of credit or loan agreements);

(2) Authorize (by signing or otherwise) the payment of Items from the Customer's account(s) listed on this Business Account Application (including without limitation any Item payable to (a) the individual order of the person who authorized the Item or (b) the Bank or any other person for the benefit of the person who authorized the Item) and the endorsement of Deposited Items for deposit, cashing or collection (see the Bank's applicable account agreement for the definitions of "Item" and "Deposited Item");

(3) Give instructions to the Bank in writing (whether the instructions include the manual signature or a signature that purports to be the facsimile or other mechanical signature including a stamp of an Authorized Signer as the Customer's authorized signature without regard to when or by whom or by what means or in what ink color the signature may have been made or affixed), orally, by telephone or by any electronic means in regard to any Item and the transaction of any business relating to the Customer's account(s), agreements or services, and the Customer shall indemnify and hold the Bank harmless for acting in accordance with such instructions; and

(4) Delegate the person's authority to another person(s) or revoke such delegation, in a separate signed writing delivered to the Bank.

C. If a code must be communicated to the Bank in order to authorize an Item, and the code is communicated, the Item will be binding on the Customer regardless of who communicated the code.

D. Each transaction described in this Certificate of Authority conducted by or on behalf of the Customer prior to delivery of this Certificate is in all respects ratified.

E. If the Customer is a tribal government or tribal government agency, the Customer waives sovereign immunity from suit with respect to the Customer's use of any Bank account, product or service referred to in this Certificate.

F. The information provided in this Application is correct and complete, each person who signs the "Certified/Agreed To" section of this Application and each person whose name appears in the "Authorized Signers-Signature Capture" section of this Application holds any position indicated, and the signature appearing opposite the person's name is authentic.

G. The Customer has approved this Certificate of Authority or granted each person who signs the "Certified/Agreed To" section of this Application the authority to do so on the Customer's behalf by:

(1) resolution, agreement or other legally sufficient action of the governing body of the Customer, if the Customer is not a trust or a sole proprietor;

(2) the signature of each of the Customer's trustee(s), if the Customer is a trust; or

(3) the signature of the Customer, if the Customer is a sole proprietor.

## Certified/Agreed To

Owner/Key Individual 1 Name
| ANAHIT HARUTYUNYAN

Position/Title:
| CEO

Owner/Key Individual 1 Signature



[X] Submit manually
[ ] Signature not required

Date:
| 06/02/2015

Business Account Application

## Request for Taxpayer Identification Number and Certification

(Substitute Form W-9)

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and
2. UNLESS I HAVE CHECKED ONE OF THE BOXES BELOW, I am not subject to backup withholding either because I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or the IRS has notified me that I am no longer subject to backup withholding (does not apply to real estate transactions, mortgage interest paid, the acquisition or abandonment of secured property, contributions to an Individual Retirement Arrangement (IRA), and payment other than interest and dividends).

   ☐ I am subject to backup withholding     ☐ I am exempt from backup withholding
3. I am a U.S. citizen or other U.S. person.
4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct. (Does not apply to U.S. based accounts)

Note: The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

Tax Responsible Customer Name:
4705 EXCELENTE, INC

Taxpayer Identification Number (TIN):
████████████

TIN Certification Signature:

☒ Submit manually
☐ Signature not required

Date:

## Authorized Signers - Signature Capture

Authorized Signer 1 Name
ANAHIT HARUTYUNYAN

Position/Title:
CEO

Authorized Signer 1 Signature

☒ Submit manually
☐ Signature not required

Date:
06/02/2015

Exhibit "G"

SUBP-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

_Alana B. Anaya, Esq. SBN: 195758
Anaya Law Group
2629 Townsgate Road, Suite 140
Westlake Village, CA 91361

TELEPHONE NO.: (805) 230-9222    FAX NO.: (805) 230-9221
E-MAIL ADDRESS: alana@anayalawgroup.com
ATTORNEY FOR (Name): VAZGEN KHACHATRYAN

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Los Angeles
STREET ADDRESS: 9425 Penfield Avenue
MAILING ADDRESS:
CITY AND ZIP CODE: Chatsworth, CA 91311
BRANCH NAME: North Valley District

PLAINTIFF/PETITIONER: VAZGEN KHACHATRYAN

DEFENDANT/RESPONDENT: SHAHEN MARTIROSIAN; et al.

| | |
|---|---|
| **DEPOSITION SUBPOENA**<br>**FOR PRODUCTION OF BUSINESS RECORDS** | CASE NUMBER:<br>PC056789 |

THE PEOPLE OF THE STATE OF CALIFORNIA, TO *(name, address, and telephone number of deponent, if known):*
California Commerce Club, Inc. 6131 E. Telegraph Road, Commerce, CA 90040

1. **YOU ARE ORDERED TO PRODUCE THE BUSINESS RECORDS** described in item 3, as follows:

To *(name of deposition officer):* Jonathan Malek
On *(date):* April 29, 2016                  At *(time):* 3:00 PM
Location *(address):* 2629 Townsgate Road, Suite 140, Westlake Village, CA 91361

Do not release the requested records to the deposition officer prior to the date and time stated above.

a. [X] by delivering a true, legible, and durable copy of the business records described in item 3, enclosed in a sealed inner wrapper with the title and number of the action, name of witness, and date of subpoena clearly written on it. The inner wrapper shall then be enclosed in an outer envelope or wrapper, sealed, and mailed to the deposition officer at the address in item 1.

b. [ ] by delivering a true, legible, and durable copy of the business records described in item 3 to the deposition officer at the witness's address, on receipt of payment in cash or by check of the reasonable costs of preparing the copy, as determined under Evidence Code section 1563(b).

c. [ ] by making the original business records described in item 3 available for inspection at your business address by the attorney's representative and permitting copying at your business address under reasonable conditions during normal business hours.

2. *The records are to be produced by the date and time shown in item 1 (but not sooner than 20 days after the issuance of the deposition subpoena, or 15 days after service, whichever date is later). Reasonable costs of locating records, making them available or copying them, and postage, if any, are recoverable as set forth in Evidence Code section 1563(b). The records shall be accompanied by an affidavit of the custodian or other qualified witness pursuant to Evidence Code section 1561.*

3. *The records to be produced are described as follows (if electronically stored information is demanded, the form or forms in which each type of information is to be produced may be specified):*  See Attachment 3

[X] Continued on Attachment 3.

4. IF YOU HAVE BEEN SERVED WITH THIS SUBPOENA AS A CUSTODIAN OF CONSUMER OR EMPLOYEE RECORDS UNDER CODE OF CIVIL PROCEDURE SECTION 1985.3 OR 1985.6 AND A MOTION TO QUASH OR AN OBJECTION HAS BEEN SERVED ON YOU, A COURT ORDER OR AGREEMENT OF THE PARTIES, WITNESSES, *AND* CONSUMER OR EMPLOYEE AFFECTED MUST BE OBTAINED BEFORE YOU ARE REQUIRED TO PRODUCE CONSUMER OR EMPLOYEE RECORDS.

**DISOBEDIENCE OF THIS SUBPOENA MAY BE PUNISHED AS CONTEMPT BY THIS COURT. YOU WILL ALSO BE LIABLE FOR THE SUM OF FIVE HUNDRED DOLLARS AND ALL DAMAGES RESULTING FROM YOUR FAILURE TO OBEY.**

Date issued: March 21, 2016

Alana B. Anaya
(TYPE OR PRINT NAME)

▷ _____
(SIGNATURE OF PERSON ISSUING SUBPOENA)

Attorney for Plaintiff VAZGEN KHACHATRYAN
(TITLE)

(Proof of service on reverse)

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUBP-010 [Rev. January 1, 2012] | **DEPOSITION SUBPOENA FOR PRODUCTION**<br>**OF BUSINESS RECORDS** | Code of Civil Procedure, §§ 2020.410-2020.440,<br>Government Code, § 68097.1<br>Page 1 of 2 |

SUBP-010

| PLAINTIFF/PETITIONER: VAZGEN KHACHATRYAN | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: SHAHEN MARTIROSIAN; et al. | PC056789 |

### PROOF OF SERVICE OF DEPOSITION SUBPOENA FOR
### PRODUCTION OF BUSINESS RECORDS

1.  I served this *Deposition Subpoena for Production of Business Records* by personally delivering a copy to the person served as follows:

   a. Person served *(name)*:

   b. Address where served:

   c. Date of delivery:

   d. Time of delivery:

   e. (1) ☐ Witness fees were paid.
         Amount: . . . . . . . . . . . . . $ _____
     (2) ☐ Copying fees were paid.
         Amount: . . . . . . . . . . . . . $ _____

   f. Fee for service: . . . . . . . . . . . . . . . $ _____

2.  I received this subpoena for service on *(date)*:

3.  Person serving:
   a. ☐ Not a registered California process server.
   b. ☐ California sheriff or marshal.
   c. ☐ Registered California process server.
   d. ☐ Employee or independent contractor of a registered California process server.
   e. ☐ Exempt from registration under Business and Professions Code section 22350(b).
   f. ☐ Registered professional photocopier.
   g. ☐ Exempt from registration under Business and Professions Code section 22451.
   h. Name, address, telephone number, and, if applicable, county of registration and number:

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

▷ _____
          (SIGNATURE)

(For California sheriff or marshal use only)
I certify that the foregoing is true and correct.

Date:

▷ _____
          (SIGNATURE)

## ATTACHMENT 3

### DEFINITIONS

A)     For the purpose of these Requests for Production of Documents, "DOCUMENT" or "DOCUMENTS" shall be understood to apply to any kind of hand written, typewritten, printed OR recorded material whatsoever, including but without limitation, notes, memoranda, letters, reports, telegrams, publications, electronic mail ("e-mail"), internet/intranet instant or social media messaging, computer diskettes or CDs/DVDs/flash drives, contracts, recordings, transcriptions of recordings AND business records, whether OR not in your possession OR under your control, relating to OR pertaining in any way to the subject matter to which the document requests refer, AND includes, without limitation, originals, all file copies, all other copies (with OR without notes OR changes thereon), no matter how prepared, drafts, working papers, routing slips, AND similar materials.

B)     DEFENDANT shall refer to: "SHAHEN MARTIOSIAN  - (SSN xxx-xx-7030)".

C)     "YOU" or "YOUR" shall refer to California Commerce Club, Inc. doing business as Commerce Casino

### REQUEST FOR DOCUMENT PRODUCTION

1)     Any and all DOCUMENTS stating DEFENDANT'S earnings from any gambling activities (including any card game, slot machine, sports betting, or horse racing) at YOUR  casino from January 1, 2014 to present.

2)     Any and all DOCUMENTS stating DEFENDANT'S losses from any gambling activities (including any card game, slot machine, sports betting, or horse racing) at YOUR  casino from January 1, 2014 to present.

3)     Any and all DOCUMENTS stating any cash deposits or withdrawals by the DEFENDANT from YOUR casino from January 1, 2014 to present.

4)     Any and all DOCUMENTS stating any monetary loans provided by YOU to DEFENDANT from January 1, 2014 to present.

5)     Any and all DOCUMENTS stating any cashing of YOUR casino chips by DEFENDANT from January 1, 2014 to present.

6)     Any and all DOCUMENTS that relate to any safety deposit boxes held in the name of, or referencing, DEFENDANT.

7)     Any and all DOCUMENTS that relate to any of Defendant's gambling activities from March 1, 2015 to present.

## PROOF OF SERVICE

I declare that I am employed in the County of Ventura, California. I am over the age of eighteen years and not a party to the within case; my business address is: 2629 Townsgate Road Suite 140, Westlake Village, CA 91361.

On <u>March 21, 2016,</u> I served the foregoing document described as:

**NOTICE TO CONSUMER OR EMPLOYEE AND OBJECTION (Deposition Subpoena to Commerce Casino)**

On the following interested party in this action:

Jilbert Tahmazian
Law Offices of Jilbert Tahmazian
1518 West Glenoaks Blvd.
Glendale, CA 91201

Richard Avetisyan
Avetisyan Law Group
1700 W. Magnolia, Suite 200
Burbank, CA 95106

[X ]  **(BY MAIL)   [ ] (BY CERTIFIED MAIL)**
[X ]  by placing a true copy thereof in a sealed envelope with postage fully prepaid. I am readily familiar with the business practice of Anaya Law Group for collection and processing of correspondence for mailing with the United States Postal Service, and the correspondence would be deposited with the United States Postal Service that same day in the ordinary course of business.
[] by depositing the seal envelope with the United States Postal Service with postage fully prepaid.

[ ]  **(BY TELEFACSIMILE TRANSMISSION)** at approximately___[ ] AM [ ] PM, from the telefacsimile transmitting machine at the Anaya Law Group, 2629 Townsgate Road Suite 140, Westlake Village, CA 91361 [facsimile number (805) 230-9221], to the attention of the following interested parties in this action, at addressee's facsimile numbers set forth in the attached facsimile cover sheet. This transmission was reported as complete and without error.

[ ]  **(BY PERSONAL SERVICE)** at approximately___[ ] AM [ ] PM, I personally served the above documents on the above mentioned person at the

[ ]  **(BY OVERNIGHT DELIVERY)**
     []      BY FEDERAL EXPRESS DELIVERY

[X ]   (State) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on <u>March 21, 2016</u> at Westlake Village, California.

[ ]   (Federal) I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

<u>Joan Roy</u>
name

signature

REPORT OF WINNINGS JANUARY 01, 2014 TO PRESENT

### Player History for MARTIROSIAN, SHAHEN (60686)
#### Thursday, Apr 28 2016 - 12:11:47 PM

| Event Name | Buy-in | Date | Place | Prize Won |
|---|---|---|---|---|
| 01/25 1PM LAPC-2H1 $150 NL HOLD'EM DOUBLESTACK | $150.00 | 1/25/2014 | 67 | $250.00 |
| 02/01 1PM LAPC-15 $350 NO LIMIT HOLD'EM | $350.00 | 2/1/2014 | 15 | $1,860.00 |
| 03/01 12PM LAPC-55 $10,000 WPT CHAMPIONSHIP | $10,000.00 | 2/28/2014 | 27 | $36,400.00 |
| 05/09 3PM CSPC-10 $350 NO LIMIT HOLD'EM | $350.00 | 5/9/2014 | 31 | $740.00 |
| 05/10 1PM CSPC-11 $570 NL HOLD'EM DOUBLESTACK | $570.00 | 5/10/2014 | 10 | $2,420.00 |
| 09/07 5PM CPS-2 $240 NL HOLD'EM DOUBLESTACK TURBC | $240.00 | 9/7/2014 | 6 | $3,765.00 |
| 11/07 5PM LAPO-1 $160 NO LIMIT HOLD'EM | $160.00 | 11/7/2014 | 13 | $810.00 |
| 02/08 2PM LAPC-20 DAY 2 $240 NO LIMIT HOLD'EM | $0.00 | 2/8/2015 | 10 | $7,670.00 |
| 03/04 4PM LAPC-52 $1,100 NLH BOUNTY TURBO | $1,100.00 | 3/4/2015 | 3 | $10,980.00 |
| 05/01 5PM CSPC-01 $175 NO LIMIT HOLD'EM | $175.00 | 5/1/2015 | 24 | $480.00 |
| 05/10 2PM CSPC-09 DAY 2 $240 NO LIMIT HOLD'EM | $0.00 | 5/7/2015 | 65 | $725.00 |
| 05/12 5PM CSPC-15 $350 NLH 8 HRS & TIME TO CHOP | $350.00 | 5/12/2015 | 6 | $1,855.00 |
| 01/31 2PM LAPC-16 $350 NO LIMIT HOLD'EM DAY 2 | $0.00 | 1/29/2016 | 105 | $1,100.00 |
| | | | Total | $69,055.00 |

**TOURNAMENT BUY INS JANUARY 01, 2014 TO PRESENT**



## Tournament Entry Report By Player

| | | | | | |
|---|---|---|---|---|---|
| **Start Date:** | January 01, 2014 | | **Print Date/Time:** | April 28, 2016 | 12:03 pm |
| **End Date:** | April 28, 2016 | | | | |

**Last Name:** MARTIROSIAN

**First Name:** SHAHEN

**Customer ID:** 60686

| Entry Date | Voided? | Tournament Date | Tournament Name | Buy-In Amount |
|---|---|---|---|---|
| 1/26/2014  1:40:13PM | False | 1/26/14 | 01/26 1PM LAPC-3 $350 KNOCKOUT BOUNTY NL HOLD'EM | $350.00 |
| 6/27/2014  7:31:46PM | False | 6/27/14 | FRIDAY 6PM $150 NLH MEGASTACK | $150.00 |
| 6/28/2014  1:45:34PM | False | 6/28/14 | SATURDAY 1PM $150 NLH MEGASTACK | $150.00 |
| 6/28/2014  2:50:03PM | False | 6/28/14 | SATURDAY 1PM $150 NLH MEGASTACK | $150.00 |
| 11/15/2014  2:30:37PM | False | 11/15/14 | 11/15 2PM LAPO-10C $570 NO LIMIT HOLD'EM | $570.00 |
| 9/12/2014  2:26:25PM | False | 9/12/14 | 09/12 2PM CPS-10 $240 NL HOLD'EM DOUBLESTACK TURBO | $240.00 |
| 9/12/2014  5:13:08PM | False | 9/12/14 | 09/12 5PM CPS-11MS $150 PLAYBOY MEGA SATELLITE | $150.00 |
| 9/12/2014  9:49:29PM | True | 9/13/14 | 09/13 1PM CPS-11 $1,100 PLAYBOY NLH DOUBLESTACK | $0.00 |
| 9/12/2014  9:51:27PM | False | 9/13/14 | 09/13 1PM CPS-11 $1,100 PLAYBOY NLH DOUBLESTACK | $1,100.00 |
| 9/19/2014  2:19:31PM | False | 9/19/14 | 09/19 1PM CPS-18B $1,650 HPT NLH CHAMPIONSHIP | $1,650.00 |
| 12/30/2014 12:08:22PM | False | 12/30/14 | DAILY 12PM $65 NLH  DOUBLESTACK | $65.00 |
| 2/28/2015  5:31:51PM | False | 2/28/15 | 02/28 12PM LAPC-47 $10,000 WPT NLH CHAMPIONSHIP | $10,000.00 |
| 2/20/2015  2:48:51PM | False | 2/20/15 | 02/20 1PM LAPC-35B $1,100 PLAYBOY NO LIMIT HOLD'EM | $1,100.00 |
| 2/20/2015  7:47:28PM | False | 2/20/15 | 01/25-02/25 7PM LAPC-SS $225 SUPER SATELLITE | $225.00 |
| 2/21/2015  1:55:28PM | False | 2/21/15 | 02/21 1PM LAPC-35C $1,100 PLAYBOY NO LIMIT HOLD'EM | $1,100.00 |
| 9/3/2015  6:29:29PM | False | 9/3/15 | 09/03 5PM CPS-1B $350 NO LIMIT HOLD'EM | $350.00 |
| 1/26/2014  8:22:47AM | False | 1/26/14 | 01/26 9AM LAPC-2LC $150 NL HOLD'EM DOUBLESTACK | $150.00 |
| 1/26/2014  9:50:20AM | False | 1/26/14 | 01/26 9AM LAPC-2LC $150 NL HOLD'EM DOUBLESTACK | $150.00 |
| 1/26/2014 11:08:26AM | False | 1/26/14 | 01/26 9AM LAPC-2LC $150 NL HOLD'EM DOUBLESTACK | $150.00 |
| 3/21/2014  5:21:50PM | False | 3/21/14 | FRIDAY 6PM $150 NLH MEGASTACK | $150.00 |
| 3/21/2014  8:05:19PM | False | 3/21/14 | FRIDAY 6PM $150 NLH MEGASTACK | $150.00 |
| 9/14/2014  2:16:44PM | False | 9/14/14 | 09/14 2PM CPS-12 $240 NL HOLD'EM KNOCKOUT BOUNTY | $240.00 |
| 9/14/2014  2:46:11PM | False | 9/14/14 | 09/14 2PM CPS-12 $240 NL HOLD'EM KNOCKOUT BOUNTY | $240.00 |
| 9/20/2014  3:10:54PM | False | 9/20/14 | 09/20 1PM CPS-18C $1,650 HPT NLH CHAMPIONSHIP | $1,650.00 |
| 2/13/2015  2:11:48PM | False | 2/13/15 | 02/13 1PM LAPC-28B $570 NO LIMIT HOLD'EM | $570.00 |
| 2/13/2015  8:23:58PM | False | 2/13/15 | 01/25-02/25 7PM LAPC-SS $225 SUPER SATELLITE | $225.00 |
| 2/13/2015  9:22:50PM | False | 2/13/15 | 01/23-02/25 9PM LAPC-LNM $150 NLH LATE NIGHT MEGA | $150.00 |

# Tournament Entry Report By Player

**Start Date:** **January 01, 2014**

**End Date:** **April 28, 2016**

**Print Date/Time:** **April 28, 2016**      **12:03 pm**

**Last Name:** **MARTIROSIAN**

**First Name:** **SHAHEN**

**Customer ID:** **60686**

| Entry Date | Voided? | Tournament Date | Tournament Name | Buy-In Amount |
|---|---|---|---|---|
| 5/15/2015  4:22:49PM | False | 5/15/15 | 05/15 1PM CSPC-17A $1,650 NLH MAIN EVENT | $1,650.00 |
| 5/7/2015  1:19:47PM | False | 5/7/15 | 05/07 1PM CSPC-09B1 $240 NO LIMIT HOLD'EM | $240.00 |
| 11/14/2015 12:54:04PM | False | 11/14/15 | 11/14 1PM LAPO-10C $570 NO LIMIT HOLD'EM | $570.00 |
| 11/14/2015  9:03:23PM | True | 11/20/15 | 11/20 1PM LAPO-18A $1,650 NL HOLD'EM CHAMPIONSHIP | $0.00 |
| 2/18/2016  5:00:58PM | False | 2/18/16 | 02/17-2/19 LAPC 5PM $240 MEGA SATELLITE | $240.00 |
| 1/18/2014  1:12:30PM | False | 1/18/14 | 01/18 1PM LAPC-2A1 $150 NL HOLD'EM DOUBLESTACK | $150.00 |
| 2/8/2014  4:11:06PM | False | 2/8/14 | 02/08 5PM LAPC-20E2 $150 NLH DOUBLESTACK TURBO | $150.00 |
| 1/29/2014  1:55:05PM | False | 1/29/14 | 01/29 1PM LAPC-9 $235 NL HOLD'EM DOUBLESTACK | $235.00 |
| 4/11/2014  4:44:13PM | False | 4/11/14 | FRIDAY 6PM $150 NLH MEGASTACK | $150.00 |
| 3/28/2014  5:04:39PM | False | 3/28/14 | FRIDAY 6PM $150 NLH MEGASTACK | $150.00 |
| 9/14/2014  6:28:30PM | False | 9/14/14 | 09/14 5PM CPS-13 $240 NL HOLD'EM DOUBLESTACK TURBO | $240.00 |
| 9/14/2014  7:41:39PM | False | 9/14/14 | 09/06-09/16 7:30PM CPS-MTS $150 NLH HPT MEGA TURBO | $150.00 |
| 9/15/2014 12:16:16AM | True | 9/20/14 | 09/20 1PM CPS-18C $1,650 HPT NLH CHAMPIONSHIP | $0.00 |
| 1/22/2015 12:52:56PM | False | 1/22/15 | DAILY 12PM $65 NLH  DOUBLESTACK | $65.00 |
| 5/16/2015  9:36:04PM | False | 5/16/15 | 05/16 5PM CSPC-18 $1,100 NO LIMIT HOLD'EM | $1,100.00 |
| 5/23/2015 12:20:51PM | False | 5/23/15 | 05/23 1PM CSPC-FREEROLL NO LIMIT HOLD'EM | $0.00 |
| 9/2/2015  4:43:32PM | False | 9/2/15 | 09/02 5PM CPS-1A $350 NO LIMIT HOLD'EM | $350.00 |
| 9/7/2015  9:02:45PM | False | 9/7/15 | 09/04-09/15 8PM CPS-MS $150 NLH MEGA SATELLITE | $150.00 |
| 2/16/2016  1:27:37PM | False | 2/16/16 | 02/16 1PM LAPC-38 $350 NLH TRIPLESTACK | $350.00 |
| 2/19/2016  7:08:33PM | False | 2/19/16 | 01/17-2/23 7PM LAPC-SS $225 SUPER SATELLITE | $225.00 |
| 2/19/2016 10:15:37PM | False | 2/19/16 | 01/15-2/3 9PM LAPC-150MS $150 MEGA SATELLITE | $150.00 |
| 2/11/2014  8:29:22PM | False | 2/11/14 | 01/18-2/25 7PM LAPC-SS $225 WPT SUPER SATELLITES | $225.00 |
| 1/10/2014  6:07:39PM | False | 1/10/14 | FRIDAY 6PM $150 NLH MEGASTACK | $150.00 |
| 1/10/2014  7:42:39PM | False | 1/10/14 | FRIDAY 6PM $150 NLH MEGASTACK | $150.00 |
| 1/20/2014  2:11:10PM | False | 1/20/14 | 01/20 1PM LAPC-2C1 $150 NL HOLD'EM DOUBLESTACK | $150.00 |
| 2/15/2014  1:19:36PM | False | 2/15/14 | 02/15 1PM LAPC-30B $570 NL HOLD'EM DOUBLESTACK | $570.00 |
| 5/13/2014  6:09:55PM | False | 5/13/14 | 05/13 6PM CSPC-16 $570 NO LIMIT HOLD'EM TURBO | $570.00 |
| 8/9/2014  1:58:37PM | False | 8/9/14 | SATURDAY 1PM $150 NLH MEGASTACK | $150.00 |
| 8/9/2014  2:21:20PM | False | 8/9/14 | SATURDAY 1PM $150 NLH MEGASTACK | $150.00 |
| 11/1/2014  3:07:29PM | False | 11/1/14 | SATURDAY 1PM $150 NLH MEGASTACK | $150.00 |
| 2/26/2015  7:53:37PM | False | 2/26/15 | 02/26 8PM LAPC-MS $1,100 MEGA SATELLITE | $1,100.00 |
| 2/27/2015  1:21:45PM | False | 2/27/15 | 02/27 12PM LAPC-MS $1,100 MEGA SATELLITE | $1,100.00 |
| 2/27/2015  5:27:12PM | False | 2/27/15 | 02/27 5PM LAPC-MS $1,100 MEGA SATELLITE | $1,100.00 |

# Tournament Entry Report By Player

**Start Date:  January 01, 2014**

**End Date:  April 28, 2016**

**Print Date/Time:  April 28, 2016          12:03 pm**

**Last Name:  MARTIROSIAN**

**First Name:  SHAHEN**

**Customer ID:  60686**

| Entry Date | Voided? | Tournament Date | Tournament Name | Buy-In Amount |
|---|---|---|---|---|
| 9/18/2015  8:02:30PM | False | 9/18/15 | 09/18 8:00PM CPS-MS $240 NLH CHAMPIONSHIP MEGA | $240.00 |
| 9/19/2015  12:52:13AM | False | 9/19/15 | 09/19 1PM CPS-9B $1,650 NL HOLD'EM MAIN EVENT | $1,650.00 |
| 1/16/2016  4:21:26PM | False | 1/16/16 | 01/16 1PM LAPC-2 $570 NO LIMIT HOLD'EM | $570.00 |
| 2/23/2016  7:32:57PM | False | 2/23/16 | 01/17-2/23 7PM LAPC-SS $225 SUPER SATELLITE | $225.00 |
| 2/24/2016  4:54:35PM | False | 2/24/16 | 02/24-25 5PM LAPC-150MS $150 MEGA SATELLITE | $150.00 |
| 2/18/2016  5:17:08PM | False | 2/18/16 | 02/17-2/19 LAPC 5PM $240 MEGA SATELLITE | $240.00 |
| 11/21/2015  1:46:04PM | False | 11/21/15 | 11/21 1PM LAPO-18B $1,650 NL HOLD'EM CHAMPIONSHIP | $1,650.00 |
| 11/21/2015  3:43:04PM | False | 11/21/15 | 11/21 1PM LAPO-18B $1,650 NL HOLD'EM CHAMPIONSHIP | $1,650.00 |
| 1/23/2016  12:44:07PM | False | 1/23/16 | 01/23 1PM LAPC-5F1 $240 NLH DOUBLESTACK TURBO | $240.00 |
| 2/6/2016  2:32:24PM | False | 2/6/16 | 02/06 1PM LAPC-29 $350 NO LIMIT HOLD'EM | $350.00 |
| 1/23/2016  4:56:15PM | False | 1/23/16 | 01/23 5PM LAPC-5F2 $240 NLH DOUBLESTACK TURBO | $240.00 |
| 2/16/2014  1:34:08PM | False | 2/16/14 | 02/16 1PM LAPC-33 $350 KNOCKOUT BOUNTY NL HOLD'EM | $350.00 |
| 3/29/2014  1:18:38PM | False | 3/29/14 | SATURDAY 1PM $150 NLH MEGASTACK | $150.00 |
| 3/29/2014  2:48:46PM | False | 3/29/14 | SATURDAY 1PM $150 NLH MEGASTACK | $150.00 |
| 3/31/2014  12:56:04PM | False | 3/31/14 | DAILY 12PM $65 NLH  DOUBLESTACK | $65.00 |
| 9/9/2014  9:03:27PM | False | 9/9/14 | 09/06-09/16 7:30PM CPS-MTS $150 NLH HPT MEGA TURBO | $150.00 |
| 12/6/2014  1:51:55PM | False | 12/6/14 | SATURDAY 1PM $150 NLH MEGASTACK | $150.00 |
| 12/27/2014  1:05:55PM | False | 12/27/14 | SATURDAY 1PM $150 NLH MEGASTACK | $150.00 |
| 2/17/2015  1:35:54PM | False | 2/17/15 | 02/17 1PM LAPC-33 $350 NO LIMIT HOLD'EM | $350.00 |
| 2/17/2015  5:16:53PM | False | 2/17/15 | 02/14,02/17-20,02/22-26 5PM LAPC-LNM $150 MEGA | $150.00 |
| 2/17/2015  8:32:10PM | False | 2/17/15 | 01/25-02/25 7PM LAPC-SS $225 SUPER SATELLITE | $225.00 |
| 2/19/2015  2:14:32PM | False | 2/19/15 | 02/19 1PM LAPC-35A $1,100 PLAYBOY NO LIMIT HOLD'EM | $1,100.00 |
| 9/11/2015  3:10:42PM | False | 9/11/15 | 09/11 1PM CPS-4B $1,100 PLAYBOY NO LIMIT HOLD'EM | $1,100.00 |
| 9/12/2015  2:08:34PM | False | 9/12/15 | 09/12 1PM CPS-4C $1,100 PLAYBOY NO LIMIT HOLD'EM | $1,100.00 |
| 1/15/2016  3:59:58PM | False | 1/15/16 | 01/15 5PM LAPC-1 $175 NO LIMIT HOLD'EM | $175.00 |
| 2/25/2016  1:23:00PM | False | 2/25/16 | 02/25 11AM LAPC-50 $570  NLH SENIORS CHAMPIONSHIP | $570.00 |
| 2/26/2016  5:48:02PM | False | 2/26/16 | 02/27 LAPC-MS 5pm $1,100 MEGA SATELLITE | $1,100.00 |
| 2/4/2014  5:32:25PM | False | 2/4/14 | 02/04 5PM LAPC-20A2 $150 NLH DOUBLESTACK TURBO | $150.00 |
| 2/2/2014  8:32:49PM | False | 2/2/14 | 02/02 8PM LAPC-17 $150 LATE NIGHT POST GAME TURBO | $150.00 |
| 2/3/2014  2:16:54PM | False | 2/3/14 | 02/03 1PM LAPC-18 $235 NO LIMIT HOLD'EM SHOOTOUT | $235.00 |
| 2/20/2014  4:54:39PM | False | 2/20/14 | 02/20 4PM LAPC-41MS $230 PLAYBOY MEGA SATELLITE | $230.00 |

## Tournament Entry Report By Player

**Start Date: January 01, 2014**

**End Date: April 28, 2016**

**Print Date/Time:  April 28, 2016        12:03 pm**

**Last Name:  MARTIROSIAN**

**First Name:  SHAHEN**

**Customer ID:  60686**

| Entry Date | Voided? | Tournament Date | Tournament Name | Buy-In Amount |
|---|---|---|---|---|
| 2/27/2014  11:42:55AM | False | 2/27/14 | 02/27 11AM LAPC-52 $570 NLH SENIORS CHAMPIONSHIP | $570.00 |
| 9/9/2014   5:00:56PM | False | 9/9/14 | 09/09 5PM CPS-6 $240 NL HOLD'EM DOUBLESTACK TURBO | $240.00 |
| 2/14/2015   1:53:00PM | False | 2/14/15 | 02/14 1PM LAPC-28C $570 NO LIMIT HOLD'EM | $570.00 |
| 2/15/2015   7:54:19PM | False | 2/15/15 | 01/25-02/25 7PM LAPC-SS $225 SUPER SATELLITE | $225.00 |
| 3/4/2015   4:56:19PM | False | 3/4/15 | 03/04 4PM LAPC-52 $1,100 NLH BOUNTY TURBO | $1,100.00 |
| 5/7/2015  10:16:03PM | False | 5/10/15 | 05/10 2PM CSPC-09 DAY 2 $240 NO LIMIT HOLD'EM | $0.00 |
| 5/16/2015   1:50:20PM | False | 5/16/15 | 05/16 1PM CSPC-17B $1,650 NLH MAIN EVENT | $1,650.00 |
| 9/7/2015   2:00:35PM | False | 9/7/15 | 09/07 2PM CPS-3A $570 NO LIMIT HOLD'EM | $570.00 |
| 2/18/2016   9:01:26PM | False | 2/18/16 | 01/17-2/23 7PM LAPC-SS $225 SUPER SATELLITE | $225.00 |
| 1/22/2014   2:29:48PM | False | 1/22/14 | 01/22 1PM LAPC-2E1 $150 NL HOLD'EM DOUBLESTACK | $150.00 |
| 2/12/2014   1:55:28PM | False | 2/12/14 | 02/12 1PM LAPC-26 $350 NL HOLD'EM DOUBLESTACK | $350.00 |
| 1/22/2014   6:36:21PM | False | 1/22/14 | 01/22 5PM LAPC-2E2 $150 NL HOLD'EM DOUBLESTACK | $150.00 |
| 4/2/2014   1:19:01PM | False | 4/2/14 | DAILY 12PM $65 NLH  DOUBLESTACK | $65.00 |
| 11/21/2014   1:41:35PM | False | 11/21/14 | 11/21 1PM LAPC-18B $1,600 NL HOLD'EM CHAMPIONSHIP | $1,600.00 |
| 11/9/2014   3:19:39PM | False | 11/9/14 | 11/09 2PM LAPO-3 $350 NL HOLD'EM KNOCKOUT BOUNTY | $350.00 |
| 11/22/2014   2:53:08PM | False | 11/22/14 | 11/22 1PM LAPO-18C $1,600 NL HOLD'EM CHAMPIONSHIP | $1,600.00 |
| 11/22/2014   7:00:54PM | False | 11/22/14 | 11/22 6PM LAPO-19 $1,100 NLH KNOCKOUT BOUNTY TURBO | $1,100.00 |
| 1/25/2015   1:42:16PM | False | 1/25/15 | 01/25 1PM LAPC-3 $350 NL HOLD'EM KNOCKOUT BOUNTY | $350.00 |
| 1/25/2015   8:38:38PM | False | 1/25/15 | 01/25-02/25 7PM LAPC-SS $225 SUPER SATELLITE | $225.00 |
| 1/26/2015   6:17:00PM | False | 1/26/15 | 01/26 5PM LAPC-6 $240 4XSTACK NLH 8 HRS TIME'S UP | $240.00 |
| 4/18/2015   2:08:27PM | False | 4/18/15 | SATURDAY 1PM $150 NLH MEGASTACK | $150.00 |
| 4/18/2015   3:10:37PM | False | 4/18/15 | SATURDAY 1PM $150 NLH MEGASTACK | $150.00 |
| 9/15/2015   8:12:34PM | False | 9/15/15 | 09/04-09/15 8PM CPS-MS $150 NLH MEGA SATELLITE | $150.00 |
| 1/23/2016   8:43:53PM | False | 1/23/16 | 01/23 5PM LAPC-5F2 $240 NLH DOUBLESTACK TURBO | $240.00 |
| 1/28/2014   4:04:11PM | False | 1/28/14 | 01/28 4PM LAPC-8 $350 NLH SURVIVOR DOUBLESTACK | $350.00 |
| 3/22/2014   2:22:41PM | False | 3/22/14 | SATURDAY 1PM $150 NLH MEGASTACK | $150.00 |
| 3/22/2014   2:37:25PM | False | 3/22/14 | SATURDAY 1PM $150 NLH MEGASTACK | $150.00 |
| 3/23/2014   1:47:43PM | False | 3/23/14 | SUNDAY $65 NLH | $65.00 |
| 4/9/2014  12:14:49PM | False | 4/9/14 | DAILY 12PM $65 NLH  DOUBLESTACK | $65.00 |
| 1/23/2015  11:33:04AM | False | 1/23/15 | 01/23-02/20 11AM BANKROLL BUILDER | $125.00 |
| 9/8/2015   2:50:25PM | False | 9/8/15 | 09/08 2PM CPS-3B $570 NO LIMIT HOLD'EM | $570.00 |
| 9/17/2015   2:28:51PM | False | 9/17/15 | 09/17 2PM CPS-MS $240 NLH CHAMPIONSHIP MEGA | $240.00 |

# Tournament Entry Report By Player

**Start Date:** January 01, 2014

**End Date:** April 28, 2016

**Print Date/Time:** April 28, 2016        12:03 pm

**Last Name:** MARTIROSIAN

**First Name:** SHAHEN

**Customer ID:** 60686

| Entry Date | Voided? | Tournament Date | Tournament Name | Buy-In Amount |
|---|---|---|---|---|
| 9/8/2015  8:36:48PM | False | 9/8/15 | 09/04-09/15 8PM CPS-MS $150 NLH MEGA SATELLITE | $150.00 |
| 9/9/2015  2:04:53PM | False | 9/9/15 | 09/09 2PM CPS-3C $570 NO LIMIT HOLD'EM | $570.00 |
| 2/12/2016  4:54:27PM | False | 2/12/16 | 02/12 5PM LAPC-35MS $75 MEGA SATELLITE | $75.00 |
| 2/12/2016  6:19:58PM | False | 2/12/16 | 02/12 5PM LAPC-35MS $75 MEGA SATELLITE | $75.00 |
| 2/13/2016  1:05:26PM | False | 2/13/16 | 02/13 1PM LAPC-35C $570 NO LIMIT HOLD'EM | $570.00 |
| 2/20/2016  1:40:21PM | False | 2/20/16 | 02/20 1PM LAPC-40C $1,650 PLAYBOY NO LIMIT HOLD'EM | $1,650.00 |
| 2/13/2016  2:18:56PM | False | 2/13/16 | 02/13 1PM LAPC-35C $570 NO LIMIT HOLD'EM | $570.00 |
| 2/24/2016  5:24:45PM | False | 2/24/16 | 02/24-25 5PM LAPC-150MS $150 MEGA SATELLITE | $150.00 |
| 2/24/2016  6:15:02PM | False | 2/24/16 | 02/24-25 5PM LAPC-150MS $150 MEGA SATELLITE | $150.00 |
| 2/7/2014  5:23:39PM | False | 2/7/14 | 02/07 5PM LAPC-20D2 $150 NLH DOUBLESTACK TURBO | $150.00 |
| 2/8/2014  12:11:42PM | False | 2/8/14 | 02/08 1PM LAPC-20E1 $150 NLH DOUBLESTACK TURBO | $150.00 |
| 2/17/2014  2:05:56PM | False | 2/17/14 | 02/17 1PM LAPC-35 $570 NL HOLD'EM MIXED HANDED | $570.00 |
| 2/4/2015  1:44:09PM | False | 2/4/15 | 02/04 1PM LAPC-20B1 $240 NO LIMIT HOLD'EM | $240.00 |
| 2/4/2015  5:09:32PM | False | 2/4/15 | 02/04 5PM LAPC-20B2 $240 NO LIMIT HOLD'EM | $240.00 |
| 5/1/2015  5:01:30PM | False | 5/1/15 | 05/01 5PM CSPC-01 $175 NO LIMIT HOLD'EM | $175.00 |
| 5/13/2015  3:20:31PM | False | 5/13/15 | 05/13 2PM CSPC-16 $350 NO LIMIT HOLD'EM | $350.00 |
| 5/13/2015  5:16:55PM | False | 5/13/15 | 05/13 5PM CSPC-MS $240 NLH MEGA SATELLITE | $240.00 |
| 9/16/2015  2:54:00PM | False | 9/16/15 | 09/16 2PM CPS-8C $570 NO LIMIT HOLD'EM | $570.00 |
| 2/20/2016  9:54:08PM | False | 2/20/16 | 01/15-2/23 9PM LAPC-10MS $150 MEGA SATELLITE | $150.00 |
| 1/21/2014  7:15:16PM | False | 1/21/14 | 01/21 5PM LAPC-2D2 $150 NL HOLD'EM DOUBLESTACK | $150.00 |
| 2/25/2014  2:12:01PM | False | 2/25/14 | 02/25 1PM LAPC-47 $1,100 JERRY STENSRUD NL HOLD'EM | $1,100.00 |
| 2/25/2014  6:59:32PM | False | 2/25/14 | 01/18-2/25 7PM LAPC-SS $225 WPT SUPER SATELLITES | $225.00 |
| 9/26/2014  6:57:20PM | False | 9/26/14 | FRIDAY 6PM $150 NLH MEGASTACK | $150.00 |
| 1/20/2015  12:30:21PM | False | 1/20/15 | DAILY 12PM $65 NLH  DOUBLESTACK | $65.00 |
| 1/17/2015  1:18:59PM | False | 1/17/15 | 01/12-1/16 6PM LAPC-570MS $75 NLH MEGA SATELLITE | $75.00 |
| 1/17/2015  5:19:51PM | False | 1/24/15 | 01/24 1PM LAPC-2 $570 NO LIMIT HOLD'EM | $570.00 |
| 9/13/2015  1:52:52PM | False | 9/13/15 | 09/13 1PM CPS-6 $350 NL HOLD'EM KNOCKOUT BOUNTY | $350.00 |
| 9/13/2015  6:04:23PM | False | 9/13/15 | 09/13 6PM CPS-7 $75 FACEBOOK EXCLUSIVE NL HOLD'EM | $75.00 |
| 9/13/2015  9:13:06PM | False | 9/13/15 | 09/04-09/15 8PM CPS-MS $150 NLH MEGA SATELLITE | $150.00 |
| 9/17/2015  7:59:50PM | False | 9/18/15 | 09/18 1PM CPS-9A $1,650 NL HOLD'EM MAIN EVENT | $1,650.00 |
| 6/27/2014  5:30:42PM | False | 6/27/14 | FRIDAY 6PM $150 NLH MEGASTACK | $150.00 |
| 2/12/2014  8:32:04PM | False | 2/12/14 | 01/18-2/25 7PM LAPC-SS $225 WPT SUPER SATELLITES | $225.00 |

# Tournament Entry Report By Player

**Start Date:** January 01, 2014

**End Date:** April 28, 2016

**Print Date/Time:** April 28, 2016        12:03 pm

**Last Name:** MARTIROSIAN

**First Name:** SHAHEN

**Customer ID:** 60686

| Entry Date | Voided? | Tournament Date | Tournament Name | Buy-In Amount |
|---|---|---|---|---|
| 1/23/2014  6:20:28PM | False | 1/23/14 | 01/23 5PM LAPC-2F2 $150 NL HOLD'EM DOUBLESTACK | $150.00 |
| 2/28/2014  12:50:17PM | False | 2/28/14 | 02/28 12PM LAPC-MS $1,100 WPT MAIN EVENT SATELLITE | $1,100.00 |
| 2/23/2014  1:08:49PM | False | 2/23/14 | 02/23 1PM LAPC-43 $350 NLH TRIPLESTACK TURBO | $350.00 |
| 5/9/2014  4:31:24PM | False | 5/9/14 | 05/09 3PM CSPC-10 $350 NO LIMIT HOLD'EM | $350.00 |
| 2/5/2015  1:34:18PM | False | 2/5/15 | 02/05 1PM LAPC-20C1 $240 NO LIMIT HOLD'EM | $240.00 |
| 2/5/2015  5:32:24PM | False | 2/5/15 | 02/05 5PM LAPC-20C2 $240 NO LIMIT HOLD'EM | $240.00 |
| 4/17/2015  7:15:16PM | False | 4/17/15 | FRIDAY 6PM $150 NLH MEGASTACK | $150.00 |
| 7/17/2015  1:20:59PM | False | 7/17/15 | DAILY 12PM $65 NLH  DOUBLESTACK | $65.00 |
| 1/5/2014  1:21:01PM | False | 1/5/14 | SUNDAY $65 NLH | $65.00 |
| 2/9/2014  1:00:54PM | False | 2/9/14 | 02/09 1PM LAPC-21 $235 KNOCKOUT BOUNTY NL HOLD'EM | $235.00 |
| 5/10/2014  5:10:54PM | False | 5/10/14 | 05/10 1PM CSPC-11 $570 NL HOLD'EM DOUBLESTACK | $570.00 |
| 5/17/2014  1:51:34PM | False | 5/17/14 | 05/17 1PM CSPC-17C $1,650 HPT NLH CHAMPIONSHIP | $1,650.00 |
| 9/7/2014  5:00:42PM | False | 9/7/14 | 09/07 5PM CPS-2 $240 NL HOLD'EM DOUBLESTACK TURBO | $240.00 |
| 9/7/2014  5:37:10PM | False | 9/7/14 | 09/07 5PM CPS-2 $240 NL HOLD'EM DOUBLESTACK TURBO | $240.00 |
| 3/1/2015  4:14:02PM | False | 3/1/15 | 03/01 4PM LAPC-48 $2,140 7 MAX NO LIMIT HOLD'EM | $2,140.00 |
| 2/12/2015  5:04:38PM | False | 2/12/15 | 02/11-02/13 5PM LAPC-570MS $75 NLH MEGA SATELLITE | $75.00 |
| 3/28/2015  2:24:17PM | False | 3/28/15 | SATURDAY 1PM $150 NLH MEGASTACK | $150.00 |
| 2/27/2016  2:37:35AM | False | 2/27/16 | 02/27 12PM LAPC-51 $10,000 WPT NLH CHAMPIONSHIP | $10,000.00 |
| 3/1/2016  3:22:04PM | False | 3/1/16 | 03/01 1PM LAPC-$550MEGA SATELLITE FOR EVENT #55 | $550.00 |
| 3/1/2016  4:59:47PM | False | 3/1/16 | 03/01 6PM LAPC-55 $5100 6H HIGH ROLLER TURBO W/RBS | $5,100.00 |
| 1/19/2014  1:40:52PM | False | 1/19/14 | 01/19 1PM LAPC-2B1 $150 NL HOLD'EM DOUBLESTACK | $150.00 |
| 2/19/2014  5:38:23PM | False | 2/19/14 | 02/19 4PM LAPC-40 $350 NLH DOUBLESTACK TURBO | $350.00 |
| 2/9/2014  6:36:38PM | False | 2/9/14 | 02/09 6PM LAPC-24MS $150 NL HOLD'EM MEGA SATELLITE | $150.00 |
| 2/9/2014  10:56:08PM | False | 2/11/14 | 02/11 1PM LAPC-24 $1,100 NO LIMIT HOLD'EM | $1,100.00 |
| 2/1/2014  1:35:02PM | False | 2/1/14 | 02/01 1PM LAPC-15 $350 NO LIMIT HOLD'EM | $350.00 |
| 2/2/2015  1:30:07PM | False | 2/2/15 | 02/02 1PM LAPC-18 $1,100 NO LIMIT HOLD'EM | $1,100.00 |
| 7/15/2015  6:39:14PM | False | 7/15/15 | DAILY 12 PM $65 NLH  DOUBLESTACK | $65.00 |
| 7/24/2015  6:15:28PM | False | 7/24/15 | FRIDAY 6PM $150 NLH MEGASTACK | $150.00 |
| 9/15/2015  2:12:53PM | False | 9/15/15 | 09/15 2PM CPS-8B $570 NO LIMIT HOLD'EM | $570.00 |
| 1/24/2014  1:31:43PM | False | 1/24/14 | 01/24 1PM LAPC-2G1 $150 NL HOLD'EM DOUBLESTACK | $150.00 |

## Tournament Entry Report By Player

**Start Date:** January 01, 2014

**End Date:** April 28, 2016

**Print Date/Time:** April 28, 2016    12:03 pm

**Last Name:** MARTIROSIAN

**First Name:** SHAHEN

**Customer ID:** 60686

| Entry Date | Voided? | Tournament Date | Tournament Name | Buy-In Amount |
|---|---|---|---|---|
| 1/24/2014  5:30:19PM | False | 1/24/14 | 01/24 5PM LAPC-2G2 $150 NL HOLD'EM DOUBLESTACK | $150.00 |
| 2/28/2014  9:08:36PM | False | 3/1/14 | 03/01 12PM LAPC-55 $10,000 WPT CHAMPIONSHIP | $10,000.00 |
| 12/20/2014  1:28:15PM | False | 12/20/14 | SATURDAY 1PM $150 NLH MEGASTACK | $150.00 |
| 12/20/2014  2:29:32PM | False | 12/20/14 | SATURDAY 1PM $150 NLH MEGASTACK | $150.00 |
| 2/7/2015  12:44:50PM | False | 2/7/15 | 02/07 1PM LAPC-20E1 $240 NO LIMIT HOLD'EM | $240.00 |
| 2/7/2015  3:48:26PM | False | 2/7/15 | 02/07 5PM LAPC-20E2 $240 NO LIMIT HOLD'EM | $240.00 |
| 5/12/2014  7:15:00PM | False | 5/12/15 | 05/12 5PM CSPC-15 $350 NLH 8 HRS & TIME TO CHOP | $350.00 |
| 7/18/2015  1:39:55PM | False | 7/18/15 | SATURDAY 1PM $150 NLH MEGASTACK | $150.00 |
| 7/18/2015  2:44:07PM | False | 7/18/15 | SATURDAY 1PM $150 NLH MEGASTACK | $150.00 |
| 1/17/2014  4:22:39PM | False | 1/17/14 | 01/17 5PM LAPC-1 $75 FACEBOOK EXCLUSIVE NL HOLD'EM | $75.00 |
| 2/22/2014  1:16:25PM | False | 2/22/14 | 02/22 1PM LAPC-41C $1,600 PLAYBOY POKER TOURNAMENT | $1,600.00 |
| 7/27/2014  1:17:26PM | False | 7/27/14 | SUNDAY $65 NLH | $65.00 |
| 11/7/2014  5:15:50PM | False | 11/7/14 | 11/07 5PM LAPO-1 $160 NO LIMIT HOLD'EM | $160.00 |
| 11/8/2014  2:19:31PM | False | 11/8/14 | 11/08 2PM LAPO-2 $350 NO LIMIT HOLD'EM | $350.00 |
| 2/6/2015  1:45:59PM | False | 2/6/15 | 02/06 1PM LAPC-20D1 $240 NO LIMIT HOLD'EM | $240.00 |
| 2/6/2015  5:29:03PM | False | 2/6/15 | 02/06 5PM LAPC-20D2 $240 NO LIMIT HOLD'EM | $240.00 |
| 5/10/2015  2:35:49PM | False | 5/10/15 | 05/10 1PM CSPC-10 $240 NLH KNOCKOUT BOUNTY | $240.00 |
| 7/17/2015  5:39:27PM | False | 7/17/15 | FRIDAY 6PM $150 NLH MEGASTACK | $150.00 |
| 1/29/2016  2:19:10PM | False | 1/29/16 | 01/29 1PM LAPC-16C1 $350 NO LIMIT HOLD'EM | $350.00 |
| 1/29/2016  11:47:14PM | False | 1/31/16 | 01/31 2PM LAPC-16 $350 NO LIMIT HOLD'EM DAY 2 | $0.00 |
| 2/6/2014  2:01:58PM | False | 2/6/14 | 02/06 1PM LAPC-20C1 $150 NLH DOUBLESTACK TURBO | $150.00 |
| 2/6/2014  5:27:21PM | False | 2/6/14 | 02/06 5PM LAPC-20C2 $150 NLH DOUBLESTACK TURBO | $150.00 |
| 1/25/2014  12:32:25PM | False | 1/25/14 | 01/25 1PM LAPC-2H1 $150 NL HOLD'EM DOUBLESTACK | $150.00 |
| 2/26/2014  2:48:59PM | False | 2/26/14 | 02/26 1PM LAPC-50 $350 NO LIMIT HOLD'EM | $350.00 |
| 9/16/2014  4:10:37PM | False | 9/16/14 | 09/16 2PM CPS-16 $240 NL HOLD'EM DOUBLESTACK TURBO | $240.00 |
| 9/16/2014  8:01:37PM | False | 9/16/14 | 09/06-09/16 7:30PM CPS-MTS $150 NLH HPT MEGA TURBO | $150.00 |
| 11/28/2014  5:05:35PM | False | 11/28/14 | FRIDAY 6PM $150 NLH MEGASTACK | $150.00 |
| 12/22/2014  12:37:04PM | False | 12/22/14 | DAILY 12PM $65 NLH  DOUBLESTACK | $65.00 |
| 11/28/2014  7:01:01PM | False | 11/28/14 | FRIDAY 6PM $150 NLH MEGASTACK | $150.00 |
| 1/2/2015  7:04:15PM | False | 1/2/15 | FRIDAY 6PM $150 NLH MEGASTACK | $150.00 |
| 2/12/2015  7:54:57PM | False | 2/12/15 | 01/25-02/25 7PM LAPC-SS $225 SUPER SATELLITE | $225.00 |
| 2/8/2015  3:06:42AM | False | 2/8/15 | 02/08 2PM LAPC-20 DAY 2 $240 NO LIMIT HOLD'EM | $0.00 |
| 5/3/2015  6:11:26PM | False | 5/3/15 | 05/03 5PM CSPC-04 $75 FACEBOOK EXCLUSIVE NLH | $75.00 |
| 5/14/2015  5:25:15PM | False | 5/14/15 | 05/14 5PM CSPC-MS $240 NLH MEGA SATELLITE | $240.00 |

**Total:** **$118,615.00**

**PLAYER CARD ACTIVITY JANUARY 01, 2014 TO PRESENT**

| Player ID | Player: Play | Gaming Da | Game Type | Game Name | Hands | Play Time Played |
|---|---|---|---|---|---|---|
| 60686 | SHAHEN M | ######## | NL HOLDEN | 300.00 - 500.00 NL HOLDEM | 32 | 1.22 |
| 60686 | SHAHEN M | ######## | NL HOLDEN | 200.00 - 0.00 NL HOLDEM | 12 | 0.47 |
| 60686 | SHAHEN M | ######## | NL HOLDEN | 300.00 - 500.00 NL HOLDEM | 202 | 5.21 |
| 60686 | SHAHEN M | ######## | NL HOLDEN | 200.00 - 0.00 NL HOLDEM | 3 | 0.09 |
| 60686 | SHAHEN M | ######## | NL HOLDEN | 300.00 - 500.00 NL HOLDEM | 15 | 0.41 |
| 60686 | SHAHEN M | ######## | NL HOLDEN | 200.00 - 0.00 NL HOLDEM | 46 | 1.88 |
| 60686 | SHAHEN M | ######## | NL HOLDEN | 200.00 - 0.00 NL HOLDEM | 30 | 1.21 |
| 60686 | SHAHEN M | ######## | NL HOLDEN | 200.00 - 0.00 NL HOLDEM | 75 | 2.95 |
| 60686 | SHAHEN M | ######## | NL HOLDEN | 200.00 - 0.00 NL HOLDEM | 67 | 3.19 |
| 60686 | SHAHEN M | 5/2/2015 | NL HOLDEN | 200.00 - 0.00 NL HOLDEM | 1 | 0.02 |
| 60686 | SHAHEN M | 5/2/2015 | NL HOLDEN | 200.00 - 0.00 NL HOLDEM | 67 | 1.67 |
| 60686 | SHAHEN M | 5/8/2015 | NL HOLDEN | 200.00 - 0.00 NL HOLDEM | 55 | 1.58 |
| 60686 | SHAHEN M | 5/8/2015 | NL HOLDEN | 200.00 - 0.00 NL HOLDEM | 10 | 0.25 |
| 60686 | SHAHEN M | 5/8/2015 | NL HOLDEN | 200.00 - 0.00 NL HOLDEM | 37 | 0.95 |
| 60686 | SHAHEN M | ######## | NL HOLDEN | 200.00 - 0.00 NL HOLDEM | 23 | 0.69 |
| 60686 | SHAHEN M | ######## | NL HOLDEN | 200.00 - 0.00 NL HOLDEM | 90 | 2.37 |
| 60686 | SHAHEN M | ######## | NL HOLDEN | 300.00 - 500.00 NL HOLDEM | 154 | 4.41 |
| 60686 | SHAHEN M | ######## | NL HOLDEN | 200.00 - 0.00 NL HOLDEM | 50 | 1.97 |
| 60686 | SHAHEN M | ######## | NL HOLDEN | 200.00 - 0.00 NL HOLDEM | 39 | 1.02 |
| 60686 | SHAHEN M | ######## | NL HOLDEN | 200.00 - 0.00 NL HOLDEM | 0 | 0 |
| 60686 | SHAHEN M | ######## | NL HOLDEN | 200.00 - 0.00 NL HOLDEM | 69 | 1.98 |
| 60686 | SHAHEN M | ######## | NL HOLDEN | 200.00 - 0.00 NL HOLDEM | 99 | 3.1 |
| 60686 | SHAHEN M | ######## | NL HOLDEN | 200.00 - 0.00 NL HOLDEM | 0 | 0 |
| 60686 | SHAHEN M | ######## | NL HOLDEN | 200.00 - 0.00 NL HOLDEM | 2 | 0.03 |
| 60686 | SHAHEN M | ######## | NL HOLDEN | 200.00 - 0.00 NL HOLDEM | 17 | 0.49 |
| 60686 | SHAHEN M | ######## | NL HOLDEN | 200.00 - 0.00 NL HOLDEM | 30 | 0.8 |
| 60686 | SHAHEN M | ######## | NL HOLDEN | 200.00 - 0.00 NL HOLDEM | 8 | 0.19 |
| 60686 | SHAHEN M | ######## | NL HOLDEN | 200.00 - 0.00 NL HOLDEM | 36 | 0.88 |
| 60686 | SHAHEN M | ######## | NL HOLDEN | 200.00 - 0.00 NL HOLDEM | 4 | 0.15 |
| 60686 | SHAHEN M | ######## | NL HOLDEN | 300.00 - 500.00 NL HOLDEM | 43 | 1.12 |
| 60686 | SHAHEN M | 9/2/2015 | NL HOLDEN | 300.00 - 500.00 NL HOLDEM | 5 | 0.16 |
| 60686 | SHAHEN M | 9/2/2015 | NL HOLDEN | 300.00 - 500.00 NL HOLDEM | 36 | 1.15 |
| 60686 | SHAHEN M | 9/7/2015 | X - NL HOLI | 500.00 - 1500.00 X - NL HOLDEI | 12 | 0.3 |
| 60686 | SHAHEN M | 9/7/2015 | NL HOLDEN | 200.00 - 0.00 NL HOLDEM | 80 | 2.93 |
| 60686 | SHAHEN M | 9/8/2015 | NL HOLDEN | 200.00 - 0.00 NL HOLDEM | 56 | 1.98 |
| 60686 | SHAHEN M | 9/9/2015 | NL HOLDEN | 300.00 - 500.00 NL HOLDEM | 94 | 2.56 |
| 60686 | SHAHEN M | 9/9/2015 | NL HOLDEN | 300.00 - 500.00 NL HOLDEM | 42 | 1.25 |
| 60686 | SHAHEN M | ######## | NL HOLDEN | 200.00 - 0.00 NL HOLDEM | 37 | 1.03 |
| 60686 | SHAHEN M | ######## | NL HOLDEN | 200.00 - 0.00 NL HOLDEM | 15 | 0.39 |
| 60686 | SHAHEN M | ######## | POT LIMIT | 100.00 - 300.00 POT LIMIT OM/ | 5 | 0.35 |
| 60686 | SHAHEN M | ######## | NL HOLDEN | 200.00 - 0.00 NL HOLDEM | 27 | 0.62 |
| 60686 | SHAHEN M | ######## | NL HOLDEN | 200.00 - 0.00 NL HOLDEM | 24 | 0.81 |
| 60686 | SHAHEN M | ######## | NL HOLDEN | 200.00 - 0.00 NL HOLDEM | 34 | 0.97 |
| 60686 | SHAHEN M | 9/2/2015 | NL HOLDEN | 200.00 - 0.00 NL HOLDEM | 74 | 2.12 |
| 60686 | SHAHEN M | 9/2/2015 | NL HOLDEN | 300.00 - 500.00 NL HOLDEM | 11 | 0.39 |
| 60686 | SHAHEN M | ######## | NL HOLDEN | 300.00 - 500.00 NL HOLDEM | 15 | 0.42 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 60686 | SHAHEN M | ######## | NO COLLEC | 50.00 - 300.00 NO COLLECTION | 7 | 0.17 |
| 60686 | SHAHEN M | ######## | NL HOLDEM | 300.00 - 500.00 NL HOLDEM | 46 | 1.45 |
| 60686 | SHAHEN M | ######## | NL HOLDEM | 200.00 - 0.00 NL HOLDEM | 12 | 0.35 |
| 60686 | SHAHEN M | ######## | NL HOLDEM | 300.00 - 500.00 NL HOLDEM | 24 | 1.02 |
| 60686 | SHAHEN M | ######## | NL HOLDEM | 300.00 - 500.00 NL HOLDEM | 18 | 0.58 |
| 60686 | SHAHEN M | ######## | NL HOLDEM | 200.00 - 0.00 NL HOLDEM | 49 | 1.41 |
| 60686 | SHAHEN M | ######## | NL HOLDEM | 200.00 - 0.00 NL HOLDEM | 27 | 0.73 |
| 60686 | SHAHEN M | ######## | NL HOLDEM | 200.00 - 0.00 NL HOLDEM | 18 | 0.53 |
| 60686 | SHAHEN M | ######## | NL HOLDEM | 300.00 - 500.00 NL HOLDEM | 60 | 1.53 |
| 60686 | SHAHEN M | ######## | NL HOLDEM | 300.00 - 500.00 NL HOLDEM | 5 | 0.25 |
| 60686 | SHAHEN M | ######## | NL HOLDEM | 200.00 - 0.00 NL HOLDEM | 57 | 1.49 |
| 60686 | SHAHEN M | ######## | NL HOLDEM | 200.00 - 0.00 NL HOLDEM | 39 | 1.52 |
| 60686 | SHAHEN M | ######## | NL HOLDEM | 200.00 - 0.00 NL HOLDEM | 45 | 1.51 |
| 60686 | SHAHEN M | ######## | NL HOLDEM | 200.00 - 0.00 NL HOLDEM | 39 | 1.32 |
| 60686 | SHAHEN M | ######## | NL HOLDEM | 200.00 - 0.00 NL HOLDEM | 15 | 0.7 |
| 60686 | SHAHEN M | ######## | NL HOLDEM | 200.00 - 0.00 NL HOLDEM | 46 | 1.95 |
| 60686 | SHAHEN M | ######## | NL HOLDEM | 200.00 - 0.00 NL HOLDEM | 27 | 1.13 |
| 60686 | SHAHEN M | ######## | NL HOLDEM | 200.00 - 0.00 NL HOLDEM | 10 | 0.52 |
| 60686 | SHAHEN M | ######## | X - NL HOL | 500.00 - 1500.00 X - NL HOLDEI | 6 | 0.16 |
| 60686 | SHAHEN M | ######## | X - NL HOL | 500.00 - 1500.00 X - NL HOLDEI | 43 | 1.3 |
| 60686 | SHAHEN M | ######## | NO COLLEC | 10.00 - 100.00 NO COLLECTION | 33 | 0.67 |
| 60686 | SHAHEN M | ######## | NL HOLDEM | 100.00 - 0.00 NL HOLDEM | 51 | 2.3 |
| 60686 | SHAHEN M | ######## | NL HOLDEM | 200.00 - 0.00 NL HOLDEM | 17 | 0.48 |



April 26, 2016

Mr. Jonathan Malek, Deposition Officer
2629 Townsgate Road, Suite 140
Westlake Village, CA 91361

Re:    *Deposition Subpoena for Production of Business Records*
       *Los Angeles County Superior Court Case No. PC056789*
       *Khachatryan v. Martirosian; et al*

Dear Mr. Malek:

This letter pertains to the Deposition Subpoena for Production of Business Records issued to El Dorado
Enterprises, Inc., d/b/a Hustler Casino on March 21, 2016, for records relating to Shahen Martirosian.
Enclosed are all of the documents that are responsive to the Subpoena; no other responsive records or
documents exist.

Enclosed are the following responsive documents:

    (1) HUSTLER CASINO Player Account Overview
    (2) HUSTLER CASINO Player ID
    (3) HUSTLER CASINO Player Report
    (4) HUSTLER CASINO MTL Cash In/Out from January 1, 2014 to April 26, 2016
    (5) 2014 Form W-2G reporting $5,770.00 in gross winnings
    (6) 2014 Form W-2G reporting $7,110.00 in gross winnings
    (7) 2014 Form W-2G reporting $6,000.00 in gross winnings
    (8) Tournament Player Buy-In/Re-Buy Reports for Years 2014, 2015 and 2016
    (9) Tournament Sheets for 7/22/14, 7/30/14, 10/27/14 and 12/02/14 (redacted)

Sincerely,

El Dorado Enterprises, Inc.

Thomas H. Candy
CFO

Enclosures as stated above.

**1000 West Redondo Beach Boulevard, Gardena, CA 90247**
Phone: **(310) 719 9800** Fax: **(310) 515 0727**
http://www. **hustlercasinoLA.com**



**'LER CASINO**

04/15/2016 17:48

**HUSTLER CASINO**

**Player Account**

1

**HUSTLER CASINO**                                            04/15/2016 17:47



**PLAYER ID**        P000015020

**FIRST NAME**       SHAHEN

**MIDDLE NAME**

**LAST NAME**        MARTIROSIAN

**PICTURE TIMESTAMP**



---

**HUSTLER CASINO**

### Player Report
Report Time: 4/15/2016 6:17:16 PM



**00051083**
**Shahen Martirosian**
**Silver**

| | |
|---|---|
| Birthday On: | August 13 |
| Sign Up Date: | 04/09/2011 |
| Last Visit: | 04/09/2016 |
| Last Scan: | 4/9/2016 7:30:00 PM |

Up to Date Hustler Bucks: **0.00**

### Games and Hours Played During Month of April 2016

| Game | Hours |
|---|---|
| Daily Tournament | 8 |

### 12 Month Back History of Total Hours Played Monthly

| May'15 Hours | Jun'15 Hours | Jul'15 Hours | Aug'15 Hours | Sep'15 Hours | Oct'15 Hours | Nov'15 Hours | Dec'15 Hours | Jan'16 Hours | Feb'16 Hours | Mar'16 Hours | Apr'16 Hours |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 | | 1 | | | 1 | | 2 | | | | |

### 12 Month Back History of Total Tournament Visits Monthly

| May'15 Hours | Jun'15 Hours | Jul'15 Hours | Aug'15 Hours | Sep'15 Hours | Oct'15 Hours | Nov'15 Hours | Dec'15 Hours | Jan'16 Hours | Feb'16 Hours | Mar'16 Hours | Apr'16 Hours |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 12 | | | 13 | 6 | 1 | 2 | | | 8 |

### Promotions

| Promotion | Qualify Start Date | Qualify End Date | Hours |
|---|---|---|---|

| Promotion | Promo Start Date | Promo End Date | Apr'16 Hours | Mar'16 Hours | Feb'16 Hours | Jan'16 Hours | Dec'15 Hours | Nov'15 Hours |
|---|---|---|---|---|---|---|---|---|
| Pays To Play VIP No-Limit | 3/1/2012 | 3/1/2099 | | | | | 2 | |

| Draw Tickets | | Next Draw On | Qualify Start Time | Qualify Cut Off Time | Tickets |
|---|---|---|---|---|---|
| Wheel of Cash | | 04-15-2016 | 04-11-2016 | 04-17-2016 | 0 |

### Rewards

| Date Time Redeemed | Promotion | Chips / Hustler Bucks |
|---|---|---|
| Apr 3 2016 10:32PM | Tournament Other | 400.00 |
| Jan 10 2016 4:14PM | Tournament Other | 1925.00 |
| Dec 29 2015 11:57PM | Tournament Other | 2525.00 |

### Hustler Bucks Earnings and Usage

| Month Starting Balance | Month Ending Balance |
|---|---|
| 0.00 | 0.00 |

| - - - Usage - - - | Qty | Total Hustler Bucks |
|---|---|---|

## Player Report

Report Time: 4/15/2016 6:17:16 PM

| POS Transactions / Food Service | | 0 | | |

| - - - Earnings - - - | Qty | Total Hustler Bucks |
|---|---|---|
| Manual Adjustment | 0 | |
| Play Earnings | 8 | 0.00 |

### Details

| Type | Scan Time | | Tbl | Scans Game | Manager | Scan Upload Time | HBucks |
|---|---|---|---|---|---|---|---|
| Auto | 04/09/2016 14:09 | P | 8 | Daily Tournament | | 04/09/2016 14:09 | 0.00 |
| Auto | 04/09/2016 14:28 | P | 8 | Daily Tournament | | 04/09/2016 14:27 | 0.00 |
| Auto | 04/09/2016 19:30 | P | 5 | Daily Tournament | | 04/09/2016 19:29 | 0.00 |
| Auto | 04/06/2016 14:41 | P | 8 | Daily Tournament | | 04/06/2016 14:40 | 0.00 |
| Auto | 04/06/2016 17:57 | P | 12 | Daily Tournament | | 04/06/2016 17:57 | 0.00 |
| Auto | 04/03/2016 13:16 | P | 1 | Daily Tournament | | 04/03/2016 13:15 | 0.00 |
| Auto | 04/02/2016 14:23 | P | 5 | Daily Tournament | | 04/02/2016 14:23 | 0.00 |
| Auto | 04/02/2016 16:20 | P | 99 | Daily Tournament | | 04/02/2016 16:20 | 0.00 |

| Transaction Time | Charge | Food Server ID | POS Transactions Revenue Center | Chk Nbr |
|---|---|---|---|---|

*HUSTLER CASINO*                                                                04/26/2016 11:44

## MTL Cash In/Out



MTL Days from 01/01/2014 to 04/26/2016

Player ID:     P000015020

Player Name:   SHAHEN MARTIROSIAN



| Cash IN | | Cash Out | |
|---|---|---|---|
| All Cash In: | $2,500.00 | All Cash Out: | $63,175.00 |
| CTR Cash In: | $0.00 | CTR Cash Out: | $28,025.00 |
| Not in CTR: | $2,500.00 | Not in CTR: | $35,150.00 |
| Not in CTR(%): | 100% | Not in CTR(%): | 56% |
| MTL Days: | 1 | MTL Days: | 7 |
| CTR MTL Days: | 0 | CTR MTL Days: | 1 |
| Not in CTR MTL Days: | 1 | Not in CTR MTL Days | 6 |
| Not in CTR AVG: | $2,500.00 | Not in CTR AVG: | $5,858.33 |

| No | MTL Day | Cash IN | Cah Out |
|---|---|---|---|
| 1 | 07/23/2014 | 0.00 | 5,100.00 |
| 2 | 07/31/2014 | 0.00 | 9,225.00 |
| 3 | 10/28/2014 | 0.00 | 6,920.00 |
| 4 | 12/03/2014 | 0.00 | 5,900.00 |
| 5 | 11/03/2015 | 0.00 | 28,025.00 |
| 6 | 11/04/2015 | 0.00 | 2,005.00 |
| 7 | 11/04/2015 | 2,500.00 | 0.00 |
| 8 | 11/06/2015 | 0.00 | 6,000.00 |

$ 5770.00      07/22/2014

El Dorado Enterprises dba Hustler Casino
1000 West Redondo Beach Blvd.
Gardena, CA 90247

EIN: 954740742 Phone 310-630-8892      564577030

B6619360

Shahen Martirosian
4705 Excelente Dr
Woodland Hills, CA 91364

W-2G   440

---

$ 5770.00      07 22/2014

El Dorado Enterprises dba Hustler Casino
1000 West Redondo Beach Blvd
Gardena, CA 90247

EIN: 954740742 Phone 310-630-8892      564577030

Shahen Martirosian
4705 Excelente Dr
Woodland Hills, CA 91364

**2014**
Form W-2G

Certain
Gambling
Winnings

Signature
W-2G   440

---

OMB No.

$ 5770.00      7 22/2014

El Dorado Enterprises dba Hustler Casino
1000 West Redondo Beach Blvd.
Gardena, CA 90247

**2014**
Form W-2G

564577030

B6619360

Certain
Gambling
Winnings

EIN: 954740742 Phone: 310-630-8892

Shahen Martirosian
4705 Excelente Dr
Woodland Hills, CA 91364

Copy C



**El Dorado Enterprises dba Hustler Casino**
1000 West Redondo Beach Blvd.
Gardena, CA 90247

EIN: ████████ Phone: 310-630-8892

Shahen Martirosian
4705 Excelente Dr
Woodland Hills, CA 91364

$ 7110.00

W-2G 1057

**2014**
**Form W-2G**

Certain
Gambling
Winnings

---

**El Dorado Enterprises dba Hustler Casino**
1000 West Redondo Beach Blvd
Gardena, CA 90247

EIN: ████████ Phone 310-630 8892

Shahen Martirosian
4705 Excelente Dr
Woodland Hills, CA 91364

$ 7110 00    10/27 2014

-2G  1057

**2014**
**Form W-2G**

Certain
Gambling
Winnings

---

El Dorado Enterprises dba Hustler Casino
1000 West Redondo Beach Blvd.
Gardena, CA 90247

EIN: ████████ Phone 310-630-8892

Shahen Martirosian
4705 Excelente Dr
Woodland Hills, CA 913

W-2G  1057

**2014**
**Form W-2G**

Certain
Gambling
Winnings



**2014**
Form W-2G

**Certain Gambling Winnings**

El Dorado Enterprises dba Hustler Casino
1000 West Redondo Beach Blvd.
Gardena, CA 90247

$ 6000.00        12/02 2014

EIN:          Phone: 310-630-8892

Shahen Martirosian
4705 Excelente Dr
Wood and Hills, CA 91364

W-2G   1333

Copy C
Winner's Records

## Tournament Player Buy-In / Re-Buy Anual Report

Report Time: 4/26/2016 11:19:32 AM



**00051083**
**Shahen Martirosian**
**Silver**

Birthday On: ▮▮▮▮

Sign Up Date: 04/09/2011

Last Visit: 04/25/2016

### Year 2014

| Tournament Date | Description | Transaction Time | Buy In | Re Buy |
|---|---|---|---|---|
| 4/6/2014 | EVENT #2  $30K  GUARANTEE | 4/6/2014 2:11 PM | 225.00 | |
| 4/6/2014 | EVENT #2  $30K  GUARANTEE | 4/6/2014 3:46 PM | 225.00 | |
| 4/6/2014 | EVENT #2  $30K  GUARANTEE | 4/6/2014 5:08 PM | 225.00 | |
| 4/10/2014 | 150K DAY 3G | 4/10/2014 5:09 PM | 90.00 | |
| 4/10/2014 | 150K DAY 3G | 4/10/2014 5:09 PM | | 60.00 |
| 4/10/2014 | 150K DAY 3G | 4/10/2014 6:20 PM | 90.00 | |
| 4/10/2014 | 150K DAY 3G | 4/10/2014 6:20 PM | | 60.00 |
| 4/10/2014 | 150K DAY 3H | 4/10/2014 7:18 PM | 90.00 | |
| 4/10/2014 | 150K DAY 3H | 4/10/2014 7:18 PM | | 60.00 |
| 4/13/2014 | 500K DAY 4C | 4/13/2014 1:52 PM | 125.00 | |
| 4/13/2014 | 500K DAY 4C | 4/13/2014 1:58 PM | | 100.00 |
| 4/17/2014 | 500K DAY 4H | 4/17/2014 6:01 PM | 125.00 | |
| 4/17/2014 | 500K DAY 4H | 4/17/2014 6:01 PM | | 100.00 |
| 4/18/2014 | 500K DAY4I | 4/18/2014 5:07 PM | 125.00 | |
| 4/18/2014 | 500K DAY4I | 4/18/2014 5:07 PM | | 100.00 |
| 4/18/2014 | 500K DAY4I | 4/18/2014 6:13 PM | 125.00 | |
| 4/18/2014 | 500K DAY4I | 4/18/2014 6:13 PM | | 100.00 |
| 7/17/2014 | EVENT # 2  200K GUARANTEE | 7/17/2014 4:12 PM | 105.00 | |
| 7/17/2014 | EVENT # 2  200K GUARANTEE | 7/17/2014 4:12 PM | | 80.00 |
| 7/17/2014 | EVENT # 2  200K GUARANTEE | 7/17/2014 4:48 PM | 105.00 | |
| 7/17/2014 | EVENT # 2  200K GUARANTEE | 7/17/2014 4:48 PM | | 80.00 |
| 7/19/2014 | EVENT#2  200K ( DAY 2E) | 7/19/2014 1:40 PM | 105.00 | |
| 7/19/2014 | EVENT#2  200K ( DAY 2E) | 7/19/2014 4:32 PM | | 80.00 |
| 7/19/2014 | $200,000 GUARANTEE DAY 2F | 7/19/2014 6:59 PM | 105.00 | |
| 7/19/2014 | $200,000 GUARANTEE DAY 2F | 7/19/2014 6:59 PM | | 80.00 |
| 7/19/2014 | $200,000 GUARANTEE DAY 2F | 7/19/2014 7:16 PM | 105.00 | |
| 7/19/2014 | $200,000 GUARANTEE DAY 2F | 7/19/2014 7:16 PM | | 80.00 |
| 7/19/2014 | $200,000 GUARANTEE DAY 2F | 7/19/2014 9:58 PM | 105.00 | |
| 7/19/2014 | $200,000 GUARANTEE DAY 2F | 7/19/2014 9:58 PM | | 80.00 |

## Tournament Player Buy-In / Re-Buy Anual Report
Report Time: 4/26/2016 11:19:32 AM

| | | | | |
|---|---|---|---|---|
| 7/22/2014 | Event 4 $25k Guaranteed | 7/22/2014 2:21 PM | 225.00 | |
| 7/22/2014 | Event 4 $25k Guaranteed | 7/22/2014 3:11 PM | 225.00 | |
| 7/22/2014 | Event 4 $25k Guaranteed | 7/22/2014 3.39 PM | 225.00 | |
| 7/26/2014 | 400K GUARANTEE ( DAY A ) | 7/26/2014 12:48 PM | 450.00 | |
| 9/28/2014 | Sunday Afternoon Poker | 9/28/2014 4:10 PM | 115.00 | |
| 9/28/2014 | Sunday Afternoon Poker | 9/28/2014 4:10 PM | | 100.00 |
| 9/28/2014 | Sunday Afternoon Poker | 9/28/2014 4:39 PM | 115.00 | |
| 9/28/2014 | Sunday Afternoon Poker | 9/28/2014 4.39 PM | | 100.00 |
| 9/28/2014 | Sunday Afternoon Poker | 9/28/2014 5:15 PM | 115.00 | |
| 9/28/2014 | Sunday Afternoon Poker | 9/28/2014 5:15 PM | | 100.00 |
| 10/15/2014 | EVENT #4 $20K GUARANTEE | 10/15/2014 2:47 PM | 200.00 | |
| 10/16/2014 | EVENT 6A 200K GUARANTEED | 10/16/2014 2:07 PM | 105.00 | |
| 10/16/2014 | EVENT 6A 200K GUARANTEED | 10/16/2014 2:07 PM | | 80.00 |
| 10/16/2014 | EVENT 6A 200K GUARANTEED | 10/16/2014 4:55 PM | 105.00 | |
| 10/16/2014 | EVENT 6A 200K GUARANTEED | 10/16/2014 4:56 PM | | 80.00 |
| 10/16/2014 | EVENT 6A 200K GUARANTEED | 10/16/2014 5:25 PM | 105.00 | |
| 10/16/2014 | EVENT 6A 200K GUARANTEED | 10/16/2014 5:25 PM | | 80.00 |
| 10/17/2014 | EVENT #6 DAYC 1.00PM | 10/17/2014 1:33 PM | 105.00 | |
| 10/17/2014 | EVENT #6 DAYC 1.00PM | 10/17/2014 1:34 PM | | 80.00 |
| 10/17/2014 | EVENT #6 DAYC 1.00PM | 10/17/2014 2:57 PM | 105.00 | |
| 10/17/2014 | EVENT #6 DAYC 1.00PM | 10/17/2014 2:57 PM | | 80.00 |
| 10/18/2014 | 200k Guaranteed Day 6E | 10/18/2014 12:44 PM | 105.00 | |
| 10/18/2014 | 200k Guaranteed Day 6E | 10/18/2014 12:48 PM | | 80.00 |
| 10/18/2014 | 200k Guaranteed Day 6E | 10/18/2014 1:57 PM | 105.00 | |
| 10/18/2014 | 200k Guaranteed Day 6E | 10/18/2014 1:57 PM | | 80.00 |
| 10/18/2014 | 200k Guaranteed Day 6E | 10/18/2014 4:10 PM | 105.00 | |
| 10/18/2014 | 200k Guaranteed Day 6E | 10/18/2014 4:10 PM | | 80.00 |
| 10/18/2014 | Event 6F 200k Guaranteed | 10/18/2014 6:56 PM | 105.00 | |
| 10/18/2014 | Event 6F 200k Guaranteed | 10/18/2014 6:56 PM | | 80.00 |
| 10/18/2014 | Event 6F 200k Guaranteed | 10/18/2014 7:27 PM | 105.00 | |
| 10/18/2014 | Event 6F 200k Guaranteed | 10/18/2014 7:27 PM | | 80.00 |
| 10/19/2014 | EVENT #6 (G) 200K 12.30PM | 10/19/2014 12:45 PM | 105.00 | |
| 10/19/2014 | EVENT #6 (G) 200K 12 30PM | 10/19/2014 12:45 PM | | 80.00 |
| 10/19/2014 | EVENT #6 (G) 200K 12:30PM | 10/19/2014 4:00 PM | 105.00 | |
| 10/19/2014 | EVENT #6 (G) 200K 12:30PM | 10/19/2014 4:00 PM | | 80.00 |
| 10/19/2014 | EVENT #6 H $200,000 GUARANTEE | 10/19/2014 5:22 PM | 105.00 | |
| 10/19/2014 | EVENT #6 H $200,000 GUARANTEE | 10/19/2014 5:22 PM | | 80.00 |
| 10/22/2014 | EVENT#9 $300K GUARANTEE 1 00PM | 10/22/2014 1:07 PM | 125.00 | |
| 10/22/2014 | EVENT#9 $300K GUARANTEE 1 00PM | 10/22/2014 5:18 PM | | 100.00 |

## Tournament Player Buy-In / Re-Buy Anual Report
### Report Time: 4/26/2016 11:19:32 AM

| Date | Event | Time | Buy-In | Re-Buy |
|---|---|---|---|---|
| 10/23/2014 | EVENT #9 (1D) | 10/23/2014 7:07 PM | 125.00 | |
| 10/23/2014 | EVENT #9 (1D) | 10/23/2014 8:14 PM | | 100.00 |
| 10/24/2014 | EVENT #9 DAY(1E)  1.00PM | 10/24/2014 2:24 PM | 125.00 | |
| 10/24/2014 | EVENT #9 DAY(1E)  1:00PM | 10/24/2014 3:23 PM | | 100.00 |
| 10/24/2014 | EVENT #9 DAY(1E)  1:00PM | 10/24/2014 4:09 PM | 125.00 | |
| 10/24/2014 | EVENT #9 DAY(1E)  1:00PM | 10/24/2014 4:09 PM | | 100.00 |
| 10/24/2014 | FRIDAY EVENT #9 $300000 GUARANTEE (DAY 9F) | 10/24/2014 5:60 PM | 125.00 | |
| 10/24/2014 | FRIDAY EVENT #9 $300000 GUARANTEE (DAY 9F) | 10/24/2014 5:51 PM | | 100.00 |
| 10/25/2014 | $300K GUARANTEE DAY 9G | 10/25/2014 12:43 PM | 125.00 | |
| 10/25/2014 | $300K GUARANTEE DAY 9G | 10/25/2014 12:45 PM | | 100.00 |
| 10/26/2014 | EVENT#9  300K DAY (1I )) 12.30 PM | 10/26/2014 1 47 PM | 125.00 | |
| 10/26/2014 | EVENT#9  300K DAY (1I )) 12:30 PM | 10/26/2014 1:48 PM | | 100.00 |
| 10/26/2014 | EVENT#9  300K DAY (1I )) 12:30 PM | 10/26/2014 3:40 PM | 125.00 | |
| 10/26/2014 | EVENT#9  300K DAY (1I )) 12:30 PM | 10/26/2014 3 40 PM | | 100.00 |
| 10/27/2014 | $20,000 EVENT #10 | 10/27/2014 6.39 PM | 200 00 | |
| 10/27/2014 | $20,000 EVENT #10 | 10/27/2014 7:46 PM | 200 00 | |
| 10/29/2014 | EVENT #11 DAY (1C)  12:30PM | 10/29/2014 1.16 PM | 215.00 | |
| 11/1/2014 | EVENT #14  DAY 1A  12:30 PM | 11/1/2014 12.56 PM | 500.00 | |
| 11/3/2014 | EVENT #14 ( DAY1C )  12 30PM | 11/3/2014 12:53 PM | 500 00 | |
| 11/26/2014 | EVENT #7  30K GUARANTEE | 11/26/2014 2:18 PM | 215.00 | |
| 11/26/2014 | EVENT #8 10k GUARANTEED | 11/26/2014 7 48 PM | 125.00 | |
| 11/29/2014 | EVENT #9  200K ( 2B)  12:30 PM | 11/29/2014 1:41 PM | 450.00 | |
| 11/29/2014 | EVENT #12 15K GUARANTEED | 11/29/2014 5:24 PM | 165 00 | |
| 11/29/2014 | EVENT #12 15K GUARANTEED | 11/29/2014 8:15 PM | 165 00 | |
| 11/30/2014 | EVENT #9  200K DAY 1C 12 30 PM | 11/30/2014 1:08 PM | 450.00 | |
| 11/30/2014 | EVENT #9  200K DAY 1C 12.30 PM | 11/30/2014 1:52 PM | 450.00 | |
| 11/30/2014 | EVENT #9  200K DAY 1C 12 30 PM | 11/30/2014 3:20 PM | 450.00 | |
| 12/5/2014 | $300,000 GUARANTEE DAY 19C | 12/5/2014 2:04 PM | 125.00 | |
| 12/5/2014 | $300,000 GUARANTEE DAY 19C | 12/5/2014 2:08 PM | | 100 00 |
| 12/26/2014 | $200,000 GUARANTEE | 12/26/2014 12:21 PM | 125.00 | |
| 12/26/2014 | $200,000 GUARANTEE | 12/26/2014 12:21 PM | | 100 00 |
| 12/26/2014 | $200.000 GUARANTEE DAY B | 12/26/2014 6:51 PM | 125.00 | |
| 12/26/2014 | $200.000 GUARANTEE DAY B | 12/26/2014 7:00 PM | | 100 00 |
| 12/26/2014 | $200.000 GUARANTEE DAY B | 12/26/2014 7:42 PM | 125.00 | |
| 12/26/2014 | $200.000 GUARANTEE DAY B | 12/26/2014 8:10 PM | 125.00 | |
| 12/26/2014 | $200.000 GUARANTEE DAY B | 12/26/2014 8:12 PM | | 100 00 |
| 12/28/2014 | $200,000 GUARANTEE SESSION E | 12/28/2014 12:16 PM | 125 00 | |
| 12/28/2014 | $200,000 GUARANTEE SESSION E | 12/28/2014 12:16 PM | | 100.00 |
| 12/28/2014 | day F | 12/28/2014 7 29 PM | 125 00 | |

## Tournament Player Buy-In / Re-Buy Anual Report
Report Time: 4/26/2016 11:19:32 AM

| | | | | | |
|---|---|---|---|---|---|
| 12/28/2014 | day F | | 12/28/2014 7:29 PM | | 100.00 |
| 12/28/2014 | day F | | 12/28/2014 7:49 PM | 125.00 | |
| 12/28/2014 | day F | | 12/28/2014 7:49 PM | | 100.00 |
| 12/28/2014 | day F | | 12/28/2014 8:28 PM | 125 00 | |
| 12/28/2014 | day F | | 12/28/2014 8:28 PM | | 100.00 |
| | | | | 11.320.00 | 4,000.00 |

### Tournament Player Buy-In / Re-Buy Anual Report
Report Time: 4/26/2016 11:19:03 AM



**00051083**
**Shahen Martirosian**
**Silver**

Birthday On:  August 13
Sign Up Date:  04/09/2011
Last Visit:  04/25/2016

### Year 2015

| Tournament Date | Description | Transaction Time | Buy In | Re Buy |
|---|---|---|---|---|
| 4/9/2015 | EVENT #3 300K GUARNATEE | 4/9/2015 1:19 PM | 125 00 | |
| 4/9/2015 | EVENT #3 300K GUARNATEE | 4/9/2015 1:23 PM | | 100.00 |
| 4/9/2015 | EVENT #3 300K GUARNATEE | 4/9/2015 2:47 PM | 125 00 | |
| 4/9/2015 | EVENT #3 300K GUARNATEE | 4/9/2015 2:47 PM | | 100 00 |
| 4/9/2015 | EVENT #3 300K GUARNATEE | 4/9/2015 4:08 PM | 125 00 | |
| 4/9/2015 | EVENT #3 300K GUARNATEE | 4/9/2015 4:08 PM | | 100.00 |
| 4/10/2015 | $300K DAY3C | 4/10/2015 2:35 PM | 125 00 | |
| 4/10/2015 | $300K DAY3C | 4/10/2015 2:35 PM | | 100.00 |
| 4/10/2015 | $300K DAY3C | 4/10/2015 4:20 PM | 125 00 | |
| 4/10/2015 | $300K DAY3C | 4/10/2015 4:20 PM | | 100.00 |
| 4/12/2015 | 300K EVENT 3G | 4/12/2015 3:52 PM | 125 00 | |
| 4/12/2015 | 300K EVENT 3G | 4/12/2015 3:52 PM | | 100 00 |
| 4/12/2015 | $300K DAY 3H | 4/12/2015 6:51 PM | 125 00 | |
| 4/12/2015 | $300K DAY 3H | 4/12/2015 7:59 PM | | 100.00 |
| 4/13/2015 | $300K GUARANTEE DAY3i | 4/13/2015 2:45 PM | 125 00 | |
| 4/13/2015 | $300K GUARANTEE DAY3i | 4/13/2015 3:02 PM | | 100 00 |
| 4/13/2015 | $300K GUARANTEE DAY3i | 4/13/2015 3:19 PM | 125 00 | |
| 4/13/2015 | $300K GUARANTEE DAY3i | 4/13/2015 3:31 PM | | 100 00 |
| 4/13/2015 | $300K GUARANTEE DAY 3J | 4/13/2015 6:38 PM | 125 00 | |
| 4/13/2015 | $300K GUARANTEE DAY 3J | 4/13/2015 6:39 PM | | 100 00 |
| 4/14/2015 | EVENT #4 DEEPSTACK | 4/14/2015 6:01 PM | 200 00 | |
| 4/14/2015 | EVENT #4 DEEPSTACK | 4/14/2015 6:52 PM | 200 00 | |
| 4/14/2015 | EVENT #4 DEEPSTACK | 4/14/2015 8:15 PM | 200 00 | |
| 4/17/2015 | Event#7A 200K GUARANTED | 4/17/2015 3:44 PM | 230 00 | |
| 4/17/2015 | Event#7A 200K GUARANTED | 4/17/2015 5:22 PM | 230 00 | |
| 4/19/2015 | $200k DAY 7E | 4/19/2015 1:36 PM | 230 00 | |
| 4/19/2015 | $200K DAY 7 F | 4/19/2015 5:49 PM | 230 00 | |
| 4/20/2015 | EVENT#8 15K GUARANTEE | 4/20/2015 4:19 PM | 165 00 | |
| 4/29/2015 | EVENT #17C 150K 1:00PM | 4/29/2015 12:55 PM | 115 00 | |

## Tournament Player Buy-In / Re-Buy Anual Report
Report Time: 4/26/2016 11:19:03 AM

| Date | Event | Time | | |
|---|---|---|---|---|
| 4/29/2015 | EVENT #17C  150K  1.00PM | 4/29/2015 1.01 PM | | 100.00 |
| 4/30/2015 | $150,000 DAY 17E 1:00 | 4/30/2015 2:12 PM | 115.00 | |
| 4/30/2015 | $150,000 DAY 17E 1:00 | 4/30/2015 2:15 PM | | 100.00 |
| 4/30/2015 | $150,000 DAY 17E 1:00 | 4/30/2015 4:14 PM | 115.00 | |
| 4/30/2015 | $150,000 DAY 17E 1:00 | 4/30/2015 4:14 PM | | 100.00 |
| 4/30/2015 | $150,000 DAY 17 F 5:30 | 4/30/2015 8:48 PM | 115.00 | |
| 4/30/2015 | $150,000 DAY 17 F 5:30 | 4/30/2015 8:48 PM | | 100.00 |
| 7/15/2015 | Event #3 30K Guaranteed | 7/15/2015 4.04 PM | 215.00 | |
| 7/18/2015 | $400,000 GUARANTEE DAY 5F | 7/18/2015 8:05 PM | 255.00 | |
| 7/20/2015 | $400,000 GUARANTEE DAY 5I | 7/20/2015 12:43 PM | 255.00 | |
| 7/20/2015 | $400,000 GUARANTEE DAY 5I | 7/20/2015 2:52 PM | 255.00 | |
| 7/20/2015 | $400,000 GUARANTEE DAY 5J | 7/20/2015 6.19 PM | 255.00 | |
| 7/21/2015 | $20,000 GUARANTEE | 7/21/2015 4:44 PM | 200.00 | |
| 7/21/2015 | $20,000 GUARANTEE | 7/21/2015 7:31 PM | 200.00 | |
| 7/25/2015 | $250,000 GUARANTEE DAY 10C | 7/25/2015 1:01 PM | 125.00 | |
| 7/25/2015 | $250,000 GUARANTEE DAY 10C | 7/25/2015 3:37 PM | | 100.00 |
| 7/26/2015 | $250,000 GUARANTEE DAY 10E | 7/26/2015 3:57 PM | 125.00 | |
| 7/26/2015 | $250,000 GUARANTEE DAY 10E | 7/26/2015 3:57 PM | | 100.00 |
| 7/26/2015 | $250,000 GUARANTEE DAY 10F | 7/26/2015 8:57 PM | 125.00 | |
| 7/26/2015 | $250,000 GUARANTEE DAY 10F | 7/26/2015 8:57 PM | | 100.00 |
| 7/27/2015 | $250,000 GUARANTEE DAY 10G | 7/27/2015 2:39 PM | 125.00 | |
| 7/27/2015 | $250,000 GUARANTEE DAY 10G | 7/27/2015 2:39 PM | | 100.00 |
| 7/27/2015 | $250,000 GUARANTEE DAY 10G | 7/27/2015 3:48 PM | 125.00 | |
| 7/27/2015 | $250,000 GUARANTEE DAY 10G | 7/27/2015 3:48 PM | | 100.00 |
| 10/16/2015 | EVENT #5  5C   250K GUARANTEE | 10/16/2015 3:24 PM | 215.00 | |
| 10/16/2015 | EVENT #5  5C   250K GUARANTEE | 10/16/2015 4:24 PM | 215.00 | |
| 10/18/2015 | EVENT #5 5G $250K GUARANTEE | 10/18/2015 1:39 PM | 215.00 | |
| 10/18/2015 | EVENT #5 5H $250K GUARANTEE | 10/18/2015 7:37 PM | 215.00 | |
| 10/18/2015 | EVENT #5 5H $250K GUARANTEE | 10/18/2015 8:08 PM | 215.00 | |
| 10/22/2015 | $500K GUARANTEE EVENT #10A | 10/22/2015 2:15 PM | 300.00 | |
| 10/22/2015 | $500K GUARANTEE EVENT #10A | 10/22/2015 4:25 PM | 300.00 | |
| 10/23/2015 | $500K GUARANTEE EVENT 10C | 10/23/2015 12:44 PM | 300.00 | |
| 10/25/2015 | $500K EVENT #10 DAY10G | 10/25/2015 12.46 PM | 300.00 | |
| 10/25/2015 | $500K EVENT #10 DAY10G | 10/25/2015 1.44 PM | 300.00 | |
| 10/25/2015 | $500K EVENT #10 DAY10G | 10/25/2015 3.28 PM | 300.00 | |
| 10/26/2015 | $500K GUARANTEE EVENT #10 DAY 10 I | 10/26/2015 12.25 PM | 300.00 | |
| 10/26/2015 | $500K EVENT #10 DAY J | 10/26/2015 5 46 PM | 300.00 | |
| 11/2/2015 | $250K GUARANTEE EVENT #18 DAY18C | 11/2/2015 12 51 PM | 125.00 | |
| 11/2/2015 | $250K GUARANTEE EVENT #18 DAY18C | 11/2/2015 1 02 PM | | 100.00 |

## Tournament Player Buy-In / Re-Buy Anual Report
### Report Time: 4/26/2016 11:19:03 AM

| | | | | |
|---|---|---|---|---|
| 11/2/2015 | $250K GUARANTEE EVENT #18 DAY18C | 11/2/2015 4:12 PM | 125.00 | |
| 11/2/2015 | $250K GUARANTEE EVENT #18 DAY18C | 11/2/2015 4:12 PM | | 100.00 |
| 11/3/2015 | $250,000 EVENT #18 DAY18E | 11/3/2015 3:03 PM | 125.00 | |
| 11/3/2015 | $250,000 EVENT #18 DAY18E | 11/3/2015 3:04 PM | | 100.00 |
| 11/3/2015 | $250,000 EVENT #18 DAY18E | 11/3/2015 4:45 PM | 125.00 | |
| 11/3/2015 | $250,000 EVENT #18 DAY18E | 11/3/2015 4:45 PM | | 100.00 |
| 11/30/2015 | $250K GUARANTEE DAY 1G | 11/30/2015 3:55 PM | 230.00 | |
| 11/30/2015 | $250K GUARANTEE DAY 1G | 11/30/2015 4.23 PM | 230.00 | |
| 12/27/2015 | $200K GUARANTEE DAY 1C | 12/27/2015 2:11 PM | 230.00 | |
| | | | 10 320.00 | 2 300 00 |

## Tournament Player Buy-In / Re-Buy Anual Report

Report Time 4/26/2016 11:21:28 AM



**Shahen Martirosian**

Silver

Birthday On: August 13
Sign Up Date: 04/09/2011
Last Visit: 04/25/2016

### Year 2016

| Tournament Date | Description | Transaction Time | Buy In | Re Buy |
|---|---|---|---|---|
| 1/3/2016 | EVENT 1 NLH $250KGTD DAY1C | 1/3/2016 4:39 PM | 300.00 | |
| 1/9/2016 | WPTDS MAIN EVENT $300K DAY 1 C | 1/9/2016 2:20 PM | 1,000.00 | |
| 4/2/2016 | $200,000 GTD DAY 1C | 4/2/2016 2:23 PM | 210.00 | |
| 4/2/2016 | $200,000 GTD DAY 1C | 4/2/2016 4:20 PM | 210.00 | |
| 4/3/2016 | EVENT #2 E 200K GUARANTEE | 4/3/2016 1:15 PM | 210.00 | |
| 4/6/2016 | $25K GUARANTEE | 4/6/2016 2:40 PM | 215.00 | |
| 4/6/2016 | $25K GUARANTEE | 4/6/2016 5:57 PM | 215.00 | |
| 4/9/2016 | EVENT #10 $100K GUARANTEE | 4/9/2016 2:09 PM | 300.00 | |
| 4/9/2016 | EVENT #10 $100K GUARANTEE | 4/9/2016 2:27 PM | 300.00 | |
| 4/9/2016 | EVENT #10 DAY10B $100K GUARANTEE | 4/9/2016 7:29 PM | 300.00 | |
| 4/16/2016 | Event #17 S- DAY 1E | 4/16/2016 3:09 PM | 350.00 | |
| 4/18/2016 | EVENT #17 $500K GTD DAY 17I | 4/18/2016 2:00 PM | 350.00 | |
| 4/18/2016 | EVENT #17 $500K GTD DAY 17I | 4/18/2016 2:26 PM | 350.00 | |
| 4/23/2016 | EVENT #21 $200K GTD DAY 21C | 4/23/2016 2:12 PM | 185.00 | |
| 4/23/2016 | EVENT #21 $200K GTD DAY 21C | 4/23/2016 4:13 PM | 185.00 | |
| 4/25/2016 | Event #21 $200,000 GTD Day 21G | 4/25/2016 12:29 PM | 185.00 | |
| 4/25/2016 | Event #21 $200,000 GTD Day 21G | 4/25/2016 4:40 PM | 185.00 | |
| | | | 5,050.00 | |

# Tournament Sheet

Tournament ID: ███   Date: 7/22/2014

## Tournament Other

### Event 4 $25k Guaranteed

Buy-In: $225.00    Entry Fee: $25.00    Re-Buy Times: 0    Re-Buy Amount: $.00    Re-Enter Times: 99

Printed On  4/26/2016 11 59 07 AM

| Player ID | Voucher ID | Name | Amount | Cal Tax | Fed Tax | Total | Paid |
|-----------|-----------|------|--------|---------|---------|-------|------|
| 00051083 | 328485-0 | Shahen Martirosian | $5,770.00 | | | $5,770.00 | Yes |

## Tournament Sheet

Tournament ID: ▮▮▮▮   Date:  7/30/2014

### Tournament Other

### MAIN EVENT FINALS

Buy-In: $450.00     Entry Fee: $35.00     Re-Buy Times: 0     Re-Buy Amount: $.00     Re-Enter Times: 0

Printed On: 4/26/2016 11:26:00 AM

| Player ID | Voucher ID | Name | Amount | Cat Tax | Fed Tax | Total | Paid |
|-----------|-----------|------|--------|---------|---------|-------|------|

# Tournament Sheet

Tournament ID: ███   Date: 10/27/2014

### Tournament Other

### $20,000 EVENT #10

Buy-In: $200.00      Entry Fee: $25.00      Re-Buy Times: 0      Re-Buy Amount: $.00      Re-Enter Times: 99

Printed On: 4/26/2016 12:01:11 PM

| Player ID | Voucher ID | Name | Amount | Cal Tax | Fed Tax | Total | Paid |
|-----------|-----------|------|--------|---------|---------|-------|------|
| 00051083 | 343106-0 | Shahen Martirosian | $7,110.00 | | | $7,110.00 | Yes |

| 00051083 | 329711-0 | Shahen  Martirosian | $2,925 00 | $2,925 00 | Yes |

# Tournament Sheet

Tournament ID:  ▉    Date:  12/2/2014

Special Event

EVENT #9  200K  FINALS !!!

Buy-In: $.00        Entry Fee: $.00        Re-Buy Times: 0        Re-Buy Amount: $.00        Re-Enter Times: 0

Printed On  4/26/2016 12:02:43 PM

| Player ID | Voucher ID | Name | Amount | Cal Tax | Fed Tax | Total | Paid |
|-----------|------------|------|--------|---------|---------|-------|------|
| 00051083 | 348746-0 | Shahen  Martirosian | $6,000.00 | | | $6,000.00 | Yes |

Exhibit "H"

| 0000740 | 11-24 | **CASHIER'S CHECK** | SERIAL #: 0074003270 |
| Office AU # | 1210(6) | | ACCOUNT#: ▮1475 |

Remitter: ANAHIT HARUTYUNYAN
Purchaser: ANAHIT HARUTYUNYAN
Purchaser Account: ▮8848
Operator I.D.: u330784   cu008635
Funding Source: Cash

September 15, 2015

PAY TO THE ORDER OF   ***CITY NATIONAL FINANCE***

***Six thousand eight hundred forty-three dollars and 31 cents***     **$6,843.31**

Payee Address:
Memo: 4785 EXCELENTE DRIVE, LOAN#18-71600345

WELLS FARGO BANK, N.A.
1534 N VERMONT AVE
LOS ANGELES, CA 90027
FOR INQUIRIES CALL (480) 394-3122

NOTICE TO PURCHASER–IF THIS INSTRUMENT IS LOST,
STOLEN OR DESTROYED, YOU MAY REQUEST CANCELLATION
AND REISSUANCE. AS A CONDITION TO CANCELLATION AND
REISSUANCE, WELLS FARGO & COMPANY MAY IMPOSE A
FEE AND REQUIRE AN INDEMNITY AGREEMENT AND BOND.

VOID IF OVER US $ 6,843.31

NON-NEGOTIABLE

**Purchaser Copy**

FB004   ss 12047129

---

| 0065859 | 11-24 | **CASHIER'S CHECK** | SERIAL #: 6585902071 |
| Office AU # | 1210(6) | | ACCOUNT#: ▮1475 |

Remitter: ANAHIT HARUTYUNYAN
Purchaser: VIRGINIA MARTIROSSIAN
Purchaser Account: ▮2902
Operator I.D.: cu071239   u312124
Funding Source: Cash

October 15, 2015

PAY TO THE ORDER OF   ***CITY NATIONAL FINANCE***

***Six thousand eight hundred forty-three dollars and 31 cents***     **$6,843.31**

Payee Address:
Memo:

WELLS FARGO BANK, N.A.
23325 MULHOLLAND DR
WOODLAND HILLS, CA 91364
FOR INQUIRIES CALL (480) 394-3122

NOTICE TO PURCHASER–IF THIS INSTRUMENT IS LOST,
STOLEN OR DESTROYED, YOU MAY REQUEST CANCELLATION
AND REISSUANCE. AS A CONDITION TO CANCELLATION AND
REISSUANCE, WELLS FARGO & COMPANY MAY IMPOSE A
FEE AND REQUIRE AN INDEMNITY AGREEMENT AND BOND.

VOID IF OVER US $ 6,843.31

NON-NEGOTIABLE

**Purchaser Copy**

FB004   ss 50109079

---

| 0065859 | 11-24 | **CASHIER'S CHECK** | SERIAL #: 6585902120 |
| Office AU # | 1210(6) | | ACCOUNT#: ▮1475 |

Remitter: ANAHIT HARUTYUNYAN
Purchaser: VIRGINIA MARTIROSSIAN
Purchaser Account: ▮2902
Operator I.D.: u312124
Funding Source: Cash

November 14, 2015

PAY TO THE ORDER OF   ***CITY NATIONAL FINANCE ***

***Six thousand eight hundred forty-three dollars and 31 cents***     **$6,843.31**

Payee Address:
Memo:

WELLS FARGO BANK, N.A.
23325 MULHOLLAND DR
WOODLAND HILLS, CA 91364
FOR INQUIRIES CALL (480) 394-3122

NOTICE TO PURCHASER–IF THIS INSTRUMENT IS LOST,
STOLEN OR DESTROYED, YOU MAY REQUEST CANCELLATION
AND REISSUANCE. AS A CONDITION TO CANCELLATION AND
REISSUANCE, WELLS FARGO & COMPANY MAY IMPOSE A
FEE AND REQUIRE AN INDEMNITY AGREEMENT AND BOND.

VOID IF OVER US $ 6,843.31

NON-NEGOTIABLE

**Purchaser Copy**

FB004   ss 50100079

# Exhibit "I"



CALIFORNIA
ASSOCIATION
OF REALTORS®

# CALIFORNIA
# RESIDENTIAL PURCHASE AGREEMENT
# AND JOINT ESCROW INSTRUCTIONS
For Use With Single Family Residential Property — Attached or Detached
(C.A.R. Form RPA-CA, Revised 4/13)

Date _June 26, 2014_

1. **OFFER:**
   A. THIS IS AN OFFER FROM _____ _Vazgen Khachatryan_ _____ ("Buyer").
   B. THE REAL PROPERTY TO BE ACQUIRED is described as _10000 Lubao Ave Chatsworth CA, ,_ _____
      _____ , Assessor's Parcel No. _2726002007_ _____ , situated in
      _____ , County of _____ _Los Angeles_ _____ , California, ("Property").
   C. THE PURCHASE PRICE offered is _Three Hundred Fifty Thousand_ _____
      _____ Dollars $ _350,000.00_ ____
   D. CLOSE OF ESCROW shall occur on _____ (date) (or ☒ _60_ Days After Acceptance).
2. **AGENCY:**
   A. DISCLOSURE: Buyer and Seller each acknowledge prior receipt of a "Disclosure Regarding Real Estate Agency Relationships"
      (C.A.R. Form AD).
   B. POTENTIALLY COMPETING BUYERS AND SELLERS: Buyer and Seller each acknowledge receipt of a disclosure of the possibility of
      multiple representation by the Broker representing that principal. This disclosure may be part of a listing agreement, buyer representation
      agreement or separate document (C.A.R. Form DA). Buyer understands that Broker representing Buyer may also represent other potential
      buyers, who may consider, make offers on or ultimately acquire the Property. Seller understands that Broker representing Seller may also
      represent other sellers with competing properties of interest to this Buyer.
   C. CONFIRMATION: The following agency relationships are hereby confirmed for this transaction:
      Listing Agent _Commercial Property Investment Inc_ _____ (Print Firm Name) is the agent
      of (check one): ☐ the Seller exclusively; or ☒ both the Buyer and Seller.
      Selling Agent _Commercial Property Investment Inc_ _____ (Print Firm Name) (if not the same as the
      Listing Agent) is the agent of (check one): ☐ the Buyer exclusively; or ☐ the Seller exclusively; or ☐ both the Buyer and Seller. Real Estate
      Brokers are not parties to the Agreement between Buyer and Seller.
3. **FINANCE TERMS:** Buyer represents that funds will be good when deposited with Escrow Holder.
   A. INITIAL DEPOSIT: Deposit shall be in the amount of .................................................$ ____ _52,500.00_
      (1) Buyer shall deliver deposit directly to Escrow Holder by personal check, ☐ electronic funds transfer, ☐ other
          _____ within 3 business days after acceptance (or ☐ Other _____ );
      OR (2) (If checked) ☐ Buyer has given the deposit by personal check (or ☐ _____ ),
          to the agent submitting the offer (or to ☐ _____ ),
          made payable to _____ _Realty Executives Premiere Escrow_ _____ . The deposit shall be held
          uncashed until Acceptance and then deposited with Escrow Holder (or ☐ into Broker's trust account) within 3
          business days after Acceptance (or ☐ Other _____ ).
   B. INCREASED DEPOSIT: Buyer shall deposit with Escrow Holder an increased deposit in the amount of ..........$ _____
      within _____ Days After Acceptance, or ☐ _____ .
      If a liquidated damages clause is incorporated into this Agreement, Buyer and Seller shall sign a separate
      liquidated damages clause (C.A.R. Form RID) for any increased deposit at the time it is Delivered.
   C. LOAN(S):
      (1) FIRST LOAN: in the amount of..............................................................$ _____
          This loan will be conventional financing or, if checked, ☐ FHA, ☐ VA, ☐ Seller (C.A.R. Form SFA),
          ☐ assumed financing (C.A.R. Form PAA), ☐ Other _____ . This loan shall be at a fixed
          rate not to exceed _____ % or, ☐ an adjustable rate loan with initial rate not to exceed _____ %.
          Regardless of the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount.
      (2) ☐ SECOND LOAN: in the amount of.........................................................$ _____
          This loan will be conventional financing or, if checked, ☐ Seller (C.A.R. Form SFA), ☐ assumed financing
          (C.A.R. Form PAA), ☐ Other _____ . This loan shall be at a fixed rate not to exceed
          _____ % or, ☐ an adjustable rate loan with initial rate not to exceed _____ %. Regardless of
          the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount.
      (3) FHA/VA: For any FHA or VA loan specified above, Buyer has 17 (or ☐ _____ ) Days After Acceptance
          to Deliver to Seller written notice (C.A.R. Form FVA) of any lender-required repairs or costs that Buyer
          requests Seller to pay for or otherwise correct. Seller has no obligation to pay or satisfy lender requirements
          unless otherwise agreed in writing.
   D. ADDITIONAL FINANCING TERMS: _____
      _____
   E. BALANCE OF DOWN PAYMENT OR PURCHASE PRICE in the amount of....................................$ ____ _297,500.00_
      to be deposited with Escrow Holder within sufficient time to close escrow.
   F. PURCHASE PRICE (TOTAL): .................................................................$ ____ _350,000.00_

Buyer's Initials ( _VK_ )( _____ )                    Seller's Initials ( _SF_ )( _____ )

© 2013, California Association of REALTORS®, Inc.

RPA-CA REVISED 4/13 (PAGE 1 OF 8)

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 1 OF 8)**

Reviewed by _____ Date _____

Agent:  Shahen Martirosian        Phone: 818-350-6325        Fax: 818-781-7876        Prepared using zipForm® software
Broker: Realty Executives 14349 Victory Blvd #200 Van Nuys, CA 91401

*10000 Lubao Ave _natsworth CA*

Property Address: _____     Date: *June 26, 2014*

G.  **VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Buyer (or Buyer's lender or loan broker pursuant to 3H(1) shall, within 7 (or ☐ _____ ) Days After Acceptance, Deliver to Seller written verification of Buyer's down payment and closing costs. (If checked, ☐ verification attached.)

H.  **LOAN TERMS:**

(1) **LOAN APPLICATIONS:** Within 7 (or ☐ _____ ) Days After Acceptance, Buyer shall Deliver to Seller a letter from lender or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified in 3C above. (If checked, ☐ letter attached.)

(2) **LOAN CONTINGENCY:** Buyer shall act diligently and in good faith to obtain the designated loan(s). Obtaining the loan(s) specified above **is a contingency of this Agreement** unless otherwise agreed in writing. Buyer's contractual obligations to obtain and provide deposit, balance of down payment and closing costs are **not contingencies** of this Agreement.

(3) **LOAN CONTINGENCY REMOVAL:**

(i)  Within 17 (or ☐ _____ ) Days After Acceptance, Buyer shall, as specified in paragraph 14, in writing remove the loan contingency or cancel this Agreement;

OR (ii) (if checked) ☐ the loan contingency shall remain in effect until the designated loans are funded.

(4) ☐ **NO LOAN CONTINGENCY** (If checked): Obtaining any loan specified above is NOT a contingency of this Agreement. If Buyer does not obtain the loan and as a result Buyer does not purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.

I.  **APPRAISAL CONTINGENCY AND REMOVAL:** This Agreement is (or, if checked, ☐ is NOT) contingent upon a written appraisal of the Property by a licensed or certified appraiser at no less than the specified purchase price. If there is a loan contingency, Buyer's removal of the loan contingency shall be deemed removal of this appraisal contingency (or, ☐ if checked, Buyer shall, as specified in paragraph 14B(3), in writing remove the appraisal contingency or cancel this Agreement within 17 (or _____ ) Days After Acceptance). If there is no loan contingency, Buyer shall, as specified in paragraph 14B(3), in writing remove the appraisal contingency or cancel this Agreement within 17 (or _____ ) Days After Acceptance.

J.  ☒ **ALL CASH OFFER** (If checked): Buyer shall, within 7 (or ☐ _____ ) Days After Acceptance, Deliver to Seller written verification of sufficient funds to close this transaction. (If checked, ☐ verification attached.)

K.  **BUYER STATED FINANCING:** Seller has relied on Buyer's representation of the type of financing specified (including but not limited to, as applicable, amount of down payment, contingent or non contingent loan, or all cash). If Buyer seeks alternate financing, (i) Seller has no obligation to cooperate with Buyer's efforts to obtain such financing, and (ii) Buyer shall also pursue the financing method specified in this Agreement. Buyer's failure to secure alternate financing does not excuse Buyer from the obligation to purchase the Property and close escrow as specified in this Agreement.

4.  **ALLOCATION OF COSTS** (If checked): Unless otherwise specified here, in writing, this paragraph only determines who is to pay for the inspection, test or service ("Report") mentioned; it does not determine who is to pay for any work recommended or identified in the Report.

A.  **INSPECTIONS AND REPORTS:**

(1) ☐ Buyer ☐ Seller shall pay for an inspection and report for wood destroying pests and organisms ("Wood Pest Report") prepared by _____ a registered structural pest control company.

(2) ☐ Buyer ☐ Seller shall pay to have septic or private sewage disposal systems inspected _____ .

(3) ☐ Buyer ☐ Seller shall pay to have domestic wells tested for water potability and productivity _____ .

(4) ☐ Buyer ☒ Seller shall pay for a natural hazard zone disclosure report prepared by _____ .

(5) ☐ Buyer ☐ Seller shall pay for the following inspection or report _____ .

(6) ☐ Buyer ☐ Seller shall pay for the following inspection or report _____ .

B.  **GOVERNMENT REQUIREMENTS AND RETROFIT:**

(1) ☐ Buyer ☐ Seller shall pay for smoke detector installation and/or water heater bracing, if required by Law. Prior to Close Of Escrow, Seller shall provide Buyer written statement(s) of compliance in accordance with state and local Law, unless exempt.

(2) ☐ Buyer ☐ Seller shall pay the cost of compliance with any other minimum mandatory government retrofit standards, inspections and reports if required as a condition of closing escrow under any Law. _____ .

C.  **ESCROW AND TITLE:**

(1) ☒ Buyer ☒ Seller shall pay escrow fee *Each own Share* _____ .
Escrow Holder shall be _____

(2) ☐ Buyer ☒ Seller shall pay for **owner's title insurance policy** specified in paragraph 12E _____ .
Owner's title policy to be issued by *Lawyer's* _____
(Buyer shall pay for any title insurance policy insuring Buyer's lender, unless otherwise agreed in writing.)

D.  **OTHER COSTS:**

(1) ☐ Buyer ☒ Seller shall pay County transfer tax or fee _____ .

(2) ☐ Buyer ☒ Seller shall pay City transfer tax or fee _____ .

(3) ☐ Buyer ☐ Seller shall pay Homeowner's Association ("HOA") transfer fee _____ .

(4) ☐ Buyer ☐ Seller shall pay HOA document preparation fees _____ .

(5) ☐ Buyer ☐ Seller shall pay for any private transfer fee _____ .

(6) ☐ Buyer ☐ Seller shall pay the cost, not to exceed $ _____ , of a one-year home warranty plan, issued by _____ , with the following optional coverages:
☐ Air Conditioner ☐ Pool/Spa ☐ Code and Permit upgrade ☐ Other: _____
Buyer is informed that home warranty plans have many optional coverages in addition to those listed above. Buyer is advised to investigate these coverages to determine those that may be suitable for Buyer.

(7) ☐ Buyer ☐ Seller shall pay for _____

(8) ☐ Buyer ☐ Seller shall pay for _____

Buyer's Initials ( *VK* ) ( _____ )                 Seller's Initials ( *JF* ) ( _____ )

| Reviewed by _____ Date _____ |
| --- |

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 2 OF 8)**

EQUAL HOUSING OPPORTUNITY

Untitled

10000 Lubao Ave.   itsworth CA

Property Address: _____  Date: *June 26, 2014*

(3) The following additional items:
(4) Seller represents that all items included in the purchase price, unless otherwise specified, are owned by Seller.
(5) All items included shall be transferred free of liens and without Seller warranty.
C. **ITEMS EXCLUDED FROM SALE:** Unless otherwise specified, audio and video components (such as flat screen TVs and speakers) are excluded if any such item is not itself attached to the Property, even if a bracket or other mechanism attached to the component is attached to the Property; and _____

9. **CONDITION OF PROPERTY:** Unless otherwise agreed: (i) the Property is sold (a) in its PRESENT physical ("as-is") condition as of the date of Acceptance and (b) subject to Buyer's Investigation rights; (ii) the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and (iii) all debris and personal property not included in the sale shall be removed by Close Of Escrow.
A. Seller shall, within the time specified in paragraph 14A, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including known insurance claims within the past five years, and make any and all other disclosures required by law.
B. Buyer has the right to inspect the Property and, as specified in paragraph 14B, based upon information discovered in those inspections: (i) cancel this Agreement; or (ii) request that Seller make Repairs or take other action.
C. Buyer is strongly advised to conduct investigations of the entire Property in order to determine its present condition. Seller may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property improvements may not be built according to code, in compliance with current Law, or have had permits issued.

10. **BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**
A. Buyer's acceptance of the condition of, and any other matter affecting the Property, is a contingency of this Agreement as specified in this paragraph and paragraph 14B. Within the time specified in paragraph 14B(1), Buyer shall have the right, at Buyer's expense unless otherwise agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations"), including, but not limited to, the right to: (i) inspect for lead-based paint and other lead-based paint hazards; (ii) inspect for wood destroying pests and organisms; (iii) review the registered sex offender database; (iv) confirm the insurability of Buyer and the Property; and (v) satisfy Buyer as to any matter specified in the attached Buyer's Inspection Advisory (C.A.R. Form BIA). Without Seller's prior written consent, Buyer shall neither make nor cause to be made: (i) invasive or destructive Buyer Investigations; or (ii) inspections by any governmental building or zoning inspector or government employee, unless required by Law.
B. Seller shall make the Property available for all Buyer Investigations. Buyer shall (i) as specified in paragraph 14B, complete Buyer Investigations and, either remove the contingency or cancel this Agreement, and (ii) give Seller, at no cost, complete Copies of all Investigation reports obtained by Buyer, which obligation shall survive the termination of this Agreement.
C. Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is made available to Buyer.
D. Buyer indemnity and Seller protection for entry upon property: Buyer shall: (i) keep the Property free and clear of liens; (ii) repair all damage arising from Buyer Investigations; and (iii) indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Nonresponsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

11. **SELLER DISCLOSURES; ADDENDA; ADVISORIES; OTHER TERMS:**
A. **Seller Disclosures (if checked):** Seller shall, within the time specified in paragraph 14A, complete and provide Buyer with a:
☐ Seller Property Questionnaire (C.A.R. Form SPQ)   OR   ☐ Supplemental Contractual and Statutory Disclosure (C.A.R. Form SSD)
B. **Addenda (if checked):** ☐ Addendum # _____ (C.A.R. Form ADM)
☐ Wood Destroying Pest Inspection and Allocation of Cost Addendum (C.A.R. Form WPA)
☐ Purchase Agreement Addendum (C.A.R Form PAA)   ☐ Septic, Well and Property Monument Addendum (C.A.R. Form SWPI)
☒ Short Sale Addendum (C.A.R. Form SSA)   ☐ Other
C. **Advisories (if checked):** ☒ Buyer's Inspection Advisory (C.A.R. Form BIA)
☐ Probate Advisory (C.A.R. Form PAK)   ☐ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA)
☐ Trust Advisory (C.A.R. Form TA)   ☐ REO Advisory (C.A.R. Form REO)
D. **Other Terms:** *Buyer to remove all contingencies within 7 days of short sale approval.2-Buyer to have the option to cancel and receive the deposit back if short sale price to high or not* ~~~

12. **TITLE AND VESTING:**
A. Within the time specified in paragraph 14, Buyer shall be provided a current preliminary title report, which shall include a search of the General Index. Seller shall within 7 Days After Acceptance, give Escrow Holder a completed Statement of Information. The preliminary report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. Buyer's review of the preliminary report and any other matters which may affect title are a contingency of this Agreement as specified in paragraph 14B.
B. Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except: (i) monetary liens of record unless Buyer is assuming those obligations or taking the Property subject to those obligations; and (ii) those matters which Seller has agreed to remove in writing.
C. Within the time specified in paragraph 14A, Seller has a duty to disclose to Buyer all matters known to Seller affecting title, whether of record or not.
D. At Close Of Escrow, Buyer shall receive a grant deed conveying title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's supplemental escrow instructions. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.
E. Buyer shall receive a CLTA/ALTA Homeowner's Policy of Title Insurance. A title company, at Buyer's request, can provide information about the availability, desirability, coverage, and cost of various title insurance coverages and endorsements. If Buyer desires title coverage other than that required by this paragraph, Buyer shall instruct Escrow Holder in writing and pay any increase in cost.

Buyer's Initials ( _VL_ )( _____ )     Seller's Initials ( _JF_ )( _____ )

RPA-CA REVISED 4/13 (PAGE 4 OF 8)

CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 4 OF 8)

Reviewed by _____ Date _____

Untitled

*10000 Lubao Ave Chatsworth CA*

Property Address: _____ Date: *June 26, 2014*

**5. CLOSING AND POSSESSION:**

A. Buyer intends (or ☐ does not intend) to occupy the Property as Buyer's primary residence.

B. Seller-occupied or vacant property: Possession shall be delivered to Buyer at 5 PM or ( ☐ _____ ☐ AM ☐ PM) on the date of Close Of Escrow; ☐ on _____ ; or ☐ no later than _____ Days After Close Of Escrow. If transfer of title and possession do not occur at the same time, Buyer and Seller are advised to: (i) enter into a written occupancy agreement (C.A.R. Form PAA, paragraph 2); and (ii) consult with their insurance and legal advisors.

C. Tenant-occupied property: (i) Property shall be vacant at least 5 (or ☐ _____ ) Days Prior to Close Of Escrow, unless otherwise agreed in writing. Note to Seller: If you are unable to deliver Property vacant in accordance with rent control and other applicable Law, you may be in breach of this Agreement.

OR (ii) (if checked) ☐ Tenant to remain in possession. (C.A.R. Form PAA, paragraph 3)

D. At Close Of Escrow, (i) Seller assigns to Buyer any assignable warranty rights for items included in the sale, and (ii) Seller shall Deliver to Buyer available Copies of warranties. Brokers cannot and will not determine the assignability of any warranties.

E. At Close Of Escrow, unless otherwise agreed in writing, Seller shall provide keys and/or means to operate all locks, mailboxes, security systems, alarms and garage door openers. If Property is a condominium or located in a common interest subdivision, Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.

**6. STATUTORY DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:**

A. (1) Seller shall, within the time specified in paragraph 14A, Deliver to Buyer, if required by Law: (i) Federal Lead-Based Paint Disclosures (C.A.R. Form FLD) and pamphlet ("Lead Disclosures"); and (ii) disclosures or notices required by sections 1102 et. seq. and 1103 et. seq. of the Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement ("TDS"), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act and Improvement Bond Act of 1915) and, if Seller has actual knowledge, of industrial use and military ordnance location (C.A.R. Form SPQ or SSD).

(2) Buyer shall, within the time specified in paragraph 14B(1), return Signed Copies of the Statutory and Lead Disclosures to Seller.

(3) In the event Seller, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer, Seller shall promptly provide a subsequent or amended disclosure or notice, in writing, covering those items. However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies of which Buyer is otherwise aware, or which are disclosed in reports provided to or obtained by Buyer or ordered and paid for by Buyer.

(4) If any disclosure or notice specified in 6A(1), or subsequent or amended disclosure or notice is Delivered to Buyer after the offer is Signed, Buyer shall have the right to cancel this Agreement within 3 Days After Delivery in person, or 5 Days After Delivery by deposit in the mail, by giving written notice of cancellation to Seller or Seller's agent.

(5) Note to Buyer and Seller: Waiver of Statutory and Lead Disclosures is prohibited by Law.

B. NATURAL AND ENVIRONMENTAL HAZARDS: Within the time specified in paragraph 14A, Seller shall, if required by Law: (i) Deliver to Buyer earthquake guides (and questionnaire) and environmental hazards booklet; (ii) even if exempt from the obligation to provide a NHD, disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; Seismic Hazard Zone; and (iii) disclose any other zone as required by Law and provide any other information required for those zones.

C. WITHHOLDING TAXES: Within the time specified in paragraph 14A, to avoid required withholding, Seller shall Deliver to Buyer or qualified substitute, an affidavit sufficient to comply with federal (FIRPTA) and California withholding Law (C.A.R. Form AS or QS).

D. MEGAN'S LAW DATABASE DISCLOSURE: Notice: Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at www.meganslaw.ca.gov. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Brokers are required to check this website. If Buyer wants further information, Broker recommends that Buyer obtain information from this website during Buyer's inspection contingency period. Brokers do not have expertise in this area.)

E. NOTICE REGARDING GAS AND HAZARDOUS LIQUID TRANSMISSION PIPELINES: This notice is being provided simply to inform you that information about the general location of gas and hazardous liquid transmission pipelines is available to the public via the National Pipeline Mapping System (NPMS) Internet Web site maintained by the United States Department of Transportation at http://www.npms.phmsa.dot.gov. To seek further information about possible transmission pipelines near the Property, you may contact your local gas utility or other pipeline operators in the area. Contact information for pipeline operators is searchable by ZIP Code and county on the NPMS Internet Web site.

**7. CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES:**

A. SELLER HAS: 7 (or ☐ _____ ) Days After Acceptance to disclose to Buyer whether the Property is a condominium, or is located in a planned development or other common interest subdivision (C.A.R. Form SPQ or SSD).

B. If the Property is a condominium or is located in a planned development or other common interest subdivision, Seller has 3 (or ☐ _____ ) Days After Acceptance to request from the HOA (C.A.R. Form HOA): (i) Copies of any documents required by Law; (ii) disclosure of any pending or anticipated claim or litigation by or against the HOA; (iii) a statement containing the location and number of designated parking and storage spaces; (iv) Copies of the most recent 12 months of HOA minutes for regular and special meetings; and (v) the names and contact information of all HOAs governing the Property (collectively, "CI Disclosures"). Seller shall itemize and Deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Buyer's approval of CI Disclosures is a contingency of this Agreement as specified in paragraph 14B(3).

**8. ITEMS INCLUDED IN AND EXCLUDED FROM PURCHASE PRICE:**

A. NOTE TO BUYER AND SELLER: Items listed as included or excluded in the MLS, flyers or marketing materials are not included in the purchase price or excluded from the sale unless specified in 8B or C.

B. ITEMS INCLUDED IN SALE:

(1) All EXISTING fixtures and fittings that are attached to the Property;

(2) EXISTING electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar systems, built-in appliances, window and door screens, awnings, shutters, window coverings, attached floor coverings, television antennas, satellite dishes, private integrated telephone systems, air coolers/conditioners, pool/spa equipment, garage door openers/remote controls, mailbox, in-ground landscaping, trees/shrubs, water softeners, water purifiers, security systems/alarms; (if checked) ☐ stove(s), ☐ refrigerator(s);

Buyer's Initials ( *VK* )( _____ )          Seller's Initials ( *JF* )( _____ )

RPA-CA REVISED 4/13 (PAGE 3 OF 8)

| Reviewed by _____ Date _____ |
|---|

Property Address: _____10000 Lubao Ave   atsworth CA_____ Date: _June 26, 2014_

**13. SALE OF BUYER'S PROPERTY:**
　A. This Agreement is NOT contingent upon the sale of any property owned by Buyer.
OR B. ☐ (If checked): The attached addendum (C.A.R. Form COP) regarding the contingency for the sale of property owned by Buyer is incorporated into this Agreement.

**14. TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS:** The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR or CC).
　A. **SELLER HAS: 7 (or ☐ _____ ) Days** After Acceptance to Deliver to Buyer all Reports, disclosures and information for which Seller is responsible under paragraphs 4, 6A, B and C, 7A, 9A, 11A and B, and 12A. Buyer may give Seller a Notice to Seller to Perform (C.A.R. Form NSP) if Seller has not Delivered the items within the time specified.
　B. **(1) BUYER HAS: 17 (or ☐ _____ ) Days** After Acceptance, unless otherwise agreed in writing, to:
　　　(i) complete all Buyer Investigations; approve all disclosures, reports and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property; and
　　　(ii) Deliver to Seller Signed Copies of Statutory and Lead Disclosures Delivered by Seller in accordance with paragraph 6A.
　　(2) Within the time specified in 14B(1), Buyer may request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to Buyer's requests.
　　(3) By the end of the time specified in 14B(1) (or as otherwise specified in this Agreement), Buyer shall, Deliver to Seller a removal of the applicable contingency or cancellation (C.A.R. Form CR or CC) of this Agreement. However, if any report, disclosure or information for which Seller is responsible is not Delivered within the time specified in 14A, then Buyer has 5 (or ☐ _____ ) Days After Delivery of any such items, or the time specified in 14B(1), whichever is later, to Deliver to Buyer a removal of the applicable contingency or cancellation of this Agreement.
　　(4) **Continuation of Contingency:** Even after the end of the time specified in 14B(1) and before Seller cancels, if at all, pursuant to 14C, Buyer retains the right to either (i) in writing remove remaining contingencies, or (ii) cancel this Agreement based on a remaining contingency. Once Buyer's written removal of all contingencies is Delivered to Seller, Seller may not cancel this Agreement pursuant to 14C(1).
　C. **SELLER RIGHT TO CANCEL:**
　　(1) **Seller right to Cancel; Buyer Contingencies:** If, by the time specified in this Agreement, Buyer does not Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP) may cancel this Agreement. In such event, Seller shall authorize return of Buyer's deposit.
　　(2) **Seller right to Cancel; Buyer Contract Obligations:** Seller, after first Delivering to Buyer a NBP may cancel this Agreement for any of the following reasons: (i) if Buyer fails to deposit funds as required by 3A or 3B; (ii) if the funds deposited pursuant to 3A or 3B are not good when deposited; (iii) if Buyer fails to Deliver a notice of FHA or VA costs or terms as required by 3C(3) (C.A.R. Form FVA); (iv) if Buyer fails to Deliver a letter as required by 3H; (v) if Buyer fails to Deliver verification as required by 3G or 3J; (vi) if Seller reasonably disapproves of the verification provided by 3G or 3J; (vii) if Buyer fails to return Statutory and Lead Disclosures as required by paragraph 6A(2); or (viii) if Buyer fails to sign or initial a separate liquidated damages form for an increased deposit as required by paragraphs 3B and 25. In such event, Seller shall authorize return of Buyer's deposit.
　　(3) **Notice To Buyer To Perform:** The NBP shall: (i) be in writing; (ii) be signed by Seller; and (iii) give Buyer at least 2 (or ☐ _____ ) Days After Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A NBP may not be Delivered any earlier than 2 Days Prior to the expiration of the applicable time for Buyer to remove a contingency or cancel this Agreement or meet an obligation specified in 14C(2).
　D. **EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES:** If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise specified in a separate written agreement between Buyer and Seller, Buyer shall conclusively be deemed to have: (i) completed all Buyer Investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; (ii) elected to proceed with the transaction; and (iii) assumed all liability, responsibility and expense for Repairs or corrections pertaining to that contingency or cancellation right, or for inability to obtain financing.
　E. **CLOSE OF ESCROW:** Before Seller or Buyer may cancel this Agreement for failure of the other party to close escrow pursuant to this Agreement, Seller or Buyer must first Deliver to the other a demand to close escrow (C.A.R. Form DCE).
　F. **EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, Buyer and Seller agree to Sign mutual instructions to cancel the sale and escrow and release deposits, if any, to the party entitled to the funds, less fees and costs incurred by that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. Release of funds will require mutual Signed release instructions from Buyer and Seller, judicial decision or arbitration award. A Buyer or Seller may be subject to a civil penalty of up to $1,000 for refusal to sign such instructions if no good faith dispute exists as to who is entitled to the deposited funds (Civil Code §1057.3).

**15. REPAIRS:** Repairs shall be completed prior to final verification of condition unless otherwise agreed in writing. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: (i) obtain receipts for Repairs performed by others; (ii) prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and (iii) provide Copies of receipts and statements to Buyer prior to final verification of condition.

**16. FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final inspection of the Property within 5 (or _____ ) Days Prior to Close Of Escrow, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: (i) the Property is maintained pursuant to paragraph 9; (ii) Repairs have been completed as agreed; and (iii) Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).

**17. PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless otherwise agreed in writing, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, rents, HOA regular, special, and emergency dues and assessments imposed prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special assessments that are now a lien but not yet due. Property will be reassessed upon change of ownership. Any supplemental tax bills shall be paid as follows: (i) for periods after Close Of Escrow, by Buyer; and (ii) for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

Buyer's Initials ( _VK_ )( _____ )　　　　　　Seller's Initials ( _AF_ )( _____ )

RPA-CA REVISED 4/13 (PAGE 5 OF 8)

| Reviewed by | _____ | Date | _____ |

CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 5 OF 8)　　　　　Untitled

10000 Lubao Ave   ₃atsworth CA

Property Address: _____ Date: *June 26, 2014*

18. **SELECTION OF SERVICE PROVIDERS:** Brokers do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Broker or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

19. **MULTIPLE LISTING SERVICE ("MLS"):** Brokers are authorized to report to the MLS a pending sale and, upon Close Of Escrow, the sales price and other terms of this transaction shall be provided to the MLS to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS.

20. **EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

21. **ATTORNEY FEES:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 26A.

22. **DEFINITIONS:** As used in this Agreement:
   A. **"Acceptance"** means the time the offer or final counter offer is accepted in writing by a party and is delivered to and personally received by the other party or that party's authorized agent in accordance with the terms of this offer or a final counter offer.
   B. **"C.A.R. Form"** means the specific form referenced or another comparable form agreed to by the parties.
   C. **"Close Of Escrow"** means the date the grant deed, or other evidence of transfer of title, is recorded.
   D. **"Copy"** means copy by any means including photocopy, NCR, facsimile and electronic.
   E. **"Days"** means calendar days. However, after Acceptance, the last Day for performance of any act required by this Agreement (including Close Of Escrow) shall not include any Saturday, Sunday, or legal holiday and shall instead be the next Day.
   F. **"Days After"** means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59PM on the final day.
   G. **"Days Prior"** means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.
   H. **"Deliver", "Delivered"** or **"Delivery"**, means and shall be effective upon (i) personal receipt by Buyer or Seller or the individual Real Estate Licensee for that principal as specified in paragraph D of the section titled Real Estate Brokers on page 8, regardless of the method used (i.e. messenger, mail, email, fax, other); OR (ii) if checked, ☐ per the attached addendum (C.A.R. Form RDN).
   I. **"Electronic Copy"** or **"Electronic Signature"** means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other.
   J. **"Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.
   K. **"Repairs"** means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.
   L. **"Signed"** means either a handwritten or electronic signature on an original document, Copy or any counterpart.

23. **BROKER COMPENSATION:** Seller or Buyer, or both, as applicable, agrees to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer.

24. **JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**
   A. The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder, which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: 1, 3, 4, 6C, 11B and D, 12, 13B, 14F, 17, 22, 23, 24, 28, 30 and paragraph D of the section titled Real Estate Brokers on page 8. If a Copy of the separate compensation agreement(s) provided for in paragraph 23, or paragraph D of the section titled Real Estate Brokers on page 8 is deposited with Escrow Holder by Broker, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned. Buyer and Seller will receive Escrow Holder's general provisions directly from Escrow Holder and will execute such provisions upon Escrow Holder's request. To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow.
   B. A Copy of this Agreement shall be delivered to Escrow Holder within 3 business days after Acceptance (or ☐ _____
   _____ ). Escrow Holder shall provide Seller's Statement of Information to Title company when received from Seller. Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement.
   C. Brokers are a party to the escrow for the sole purpose of compensation pursuant to paragraph 23 and paragraph D of the section titled Real Estate Brokers on page 8. Buyer and Seller irrevocably assign to Brokers compensation specified in paragraph 23, respectively, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement. Escrow Holder shall immediately notify Brokers: (i) if Buyer's initial or any additional deposit is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or (ii) if Buyer and Seller instruct Escrow Holder to cancel escrow.
   D. A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within 2 business days after mutual execution of the amendment.

Buyer's Initials ( *VK* )( _____ )

Seller's Initials ( *JF* )( _____ )

Reviewed by _____ Date _____


EQUAL HOUSING
OPPORTUNITY

RPA-CA REVISED 4/13 (PAGE 6 OF 8)

CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 6 OF 8)

Untitled

10000 Lubao Ave ...atsworth CA

Property Address: _____   Date: *June 26, 2014*

25. **LIQUIDATED DAMAGES:** If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award. AT TIME OF THE INCREASED DEPOSIT BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION FOR ANY INCREASED DEPOSIT (C.A.R. FORM RID).

| Buyer's Initials _____ V C_____ / _____ | Seller's Initials ___ SF ___ / _____ |
|---|---|

26. **DISPUTE RESOLUTION:**

A. **MEDIATION:** Buyer and Seller agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action. Buyer and Seller also agree to mediate any disputes or claims with Broker(s), who, in writing, agree to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED. Exclusions from this mediation agreement are specified in paragraph 26C.

B. **ARBITRATION OF DISPUTES:** Buyer and Seller agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. Buyer and Seller also agree to arbitrate any disputes or claims with Broker(s), who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the parties mutually agree to a different arbitrator. The parties shall have the right to discovery in accordance with Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Enforcement of this agreement to arbitrate shall be governed by the Federal Arbitration Act. Exclusions from this arbitration agreement are specified in paragraph 26C.

"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."

"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."

| Buyer's Initials _____ V C _____ / _____ | Seller's Initials ___ SF ___ / _____ |
|---|---|

C. **ADDITIONAL MEDIATION AND ARBITRATION TERMS:**
(1) **EXCLUSIONS:** The following matters are excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver nor violation of the mediation and arbitration provisions.
(2) **BROKERS:** Brokers shall not be obligated nor compelled to mediate or arbitrate unless they agree to do so in writing. Any Broker(s) participating in mediation or arbitration shall not be deemed a party to the Agreement.

27. **TERMS AND CONDITIONS OF OFFER:**
This is an offer to purchase the Property on the above terms and conditions. The liquidated damages paragraph or the arbitration of disputes paragraph is incorporated in this Agreement if initialed by all parties or if incorporated by mutual agreement in a counter offer or addendum. If at least one but not all parties initial, a counter offer is required until agreement is reached. Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance. Buyer has read and acknowledges receipt of a Copy of the offer and agrees to the above confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing.

28. **TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the parties are incorporated in this Agreement. Its terms are intended by the parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as otherwise specified, this Agreement shall be interpreted and disputes shall be resolved in accordance with the laws of the State of California. Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.

Buyer's Initials ( *V C* )( _____ )          Seller's Initials ( _SF_ )( _____ )

| Reviewed by _____ Date _____ |
|---|

10000 Lubao Ave Chatsworth CA

Property Address: _____    Date: _June 26, 2014_

29. **EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit shall be returned unless the offer is Signed by Seller and a Copy of the Signed offer is personally received by Buyer, or by _____, who is authorized to receive it, by 5:00 PM on the third Day after this offer is signed by Buyer (or, if checked, ☐ by ☐ AM ☐ PM, on _____ (date)).

Date _06/26/2014_                                        Date _____

BUYER _____                BUYER _____
_Vazgen Khachatryan_                               _____
(Print name)                                         (Print name)

_____
(Address)

30. **ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property, or has the authority to execute this Agreement. Seller accepts the above offer, agrees to sell the Property on the above terms and conditions, and agrees to the above confirmation of agency relationships. Seller has read and acknowledges receipt of a Copy of this Agreement, and authorizes Broker to Deliver a Signed Copy to Buyer.
☐ (if checked) SUBJECT TO ATTACHED COUNTER OFFER (C.A.R. Form CO) DATEO _____

Date _06/26/2014_                                        Date _____

SELLER _____              SELLER _____
_Julia Freed_                                      _____
(Print name)                                         (Print name)

_____
(Address)

(_____ / _____)      CONFIRMATION OF ACCEPTANCE: A Copy of Signed Acceptance was personally received by Buyer or Buyer's authorized
   (Initials)         agent on (date) _____ at _____ ☐ AM ☐ PM. A binding Agreement is created when
                      a Copy of Signed Acceptance is personally received by Buyer or Buyer's authorized agent whether or not confirmed in
                      this document. Completion of this confirmation is not legally required in order to create a binding Agreement; it is solely
                      intended to evidence the date that Confirmation of Acceptance has occurred.

**REAL ESTATE BROKERS:**
A. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.
B. Agency relationships are confirmed as stated in paragraph 2.
C. If specified in paragraph 3A, Agent who submitted the offer for Buyer acknowledges receipt of deposit.
D. COOPERATING BROKER COMPENSATION: Listing Broker agrees to pay Cooperating Broker (**Selling Firm**) and Cooperating Broker agrees to accept, out of Listing Broker's proceeds in escrow: (i) the amount specified in the MLS, provided Cooperating Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS; or (ii) ☐ (if checked) the amount specified in a separate written agreement (C.A.R. Form CBC) between Listing Broker and Cooperating Broker. Declaration of License and Tax (C.A.R. Form DLT) may be used to document that tax reporting will be required or that an exemption exists.

Real Estate Broker (Selling Firm) _Commercial Property Investment Inc_    BRE Lic. # _01453959_
By _____ _Shahen Martirosian_  BRE Lic. # _01243838_    Date _06/26/2014_
Address _14349 Victory Blnd # 200_        City _Van Nuys_       State _CA_    Zip _91401_
Telephone _(818)285-8622_    Fax _(818)781-7876_    E-mail _firstclassteam@aol.com_

Real Estate Broker (Listing Firm) _Commercial Property Investment Inc_    BRE Lic. # _____
By _____         BRE Lic. # _____    Date _____
Address _____    City _____       State _____    Zip _____
Telephone _____    Fax _____    E-mail _____

**ESCROW HOLDER ACKNOWLEDGMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked,☐ a deposit in the amount of $_____),
counter offer number _____ ☐ Seller's Statement of Information and _____
_____, and agrees to act as Escrow Holder subject to paragraph 24 of this Agreement, any
supplemental escrow Instructions and the terms of Escrow Holder's general provisions.
Escrow Holder is advised that the date of Confirmation of Acceptance of the Agreement as between Buyer and Seller is _____
Escrow Holder _____                Escrow # _____
By _____                            Date _____
Address _____
Phone/Fax/E-mail _____
Escrow Holder is licensed by the California Department of ☐ Corporations,☐ Insurance,☐ Real Estate. License # _____

**PRESENTATION OF OFFER:** (_____) Listing Broker presented this offer to Seller on _____ (date).
                            Broker or Designee Initials

**REJECTION OF OFFER:** (_____) (_____) No counter offer is being made. This offer was rejected by Seller on _____ (date).
                        Seller's Initials

© 2013, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____
Broker or Designee _____ Date _____

EQUAL HOUSING
OPPORTUNITY

REVISION DATE 4/13            CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 8 OF 8)            Untitled

# Exhibit "J"

16-1093RD.txt

```
 1              FOR IDENTIFICATION.)
 2    BY MS. ANAYA:
 3         Q    REPRESENT TO YOU THAT THIS IS A CALIFORNIA
 4    RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW
 5    INSTRUCTIONS WITH THE DATE OF JUNE 26, 2014.  PURPORTING
 6    TO BE AN OFFER FROM VAZGEN KHACHATRYAN FOR 10000 LUBAO
 7    AVENUE, CHATSWORTH, FOR A PURCHASE PRICE OF 350,000.
 8              AND I'LL REPRESENT AT THE BOTTOM OF THIS
 9    PURCHASE AGREEMENT THERE IS A RECTANGLE AND INSIDE IT
10    HAS THE NAME SHAHEN MARTIROSIAN WITH THE PHONE NUMBER,
11    FAX, BROKER, REAL ESTATE EXECUTIVES AND AN ADDRESS OF
12    14349 VICTORY BOULEVARD, SUITE 200, VAN NUYS,
13    CALIFORNIA, 91401.
14              DID YOU PREPARE THIS DOCUMENT?
15         A    I WOULD LIKED TO TAKE MY FIFTH.
16         Q    HOW DID YOU COME UP WITH THE PURCHASE PRICE?
17         A    I WOULD LIKE TO TAKE MY FIFTH.
18         Q    WAS THIS CHATSWORTH PROPERTY EVER IN THE MLS?
19         A    I WOULD LIKE TO TAKE MY FIFTH.
20         Q    WAS IT EVER REALLY FOR SALE AT ALL?
21         A    I WOULD LIKE TO TAKE MY FIFTH.
22         Q    OKAY.  THE CONTRACT IN SECTION 2C ON PAGE 1
23    LISTS COMMERCIAL PROPERTY INVESTMENT, INC., AS THE AGENT
24    FOR THE BOTH BUYER AND SELLER.  WAS THAT TRUE?
25         A    I WOULD LIKE TO TAKE MY FIFTH.
```

22

Page 20

16-1093RD.txt

1      Q   WAS JULIA FREED, F-R-E-E-D, THE OWNER OF THE

2   PROPERTY IN JUNE 2014? ---

3      A   I WOULD LIKE TO TAKE MY FIFTH.

4      Q   WAS SHE YOUR CLIENT?

5      A   I WOULD LIKE TO TAKE MY FIFTH.

6      Q   DID YOU HAVE A LISTING AGREEMENT FOR THIS LUBAO

7   PROPERTY?

8      A   I WOULD LIKE TO TAKE MY FIFTH.

9      Q   DID SHE EVER GIVE YOU PERMISSION TO SELL THE

10  PROPERTY FOR 350,000?

11     A   I WOULD LIKE TO TAKE MY FIFTH.

12     Q   THERE WAS NEVER ANY PURCHASE TRANSACTION AT

13  ALL; CORRECT?

14     A   I WOULD LIKE TO TAKE MY FIFTH.

15     Q   OKAY.  YOU CAN FLIP THAT OVER TO YOUR RIGHT.

16  THANK YOU.

17         HOW MUCH MONEY DID YOU REQUEST MR. KHACHATRYAN

18  GIVE YOU FOR THE PURPORTED PURCHASE OF THE LUBAO,

19  CHATSWORTH PROPERTY?

20     A   I WOULD LIKE TO TAKE MY FIFTH.

21     Q   OKAY.  THE NEXT DOCUMENT I'LL MARK AS

22  EXHIBIT 3.  I'LL REPRESENT TO YOU THAT THESE ARE FOUR

23  RECEIPTS FROM REALTY EXECUTIVES PREMIER ESCROW.  RECEIPT

24  218, 219, 221 AND 217.  WE'LL GO THROUGH THEM IN THE

25  ORDER TO WHICH THEY'RE STAPLED.  I'LL REPRESENT TO YOU

                                                    23

1   THESE WERE PRODUCED TO MY OFFICE BY YOUR COUNSEL VIA

2   E-MAIL.

3          (PLAINTIFF'S EXHIBIT 3 MARKED

                   Page 21

                         16-1093RD.txt
4                   FOR IDENTIFICATION.)

5       BY MS. ANAYA:

6            Q    ARE YOU FAMILIAR WITH THESE RECEIPTS?

7            A    I WOULD LIKE TO TAKE MY FIFTH.

8            Q    DID YOU PREPARE THEM?

9            A    I WOULD LIKE TO TAKE MY FIFTH.

10           Q    IN LOOKING AT THE FIRST ONE, RECEIPT 218 WITH

11      THE DATE OF OCTOBER 14, 2014, FOR THE AMOUNT OF 48,000,

12      DID YOU RECEIVE THIS AMOUNT FOR THE LUBAO PROPERTY FROM

13      MR. KHACHATRYAN?

14           A    I WOULD LIKE TO TAKE MOVE FIFTH.

15           Q    DID YOU DEPOSIT IT INTO YOUR ACCOUNT OF BANK OF

16      AMERICA?

17           A    I WOULD LIKE TO TAKE MY FIFTH.

18           Q    WAS THERE EVER AN ESCROW OPEN 001644 FOR THE

19      SUBJECT PROPERTY?

20           A    I WOULD LIKE TO TAKE MY FIFTH.

21           Q    OKAY.  GOING ON TO THE NEXT ONE.  RECEIPT NO.

22      219 WITH A DATE OF OCTOBER 23, 2014.  DID YOU RECEIVE

23      THE SUM OF $52,500 FROM MR. KHACHATRYAN FOR THE

24      CHATSWORTH PROPERTY?

25           A    I WOULD LIKE TO TAKE MY FIFTH.

                                                          24


1            Q    DID YOU DEPOSIT IT INTO THE BUSINESS BANK

2       ACCOUNT THAT YOU UTILIZED AT BANK OF AMERICA?

3            A    I WOULD LIKE TO TAKE MY FIFTH.

4            Q    AND WAS THIS RELATED TO ANY ESCROW THROUGH YOUR

5       OFFICE OR THROUGH YOUR ESCROW THAT YOU OPERATED UNDER

6       001644?

                         Page 22

16-1093RD.txt

7      A  I WOULD LIKE TO TAKE MY FIFTH.

8      Q  MOVING TO PAGE 3, RECEIPT NO. 221 REFERENCES

9  THE SAME ESCROW NUMBER.  THIS ONE IS DATE OF

10  NOVEMBER 10, 2014.  DID YOU PREPARE THIS RECEIPT?

11      A  I WOULD LIKE TO TAKE MY FIFTH.

12      Q  DID YOU RECEIVE 150,000 FROM MR. KHACHATRYAN TO

13  DEPOSIT INTO YOUR ESCROW ACCOUNT?

14      A  I WOULD LIKE TO TAKE MY FIFTH.

15      Q  LAST ONE.  PAGE 4 REFERENCING THE SAME ESCROW.

16  THIS ONE HAS THE DATE OF OCTOBER 10, 2014, RECEIPT NO.

17  217.  DID YOU RECEIVE $100,000 FROM MR. KHACHATRYAN?

18      A  I WOULD LIKE TO TAKE MY FIFTH.

19      Q  DID YOU PREPARE THIS RECEIPT?

20      A  I WOULD LIKE TO TAKE MY FIFTH.

21      Q  I'LL REPRESENT TO YOU THAT THAT TOTAL OF THESE

22  FOUR RECEIPTS IS $350,500.  DID YOU MOVE THESE FUNDS TO

23  ANY OTHER ACCOUNT OTHER THAN THE BANK OF AMERICA TO

24  WHICH THEY WERE DEPOSITED?

25      A  I WOULD LIKE IT TAKE MY FIFTH.

                                     25

1      Q  DID YOU WITHDRAW THESE FUNDS AND USE IT FOR

2  PERSONAL PURPOSES?

3      A  I WOULD LIKE TO TAKE MY FIFTH.

4      Q  WERE ANY OF THESE MONEYS EVER INTENDED ON YOUR

5  PART TO EVER BE USED FOR A LEGITIMATE REAL ESTATE

6  TRANSACTION?

7      A  I WOULD LIKE TO TAKE MY FIFTH.

8      Q  ALL RIGHT.  YOU CAN FLIP IT OVER.

9        THE NEXT DOCUMENT I'LL MARK AS EXHIBIT 4.

16-1093RD.txt

10         (PLAINTIFF'S EXHIBIT 4 MARKED

11         FOR IDENTIFICATION.)

12   BY MS. ANAYA:

13     Q   I'LL REPRESENT TO YOU THESE ARE THREE CASHIER'S

14   CHECKS.  THREE OUT OF THE FOUR OF THE RECEIPTS WE JUST

15   UTILIZED, BUT THESE ARE ACTUAL COPIES OF THE CHECKS.

16         I'LL JUST REPRESENT TO YOU THE FIRST CHECK HAS

17   A DATE OF OCTOBER 14, 2014, FOR 48,000 PAID TO THE ORDER

18   OF REALTY EXECUTIVES PREMIER FROM MR. KHACHATRYAN.

19         THE NEXT ONE PAGE 2 IS OCTOBER 10, 2014, FOR

20   100,000, MADE PAYABLE TO THE ORDER OF REALTY EXECUTIVES

21   PREMIER FROM MR. KHACHATRYAN.

22         THE THIRD ONE IS DATED NOVEMBER 10, 2014, FOR

23   $150,000 FROM MR. KHACHATRYAN TO THE ORDER OF REALTY

24   EXECUTIVES PREMIER.  ALL REFERENCE THE LUBAO, CHATSWORTH

25   PROPERTY.

                        26

♀

1         DID YOU RECEIVE THESE THREE CASHIER CHECKS.

2     A   I WOULD LIKE TO TAKE MY FIFTH.

3     Q   DID YOU ENDORSE THEM AND DEPOSIT THEM INTO CPI

4   REAL ESTATE GROUP, REALTY EXECUTIVE PREMIER ACCOUNT OF

5   BANK OF AMERICA?

6     A   I WOULD LIKE TO TAKE MY FIFTH.

7     Q   IN OCTOBER 2014, HOW MANY ACCOUNTS DID CPI

8   REALTY EXECUTIVES HAVE AT BANK OF AMERICA?

9     A   I WOULD LIKE TO TAKE MY FIFTH.

10     Q   DID YOU HAVE ACCOUNTS AT OTHER FINANCIAL

11   INSTITUTIONS?

12     A   I WOULD LIKE TO TAKE MY FIFTH.

16-1093RD.txt

13      Q   DID YOU USE THESE FUNDS FOR YOUR PERSONAL

14  BUSINESS?

15      A   I WOULD LIKE TO TAKE MY FIFTH.

16      Q   DID YOU USE THESE FUNDS FOR GAMBLING?

17      A   I WOULD LIKE TO TAKE MY FIFTH.

18      Q   DID YOU USE THESE FUNDS TO PAY OFF OTHER

19  PERSONAL DEBTS OF YOURSELF?

20      A   I WOULD LIKE TO TAKE MY FIFTH.

21      Q   DID YOU USE MR. KHACHATRYAN'S FUNDS TO PAY THE

22  MORTGAGE ON 4705 EXCELENTE, WOODLAND HILLS?

23      A   I WOULD LIKE TO TAKE MY FIFTH.

24      Q   DID YOU USE THESE FUNDS TO GIVE THEM TO YOUR

25  WIFE, VIRGINIA MARTIROSIAN?

                                     27

1      A   I WOULD LIKE TO TAKE MY FIFTH.

2      Q   OKAY.  YOU CAN FLIP THIS OVER.

3         DID YOUR DAUGHTER CHRISTINA MARTIROSIAN HAVE AN

4  OWNERSHIP INTERESTED IN 4705 EXCELENTE PROPERTY?

5      A   NO.

6      Q   OKAY.  LOOKING AT TITLE HISTORY I'LL REPRESENT

7  TO YOU THAT SHE DEEDED OVER HER INTEREST TO

8  VIRGINIA MARTIROSIAN IN 2008.

9         DO YOU RECALL THAT?

10      A   NO.

11      Q   MR. KHACHATRYAN WAS NEVER ABLE TO PURCHASE THE

12  10000 LUBAO AVENUE PROPERTY; CORRECT?

13      A   I WOULD LIKE TO TAKE MY FIFTH.

14      Q   AND AFTER THE CHATSWORTH PROPERTY DIDN'T

15  MATERIALIZE OR SUFFICIENT TIME HAD GONE BY, DID YOU END

16-1093RD.txt

16     UP -- OR DID YOU MAKE A PITCH TO HIM THAT YOU HAD A

17     PROPERTY FOR SALE ON 1437 HIGHLAND IN GLENDALE?

18          A    I WOULD LIKE TO TAKE MY FIFTH.

19          Q    DID YOU PREPARE A PURCHASE CONTRACT FOR

20     1437 HIGHLAND?

21          A    I WOULD LIKE TO TAKE MY FIFTH.

22          Q    THERE WAS NEVER ANY PURCHASE TRANSACTION FOR

23     1437 HIGHLAND IN GLENDALE FOR MR. KHACHATRYAN; CORRECT?

24          A    I WOULD LIKE TO TAKE MY FIFTH.

25          Q    HOW MANY OTHER WOULD-BE BUYERS DID YOU PREPARE

                                                          28

1     CONTRACTS FOR FOR THE PURPORTED PURCHASE ON THE LUBAO

2     PROPERTY?

3          A    I WOULD LIKE TO TAKE MY FIFTH.

4          Q    HOW MANY OTHER WOULD-BE BUYERS DID YOU PREPARE

5     CONTRACTS FOR THE PURPORTED PURCHASE FOR 1437 HIGHLAND?

6          A    I WOULD LIKE TO TAKE MY FIFTH.

7          Q    AND IN 2014, HOW MANY ACTUAL REAL ESTATE

8     TRANSACTIONS DID YOU HAVE ACTUAL ACTING AS EITHER A

9     BUYER OR SELLERS AGENT WHERE THE TRANSACTION ACTUALLY

10    CLOSED SUCCESSFULLY?

11         A    I WOULD LIKE TO TAKE MY FIFTH.

12              GOING BACK TO THE QUESTION YOU HAD FOR

13    CHRISTINA.  YOU ASKED ME IF I REMEMBER 2008 THE PROPERTY

14    WAS UNDER HER NAME?

15         Q    YES.  I REPRESENTED TO YOU THAT THERE WAS A

16    DEED TRANSFER IN HER INTEREST.

17         A    NO, NEVER IN HER NAME.

18         Q    WE'LL I'LL REPRESENT TO YOU THAT'S WHAT THE

                          Page 26

# Exhibit "K"

This page is part of your document - DO NOT DISCARD



**20161525185**



Pages:
0003

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**12/05/16 AT 08:00AM**

| | |
|---|---|
| FEES: | 28.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 28.00 |



**L E A D S H E E T**



201612053290001

00013054186

007988449

**SEQ:**
**01**

SECURE - 8:00AM



**THIS FORM IS NOT TO BE DUPLICATED**

E08_161205_5400750

WFG National-Default Services

RECORDING REQUESTED BY
All American Foreclosure Service

AND WHEN RECORDED MAIL TO:
All American Foreclosure Service
1363 Marsh Street
San Luis Obispo, California 93401

T.S. No.:  41899
Loan No.:  HARU
T.O. No.:  160024008

---

### NOTICE OF TRUSTEE'S SALE

*NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED*
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
*NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO*
*TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP*
*LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY*
**PURSUANT TO CIVIL CODE § 2923.3(a), THE SUMMARY OF INFORMATION REFERRED TO ABOVE
IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY TO THE COPIES
PROVIDED TO THE TRUSTOR.**

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 7/15/2015.  UNLESS YOU TAKE ACTION
TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.  IF YOU NEED AN
EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT
A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn
by a state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings
association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this
state will be held by the duly appointed trustee as shown below, of all right, title, and interest conveyed to and now
held by the trustee in the hereinafter described property under and pursuant to a Deed of Trust described below.
**NOTICE: ALL AMERICAN FORECLOSURE SERVICE, AS TRUSTEE, WILL NOT ACCEPT THIRD
PARTY ENDORSED CASHIER'S CHECKS.  ALL CASHIER'S CHECKS MUST BE PAYABLE
DIRECTLY TO ALL AMERICAN FORECLOSURE SERVICE.**
The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or
encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, with interest and late
charges thereon, as provided in the note(s), advances, under the terms of the Deed of Trust, interest thereon, fees,
charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale)
reasonably estimated to be set forth below.  The amount may be greater on the day of sale.

Trustor: ANAHIT HARUTYUNYAN
Duly Appointed Trustee: All American Foreclosure Service
Recorded 8/12/2015 as instrument No. 20150988019 in book , page   of Official Records in the office of the
Recorder of Los Angeles County, California,
Date of Sale: 12/28/2016 at 10:30 AM
Location of        Near the fountain located at 400 Civic Center Plaza, Pomona, California 91766
Sale:
Amount of unpaid balance and other charges: $211,313.43
Street Address or other common designation of real        4705 Excelente Drive
property:                                                  Los Angeles CA  91364

T.S. No.:  41899

## NOTICE OF SALE

A.P.N.: 2076-009-031

The undersigned Trustee disclaims any liability for any incorrectness of the street address or other common designation, if any, shown above. If no street address or other common designation is shown, directions to the location of the property may be obtained by sending a written request to the beneficiary within 10 days of the date of first publication of this Notice of Sale.

If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of the monies paid to the trustee and the successful bidder shall have no recourse. If the sale is set aside for any reason, the Purchaser at the sale shall be entitled only to a return of the deposit paid. The Purchaser shall have no further recourse against the Mortgagor, the Mortgagee, or the Mortgagee's Attorney.

NOTICE TO POTENTIAL BIDDERS: If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

NOTICE TO PROPERTY OWNER: The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call 888-988-6736 or visit this Internet Web site www.salestrack.tdsf.com, using the file number assigned to this case 41899. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

Date: 12/1/2016

All American Foreclosure Service
1363 Marsh Street, San Luis Obispo, CA  93401  (805) 543-7088

Sheryl A. Machado, Trustee Sale Officer

Exhibit "L"

Matrix                                                                                          12/21/16, 5:53 PM

| | Criteria | Map | Results |

| Previous · Next · 1 of 1 | Checked 0 | All · None · Page | Agent 1 Line display | Display | Agent Full | at | 1 | per page |

☐ **4705 Excelente Dr, Woodland Hills 91364**      STATUS: **Expired**      LIST PRICE: **$1,895,000** ↓

south of Ventura bl./North of Mulholland dr. Cross Streets: Reforma Rd.



BED / BATH: **5/4,0,1,0**
SQFT(src): **4,780 (P)**
PRICE PER SQFT: **$396.44**
LOT(src): **0.717/31,253 (A)**
GARAGE: **3/Attached**
YEAR BUILT(src): **1989 (ASR)**
PROP SUB TYPE: **SFR (D)**
DOM / CDOM: **178/178**
SLC: **Standard**
PARCEL #: **2076009031**
LISTING ID: **OC16105866**
LIST $ ORIGINAL: **$2,200,000**

### DESCRIPTION

Luxurious estate, situated over a 31,000 sq. ft lot in "The Heights" located South of the Blvd. Grand entrance marble foyer leading to a formal living, dining room. Kitchen w/ custom Italian cabinets, w/ center island, granite countertops. Walk in pantry. Laundry Room. Downstairs BD w/ attached bathroom. Large Master BD upstairs, with jacuzzi tub, walk-in closets, fireplace, private balcony with mountain-top views. BBQ, pool/spa, tennis court.

EXCLUSIONS:                                              INCLUSIONS:

| | | | |
|---|---|---|---|
| AREA: **WHLL - Woodland Hills** | LEVELS: **Two** | ROOM TYPE: **Office** | COOLING: **Central** |
| SUBDIVISION: / | BASEMENT SQFT: | EATING AREA: | HEATING: **Forced Air, Natural Gas** |
| COUNTY: **Los Angeles** | COMMON WALLS: **No Common Walls** | | VIEW: **Canyon, Hills, Mountain** |
| SENIOR COMMUNITY?: **No** | PARKING: **Garage Door Opener** | | WATERFRONT: |
| CERTIFIED 433A?: | HORSE: | | POOL: **Gunite, Heated, In Ground** |
| MAIN LEVEL BEDROOMS: | | | LAUNDRY: **Dryer Included, Washer Included** |
| MAIN LEVEL BATHROOMS: | | | |

### INTERIOR

| | | |
|---|---|---|
| INTERIOR: | APPLIANCES: **Convection Oven, Dishwasher, Electric Oven, Garbage Disposal, Gas Range, Microwave, Refrigerator** | ENTRY LOC/ENTRY LVL: / |
| ACCESSIBILITY: | | FIREPLACE: **Gas, Living Room, Master Bedroom** |
| | FLOORING: **Laminated** | |

### EXTERIOR

| | | | |
|---|---|---|---|
| EXTERIOR: | SECURITY: | LOT: **Level with Street, Sprinklers In Front, Sprinklers In Rear, Sprinklers On Side, Sprinklers Timer, Sprinkler System** | PATIO/PORCH: **Patio** |
| DIRECTION FACES: **North** | FENCING: | | SPA: **Gunite, Heated** |
| | | SEWER: | |

### BUILDING

| | | | |
|---|---|---|---|
| BUILDER NAME: | ARCH STYLE: **Contemporary** | ROOF: **Spanish Tile** | CONSTR MTLS: **Stucco** |
| MAKE: | DOOR: | FOUNDATION DTLS: | STRUCT. COND: |
| BUILD MODEL: | WINDOW: | PROP COND: | OTHER STRUCT: |
| TAX MODEL: | | | |

### GARAGE AND PARKING

| | | | |
|---|---|---|---|
| ATTACHED GARAGE?: **Attached** | PARKING TOTAL: **3** | GARAGE SPACES: **3** | CARPORT SPACES: |
| UNCOVERED SPACES: | # REMOTES: | RV PARK DIM: | |

### GREEN

| | | | |
|---|---|---|---|
| GREEN BLDG VERIFICATION TYPE: | GREEN VERIFICATION BODY: | GREEN VERIFICATION YR: | GREEN VERI. RATING: |
| GREEN ENERGY GEN: | GREEN ENERGY EFF: | GREEN SUSTAIN: | GREEN WTR CONSERV: |
| WALK SCORE: | | | |

### COMMUNITY

| | | | |
|---|---|---|---|
| HOA FEE: **$385/Annually** | HOA NAME: | HOA PHONE: | HOA AMENITIES: |
| HOA FEE 2: | HOA NAME 2: | HOA PHONE 2: | # UNITS IN COMMUNITY: **1** |
| COMMUNITY: **Curbs** | | | STORIES TOTAL: |

Matrix                                                                                                    12/21/16, 5:53 PM

## LAND

LAND LEASE?: **No**
LAND LEASE AMOUNT:
LAND LEASE AMT FREQ:
PARCEL #: **2076009031**
ADDITIONAL APN(s): **No**

LAND LEASE PURCH?:
LAND LEASE RENEW:

UTILITIES: **Sewer Available**
ELECTRIC:
WATER SOURCE: **Public**
LOT SIZE DIM:
ASSESSMENTS: **Unknown**

TAX LOT: **209**
TAX BLOCK:
TAX TRACT #: **9098**
ZONING:

## SCHOOL

HIGH SCHOOL DISTRICT: **Los Angeles** ELEMENTARY:                MIDDLE/JR HIGH:            HIGH SCHOOL:
**Unified**

## LISTING

BAC: **2.500%**
BAC RMRKS:
DUAL/VARI COMP?: **No**
LEASE CONSIDERED?: **Yes**
CURRENT FINANCING:
POSSESSION:
SIGN ON PROPERTY?:

TERMS: **Conventional, FHA, VA, Cash, Cash
to New Loan**
LIST AGRMT: **Exclusive Agency**
LIST SERVICE: **Limited Service**
AD NUMBER:
DISCLOSURES:
VOW, AVM?/COMM?: **Yes/Yes**
INTERNET?/ADDRESS?: **Yes/Yes**

## DATES

LIST CONTRACT DATE: **05/18/16**
PRICE CHG TIMESTAMP: **06/20/16**
STATUS CHG TIMESTAMP: **11/13/16**
MOD TIMESTAMP: **11/13/16**
EXPIRED DATE: **11/12/16**
PURCH CONTRACT DATE:
ENDING DATE: **11/12/16**

CONTINGENCY:
PRIVATE REMARKS: House is also for rent at $12,000 a month with option to buy. All offers must be submitted to
carl@homelisters.org All showings and questions direct to seller Name: Anahit Harutyunyan Email:
anahit.harutyunyan1960@gmail.com Number: (818) 534-6468 Listing Agent can be reached by email or 949-726-7325

## SHOWING INFORMATION

SHOW CONTACT TYPE: **Owner**
SHOW CONTACT NAME: **Anahit**
SHOW CONTACT PH: **818-534-6468**
DIRECTIONS: **south of Ventura bl./North of Mulholland dr. Cross Streets: Reforma Rd.**

SHOW INSTRUCTIONS: For
showing call seller 818-534-
6468 Call Owner

LOCK BOX LOCATION: **No Key
Safe**
LOCK BOX TYPE: **None**

OCCUPANT TYPE: **Owner**
OWNER'S NAME: **Anahit**

## AGENT / OFFICE

LA: **(SWUESCAR) Carl Wuestehube**
CoLA:
LO: **(D702) Tri-Star Realty**
LO PHONE: **949-276-7325Ext:0**
CoLO:
CoLO PHONE:

LA State License: **00634943**
CoLA State License:
LO State License:
LO FAX: **800-721-7314**
CoLO State License:
CoLO FAX:

## CONTACT PRIORITY

1.OTHER: **Seller/818-534-6468**
2.LA DIRECT: **949-276-7325**
3.LA CELL: **949-276-7325**
4.LA FAX: **800-721-7314**
5.LA VOICEMAIL:
6.LA EMAIL: **Carl@MLSHomeListers.com**

## COMPARABLE INFORMATION

CLOSE PRICE:
LIST PRICE: **$1,895,000**
LIST $ ORIGINAL:
PURCH CONTRACT DATE:
DOM/CDOM: **178/178**

BA: **0**
BO:
BA State License:

CoBA: **0**
CoBO:
CoBA State License:

BUYER FINANCING:
CONCESSIONS $:
CONCESSION CMTS:
END DATE: **11/12/16**

## PHOTOS

**Click Arrow to display Photos**

If you believe there is a violation on this listing, click here to report the problem.

☐  AGENT FULL: Residential    LISTING ID: OC16105866        Printed by Hamid Sadat, CalBRE: 01456976 on 12/21/2016 5:53:10 PM

Property Type is 'Residential'
Listing Id is 'OC16105866'
Ordered by Standard Status, MLS Area Major, Close Price, List Price
Found 1 result in 0.11 seconds.

# Exhibit "M"

1  | ALANA B. ANAYA, SBN 195758
   | JONATHAN MALEK SBN 235125
   | BRETT RALSTON SBN 287342
2  | ANAYA LAW GROUP
   | 2629 Townsgate Road, Suite 140
3  | Westlake Village, CA 91361
   | Tel: (805) 230-9222
4  | Fax: (805) 230-9221
   | Email: alana@anayalawgroup.com
5  |
   | Attorneys for Plaintiff,
6  | VAZGEN KHACHATRYAN
7  |
8  |              UNITED STATES BANKRUPTCY COURT
9  |              CENTRAL DISTRIST OF CALIFORNIA
10 |
11 | In Re: SHAHEN MATIROSIAN          ) CASE NO.  1:15-bk-11139 MB
   |                                   )
12 |        Debtor.                    ) ADVERSARY  CASE  NO.  1:16-BK-01091
   |                                   ) MB
13 | _____ )
14 | VAZGEN KHACHATRYAN                )
   |                                   )
15 |        Plaintiff,                 ) AMENDED NOTICE OF DEPOSITION OF
   |                                   ) SHAHEN MATIROSIAN AND REQUEST
   | vs.                               ) FOR PRODUCTION OF DOCUMENTS
16 |                                   )
17 | SHAHEN MARTIROSIAN; CPI REAL      )
   | ESTATE GROUP, INC., doing business as ) Date: December 20, 2016
18 | REALTY EXECUTIVES PREMIERE        ) Time: 10:00 am
   | ESCROW DIVISION; VIRGINIA         ) Place: 2629 Townsgate Road, Suite 140
19 | MARTIROSIAN; ANAHIT               ) Westlake Village, CA 91361
   | HARUTYUNYAN; 4705 EXCELENTE INC., )
20 | a California corporation and DOES 1 to 100 )
   | inclusive,                        )
21 |                                   )
   |                                   )
22 | _____ )
23 |
   | TO ALL PARTIES HEREIN AND TO THEIR ATTORNEYS OF RECORD:
24 |
25 | PLEASE TAKE NOTICE that Plaintiff VAZGEN KHACHATRYAN will take the deposition
26 | of Defendant SHAHEN MARTIROSIAN, on December 20, 2016, 10:00 am before a certified
27 | Shorthand reporter, who shall be present at said time and place in the offices of Anaya Law
28 | Group, 2629 Townsgate Road Suite 140, Westlake Village, CA 91361. Said deposition may
   | be videotaped for use at trial.

Said deposition to continue from day to day excluding Sundays and holidays, until completed.

IF AN INTERPRETER IS REQUIRED TO TRANSLATE TESTIMONY, NOTICE OF SAME MUST BE GIVEN AT LEAST TEN (10) BUSINESS DAYS BEFORE DEPOSITION DATE, AND SAID SPECIFIC LANGUAGE AND/OR DIALECT DESIGNATED.

NOTICE IS ALSO GIVEN that the Deponent is required to produce the following documents, items and things at said deposition:

With respect to each document request to which a claim of privilege is asserted, you are required to separately state the following: (1) the type of communication, information OR DOCUMENT to which a claim of privilege is being asserted; (2) the basis of any claim of privilege; (3) if work-product immunity is being asserted, IDENTIFY the processing for which the DOCUMENT was prepared; (4) with respect to each DOCUMENT or communication to which a claim of privilege is being asserted, state: (a) its date; (b) the name, business ADDRESS AND present position of its originator(s) OR author(s); (c) the position of its originator(s) OR author(s) at the time the communication was made OR the DOCUMENT was prepared; (d) the name, business ADDRESS AND present position of each recipient at the time the communication OR DOCUMENT; (e) the position of each recipient at the time the communication OR DOCUMENT was prepared, AND the time it was received; (f) a general description of the subject of the communication OR DOCUMENT.

B.    As used herein, the term "IDENTIFY" when referring to a DOCUMENT means: (1) the name, business affiliation AND last known ADDRESS of the PERSON OR PERSONS who prepared it AND of the PERSON OR PERSONS who signed it OR over whose name it was issued; (2) the name, business affiliation AND last known ADDRESS of each PERSON to whom it was addressed; (3) the nature AND substance of the DOCUMENTS with sufficient particularity to enable the same to be identified, including its title AND date, if any; (4) the portion thereof which bears upon the subject inquired of in the

1   interrogatory in question; (5) the name, business affiliation AND ADDRESS of each

2   PERSON who presently has custody of the DOCUMENT OR any copy of it; (6) the location

3   of the DOCUMENT AND each copy of it; AND (7) whether you will voluntarily make the

4   DOCUMENTS OR a copy of it available for inspection AND copying without a court order.

5   At your option you may attach a copy of any DOCUMENT mentioned in your answers, in

6   which case you may omit items (3) through (7) of the foregoing.

7       C.    For the purpose of these Requests for Production of Documents,

8   "DOCUMENT" shall be understood to apply to any kind of written, typewritten, printed OR

9   recorded material whatsoever, including but without limitation, notes, memoranda, letters,

10  reports, telegrams, publications, computer diskettes, compact discs (CDs) Digital Video Discs

11  (DVDs), BluRay discs, mobile phone message (text messages), electronic mail, contracts,

12  recordings, transcriptions of recordings AND business records, whether OR not in your

13  possession OR under your control, relating to OR pertaining in any way to the subject matter

14  to which the document requests refer, AND includes, without limitation, originals, all file

15  copies, all other copies (with OR without notes OR changes thereon), no matter how prepared,

16  drafts, working papers, routing slips, AND similar materials.

17      D.    "COMMUNICATION(S)" means any and all direct and/or indirect

18  transmission or exchange of information between two or more individuals and/or entities, or

19  their respective agents and/or representatives, whether or reduced to writing, including,

20  without limitation, any meeting, conversation or discussion, whether face-to-face, by means

21  of mail, telephone, mobile phone ("text") message, telegraph, telex, facsimile ("fax"),

22  electronic mail ("e-mail"), or any other medium.

23

24  1.  Copy of all documents referring to, relating to or constituting any agreement or

25      contract that Shahan Matirosian and any affiliates or entities under your common

26      control (hereinafter "YOU" or "YOUR") or anyone other than YOU at your request or

27      direction, prepared for any and all individuals for real property described as 10000

28

Lubao Avenue, Chatsworth, CA from January 1, 2013 through the present.

2. Copy of all documents referring to, relating to or constituting any agreement or contract that YOU, or anyone other than YOU at your request or direction, prepared for any and all individuals for real property described as 1437 Highland, Glendale, CA from January 1, 2013 through January 1, 2016.

3. Produce all documents, including but not limited to bank statements, which identify where YOU transferred or deposited any money that YOU received from Plaintiff from September 1, 2014 through the present December 1, 2015 on all accounts where you deposited the monies received from Plaintiff.

4. All documents relating to, referring to or constituting any use by YOU or any other PERSON of any money provided to YOU by Plaintiff.

5. Copy of all documents (excluding third party individual financial or other confidential information) evidencing closed sales transactions to which YOU acted as either the buyer's or seller's agent from January 1, 2014 to the present.

6. List the addresses of all properties that Realty Executives Premiere Escrow handled the escrows for from January 1, 2014 through the present.

7. Bank statements for all accounts utilized by Realty Executives Premiere Escrow for the period of January 1, 2014 through the present.

8. Produce all communications between YOU and Plaintiff from October 1, 2014 to the present.

9. Produce the tax returns for the years 2013-2015 for CPI Real Estate Group, Inc.

10. Produce all lease or rental payments you have paid for 4705 Excelente, Woodland Hills, CA in the last 18 months.

11. Produce all documents evidencing any and all items YOU or YOUR wife Virginia, have paid for the upkeep or maintenance of 4705 Excelente, Woodland Hills, CA

including but not limited, to property taxes, insurance, utilities, repairs, landscape, pool service and mortgage payments.

12. Produce all documents that evidence or reference any agreements between YOU, YOUR wife Virginia and Anahit Harutyunyan.

13. Produce all documents evidencing any prior transactions, of any kind, with Anahit Harutyunyan prior to her purchase of 4705 Excelente, Woodland Hills, CA.

14. Produce all documents evidencing all property YOU transferred to anyone including YOUR wife Virginia from January 1, 2014 to the present.

DATED: November 17, 2016

ANAYA LAW GROUP

By: _____
     Alana Anaya
     Attorneys for Plaintiff

## PROOF OF SERVICE

1

2        I declare that I am employed in the County of Ventura, California. I am over the age of
eighteen years and not a party to the within case; my business address is: 2629 Townsgate

3    Road, Suite 140, Westlake Village, CA 91361.

4        On November 17, 2016, I served the foregoing document described as:

5    **PLAINTIFF'S NOTICE OF DEPOSITION AND REQUEST PRODUCTION OF
DOCUMENTS TO SHAHEN MATIROSIAN**

6

7    On the following interested attorney(s)/parties in this action:

8

| Jilbert Tahmazian | Benjamin Yrungaray |
|---|---|
| Law Offices of Jilbert Tahmazian | De Novo Law Firm |
| 1518 West Glenoaks Blvd. | 5295 Arlington Ave |
| Glendale, CA 91201 | Riverside, CA 92504 |

9

10

11    [X]    **(BY MAIL)**
  [ ]    **(BY CERTIFIED MAIL RETURN RECEIPT REQUESTED)**

12

13        [X] by placing a true copy thereof in a sealed envelope with postage fully prepaid. I am
readily familiar with the business practice of the Anaya Law Group for collection and

14    processing of correspondence for mailing with the United States Postal Service, and the
correspondence would be deposited with the United States Postal Service that same day in the
ordinary course of business.

15

16        [ ] by depositing the seal envelope with the United States Postal Service with postage fully
prepaid.

17    [ ]    **(BY TELEFACSIMILE TRANSMISSION)** at approximately___[ ] AM [ ] PM, from the
telefacsimile transmitting machine at the Anaya Law Group, 2629 Townsgate Road, Suite

18    140, Westlake Village, CA 91361 [facsimile number (805) 230-9221], to the attention of the
following interested parties in this action, at addressee's facsimile numbers set forth in the

19    attached facsimile cover sheet. This transmission was reported as complete and without error.

20    [ ]    **(BY OVERNIGHT DELIVERY)**
    [ ]    BY FEDERAL EXPRESS DELIVERY

21

22    [   ]    (State) I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct. Executed on November 15, 2016, at Westlake Village,

23    California.

24    [X]    (Federal) I declare that I am employed in the office of a member of the Bar of this Court, at
whose direction the service was made. I declare under penalty of perjury under the laws of the

25    United States of America that the foregoing is true and correct. Executed on November 17,
2016, at Westlake Village, California.

26

27    Joan Roy_____
name

28

# Send Result Report

**KYOCERA**

MFP
CS-6050

Firmware Version  2GR_2000.035.002  2010.07.23

---

Job No.  : 123151      Total Time   : 0°06'03"      Page    : 012

# Completed

Document :  doc20161117131720

---

| | |
|---|---|
| 1 | **ALANA B. ANAYA, SBN 195758**<br>**JONATHAN MALEK SBN 235125**<br>**BRETT RALSTON SBN 287342** |
| 2 | **ANAYA LAW GROUP**<br>2629 Townsgate Road, Suite 140 |
| 3 | Westlake Village, CA 91361<br>Tel: (805) 230-9222 |
| 4 | Fax: (805) 230-9221<br>Email: alana@anayalawgroup.com |
| 5 | |
| 6 | Attorneys for Plaintiff,<br>VAZGEN KHACHATRYAN |
| 7 | |
| 8 | UNITED STATES BANKRUPTCY COURT |
| 9 | CENTRAL DISTRIST OF CALIFORNIA |
| 10 | |
| 11 | In Re: SHAHEN MATIROSIAN )  CASE NO.  1:15-bk-11139 MB |
| 12 | ) <br> Debtor.        )  ADVERSARY  CASE  NO.  1:16-BK-01091<br>)  MB |
| 13 | ——————————————— )<br>VAZGEN KHACHATRYAN )|

---

| No. | Date and Time | Destination | Times | Type | Result | Resolution / ECM |
|---|---|---|---|---|---|---|
| 001 | 11/17/2016 13:20 | 18779326223 | 0°06'03' | FAX | OK | 200x200 Fine / Off |

# Send Result Report

**KYOCERA**

MFP
CS-5050

Firmware Version  2GR_2000.035.002  2010.07.23

| | |
|---|---|
| Job No. : 123150 | Total Time : 0°02'50"    Page : 012 |

# Completed

Document :  doc20161117131607

---

| | |
|---|---|
| 1 | **ALANA B. ANAYA, SBN 195758**<br>**JONATHAN MALEK SBN 235125**<br>**BRETT RALSTON SBN 287342** |
| 2 | **ANAYA LAW GROUP**<br>2629 Townsgate Road, Suite 140 |
| 3 | Westlake Village, CA 91361<br>Tel: (805) 230-9222 |
| 4 | Fax: (805) 230-9221<br>Email: alana@anayalawgroup.com |
| 5 | |
| 6 | Attorneys for Plaintiff,<br>VAZGEN KHACHATRYAN |
| 7 | |
| 8 | UNITED STATES BANKRUPTCY COURT |
| 9 | CENTRAL DISTRIST OF CALIFORNIA |
| 10 | |
| 11 | In Re: SHAHEN MATIROSIAN    )    CASE NO. 1:15-bk-11139 MB<br>    ) |
| 12 | Debtor.    )    ADVERSARY  CASE  NO.  1:16-BK-01091<br>    )    MB |
| 13 | _____    )<br>VAZGEN KHACHATRYAN    ) |

---

| No. | Date and Time | Destination | Times | Type | Result | Resolution / ECM |
|---|---|---|---|---|---|---|
| 001 | 11/17/2016 13:17 | 18182428246 | 0°02'50" | FAX | OK | 200x200 Fine / On |

1   JILBERT TAHMAZIAN, [SBN 143574]
     TAHMAZIAN LAW FIRM, P.C.
2   1518 West Glenoaks Boulevard
     Glendale, California 91201
3   Telephone No. (818) 242-8201
     Facsimile No. (818) 242-8246
4
     Attorneys for Defendants SHAHEN MARTIROSIAN
5   and CPI REAL ESTATE GROUP, INC., d.b.a.
     REALTY EXECUTIVES PREMIERE ESCROW DIVISION
6

7

8                    UNITED STATES BANKRUPTCY COURT

9                     CENTRAL DISTRICT OF CALIFORNIA

10
     In Re: Shahen Matirosian          )  CASE NO.:   1:15-bk-11139 MB
11                                      )
            Debtor.                     )  Adversary Case No: 1:16-BK-01091 MB
12                                      )
                                        )
13   _____        )
                                        )
14   VAZGEN KHACHATRYAN,                )  **OBJECTIONS TO REQUEST FOR**
                                        )  **PRODUCTION OF DOCUMENTS AT**
            Plaintiff,                   )  **DEPOSITION OF SHAHEN**
15                                      )  **MARTIROSIAN**
16          v.                          )
                                        )  Date: December 20, 2016
17   SHAHEN MARTIROSIAN; CPI REAL       )  Time: 10:00 am
     ESTATE GROUP, INC., doing business as )  Location: 2629 Townsgate Road, #140,
18   REALTY EXECUTIVES PREMIERE         )  Westlake Village, CA 91361
     ESCROW DIVISION; VIRGINIA          )
19   MARTIROSIAN; ANAHIT HARUTYUNYAN;)
     4705 EXCELENTE INC., a California    )
20   corporation and DOES 1 to 100 inclusive, )
                                        )
21                                      )
            Defendants.                 )
22   _____        )

23        TO THE PARTIES AND TO THE ATTORNEYS OF RECORD:

24        Debtor SHAHEN MARTIROSIAN (hereinafter, "MARTIROSIAN") objects to the

25   request for production of documents at the deposition of MARTIROSIAN as follows:

26        1. Regarding request number 1, MARTIROSIAN objects on the grounds and to the extent

27   that he is invoking his right under the Act of Production doctrine, which allows an individual to

28   _____
                                          1
           **OBJECTIONS TO REQUEST FOR PRODUCTION OF DOCUMENTS AT**
                  **DEPOSITION OF SHAHEN MARTIROSIAN**

1   assert its Fifth Amendment privilege when compelled to turn over documents that may lead to

2   inculpating evidence.

3       2. Regarding request number 2, MARTIROSIAN objects on the grounds and to the extent

4   that he is invoking his right under the Act of Production doctrine, which allows an individual to

5   assert its Fifth Amendment privilege when compelled to turn over documents that may lead to

6   inculpating evidence.

7       3. Regarding request number 3, MARTIROSIAN objects on the grounds and to the extent

8   that he is invoking his right under the Act of Production doctrine, which allows an individual to

9   assert its Fifth Amendment privilege when compelled to turn over documents that may lead to

10  inculpating evidence.

11      4. Regarding request number 4, MARTIROSIAN objects on the grounds and to the extent

12  that he is invoking his right under the Act of Production doctrine, which allows an individual to

13  assert its Fifth Amendment privilege when compelled to turn over documents that may lead to

14  inculpating evidence.

15      5. Regarding request number 5, MARTIROSIAN objects on the grounds and to the extent

16  that he is invoking his right under the Act of Production doctrine, which allows an individual to

17  assert its Fifth Amendment privilege when compelled to turn over documents that may lead to

18  inculpating evidence.  MARTIROSIAN further objects on the grounds and to the extent that the

19  request is unduly burdensome and irrelevant.

20      6.  Regarding request number 6, MARTIROSIAN objects on the grounds and to the

21  extent that he is invoking his right under the Act of Production doctrine, which allows an

22  individual to assert its Fifth Amendment privilege when compelled to turn over documents that

23  may lead to inculpating evidence.  MARTIROSIAN further objects on the grounds and to the

24  extent that the request is unduly burdensome and irrelevant.

25      7.  Regarding request number 7, MARTIROSIAN objects on the grounds and to the

26  extent that he is invoking his right under the Act of Production doctrine, which allows an

27  individual to assert its Fifth Amendment privilege when compelled to turn over documents that

28

2

**OBJECTIONS TO REQUEST FOR PRODUCTION OF DOCUMENTS AT
DEPOSITION OF SHAHEN MARTIROSIAN**

1    may lead to inculpating evidence.

2        8. Regarding request number 8, MARTIROSIAN objects on the grounds and to the extent

3    that he is invoking his right under the Act of Production doctrine, which allows an individual to

4    assert its Fifth Amendment privilege when compelled to turn over documents that may lead to

5    inculpating evidence.

6        9. Regarding request number 9, MARTIROSIAN objects on the grounds and to the extent

7    that he is invoking his right under the Act of Production doctrine, which allows an individual to

8    assert its Fifth Amendment privilege when compelled to turn over documents that may lead to

9    inculpating evidence.

10       12. Regarding request number 12, MARTIROSIAN objects on the grounds and to the

11   extent that any communication made between MARTIROSIAN and his wife Virginia Martirosian

12   is privileged communication.

13

14

15   DATED: December 16, 2016          TAHMAZIAN LAW FIRM, P.C.

16

17                        BY:    _____

18                               JILBERT TAHMAZIAN, ESQ.
                                 Attorney for Defendants SHAHEN MARTIROSIAN

19

20

21

22

23

24

25

26

27

28

3

**OBJECTIONS TO REQUEST FOR PRODUCTION OF DOCUMENTS AT
DEPOSITION OF SHAHEN MARTIROSIAN**

# Exhibit "N"

16-1093RD.txt

```
1        CASE CAPTION:  SHAHEN MARTIROSIAN DEBTOR
         WITNESS:  SHAHEN MARTIROSIAN
2        DATE:  DECEMBER 20, 2016

3

4                      DISCLAIMER NOTICE
         BOB MCCANN REPORTERS HAS, AT THE REQUEST OF COUNSEL,
         PREPARED THE FOLLOWING ROUGH DRAFT TRANSCRIPT, UNPROOFED
5        AND UNCORRECTED, OF THE NAMED WITNESS, TAKEN ON THE DATE
         INDICATED.  THIS DRAFT TRANSCRIPT MAY AND WILL CONTAIN
6        TRANSCRIPT ERRORS, NAME AND WORD CHOICE MISTAKES, AND
         OTHER INACCURACIES.
7
         PER CCP 2025(R)(2), "WHEN PREPARED AS A ROUGH DRAFT
8        TRANSCRIPT, THE TRANSCRIPT OF THE DEPOSITION MAY NOT BE
         CERTIFIED AND MAY NOT BE USED, CITED OR TRANSCRIBED AS
9        THE CERTIFIED TRANSCRIPT OF THE DEPOSITION PROCEEDINGS.
         THE ROUGH DRAFT TRANSCRIPT MAY NOT BE CITED OR USED IN
10       ANY WAY OR AT ANY TIME TO REBUT OR CONTRADICT THE
         CERTIFIED TRANSCRIPT OF THE DEPOSITION PROCEEDINGS AS
11       PROVIDED BY THE DEPOSITION OFFICER.
                              *    *    *
12

13                       EXAMINATION

14       BY MS. ANAYA:

15            Q    PLEASE STATE YOUR FULL NAME FOR THE RECORD.

16            A    SHAHEN MARTIROSIAN.

17            Q    ALL RIGHT.  GOOD MORNING.  MY NAME IS

18       ALANA ANAYA.  I REPRESENT VAZGEN KHACHATRYAN, WHICH IS

19       SITTING TO MY RIGHT.  YOU RECOGNIZE THIS GENTLEMAN?

20            A    YES.

21            Q    OKAY.  HAVE YOU HAD YOUR DEPOSITION TAKEN

22       BEFORE?

23            A    YES.

24            Q    OKAY.  HOW MANY TIMES?

25            A    ONCE.
```

                                                              1

                        16-1093RD.txt
22        A    4705 EXCELENTE DRIVE, WOODLAND HILLS,

23   CALIFORNIA, 91364.

24        Q    AND HOW LONG HAVE YOU LIVED AT THIS PROPERTY?

25        A    SINCE 2001.

                                                        9


1         Q    DID YOU PURCHASE IT IN 2001?

2         A    YES.

3         Q    FOR HOW MUCH?

4         A    880,000, I THINK.

5         Q    AND YOUR WIFE, VIRGINIA, LIVES AT THIS PROPERTY

6    WITH YOU.

7         A    YES.

8         Q    OKAY.  AND DO YOU HAVE CHILDREN, SIR?

9         A    BETWEEN US OR IN GENERAL?

10        Q    IN GENERAL.

11        A    YES.

12        Q    AND DO THEY ALSO RESIDE AT THE PROPERTY?

13        A    ONE OF THEM, YES.

14        Q    YOU HAVE HOW MANY CHILDREN?

15        A    WE HAVE TOTAL OF THREE.

16        Q    OKAY.  ARE THEY ADULTS OR SOME OF THEM MINORS?

17        A    ADULTS, BUT ONE OF THEM IS HANDICAPPED,

18   MENTALLY HANDICAPPED.

19        Q    THE ONE THAT LIVES AT THE PROPERTY IS THAT THE

20   ONE WHO WITH SPECIAL NEEDS?

21        A    RIGHT.

22             MR. TAHMAZIAN:  WAIT UNTIL SHE FINISHES THE

23   QUESTION.

24   BY MS. ANAYA:

                        Page 9

16-1093RD.txt

21     A   I DON'T.

22     Q   YOU'VE NEVER SPOKEN TO HER?

23     A   NO.

24     Q   YOU EVER MET WITH HER?

25     A   YES, I DID.

19

1     Q   BUT YOU DID NOT EXCHANGE ANY WORDS?

2     A   NO.

3     Q   OKAY.  SO TELL ME ABOUT THE LAST TIME YOU MET

4   WITH HER.  WELL, LET'S ESTABLISH HOW MANY TIMES HAVE YOU

5   MET WITH HER.

6     A   MAYBE A FEW TIMES LAST COUPLE OF MONTHS.

7     Q   OKAY.  AND WHAT WAS THE LOCATION OF THESE

8   MEETINGS?

9     A   MY ATTORNEY'S OFFICE.

10     Q   OKAY.  BECAUSE YOU SHARE THE SAME ATTORNEY WITH

11   ANAHIT; CORRECT?

12     A   YES.

13     Q   DO YOU HAVE AN AGREEMENT WITH HER TO PAY HER

14   LEGAL FEES?

15     A   I WOULD LIKE TO TAKE MY FIFTH.

16     Q   OKAY.  I'M GOING TO ASK YOU SOME QUESTIONS

17   ABOUT MY CLIENT, MR. KHACHATRYAN.

18         DO YOU RECALL MEETING HIM SOMETIME IN JUNE

19   2014?

20     A   I WOULD LIKE TO TAKE MY FIFTH.

21     Q   DO YOU RECALL WHERE YOU MET HIM?

22     A   I WOULD LIKE TO TAKE MY FIFTH.

23     Q   YOU INTRODUCED YOURSELF TO HIM AT HIS PLACE OF

16-1093RD.txt

24 BUSINESS; IS THAT CORRECT?

25  A I WOULD LIKE TO TAKE MY FIFTH.

   20

1  Q AND WHEN YOU MET WITH HIM AT HIS BUSINESS, DID

2 YOU TELL HIM THAT YOU'RE A REAL ESTATE INVESTOR?

3  A I WOULD LIKE TO TAKE MY FIFTH.

4  Q DID YOU OFFER YOUR SALES SERVICES TO HIM?

5  A I WOULD LIKE TO TAKE MY FIFTH.

6  Q DID YOU TELL HIM YOU HAD SOME GOOD REAL ESTATE

7 DEALS FOR HIM?

8  A I WOULD LIKE TO TAKE MY FIFTH.

9  Q HOW DID YOU COME TO FIND OUT THAT HE MIGHT BE

10 INTERESTED IN BUYING PROPERTY?

11  A I WOULD LIKE TO TAKE MY FIFTH.

12  Q DID YOU SCOPE HIM OUT OR DO ANY DUE DILIGENCE

13 BEFORE YOU WALKED INTO HIS STORE?

14  A I WOULD LIKE TO TAKE MY FIFTH.

15  Q DID YOU EVER BRING MR. KHACHATRYAN TO YOUR

16 OFFICE?

17  A I WOULD LIKE TO TAKE MY FIFTH.

18  Q DID YOU EVER SHOW HIM ANY PROPERTY?

19  A I WOULD LIKE TO TAKE MY FIFTH.

20  Q DID YOU TELL MR. KHACHATRYAN THAT THERE WAS A

21 PROPERTY FOR SALE DESCRIBED AS 10000 LUBAO AVENUE,

22 CHATSWORTH, CALIFORNIA THAT WAS FOR SALE?

23  A I WOULD LIKE TO TAKE MY FIFTH.

24  Q OKAY.  WE'RE GOING TO MOVE ON TO EXHIBIT 2.

25  (PLAINTIFF'S EXHIBIT 2 MARKED

   21

16-1093RD.txt

```
1              FOR IDENTIFICATION.)
2    BY MS. ANAYA:
3        Q    REPRESENT TO YOU THAT THIS IS A CALIFORNIA
4    RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW
5    INSTRUCTIONS WITH THE DATE OF JUNE 26, 2014.  PURPORTING
6    TO BE AN OFFER FROM VAZGEN KHACHATRYAN FOR 10000 LUBAO
7    AVENUE, CHATSWORTH, FOR A PURCHASE PRICE OF 350,000.
8              AND I'LL REPRESENT AT THE BOTTOM OF THIS
9    PURCHASE AGREEMENT THERE IS A RECTANGLE AND INSIDE IT
10   HAS THE NAME SHAHEN MARTIROSIAN WITH THE PHONE NUMBER,
11   FAX, BROKER, REAL ESTATE EXECUTIVES AND AN ADDRESS OF
12   14349 VICTORY BOULEVARD, SUITE 200, VAN NUYS,
13   CALIFORNIA, 91401.
14             DID YOU PREPARE THIS DOCUMENT?
15       A    I WOULD LIKED TO TAKE MY FIFTH.
16       Q    HOW DID YOU COME UP WITH THE PURCHASE PRICE?
17       A    I WOULD LIKE TO TAKE MY FIFTH.
18       Q    WAS THIS CHATSWORTH PROPERTY EVER IN THE MLS?
19       A    I WOULD LIKE TO TAKE MY FIFTH.
20       Q    WAS IT EVER REALLY FOR SALE AT ALL?
21       A    I WOULD LIKE TO TAKE MY FIFTH.
22       Q    OKAY.  THE CONTRACT IN SECTION 2C ON PAGE 1
23   LISTS COMMERCIAL PROPERTY INVESTMENT, INC., AS THE AGENT
24   FOR THE BOTH BUYER AND SELLER.  WAS THAT TRUE?
25       A    I WOULD LIKE TO TAKE MY FIFTH.
```

22

16-1093RD.txt

1          Q    WAS JULIA FREED, F-R-E-E-D, THE OWNER OF THE

2    PROPERTY IN JUNE 2014?

3          A    I WOULD LIKE TO TAKE MY FIFTH.

4          Q    WAS SHE YOUR CLIENT?

5          A    I WOULD LIKE TO TAKE MY FIFTH.

6          Q    DID YOU HAVE A LISTING AGREEMENT FOR THIS LUBAO

7    PROPERTY?

8          A    I WOULD LIKE TO TAKE MY FIFTH.

9          Q    DID SHE EVER GIVE YOU PERMISSION TO SELL THE

10   PROPERTY FOR 350,000?

11         A    I WOULD LIKE TO TAKE MY FIFTH.

12         Q    THERE WAS NEVER ANY PURCHASE TRANSACTION AT

13   ALL; CORRECT?

14         A    I WOULD LIKE TO TAKE MY FIFTH.

15         Q    OKAY.  YOU CAN FLIP THAT OVER TO YOUR RIGHT.

16   THANK YOU.

17              HOW MUCH MONEY DID YOU REQUEST MR. KHACHATRYAN

18   GIVE YOU FOR THE PURPORTED PURCHASE OF THE LUBAO,

19   CHATSWORTH PROPERTY?

20         A    I WOULD LIKE TO TAKE MY FIFTH.

21         Q    OKAY.  THE NEXT DOCUMENT I'LL MARK AS

22   EXHIBIT 3.  I'LL REPRESENT TO YOU THAT THESE ARE FOUR

23   RECEIPTS FROM REALTY EXECUTIVES PREMIER ESCROW.  RECEIPT

24   218, 219, 221 AND 217.  WE'LL GO THROUGH THEM IN THE

25   ORDER TO WHICH THEY'RE STAPLED.  I'LL REPRESENT TO YOU

                                                            23

1    THESE WERE PRODUCED TO MY OFFICE BY YOUR COUNSEL VIA

2    E-MAIL.

3              (PLAINTIFF'S EXHIBIT 3 MARKED

16-1093RD.txt

```
 4                FOR IDENTIFICATION.)

 5     BY MS. ANAYA:

 6          Q    ARE YOU FAMILIAR WITH THESE RECEIPTS?

 7          A    I WOULD LIKE TO TAKE MY FIFTH.

 8          Q    DID YOU PREPARE THEM?

 9          A    I WOULD LIKE TO TAKE MY FIFTH.

10          Q    IN LOOKING AT THE FIRST ONE, RECEIPT 218 WITH

11     THE DATE OF OCTOBER 14, 2014, FOR THE AMOUNT OF 48,000,

12     DID YOU RECEIVE THIS AMOUNT FOR THE LUBAO PROPERTY FROM

13     MR. KHACHATRYAN?

14          A    I WOULD LIKE TO TAKE MOVE FIFTH.

15          Q    DID YOU DEPOSIT IT INTO YOUR ACCOUNT OF BANK OF

16     AMERICA?

17          A    I WOULD LIKE TO TAKE MY FIFTH.

18          Q    WAS THERE EVER AN ESCROW OPEN 001644 FOR THE

19     SUBJECT PROPERTY?

20          A    I WOULD LIKE TO TAKE MY FIFTH.

21          Q    OKAY.  GOING ON TO THE NEXT ONE.  RECEIPT NO.

22     219 WITH A DATE OF OCTOBER 23, 2014.  DID YOU RECEIVE

23     THE SUM OF $52,500 FROM MR. KHACHATRYAN FOR THE

24     CHATSWORTH PROPERTY?

25          A    I WOULD LIKE TO TAKE MY FIFTH.
```

                                                            24

```
 1          Q    DID YOU DEPOSIT IT INTO THE BUSINESS BANK

 2     ACCOUNT THAT YOU UTILIZED AT BANK OF AMERICA?

 3          A    I WOULD LIKE TO TAKE MY FIFTH.

 4          Q    AND WAS THIS RELATED TO ANY ESCROW THROUGH YOUR

 5     OFFICE OR THROUGH YOUR ESCROW THAT YOU OPERATED UNDER

 6     001644?
```

Page 22

16-1093RD.txt

```
 7          A    I WOULD LIKE TO TAKE MY FIFTH.
 8          Q    MOVING TO PAGE 3, RECEIPT NO. 221 REFERENCES
 9    THE SAME ESCROW NUMBER.  THIS ONE IS DATE OF
10    NOVEMBER 10, 2014.  DID YOU PREPARE THIS RECEIPT?
11          A    I WOULD LIKE TO TAKE MY FIFTH.
12          Q    DID YOU RECEIVE 150,000 FROM MR. KHACHATRYAN TO
13    DEPOSIT INTO YOUR ESCROW ACCOUNT?
14          A    I WOULD LIKE TO TAKE MY FIFTH.
15          Q    LAST ONE.  PAGE 4 REFERENCING THE SAME ESCROW.
16    THIS ONE HAS THE DATE OF OCTOBER 10, 2014, RECEIPT NO.
17    217.  DID YOU RECEIVE $100,000 FROM MR. KHACHATRYAN?
18          A    I WOULD LIKE TO TAKE MY FIFTH.
19          Q    DID YOU PREPARE THIS RECEIPT?
20          A    I WOULD LIKE TO TAKE MY FIFTH.
21          Q    I'LL REPRESENT TO YOU THAT THAT TOTAL OF THESE
22    FOUR RECEIPTS IS $350,500.  DID YOU MOVE THESE FUNDS TO
23    ANY OTHER ACCOUNT OTHER THAN THE BANK OF AMERICA TO
24    WHICH THEY WERE DEPOSITED?
25          A    I WOULD LIKE IT TAKE MY FIFTH.
```

25

```
 1          Q    DID YOU WITHDRAW THESE FUNDS AND USE IT FOR
 2    PERSONAL PURPOSES?
 3          A    I WOULD LIKE TO TAKE MY FIFTH.
 4          Q    WERE ANY OF THESE MONEYS EVER INTENDED ON YOUR
 5    PART TO EVER BE USED FOR A LEGITIMATE REAL ESTATE
 6    TRANSACTION?
 7          A    I WOULD LIKE TO TAKE MY FIFTH.
 8          Q    ALL RIGHT.  YOU CAN FLIP IT OVER.
 9               THE NEXT DOCUMENT I'LL MARK AS EXHIBIT 4.
```

Page 23

16-1093RD.txt

10          (PLAINTIFF'S EXHIBIT 4 MARKED

11          FOR IDENTIFICATION.)

12     BY MS. ANAYA:

13          Q    I'LL REPRESENT TO YOU THESE ARE THREE CASHIER'S

14     CHECKS.  THREE OUT OF THE FOUR OF THE RECEIPTS WE JUST

15     UTILIZED, BUT THESE ARE ACTUAL COPIES OF THE CHECKS.

16          I'LL JUST REPRESENT TO YOU THE FIRST CHECK HAS

17     A DATE OF OCTOBER 14, 2014, FOR 48,000 PAID TO THE ORDER

18     OF REALTY EXECUTIVES PREMIER FROM MR. KHACHATRYAN.

19          THE NEXT ONE PAGE 2 IS OCTOBER 10, 2014, FOR

20     100,000, MADE PAYABLE TO THE ORDER OF REALTY EXECUTIVES

21     PREMIER FROM MR. KHACHATRYAN.

22          THE THIRD ONE IS DATED NOVEMBER 10, 2014, FOR

23     $150,000 FROM MR. KHACHATRYAN TO THE ORDER OF REALTY

24     EXECUTIVES PREMIER.  ALL REFERENCE THE LUBAO, CHATSWORTH

25     PROPERTY.

                                                            26

1          DID YOU RECEIVE THESE THREE CASHIER CHECKS.

2          A    I WOULD LIKE TO TAKE MY FIFTH.

3          Q    DID YOU ENDORSE THEM AND DEPOSIT THEM INTO CPI

4     REAL ESTATE GROUP, REALTY EXECUTIVE PREMIER ACCOUNT OF

5     BANK OF AMERICA?

6          A    I WOULD LIKE TO TAKE MY FIFTH.

7          Q    IN OCTOBER 2014, HOW MANY ACCOUNTS DID CPI

8     REALTY EXECUTIVES HAVE AT BANK OF AMERICA?

9          A    I WOULD LIKE TO TAKE MY FIFTH.

10          Q    DID YOU HAVE ACCOUNTS AT OTHER FINANCIAL

11     INSTITUTIONS?

12          A    I WOULD LIKE TO TAKE MY FIFTH.

16-1093RD.txt

13      Q   DID YOU USE THESE FUNDS FOR YOUR PERSONAL

14  BUSINESS?

15      A   I WOULD LIKE TO TAKE MY FIFTH.

16      Q   DID YOU USE THESE FUNDS FOR GAMBLING?

17      A   I WOULD LIKE TO TAKE MY FIFTH.

18      Q   DID YOU USE THESE FUNDS TO PAY OFF OTHER

19  PERSONAL DEBTS OF YOURSELF?

20      A   I WOULD LIKE TO TAKE MY FIFTH.

21      Q   DID YOU USE MR. KHACHATRYAN'S FUNDS TO PAY THE

22  MORTGAGE ON 4705 EXCELENTE, WOODLAND HILLS?

23      A   I WOULD LIKE TO TAKE MY FIFTH.

24      Q   DID YOU USE THESE FUNDS TO GIVE THEM TO YOUR

25  WIFE, VIRGINIA MARTIROSIAN?

                                          27

1      A   I WOULD LIKE TO TAKE MY FIFTH.

2      Q   OKAY.  YOU CAN FLIP THIS OVER.

3         DID YOUR DAUGHTER CHRISTINA MARTIROSIAN HAVE AN

4  OWNERSHIP INTERESTED IN 4705 EXCELENTE PROPERTY?

5      A   NO.

6      Q   OKAY.  LOOKING AT TITLE HISTORY I'LL REPRESENT

7  TO YOU THAT SHE DEEDED OVER HER INTEREST TO

8  VIRGINIA MARTIROSIAN IN 2008.

9         DO YOU RECALL THAT?

10      A   NO.

11      Q   MR. KHACHATRYAN WAS NEVER ABLE TO PURCHASE THE

12  10000 LUBAO AVENUE PROPERTY; CORRECT?

13      A   I WOULD LIKE TO TAKE MY FIFTH.

14      Q   AND AFTER THE CHATSWORTH PROPERTY DIDN'T

15  MATERIALIZE OR SUFFICIENT TIME HAD GONE BY, DID YOU END

16-1093RD.txt

16    UP -- OR DID YOU MAKE A PITCH TO HIM THAT YOU HAD A

17    PROPERTY FOR SALE ON 1437 HIGHLAND IN GLENDALE?

18         A    I WOULD LIKE TO TAKE MY FIFTH.

19         Q    DID YOU PREPARE A PURCHASE CONTRACT FOR

20    1437 HIGHLAND?

21         A    I WOULD LIKE TO TAKE MY FIFTH.

22         Q    THERE WAS NEVER ANY PURCHASE TRANSACTION FOR

23    1437 HIGHLAND IN GLENDALE FOR MR. KHACHATRYAN; CORRECT?

24         A    I WOULD LIKE TO TAKE MY FIFTH.

25         Q    HOW MANY OTHER WOULD-BE BUYERS DID YOU PREPARE

                                                             28


1     CONTRACTS FOR FOR THE PURPORTED PURCHASE ON THE LUBAO

2     PROPERTY?

3          A    I WOULD LIKE TO TAKE MY FIFTH.

4          Q    HOW MANY OTHER WOULD-BE BUYERS DID YOU PREPARE

5     CONTRACTS FOR THE PURPORTED PURCHASE FOR 1437 HIGHLAND?

6          A    I WOULD LIKE TO TAKE MY FIFTH.

7          Q    AND IN 2014, HOW MANY ACTUAL REAL ESTATE

8     TRANSACTIONS DID YOU HAVE ACTUAL ACTING AS EITHER A

9     BUYER OR SELLERS AGENT WHERE THE TRANSACTION ACTUALLY

10    CLOSED SUCCESSFULLY?

11         A    I WOULD LIKE TO TAKE MY FIFTH.

12              GOING BACK TO THE QUESTION YOU HAD FOR

13    CHRISTINA.  YOU ASKED ME IF I REMEMBER 2008 THE PROPERTY

14    WAS UNDER HER NAME?

15         Q    YES.  I REPRESENTED TO YOU THAT THERE WAS A

16    DEED TRANSFER IN HER INTEREST.

17         A    NO, NEVER IN HER NAME.

18         Q    WE'LL I'LL REPRESENT TO YOU THAT'S WHAT THE

                          Page 26

16-1093RD.txt

19    TITLE REFLECTS, BUT YOU CAN LOOK INTO THAT ON YOUR OWN.

20        A   OKAY.

21        Q   IN 2014, HOW MANY DEPOSITS DID YOU RECEIVE FROM

22   WOULD-BE PURCHASERS FOR TRANSACTIONS THAT NEVER CLOSED?

23        A   I WOULD LIKE TO TAKE MY FIFTH.

24        Q   AND OUT OF THE DEPOSITS YOU RECEIVED IN 2014

25   THAT YOU DEPOSITED INTO PREMIER ESCROW ACCOUNTS OR YOUR

                                                        29


1    PERSONAL ACCOUNTS, HOW MANY DID YOU WITHDRAW THOSE

2    DEPOSITS AND USE THEM FOR YOUR PERSONAL BUSINESS OR

3    GAMBLING?

4        A   I WOULD LIKE TO TAKE MY FIFTH.

5        Q   OKAY.  WERE YOU AN ACTIVE GAMBLER IN 2013?

6        A   I WOULD LIKE TO TAKE MY FIFTH.

7        Q   WERE YOU AN ACTIVE GAMBLER IN 2014?

8        A   I WOULD LIKE TO TAKE MY FIFTH.

9        Q   WERE YOU AN ACTIVE GAMBLER IN 2015?

10        A   I WOULD LIKE TO TAKE MY FIFTH.

11        Q   OKAY.  I'LL REPRESENT TO YOU AND COPY WAS

12   SERVED TO YOUR ATTORNEY NOTIFYING HIM OF MY SUBPOENA TO

13   CALIFORNIA COMMERCE CLUB AND HUSTLER CASINO.  WERE YOU

14   GAMBLING AT BOTH OF THESE FACILITIES FROM 2014 TO 2016?

15        A   I WOULD LIKE TO TAKE MY FIFTH.

16        Q   HOW MANY GAMBLING TOURNAMENTS DID YOU PLAY IN

17   2014?

18        A   I WOULD LIKE TO TAKE MY FIFTH.

19        Q   SAME QUESTION FOR 2015.

20        A   I WOULD LIKE TAGALOG TAKE MY FIFTH.

21        Q   SAME QUESTION FOR 2016.

16-1093RD.txt

```
 6      A    NO.

 7      Q    SO YOUR HOUSE IS THE ONLY ONE YOU'RE AWARE OF

 8  THAT HAS THE --

 9      A    YES.

10      Q    -- THE SLAB ISSUE.  OKAY.  AND IF THIS

11  FOUNDATION ISSUE WAS NOT EXISTING, WHAT DO YOU THINK THE

12  VALUE OF THE PROPERTY WOULD BE IN 2013?

13      A    MAYBE 1.6, 1.7.

14      Q    OKAY.  DID YOU OBTAIN ANY ESTIMATES FOR

15  CORRECTING THE SLAB ISSUE?

16      A    YES.

17      Q    AND WHAT WAS THAT?  HOW MUCH?

18      A    WELL, TOTAL ESTIMATE WE GOT WAS GOING TO BE

19  ABOUT ANYWHERE FROM 750 TO 1.1 MILLION COST TO FIX.

20      Q    OKAY.  ARE YOU AWARE THAT THE EXCELENTE

21  PROPERTY WAS LISTED IN 2016 FOR SALE?

22      A    YES.

23      Q    OKAY.  DO YOU KNOW HOW MUCH IT WAS LISTED FOR?

24      A    1.89.

25      Q    OKAY.  AND DO YOU BELIEVE THAT TO BE THE
```

35

```
 1  ACCURATE VALUE OF THE PROPERTY IN 2016?

 2      A    NO, NO.

 3      Q    AND YOU ATTRIBUTE THAT TO THE FOUNDATION ISSUE?

 4      A    DEFINITELY, YES.

 5      Q    OKAY.  WHEN YOUR WIFE, VIRGINIA, SOLD THE HOUSE

 6  TO ANAHIT, DID SHE DISCLOSE THE FOUNDATION ISSUE?

 7      A    YES.

 8      Q    ARE THEIR WRITTEN DISCLOSURES IN THAT
```

16-1093RD.txt

12      DO YOU SEE THAT?

13           A    YES.

14           Q    NOW, YOU REMAINED IN THE PROPERTY AFTER THE

15      CLOSE OF ESCROW; CORRECT?

16           A    YES.

17           Q    OKAY.  WHO WAS GOING TO PAY THE $6,800 MORTGAGE

18      PAYMENT?

19           A    ANAHIT.

20           Q    ANAHIT WAS?

21           A    YES.

22           Q    OKAY.  DO YOU HAVE ANY UNDERSTANDING THAT SHE

23      HAD THE ABILITY TO PAY 6,843.31 PER MONTH?

24           A    I DON'T KNOW.

25           Q    DID YOU OR YOUR WIFE HAVE A CONVERSATION WITH

                                                          58

1       HER AS TO HOW SHE WAS GOING TO COME UP WITH THE MONEY?

2            A    WELL, WE BECAME TENANTS.  SO WE WERE PAYING

3       RENT.

4            Q    AND HOW MUCH RENT WERE YOU PAYING?

5            A    2,200.

6            Q    OKAY.  SO YOU GAVE HER RENT SINCE THE CLOSE OF

7       ESCROW OF 2,200 A MONTH?

8            A    YES.

9            Q    OKAY.  IF YOU KNOW, WHO IS PAYING THE PROPERTY

10      TAXES?

11           A    I BELIEVE ANAHIT.

12           Q    AND, IF YOU KNOW, WHO IS PAYING THE INSURANCE?

13           A    ANAHIT.

14           Q    AND IS THERE A GARDENER OR LANDSCAPE HAPPENING

                        Page 53

16-1093RD.txt

6    FOR THE MORTGAGE.

7         A    I BELIEVE SO.

8         Q    OKAY.  HAS A DATE OF SEPTEMBER 15, 2015, DRAWN

9    ON THE WELLS FARGO ACCOUNT ENDING IN 475.  DO YOU SEE

10   THAT AT THE TOP RIGHT?  DO YOU WANT TO POINT HIM TO

11   THAT.

12        A    OKAY.

13        Q    OKAY.  AND IT SAYS REMITTER,

14   ANAHIT HARUTYUNYAN, PURCHASER ANAHIT HARUTYUNYAN.

15            NOW, IF YOU LOOK AT THE MIDDLE ONE WE HAVE A

16   SECOND CASHIER'S CHECK MADE PAYABLE TO CITY FINANCE.

17   SAME AMOUNT AS THE MORTGAGE PAYMENT WE LOOKED AT

18   EARLIER.  SAYS THIS IF FOR OCTOBER 15, 2015, AGAIN,

19   DRAWN ON THE SAME WELLS FARGO ACCOUNT ENDING IN 475.

20            BUT THIS TIME WE SEE THE PURCHASER AS

21   VIRGINIA MARTIROSIAN.  HOW COME SHE'S PAYING THE

22   MORTGAGE ON ANAHIT HARUTYUNYAN'S ACCOUNT.  DO YOU HAVE

23   ANY IDEA?

24        A    NO.

25        Q    THIS THE FIRST TIME YOU'RE SEEING THIS?

77

1         A    YES.

2         Q    OKAY.  THEN LET'S LOOK AT THE NEXT MONTH, WHICH

3    IS THE THIRD CHECK IN THIS COPY.  THIS IS A CASHIER'S

4    CHECK MADE PAYABLE TO CITY NATIONAL FINANCE.  IS A DATE

5    OF NOVEMBER 14, 2015, SAME AMOUNT AS THE MORTGAGE

6    PAYMENT.  AGAIN DRAWN ON MS. HARUTYUNYAN'S ACCOUNT

7    ENDING IN 475.  AGAIN, PURCHASER, VIRGINIA MARTIROSIAN.

8    AGAIN, GOING TO WELLS FARGO TO PURCHASE A CASHIER'S

16-1093RD.txt

9       CHECK TO MAKE THE MORTGAGE PAYMENT.

10              WHAT DO YOU KNOW ABOUT THAT?

11          A   I DON'T KNOW.

12          Q   FIRST TIME YOU'RE SEEING THIS?

13          A   YES.

14          Q   ARE YOU SURPRISED THAT VIRGINIA MARTIROSIAN IS

15      OBTAINING CASHIER'S CHECKS TO MAKE THE MORTGAGE PAYMENT?

16          A   NO.

17          Q   WHY NOT?

18          A   I MEAN, COULD BE.  I DON'T KNOW.  IT COULD BE

19      ANYTHING.  MAYBE SHE'S GIVEN HER CASH TO DEPOSIT TO GET

20      A CASHIER'S CHECK.  I DON'T KNOW.

21          Q   ARE YOU GUESSING?

22          A   I'M GUESSING.

23          Q   OKAY.  YOU JUST TOLD ME EARLIER --

24          A   I DON'T KNOW THE ANSWER.  I DON'T KNOW.

25          Q   LET'S JUST TRY TO CLARIFY.  YOU TOLD ME EARLIER

                                                        78

1       THAT YOU HAD A RENTAL AGREEMENT BETWEEN YOUR WIFE AND

2       ANAHIT FOR 2,200.

3           A   YES.

4           Q   AND YOU PREPARED A RENTAL AGREEMENT THAT WE

5       JUST WENT OVER.  NOW WE SEE THAT VIRGINIA IS PURCHASING

6       CASHIER'S CHECK TO PAY THE MORTGAGE FAR ABOVE 2,200, AND

7       YOU DON'T KNOW ANYTHING ABOUT IT?

8           A   NO.

9           Q   IS THE WHOLE PURCHASE A SHAM SO YOU COULD STAY

10      IN THE PROPERTY?

11          A   I'M SORRY?

                    Page 71

# Exhibit "O"

This page is part of your document - DO NOT DISCARD



**20131653644**

Pages:
0003

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**11/20/13 AT 11:58AM**

| | |
|---|---|
| FEES: | 42.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 42.00 |

**PCOR SURCHARGE $20.00**



**L E A D S H E E T**

201311200720038

00008574446

005902006

**SEQ:**
**01**

DAR - Counter (Upfront Scan)

**THIS FORM IS NOT TO BE DUPLICATED**

RECORDING REQUESTED BY:

AND WHEN RECORDED MAIL TO:

Virginia Martirossian
4705 Excelente Drive
Woodland Hills CA 91364

THIS SPACE FOR RECORDER'S USE ONLY:

## INTERSPOUSAL TRANSFER GRANT DEED
(Excluded from reappraisal under California Constitution Article 13 A Section 1 et seq.)

DOCUMENTARY TRANSFER TAX is $NONE
[X]    computed on full value of property conveyed, or
[ ]    computed on full value less value of liens or encumbrances remaining at time of sale.
[X ]  is exempt from imposition of the Documentary Transfer Tax pursuant to Revenue and Taxation Code Section
    11927(a), on transferring community, quasi- community, or quasi-marital property, assets between spouses pursuant
    to a judgment, and order, or a written agreement between spouses in contemplation of any such judgment or order.

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
**Shahen Martirosian, husband of grantee**
hereby GRANT(s) to:
**Virginia Martirossian, a married woman as her sole and separate property**
The real property in the City of Los Angeles, County of Los Angeles, State of California, described as:
LEGAL DESCRIPTION ATTACHED HERETO AS EXHIBIT 'A' AND MADE A PART HEREOF.
Also Known as:  4705 Excelente Drive, Los Angeles (Woodland Hills Area), CA  91364
A.P. # 2078-009-031
"This conveyance establishes sole and separate property of a spouse, R & T 11911."

DATED 11-15-2013
STATE OF CALIFORNIA
COUNTY OF _Los Angeles_

On _November 15 2013_
before me, _Fregi Cohen_
A Notary Public in and for said State personally appeared
_Shahen Martirosian_

who proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s) or the entity upon
behalf of which the person(s) acted, executed the instrument.
I certify under PENALTY OF PERJURY under the laws of the State
of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

_Shahen Martirosian_

FREGI COHEN
Commission # 1882801
Notary Public - California
Los Angeles County
My Comm. Expires Apr 6, 2014

Signature
(Seal)
MAIL TAX STATEMENTS TO PARTY SHOWN BELOW; IF NO PARTY SHOWN, MAIL AS DIRECTED ABOVE:

## EXHIBIT 'A'

Lot 209 of Tract No. 9098, in the City of Los Angeles, County of Los Angeles, State of California, as per Map recorded in Book 132, Pages 14 to 36 inclusive of Maps, in the Office of the County Recorder of said County. Except therefrom all oil, gas and mineral rights in land under said lan, without right of ingress and egress upon the surface or within 500 feet of the surface of said land, by deed recorded in Book D271 Page 282, Official Records.
Assessor's Parcel No: 2076-009-031

DECLARATION OF VAZGEN KHACHATRYAN

I, VAZGEN KHACHATRYAN, do declare and state as follows:

1.      I am over the age of 18 years old and I am the Plaintiff in this action.   I have personal knowledge of the facts stated herein, if called upon, I could and would testify competently thereto.

2.   On or about June 1, 2014, Defendants CPI REAL ESTATE GROUP, INC., doing business as REALTY EXECUTIVES PREMIERE ESCROW DIVISION through its owner/agent/officer SHAHEN MATIROSIAN approached me to provide real estate services to me.

3.    In June 2014, SHAHEN  MATIROSIAN represented to me that he is a professional real estate broker and owner of Realty Executive Premiere.  SHAHEN MATIROSIAN further represented to me that he had a property in Chatsworth, California that he could facilitate for me to purchase for $350,000.00.  In further of the representation, SHAHEN MATIROSIAN, presented me with a purchase contract for 10000 Lubao Avenue, Chatsworth, California and requested that I provide REALTY EXECUTIVES PREMIERE ESCROW division his purchase monies to be deposited into SHAHEN MATIROSIAN's escrow account for the exclusive purpose of purchasing the property.

4.   In October 2014 and November 2014, I provided checks and wired funds in the total sum of $370,500.00 payable to the order of Realty Executives Premiere and delivered to SHAHEN MATIROSIAN.  At the time, SHAHEN MATIROSIAN fully convinced me by making intentional false representations that Realty Executives Premiere Escrow Division was a legitimate escrow owned by MATIROSIAN to assist facilitate Plaintiff's purchase  of the Chatsworth property.    True and correct copies of the receipts  for the deposit are attached hereto as Exhibit "A".

5.   Fully believing that there was in fact a real estate purchase transaction pending, Plaintiff signed  the  purchase  agreement  for  the  10000  Lubao  Avenue  property  and  gave  his $370,000.00 for the purchase of Lubao to MATIROSIAN to place in escrow and a deposit to purchase another real property commonly described as 1437 Highland, Glendale, CA 91202.

1   At all times herein, there were never any real transactions occurring.   It was all a

2   preconceived scam by MATIROSIAN to steal Plaintiff's money. A copy of the falsified

3   purchase contract prepared by SHAHEN MATIROSIAN is attached to the Declaration of

4   Alana Anaya as Exhibit "I"

5   6.   Defendant CPI and Defendant SHAHEN MARTIROSIAN falsely represented that the

6   properties described herein were properties that Defendants was underway in facilitating the

7   purchase of for me as my agent. Instead, said Defendants were only attempting to lure money

8   from me under false pretenses and with false representations so that Defendants could use the

9   money from Plaintiff for their personal economic gain

10   7.   After months of false excuses and delays presented to Plaintiff by Defendant SHAHEN

11   MARTIROSIAN in order to delay Plaintiff's exercise of his legal remedies including the

12   filing of a police report, I finally discovered that there were no pending property purchases at

13   all and it was all a scam by SHAHEN MATIROSIAN to take mu money.  Defendants took all

14   of my funds designated for specific purchases, deposited them into various Bank of America

15   accounts intended for real estate transactions and business and thereafter absconded with or

16   converting Plaintiff's funds in the sum of $370,500.00 for SHAHEN MATIROSIAN's

17   personal usage.

18   8.   While $100,000.00 has been returned to me.  The Defendant has wholly refused to return

19   the remaining $250,500.00.

20   9.   After I took legal action in order to obtain the return of my money, Defendant SHAHEN

21   MATIROSIAN met with me several times and admitted that he stole $350,000.00 of my

22   money and that the house was sold in order to protect it from creditors.

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

10. Defendant City National Finance contacted me directly at 11:00 p.m. on December 13, 2016, urging me to accept less than full payment of the funds owed to me and made false representations of the status of escrow.   This defendant/lender's involvement in this case in this manner makes the totality of this fraudulent scheme very apparent and suspicious to me.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 22th day of December, 2016  in Westlake Village, California.

_/s/Vazgen Khachatryan_____
VAZGEN KHACHATRYAN

# Exhibit "A"

Realty Executives Premiere Escrow     03 - East West Bank
14349 Victory Blvd., #200
Van Nuys, CA 91401
(818) 285-8620

RECEIPT NO.    218

ESCROW NO. 001644          DATE   10/14/2014

Property:   10000 Lubao Ave., Chatsworth, CA  91311

RECEIVED  Vazgen Khachatryan
OF

AMOUNT

$*****48,000.00

FORTY-EIGHT THOUSAND AND 00/100 DOLLARS

| | ABA Number | Check Number | Description |
|---|---|---|---|
| CASH | | | |
| CHECK | | | |
| CASHIER'S CHECK | 122101706 | | |
| OTHER | | | |
| | | | |

Checking Account Number _____

Received on behalf of _ BUYER/BORROWER ____

BY _____

ORIGINAL

ealty Executives Premiere Escrow     03 - East West Bank          RECEIPT NO.      219

349 Victory Blvd., #200
n Nuys, CA 91401
18) 285-8620                              ESCROW NO. 001644              DATE    10/23/2014

roperty:   10000 Lubao Ave., Chatsworth, CA  91311

RECEIVED   Vazgen Khachatryan
  OF                                                          AMOUNT
                                                    $*****52,500.00

IFTY-TWO THOUSAND FIVE HUNDRED AND 00/100 DOLLARS

| | ABA Number | Check Number | Description |
|---|---|---|---|
| CASH | | | |
| CHECK | | | |
| CASHIER'S CHECK | | | |
| OTHER | Wire Trasfer | | |

Checking Account Number _____     Received on behalf of  __BUYER/BORROWER___

BY

                              ORIGINAL

Realty Executives Premiere Escrow       03 - East West Bank                    RECEIPT NO.       221
14349 Victory Blvd., #200
Van Nuys, CA 91401
(818) 285 8620

ESCROW NO. 001644                     DATE  11/10/2014

Property:   10000 Lubao Ave   Chatsworth, CA  91311

RECEIVED   Vazgen Khachatryan
  OF

AMOUNT

$*****150,000.00

ONE HUNDRED FIFTY THOSAND AND 00/100 DOLLARS

|  | ABA Number | Check Number | Description |
|---|---|---|---|
| CASH |  |  |  |
| CHECK |  |  |  |
| CASHIER'S CHECK | 122101706 |  |  |
| OTHER |  |  |  |
|  |  |  |  |

Checking Account Number _____      Received on behalf of  BUYER/BORROWER

BY _____

FILE COPY

Realty Executives Premiere Escrow      03 - East West Bank          RECEIPT NO.      217

14349 Victory Blvd., #200
Van Nuys, CA 91401
(818) 285-8620

ESCROW NO. 001644          DATE     10/10/2014

Property:     10000 Lubao Ave., Chatsworth, CA  91311

RECEIVED   Vazgen Khachatryan
OF

AMOUNT

$****100,000.00

ONE HUNDRED THOUSAND AND 00/100 DOLLARS

|              | ABA Number | Check Number | Description |
|--------------|------------|--------------|-------------|
| CASH         |            |              |             |
| CHECK        |            |              |             |
| CASHIER'S CHECK | 122101706 |           |             |
| OTHER        |            |              |             |
|              |            |              |             |

Checking Account Number _____     Received on behalf of   BUYER/BORROWER

BY

ORIGINAL

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 2629 Townsgate Road, Suite 140, Westlake Village, CA 91361

A true and correct copy of the foregoing document entitled (*specify*): **EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER WITH SUPPORTING DECLARATIONS** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On 12/22/2016, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Alana B Anaya ☐ ☐ alana@anayalawgroup.com, alana.anaya@sbcglobal.net
- Amy L Goldman (TR) ☐ ☐ gabriela.garcia@lewisbrisbois.com, AGoldman@iq7technology.com
- Jilbert Tahmazian ☐ ☐ jilbert@jilbertlaw.com, aram@jilbertlaw.com
- United States Trustee (SV) ☐ ☐ ustpregion16.wh.ecf@usdoj.gov
- Benjamin A Yrungaray ☐ ☐ attorney@denovofirm.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On  10/28/2016, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

|  |  |
|---|---|
|  |  |

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _12/22/16_____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Hon. Martin R. Barash
United States Bankruptcy Court
21041 Burbank Boulevard, Suite 342 / Courtroom 303
Woodland Hills, CA 91367

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 12/22/2016 | Jonathan Malek | /s/Jonathan Malek |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.