**ALANA B. ANAYA, SBN 195758**
**JONATHAN MALEK SBN 235125**
**ANAYA LAW GROUP**
2629 Townsgate Road, Suite 140
Westlake Village, CA 91361
Tel: (805) 230-9222
Fax: (805) 230-9221
Email: alana@anayalawgroup.com

Attorneys for Plaintiff,
VAZGEN KHACHATRYAN

## UNITED STATES BANKRUPTCY COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>SHAHEN MARTIROSIAN<br><br><br><br><br><br><br><br><br><br>———————————————<br><br>VAZGEN KHACHATRYAN<br><br>      Plaintiff,<br><br>vs.<br><br>SHAHEN MARTIROSIAN; CPI REAL ESTATE GROUP, INC., doing business as REALTY EXECUTIVES PREMIERE ESCROW DIVISION; VIRGINIA MARTIROSIAN; ANAHIT HARUTYUNYAN; 4705 EXCELENTE INC., a California corporation; CITY NATIONAL FINANCE, a business entity form unknown and DOES 1 to 100 inclusive,<br>      Defendants | **Bankruptcy No.  1:15-bk-11139-MB**<br><br>ADVERSARY NO. 16-AP-01091<br><br>**PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF REQUEST FOR A PRELIMINARY INJUNCTION; DECLARATIONS OF DANIEL BONE, ROBERT MEYER AND JONATHAN MALEK**<br><br><br><br><br><br><br><br>DATE:  February 1, 2017<br>TIME: 1:30 PM<br>COURTROOM: 303 |

# 1. __INTRODUCTION__

On December 27, 2016, this court held an evidentiary hearing considering Plaintiff's request for a temporary restating order on a foreclosure being attempted by Defendant City National Finance. The court heard testimony of Plaintiff and Jamal Dawood on behalf of Defendant City National Finance. After hearing the testimony, the court found the testimony of Jamal Dawood not to be credible and granted the temporary restraining order.

At the hearing, the court set a hearing date for a request for a preliminary injunction as well as a briefing schedule. The court also requested that the record be supplemented to include information regarding the value of the subject property, Defendant HARUTYUNYAN's ability to speak English and financial status.

This Court has already found that the plaintiff satisfied the following legal standards in support of a Temporary Restraining Order:

A. Probability of success on the merits: The court has already found that there is a mountain of circumstantial evidence that the property at issue was the subject of a fraudulent transfer. Pg 24, ln 21 to Pg 25 ln 13 (Attached as part of Exhibit H to the Declaration of Jonathan Malek).

B. The balance of equities favor Plaintiff: The court also found that the potential for irreparable harm and the balance of equites were in favor of the Plaintiff. Pg 28, ln 19-24 (Attached as part of Exhibit H to the Declaration of Jonathan Malek). Additionally, as discussed in further detail below, the loan is usurious as it seeks an interest rate of more than 10%, which limits may limit City National's recovery to the amount of funds actually advanced.

C. Injunction is in the public interest: The court also found that an injunction is in the public interest. Pg 29 ln 14-18 (Attached as part of Exhibit H to the Declaration of Jonathan Malek.

1

2

3

4

        With respect to the remaining prong of the preliminary injunction test – whether
Plaintiff will suffer irreparable harm – the Court requested additional facts with respect to the
value of the subject property, Defendant Harutyunyan's ability to speak English and
Harutyunyan's financial status.   This brief address that request.

5

6

7

8

9

10

11

        1.  Plaintiff will suffer irreparable harm without a preliminary injunction because the
Property – which is the debtor's sole asset – is worth $1.5 million, and if the property is sold
at a foreclosure sale, it will wipe out Plaintiff's ability to use the property for recovery of his
damages.   (See Appraisal of Daniel Bone.)  This Court has already found the witness of City
National Finance to be wholly incredible on the issue of value.  (Pg 28 ln 25 – Pg 29 lns 5, 22-
24)

12

13

14

15

16

        2.  Defendant Harutyunyan does not speak nor does she understand English.  The
testimony to the contrary constitutes a blatant misrepresentation to the Court.  In
HAUTYUNYAN's verified interrogatory responses in this case, Harutunyan asserted, in no
uncertain terms, that she did not speak or read English with ease.  (See Exh "A" to the
Declaration of Malek Form Interrogatory 2.9 and responses thereto).

17

18

19

20

21

22

23

        3.  The court requested supplemental evidence on the financial condition of
HARUTYUNYAN.  From HARUTYUNYAN's Deposition testimony, Defendant
HARUTYUNYAN's recently dismissed bankruptcy filing, and the testimony of Jamal
Dawood, it appears that HARUTYUNYAN is a mere straw buyer and did not have the
financial resources for the purchase or to fund construction on the property as claimed by
Jamal Dawood.

24

25

26

27

        First, in another adversary proceeding, Defendant HARUTYUNYAN testified at her
deposition that she was a seamstress that did not own any property.  (HARUTYUNYAN
deposition at pg 14 ln 7-10,  pg 27 ln 11-13. ) and was receiving utilities under a low income
discount.  Exhibit "I" to the Declaration of Jonathan Malek.

28

Second, Defendant HARUTYUNYAN filed for Ch 7, bankruptcy on the date of the hearing on the TRO under case no 2:16-bk-26852-DS, which was dismissed on January 13, 2017, for failure to file schedules.

Third, Jamal Dawood testified that under his agreement with HARUTYUNYAN, she was to leave reserves with City National in the sum of $108,000.00 as a requirement of the loan. Ms. HARUTYUNYAN could not honor the requirement, did not place any down payment at all and paid no escrow expenses whatsoever . (Dawood testimony pg 104 ln 7-18.) Given that the purchase contract required HARUTYUNYAN to put down $200,000.00 and she neglected to pay even a single dollar toward the purchase of the property (Exhibit "B" to the moving papers), it is clear that HARUTYUNYAN did not have any funds for the purchase of the property nor any funds to pay for construction on the allegedly damaged property.

Therefore, it is clear that HARUTYUNYAN did not contribute any money toward the purchase of the property, never lived in the property, did not pay the mortgage on the property and had no funds or apparent resources for construction or repairs to the property, it strongly leads to the conclusion that this was not a legitimate sale but instead a straw buyer participating in a fraudulent transfer.

## 2.  **PLAINTIFF IS ENTITLED TO A PRELIMINARY INJUNCTION**

A plaintiff seeking a preliminary injunction "must establish": 1) "that he is *likely to succeed* on the merits"; 2) "that he is *likely to suffer irreparable harm* in the absence of preliminary relief"; 3) "that the *balance of equities* tips in his favor"; and 4) "that an injunction is in *the public interest.*" *Winter v. Natural Resources Defense Council, Inc.* (2008) 555 US 7, 20, 129 S.Ct. 365, 374 (emphasis added)

"In each case, a court must *balance* the competing claims of injury and must consider the *effect on each party* of the granting or withholding of the requested relief." *Amoco*

*Production Co. v. Village of Gambell, Alaska* (1987) 480 US 531, 542, 107 S.Ct. 1396, 1402 (emphasis added); *Dogloo, Inc. v. Doskocil Mfg. Co., Inc.* (CD CA 1995) 893 F.Supp. 911, 917 (citing text).

According to the Ninth Circuit, even after *Winter*, "serious questions going to the merits" and a "balance of hardships that tip sharply toward" plaintiff can support a preliminary injunction provided "plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for Wild Rockies v. Cottrell* (9th Cir. 2011) 632 F.3d 1127, 1131-1132; see *Leiva-Perez v. Holder* (9th Cir. 2011) 640 F.3d 962, 966—*Winter* "did not alter our authority to balance the elements of the preliminary injunction test, so long as a certain threshold showing is made on each factor"; *Drakes Bay Oyster Co. v. Jewell* (9th Cir. 2014) 747 F.3d 1073, 1085—"'likelihood' of success per se is not an absolute requirement".

A preliminary injunction is customarily granted on the basis of procedures less formal and evidence less complete than at trial. Therefore, the moving party *need not prove his or her case in full* at a preliminary injunction hearing. *University of Texas v. Camenisch* (1981) 451 US 390, 395, 101 S.Ct. 1830, 1834; *Byrum v. Landreth* (5th Cir. 2009) 566 F3d 442, 446—plaintiff's evidence *need not* meet summary judgment standard.

In this case, the court found that Plaintiff was the victim of fraud and that there is ample evidence strongly indicating that the property at issue was fraudulently transferred which demonstrates a probability of success on the merits. The court also found that an injunction was in the public interest.   As discussed in connection with the appraisal below, Plaintiff will suffer irreparable injury as the property contains a significant amount of equity. Thus, Plaintiff would be irreparably harmed if the property was sold at a foreclosure sale. Additionally, as discussed in detail below, the reports from Plaintiff's experts also directly contradict the testimony of Jamal Dawood, leading to the conclusion that City National

Finance participated in the fraudulent transfer and provided false testimony to this court at the temporary restraining order evidentiary hearing.

A.  The loan of City National is Usurious and City National Cannot Credibly determine the loan amount.

California's usury law, set forth in Article XV Section 1 of the California Constitution and codified in 10 different code sections, limits the amount of interest which can be charged on any loan, or forbearance, of money. A "forbearance" is the refraining from taking legal action to enforce a debt, right, or obligation. Oftentimes a forbearance would describe the lender's agreement to extend the due date on an existing loan in return for an increased interest rate.

Pursuant to California law, non-exempt lenders can charge a maximum of: (i) 10% interest per year (.8333% per month) for money, goods or things used primarily for personal, family or household purposes and (ii) for other types of loans (home improvement, home purchase, business purposes, etc.), the greater of 10% interest per year, or 5% plus the Federal Reserve Bank of San Francisco's discount rate on the 25th day of the month preceding the earlier of the date the loan is contracted for, or executed. In other words, the general rule is that a non-exempt lender cannot charge more than 10% per year (.8333% per month), unless there is an applicable exemption.

Whether a loan or forbearance of money is usurious depends on the nature of the transaction.  Sensitive to the ingenuity and creativity of those entrepreneurs willing to engage in legal brinkmanship to maximize profits, courts have carefully scrutinized the form of seemingly innocuous commercial transactions to determine whether the substance amounts to a usurious arrangement. (Southwest Concrete Products v. Gosh Construction Corp. (1990) 51 Cal. 3d 701, 705 [274 Cal. Rptr. 404, 798 P.2d 1247].)

1   The purpose of the usury laws are to "forbid absolutely to the lender any profit

2   whatever by way of commission, bonus or other kind of charge, if in doing so the maximum

3   rate declared in the act was exceeded." *Haines v. Commercial Mortgage Co*., 200 Cal. 609,

4   615; *Calimpco, Inc. v. Warden,* 100 Cal. App. 2d 82 (1962).

5   First, as previously established, City National Finance was not authorized to do

6   business in California at the time of the subject loan.

7

8   Second, City National Finance's interest rate at 12% is in violation of California Law.

9   "When a loan is usurious, the creditor is entitled to repayment of the principal sum only. He is

10  entitled to no interest whatsoever." Winnett v. Roberts, 179 Cal. App. 3d 909, 921, 225 Cal.

11  Rptr. 82, 88 (Ct. App. 1986) Gibbo v. Berger, 123 Cal. App. 4th 396, 403, 19 Cal. Rptr. 3d

12  829, 834 (2004). See Also *Teichner v. Klassman* (1966) 240 Cal. App.2d 514 [49 Cal. Rptr.

13  742], both the plaintiff (lender) and the defendant (borrower) had joined in the violation of the

14  usury laws and the plaintiff, after having brought suit against the defendant, was restricted in

15  its recovery to the principal sum advanced.

16  At the temporary restraining order hearing, Dawood testified that the payoff amount

17  included interest. (Dawood Testimony pg 60 ln 12- pg 61 ln 14.)   As City National is not

18  entitled to interest, the attempt to foreclose on the property is based on an erroneous amount.

19  Additionally, the interest actually paid should be applied to principle which would further

20  reduce the amount claimed by City National.  Last, the Deed of trust represents reserves that

21  were supposed to be left by Defendant HARUTYUNYAN (Dawood Testimony at pg 104 ln

22  7-18) and not funds advanced casting further doubt on the legitimacy of the loan and sale.

23  Therefore, the total claim of City National would be around $600,000.00, assuming

24  for the sake of argument that the loan was legitimate.

25

26  B.  The Testimony on Jamal Dawood during the December 27, 2016 Hearing was not

27      Credible.

28  During the testimony of Jamal Dawood during the December 27, 2016 hearing, he

made the following claims:

First, Dawood testified that he was at the property in August of 2016, that there were "major structural issues" and that "the pool was going to slide into the neighbor's yard." Dawood testimony at pg 147 ln 21-25, pg 149 ln 1-4 .  The testimony of Plaintiff's expert directly contradicts this self serving and false testimony.  Additionally, looking at an overview of the property, it clearly indicates there is no neighbor at all behind the pool area.(See Exhibit "E" to the declaration of Jonathan Malek.)

Second, Dawood purportedly "googled" the property to find evidence of severe damage to the property. He could not identify what websites he looked at in as a result of the search.  (Dawood testimony at pg 54 ln 1-3, pg 99 ln 1-6.)  However, when running a google search of the property, counsel for the Plaintiff was unable to duplicate his claimed results and found no such evidence at all. (Exhibits "C" and "D" to the Declaration of Jonathan Malek) In fact, photos of the property found online complete contradict his claims. (Exhibit  E to the Declaration of Jonathan Malek.)

Third, Dawood testified about Anahit Harutyunyan that:

> Q. Okay. And was she fluent in English in your opinion?
> A. She understood what I had to say and she knew what she
> was doing. In terms of can I qualify her as a great
> English person, I don't know her reading skill. (Dawood testimony at 84.)

However,  Defendant HARUTYUNYAN required an Armenian translator at her deposition in the other adversary matter which clearly contradicts his testimony. (See Exh "B" to declaration of Jonathan Malek - HARUTYUNYAN deposition Pg 6 ln 1-4).  Additionally, in HAUTYUNYAN's verified interrogatory responses in this case, Harutunyan asserted , in no uncertain terms, that she did not speak or read English.  (See Exh "A" to the Declaration of Malek Form Interrogatory 2.9 and responses thereto)

1    Federal jury instruction 1.11 states in part: "However, if you decide that a witness has

2    deliberately testified untruthfully about something important, you may choose not to believe

3    anything that witness said."

4    As the court has already stated it found the testimony of Jamal Dawod not to be

5    credible and given the inconsistencies outlined above, the court can discount all of Jamal

6    Dawood's testimony and infer that the "loan" from City National Finance is a sham.

7    However, as noted by the court earlier, the issue on the propriety of the City National Loan

8    does not need to be decided in order to grant the preliminary injunction. *Drakes Bay Oyster*

9    *Co. v. Jewell* (9th Cir. 2014) 747 F.3d 1073, 1085—"'likelihood' of success per se is not an

10    absolute requirement" especially since the court has found that at the TRO hearing Plaintiff

11    did establish the likelihood' of prevailing on the fraudulent transfer claims.  In Plaintiff's

12    worse case scenario, Plaintiff's claim to the property may be subordinate to the lien of City

13    National in terms of distributing the sales proceeds.

14

15

16    C.  Defendant HARUTYUNYAN's Financial Condition

17    The court requested supplemental evidence on the financial condition of

18    HARUTYUNYAN.  From HARUTYUNYAN's Deposition testimony, Defendant

19    HARUTYUNYAN's recently dismissed bankruptcy filing, and the testimony of Jamal Dawood,

20    it appears that HARUTYUNYAN is a mere straw buyer and did not have the financial resources

21    for the purchase or to fund construction on the property as claimed by Jamal Dawood.

22

23    First, in another adversary proceeding, Defendant HARUTYUNYAN testified at her

24    deposition that she was a seamstress that did not own any property.  (HARUTYUNYAN

25    deposition at pg 14 ln 7-10,  pg 27 ln 11-13. )

26

27

28

1   Second, Defendant HARUTYUNYAN filed for Ch 7, bankruptcy  on the date of the

2   hearing on the TRO under case no  2:16-bk-26852-DS, which was dismissed on January 13,

3   2017, for failure to file schedules.

4

5   Third, Jamal Dawood testified that under his agreement with HARUTYUNYAN, she

6   was to leave reserves with City National in the sum of $108,000.00 as a requirement of the loan.

7   Ms.  HARUTYUNYAN could not honor the requirement, did not place any down payment at all

8   and paid no escrow expenses whatsoever .  (Dawood testimony pg 104 ln 7-18.)  Given that the

9   purchase contract required HARUTYUNYAN to put down $200,000.00 and she neglected to

10   pay $1 dollar toward the purchase of the property (Exhibit "B" to the moving papers), it is clear

11   that HARUTYUNYAN did not have any funds for the purchase of the property nor any funds to

12   pay for construction on the allegedly damaged property.

13   Therefore, it is clear that HARUTYUNYAN  did not contribute any money toward the

14   purchase of the property, never lived in the property, did not pay the mortgage on the property

15   and had no funds or apparent resources for construction or repairs to the property, it strongly

16   leads to the conclusion that this was not a legitimate sale but instead a straw buyer participating

17   in a fraudulent transfer.

18      D.  The Appraisal Report indicates that there is substantial equity in the property and

19          that Plaintiff would be harmed by the loss of that equity.

20

21   As indicated by the appraisal of Daniel Bone, the property at issue, after taking into

22   account the repairs to be conducted, is approximate $1.5 million.  Given that the property is

23   worth more than double the value of the alleged loans and $500,000.00, more than the amount

24   that Jamal Dawood claims is due on the notes to City National,  Plaintiff would be irreparably

25   harmed if the property were sold at a foreclosure sale as no buyer will pay full market value

26   for a property at a foreclosure sale without the opportunity to conduct inspections, and due

27   diligence.

28

E.  Further Evidence of Fraudulent Transfer

Defendant SHAHEN MARTIROSIAN recorded a deed transferring the Excelente property to his wife in 2013. See Exhibit "O" attached to the moving papers. However, on April 10, 2015, Defendant SHAHEN MARTIROSIAN files schedule "A" in which he claims to own the property in fee simple. (See Docket Entry 19, Pg 6, attached hereto as Exhibit "F".) This claim by Defendant SHAHEN MARTIROSIAN that he still owns the property in 2015, two years after he allegedly transferred it to his wife, clearly demonstrates that the transfer was a sham and Defendant SHAHEN MARTIROSIAN still considered himself the owner of the property.  This is in addition to the fact that he has admittedly always maintained the subject property as his residence and still lives there.

3.  CONCLUSION

Plaintiff has demonstrated the following: 1) "that he is *likely to succeed* on the merits"; 2) "that he is *likely to suffer irreparable harm* in the absence of preliminary relief"; 3) "that the *balance of equities* tips in his favor"; and 4) "that an injunction is in *the public interest*."  The Plaintiff respectfully requests that the court issue a preliminary injunction enjoining foreclosure on the Excelente Property.

Dated: 1/23/17                                    Anaya Law Group
                                                 By   /s/Alana B. Anaya
                                                 Alana B. Anaya
                                                 Attorneys for the Plaintiff

**DECLARATION OF DANIEL BONE**

I, DANIEL BONE, do declare and state as follows:

1.     I am over the age of 18 years old and not a party to this action.    I have personal knowledge of the facts stated herein, if called upon, I could and would testify competently thereto.

1.      I am a State-Certified Appraiser in this action and have personal knowledge of the facts stated herein. A true and correct copy of my CV is attached hereto as Exhibit "A".

2.     On January 4, 2017, I visited the property commonly known as 4705 Excelente Dr, Woodland Hills, CA 91364 and conducted an appraisal of the property. A true and correct copy of the appraisal is attached hereto as Exhibit "B"

3.     According to my appraisal I place the value of the property at $1.5 million taking into account the estimate to repair the property.  A true and correct copy of the estimate is attached hereto as Exhibit "C".


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Executed this _18_ th day of January, 2017  in Woodland Hills, California.

_____
Daniel Bone

# Exhibit "A"

# Resume
# Daniel R. Bone

Currently, and for the past 28 years, Daniel Bone has been appraising real estate for lenders, accountants and attorneys on residential real estate throughout the California Southland.  In addition, Daniel has been called upon to appraise numerous historic properties and serve as an expert on the Uniform Standards of Professional Appraisal Practice (USPAP).  Daniel has taught continuing education to appraisers for over 20 years, and authored over 40 state-approved courses for the Office of Real Estate Appraisers in Sacramento. His former position on the Board of Directors for a National appraisal association and expertise in valuing real estate has made him one of the most highly respected appraisers in the Los Angeles / Ventura area.

## Personal Information

**Company Name:**      **THE APPRAISAL SCHOOL, INC**.
**DBA THE APPRAISAL PLACE**
**(03/22/1992 – Present)**
**2004: Year of Incorporation**

6279-D Variel Avenue, Woodland Hills, California 91367
Phone:  818-715-0943  FAX:   818-715-0044
E-Mail: TheAppraisalPlace@gmail.com

**Duties:**   C.E.O,; Owner, Senior Appraiser, Appraisal review, real property consulting, instructing basic and continuing education appraisal courses, and for the last 28 years: Independent real estate appraiser servicing Western and Northwestern Los Angeles County and all parts of the Ventura County.

**State Certification:**      State-Certified: AR 009434 - Certified Residential EXP. 09-22-2018

**Designations:**      AQB-Certified USPAP Instructor # 10062
(Approved for 2016-2017 USPAP)
Certified Distance Education Instructor
Fannie Mae Guidelines Instructor

**Associations:**      Member - Employee Relocation Council
Member - Burbank Board of Realtors
Member - Los Angeles Conservancy

**Credentials:**      Instructor: AQB Certified Instructor, Fannie Mae Guidelines, Supervisory Appraising

## California Approved Courses
## Authored and Developed

| | |
|---|---|
| Introduction to Appraising Real Property | Expert Witness in Appraising |
| Applied Residential Property Valuation | Advance Residential Form and Narrative Report Writing |
| Standards of Professional Practice | Income Valuation of Small, Mixed Use Properties |
| Federal and State Laws and Regulations | Basic Real Estate Principles |
| FHA and the Appraisal Process | Legal Aspects of Real Estate |
| Basic Income Capitalization | Property Management |
| Real Property Environmental Issues | Real Estate Investment |
| Appraising Leasehold Interests | Green in Residences and Appraisals |
| ERC Summary Appraisal reports | Foreclosure Basics for Appraisers 7 Hours |

**Partial list of Historic Properties:**

- 8218 Thrasher Avenue | West Hollywood     , Ca. 90069
- 1072 Newbern Ct. | Westlake Village (Lake Sherwood), Ca. 91361  - Celebrity Owned
- Holly Hill House | Santa Catalina Island
- 3100 Mandeville Canyon Road | Brentwood, Ca. 90049 –    Celebrity Owned
- 25342 Malibu Rd. | Malibu, California 90265 –   Celebrity Owned
- 3510 Sweetwater Mesa | Serra Retreat
- Wave House | Malibu, Ca. 90265
- Hancock Park | Celebrity Owned
- Estates @ the Oaks | Prado De La Felicidad –    Celebrity Owned

# Resume
# Daniel R. Bone

## REFERENCES

### Lending References

| | |
|---|---|
| Gustavo Alveraz, Chief Appraiser Bank of Internet | 310-643-3589 |
| Don Smith, Reviewer, Union Bank | 714-843-6768 |
| Ron Brunski | 818-231-7815 |
| Kim Croft, STARS Appraiser | 818-707-1044 |

### Municipal Court Judges

On File

### Attorney References

| | |
|---|---|
| Carol Newman ; Alleguez & Newman, LLP | 818-225-0056 |
| Law Offices of James W. Klein | 310  477-1023 |
| Andrew Rotter (Law Offices of Gumport Mastan) | 213  452-4900 |

## EXPERIENCE

### 2015 Summary of Recent Expert Witness testimony

*12/07/2015:*  Testify in front of the Ventura County Appeals Board on behalf of Adrian Davoodi for the property located at 119 Bell Canyon Road, Bell Canyon , Ca 91307

*11/10/2015*:  Ongoing:  Single Family Dwelling appraisal to be used for dissolution of Kleckner Marriage. The property is located at 6028 Shirley Avenue, Tarzana, Ca. 91356

*10/19/2015:* Court Testimony: Case of Thomas versus Zhou for a two-family property located at 2333-2335 Fernleaf Street, Los Angeles, Ca. 90031. The case dealt with an illegal taking of the property.

**08/26/2015:**  Single Family Dwelling appraisal to be used for dissolution of Wolf Marriage. The property is located at 22450 Martha Street, Woodland Hills, Ca. 91367.

**07/13/2015:** Testified in front of the Senate Appropriations Committee, Sacramento, Ca. against modifying State Appraisal Law AB 623. Lunch with the Director of the Bureau of Real Estates Appraisers.

### 2016 Summary of Recent Expert Witness testimony

**09/15/2016:** Single Family dwelling appraisal(s) to be used for the dissolution of the Brown Marriage. The assignment involved the use of both retrospective and current effective dates.

**12/2016:** Anya Law Group: Appraisal of Single Family dwelling with damage for the purpose of litigation.

### 2016: Courses:

Uniform Standards of Professional Appraisal Practice – Update
Fannie Mae FORM 1004MC
Fannie Mae Guidelines
Appraising Green Buildings

**Partial List of Expert Witness Cases**

**2013 / 2014**

Niami v. Zuckerman – Superior Court – Los Angeles: The case involves estimating the diminution in value on two single-family dwellings from an illegal lot split.

North Hollywood, Ca. "Rosenberg" The case involved a 5-story apartment building where the property manager cut some trees over the property boundary line.   I was asked to develop an opinion regarding the diminution in value due to the lack of privacy from tenants looking directly into the backyard.

Crisp and Cole: Bakersfield, Ca.  08/2013:  Review appraisals prepared by various appraisers and form an opinion regarding the quality of the work under review and reasonableness of the value.

Mandrick vs. Mandrick; Bell Canyon, Ca. 91307: 08/2013; I was used as a Rebuttal witness to challenge the appraisals prepared on 2 residential properties in Bell Canyon and Woodland Hills. California. The case in ongoing..

Schrader vs. Mike Tufgedzich: West Hills, Ca. 91307: 09/2013; Defendant expert in a case where the roots of an adjacent property encroached onto the adjacent property causing pool damage and leaks.

**2011**

Mortgage Recovery Law Group. (November 2011): Retained as an expert to estimate the value of a vacant parcel in the Agoura area of Los Angeles County. The use is to estimate the retrospective market value of the subject property to be used as comparison to the 10/08/2006 purchase.

Jeff Sorrell v. the Office of Real Estate Appraiser's (OREA) July 2011: Kelly Francisco of the Law Offices of Young / Wooldridge, Bakersfield Ca retained me as a consultant on two cases where the appraiser was accused of violating Federal Laws and Appraisal standards. I was used to explain the allegations and form an opinion about the quality of the appraiser's work.

Todd Neilson, Trustee v. Michael Brown  (August 2010 to June 2011): This case filed in Federal Bankruptcy Court deals with a fraudulent transfer of a parcel of real estate in the San Fernando Valley. The case involves selling a property to an acquaintance at a below market price.  The case involved several retrospective effective dates.

**2009 / 2010**

Oakview Ca.: "Aikens vs. County of Ventura" June 2007 – July 2009: The case involved estimating the diminution of value on 13 properties due to a destabilization of a slope. The sites were located on the bluffs of the Monte vista subdivision, where deep slide movement affected the properties above.

Camarillo, Ca. "Checansky / Barrett / Chan vs. the County of Ventura" – 08/2008:  The case involved a hillside slope failure caused by a County drainage easement that diverted the water on the plaintiff's slope creating a large sinkhole threatening damage to the dwellings.

**Partial List of Expert Witness Cases**

**2007 / 2008**

<u>Westlake Village, Ca. Donald Kaplan vs. Bocchi – July 2008:</u> The case involved a neighbor that obstructed my client's view by building a large home adjacent to his property.  The assignment is to estimate the diminution in value due to the view obstruction

<u>Castaic Ca. Dissolution of the Quintero Marriage – 08/2007:</u> The case involved expert witness testimony regarding one single-family dwelling located in Castaic California.

<u>Southgate, Ca. Dissolution of the Ibarra Marriage 09/17/2007:</u> The assignment involved the appraisal and testimony of two commercial retail properties and one multifamily dwelling located in Southgate, California.

<u>Surfview – Pacific Palisades (06/19/2007):</u> The plaintiff was being sued for the construction of a single-family dwelling that obstructed the view of the house next door. The assignment involved testimony regarding case studies on similar view lots and the dimension in value caused from the new construction, if any.  The assignment involved two appearances before the Los Angeles Board of Zoning Appeals.

**Older Cases**

<u>Los Angeles Ca. "Cohen"  08-2001:</u> The case involved a slope failure in the Silver Lake area of Los Angeles. The slope failure shifted the dwelling off its foundation causing approximately $20,000 to 30,000 in estimated damage.  Our recommendation to the client was to offer the owner $347,000 which was, in our opinion $50,000 below market value.  The estimate was based on the cost-to-cure the defect, and small amount of environmental risk.  The property sold for less than anticipated at $300,000.

<u>Calabasas, California "Mittleman vs. City of Calabasas" 1998:</u> The case involved a slippage of the subject's site after significant rainstorms. The slippage created damage to site improvements and residence. Outcome: Unknown

<u>Oak Park, California "700 Block Sassafrass" 1997:</u> The case involved a mudslide onto the subject's property from the neighbor above.  The complete details of the case and cost-to-cure estimates have been forgotten.

<u>Agoura Hills, California 09-1995 "Olinn":</u> The case involved a mudslide caused from the irrigation system from a neighbor above our client. The mudslide shifted the house off its foundation and completely destroyed the dwelling. Litigation was brought against the City of Agoura Hills. Outcome Unknown. The cost to cure was more than the value of the property. The City now owns the property. Purchased for $300,000.

<u>Agoura Hills, California "Jim Bowie Drive" 1995:</u> Litigation between neighbors due to a general slope failure.  The purpose was to estimate the loss in value based on the cost-to-cure a hillside slope failure. Outcome of the case is unknown.

<u>Chatsworth, California "Indian Springs Development"  1994 – 1995:</u> On January 17, 1994 the Northridge earthquake rocked the San Fernando Valley causing significant damage to real property in the area.  Throughout most of 1994, I appraised over 50 single-family dwellings that had sustained earthquake damage. The cost-to-cure was supplied in every case.  The appraisals were to be used for income tax purposes and be prepared in compliance with the guidelines of the Treasury Department.  Within the Indian Springs development alone, over 20 single-family dwellings were appraised and diminution in value estimated based on the cost to cure.

# Exhibit "B"

**APPRAISAL PLACE**

File No. 559H4-Ana

# APPRAISAL OF



## LOCATED AT:

4705 Excelente Dr
Woodland Hills, CA  91364

## CLIENT:

Client: Alana B. Anaya
2629 Townsgate Road, Suite 140
Westlake Village, CA 91361

## AS OF:

January 4, 2017

## BY:

Daniel Bone, Senior Appraiser
State-Certified AR 009434



# THE APPRAISAL PLACE

Alana B. Anaya
2629 Townsgate Road, Suite 140
Westlake Village, Ca. 91361

Dear Client:

In accordance with your request, I have personally appraised the Fee Simple interest to the property located at the following street address:

**4705 Excelente Drive
Woodland Hills, California 91364**

The legal description is Tract 9098 Lot-209 EX of St. The property can be identified by Assessor Parcel Number 2076-009-031 as recorded in the Office of the County recorder in Los Angeles, California

The appraisal is identified as an APPRAISAL REPORT developed in conformity with the Uniform Standards of Professional Appraisal Practice (USPAP). The appraisal report is prepared for, and restricted to the client and intended users as identified. The function (use) is to estimate the "as is" market value of the subject, as of a current date to aid in a division of assets for use in the United States Bankruptcy Court Bankruptcy No 1:15-bk-11139-MB. No other uses are authorized. The appraisal is based upon the market value definition contained herein, subject to the assumptions, limiting conditions and certifications included. The appraisal has been summarized on the standard General Purpose Appraisal Report (rev.12-2010) with additional comments, photographs and exhibits found in the body of the report.

Briefly summarized, the subject is located in the City of Los Angeles within the central San Fernando Valley community of Woodland Hills.  The neighborhood is approximately 25 miles Northwest of the Los Angeles downtown business district off the (101) Ventura Freeway.  The subject site is a 31,000sf lot improved with a 4882sf single family dwelling built in 1989. The improvements are more recently built than most homes in the neighborhood and constructed with good quality refinements. The improvements have obvious signs of damage with observable cracks in the tile floors, cracks on the interior/exterior walls and ceiling damage. The damage repair estimate ranges from $25,000 to $45,000. The single family use conforms to the neighborhood, and the property is currently at its highest and best use based on the property zoning and surrounding properties.

The attached appraisal report relies on information gathered from my personal interior and exterior inspection with verification of the data by Realist Property data services. The supplied data was assumed reasonably comparable to the subject property and representative of general marketing conditions prevailing in the subject neighborhood. When applicable, the appraiser has also relied on information and photographs from the local multiple listings.

All 3 approaches to value have been considered, however only one of the traditional approaches is developed. The cost approach is not applicable since replacement costs and depreciation cannot adequately be estimated. The Income Approach is not developed since the area is owner-occupied and estimated rents and/or gross rent multipliers cannot reasonably be developed. The Cost Approach and Income Approach are not necessary for credible assignment results.  The sales comparison approach has been developed using a mix of recent and dated closed sales.

The appraisal makes direct use an extraordinary assumption. Damage reports submitted to my office indicate as much as $45,000 in needed repairs. As the appraiser is not an expert in identifying slope failures or repairing damaged improvements, we have assumed this figure to be correct. Consistent with an extraordinary assumption, if this figure is found to be false, this could alter or change my opinion.

The appraisal report has an intended use of a market value estimate as of a current effective date, which is the same as the date the property was inspected. In my opinion, the as-is market value of the property based upon the reported assumptions and limiting conditions and as of January 4, 2017 is:

| $1,500,000 |
|---|
| (ONE MILLION AND FIVE HUNDRED THOUSAND DOLLARS) |

The following report outlines the rationale, assumptions and analysis of the appraiser, in conjunction with descriptive photographs.

Respectfully Submitted,

Daniel R. Bone
State-Certified AR 09434
CEO, the Appraisal Place
01/16/2017

APPRAISAL REPORT
# SUMMARY OF SALIENT FEATURES

Case No.
File No.    559H4-Ana

## SUBJECT INFORMATION

| | |
|---|---|
| Subject Address | 4705 Excelente Dr |
| Legal Description | Tract No 9098 EX of ST of Lot-209 as recorded in Map Book 132 Pages 14-36 |
| City | Woodland Hills |
| County | Los Angeles |
| State | CA |
| Zip Code | 91364 |
| Census Tract | 1374.02 |
| Map Reference | 559 H4 |

## SALES PRICE

| | |
|---|---|
| Sales Price  $ | N/A |
| Date of Sale | N/A |

## CLIENT

| | |
|---|---|
| Borrower / Client | Client: Alana B. Anaya |
| Lender | N/A |

## DESCRIPTION OF IMPROVEMENTS

| | |
|---|---|
| Size (Square Feet) | 4882 |
| Price per Square Ft  $ | 0 |
| Location | Residential |
| Age | 28 |
| Condition | Fair/Damaged |
| Total Rooms | 9 |
| Bedrooms | 5 |
| Baths | 5 |

## APPRAISER

Appraiser        Daniel Bone, Senior Appraiser

Supervisory Appraiser

Date of Appraised Value   01/04/2017

## VALUE

Final Estimate of Value  $ 1,500,000

Produced using ACI software, 800.234.8727 www.aciweb.com

# APPRAISAL REPORT
## Residential Appraisal Report

File No. 559H4-Ana

## PURPOSE

The purpose of this appraisal report is to provide the client with a credible opinion of the defined value of the subject property, given the intended use of the appraisal.

Client Name/Intended User **Alana B. Anaya**  E-mail **alana@anayalawgroup.com**

Client Address **2629 Townsgate Road, Suite 140**  City **Westlake Village**  State **CA**  Zip **91361**

Additional Intended User(s) **The report is intended for use only by the client "Alana B. Anaya."  Intended users may include opposing counsel, my clients, client, and members of the court hearing the case. No other users are intended.**

Intended Use **The intended use is for litigation purposes only in US Bankruptcy Court. The report is identified as an "Appraisal Report" as per the Uniform Standards of Professional Appraisal Practice (USPAP) summarizing most of the information developed.**

## SUBJECT

Property Address **4705 Excelente Dr**  City **Woodland Hills**  State **CA**  Zip **91364**

Owner of Public Record **Anahit Harutyunyan**  County **Los Angeles**

Legal Description **Tract No 9098 EX of ST of Lot-209 as recorded in Map Book 132 Pages 14-36**

Assessor's Parcel # **2076-009-031**  Tax Year **2016**  R.E. Taxes $ **7,764.00**

Neighborhood Name **Woodland Hills / South of Blvd...**  Map Reference **559 H4**  Census Tract **1374.02**

Property Rights Appraised [X] Fee Simple  [ ] Leasehold  [ ] Other (describe)

My research [ ] did [X] did  did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.

Prior Sale/Transfer:  Date **07/24/2015**  Price **$600,000**  Source(s) **Public Records / Realist**

Analysis of prior sale or transfer history of the subject property (and comparable sales, if applicable)  **The subject was purchased for $600,000 on 07/24/2015 from an original asking price of $925,000 per ML# 314033389. The sale was a short pay purchased at auction (all cash). The property has a Interspousal Deed Transfer for No $ amount on 11/20/2013.**

## SALES HISTORY

Offerings, options and contracts as of the effective date of the appraisal  **The subject was listed for $2,200,000 on 05/18/2016 with the asking price reduced to $1,895,000 on 06/20/2016. The listing expired on 11/13/2016 per ML# 16105866**

## NEIGHBORHOOD

### Neighborhood Characteristics

| | | | | | | One-Unit Housing Trends | | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Location | [ ] Urban | [X] Suburban | [ ] Rural | Property Values | [X] Increasing | [ ] Stable | [ ] Declining | PRICE | AGE | One-Unit | 97 % |
| Built-Up | [X] Over 75% | [ ] 25-75% | [ ] Under 25% | Demand/Supply | [ ] Shortage | [X] In Balance | [ ] Over Supply | $(000) | (yrs) | 2-4 Unit | 1 % |
| Growth | [ ] Rapid | [X] Stable | [ ] Slow | Marketing Time | [X] Under 3 mths | [ ] 3-6 mths | [ ] Over 6 mths | 550 Low | 0 | Multi-Family | 1 % |
| | | | | | | | | 1,300 High | 90 | Commercial | 1 % |
| | | | | | | | | 800 Pred. | 55 | Other Vacant | 0 % |

Neighborhood Boundaries **Ventura Blvd North, Calabasas City Limits West and South; Topanga Canyon Blvd to the East**

Neighborhood Description **Located in the City of Los Angeles within the residential community known as Woodland hills. Specifically, south of Ventura Blvd in the hillsides of the Santa Monica mountains. We have bounded the neighborhood at Topanga Canyon to avoid using oversized flat lots in Vista De Oro or the Westchester estates. There are wide-ranging values due to custom vs. tract single family improvements and differences in the city lights,Valley and residential views. See text addendum.**

Market Conditions (including support for the above conclusions)  **Property values continue to rise on competitive properties although at a slower rate. Interest rates remain at historically low levels keeping exposure times low on competitively priced homes. Seller concessions are infrequent outside of possible non-recurring closing costs. Short sales/bank foreclosures are no longer a pertinent factor and the increased number of listings has helped stabilize the market.  See Text Addendum...**

## SITE

Dimensions **SEE PLAT MAP**  Area **31,000sf**  Shape **Rectangular**  View **City Lights / Mountains**

Specific Zoning Classification **LARE40**  Zoning Description **Single Family Residence - Minimum 40,000 sf per unit**

Zoning Compliance [ ] Legal  [X] Legal Nonconforming (Grandfathered Use)  [ ] No Zoning  [ ] Illegal (describe)

Is the highest and best use of the subject property as improved (or as proposed per plans and specifications) the present use?  [ ] Yes  [ ] No  If No, describe.

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements—Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | [X] | | Water | [X] | | Street **Asphalt** | [X] | |
| Gas | [X] | | Sanitary Sewer | [X] | | Alley **None** | | |

Site Comments  **The subject site is larger than most in the neighborhood, however downsloping topography limits the usable size. The property has a beneficial mountain/residential view and corner lot location against 2 residential streets. The site is NOT in a FEMA Flood Hazard area per Map# 06037C1288F dated 09/26/2008**

## IMPROVEMENTS

| GENERAL DESCRIPTION | | FOUNDATION | | EXTERIOR DESCRIPTION | materials | INTERIOR | materials |
|---|---|---|---|---|---|---|---|
| Units [X] One [ ] One w/Acc. unit | | [X] Concrete Slab [ ] Crawl Space | | Foundation Walls | **Concrete/Damaged** | Floors | **Wd/Mrble/Damaged** |
| # of Stories **2.0** | | [ ] Full Basement [ ] Partial Basement | | Exterior Walls | **Stucco/Avg** | Walls | **Drywall/Damaged** |
| Type [X] Det. [ ] Att. [ ] S-Det./End Unit | | Basement Area 0 sq. ft. | | Roof Surface | **Tile / Average** | Trim/Finish | **Wood/Damaged** |
| [X] Existing [ ] Proposed [ ] Under Const. | | Basement Finish 0% | | Gutters & Downspouts | **Metal / Average** | Bath Floor | **Marble/Tile** |
| Design (Style) **Mediterranean** | | [ ] Outside Entry/Exit [ ] Sump Pump | | Window Type | **Vinyl/Wd/Damaged** | Bath Wainscot | **Marble/Tile** |
| Year Built **1989** | | Settlement: Unknown | | Storm Sash/Insulated | **None** | Car Storage | **None** |
| Effective Age (Yrs) **N/A** | | Infestation: None Observed | | Screens | **Partial/Damaged** | [X] Driveway # of Cars **3** |  |
| Attic [ ] None | | Heating [X] FWA [ ] HW [ ] Radiant | | Amenities | [ ] WoodStove(s) # | Driveway Surface **Concrete** |  |
| [ ] Drop Stair [ ] Stairs | | [ ] Other Fuel **Gas** | | [X] Fireplace(s) # **2** [X] Fence **Block** | | [X] Garage # of Cars **3** |  |
| [ ] Floor [X] Scuttle | | Cooling [X] Central Air Conditioning | | [X] Patio/Deck **Patio** [X] Porch **Cvrd** | | [ ] Carport # of Cars |  |
| [ ] Finished [ ] Heated | | [ ] Individual [ ] Other | | [X] Pool **w/spa** [X] Other **Tennis Cr** | [X] Att. [ ] Det. [ ] Built-in |  |
| Appliances [X] Refrigerator [X] Range/Oven [X] Dishwasher [X] Disposal [X] Microwave [ ] Washer/Dryer [ ] Other | | | | | | | |

Finished area **above** grade contains:  **9** Rooms  **5** Bedrooms  **4.1** Bath(s)  **4,882** Square Feet of Gross Living Area Above Grade

Additional Features **A partial list includes a pool with waterfall spa, water feature, barbecue, Saltillo paver decking, lighted Tennis court, covered patio, coffered ceilings, marble-trim fireplaces, pitched ceilings and insulated windows.**

Comments on the Improvements  **The subject is a 1989-built, Mediterranean style single family dwelling that is more recently built and larger than most single family dwellings in the same neighborhood. The improvements feature detailed, high-quality interior refinements and detail. The workmanship, materials, and finishes throughout the dwelling are generally of good to high quality. The improvements are damaged with observable cracks in the tile floors, cracks on the interior/exterior walls, ceiling damage, doors out-of-plumb and concrete patios separating from the main house. Due to the amount of damage, we have not estimated an effective age.**



gPAR™
general purpose appraisal report.

## APPRAISAL REPORT
## Residential Appraisal Report

File No. 559H4-Ana

| FEATURE | SUBJECT | COMPARABLE SALE NO. 1 | | COMPARABLE SALE NO. 2 | | COMPARABLE SALE NO. 3 | |
|---|---|---|---|---|---|---|---|
| Address | 4705 Excelente Dr Woodland Hills, Ca 91364 | 22541 Uhea Rd Woodland Hills, Ca 91364 | | 4808 Reforma Rd Woodland Hills, Ca 91364 | | 4801 Azucena Rd Woodland Hills, Ca 91364 | |
| Proximity to Subject | | 0.10 miles SW | | 0.19 miles NE | | 0.19 miles NE | |
| Sale Price | $ N/A | $ 1,170,000 | | $ 1,150,000 | | $ 1,552,500 | |
| Sale Price/Gross Liv. Area | $ 0.00 sq. ft. | $ 359.12 sq. ft. | | $ 339.83 sq. ft. | | $ 268.83 sq. ft. | |
| Data Source(s) | | MLS/CLAW- 16109144 | | MLS/CLAW- 16-982335 | | MLS/CLAW- 15-824339 | |
| Verification Source(s) | | Realist Doc # 1453093 | | Realist Doc # 434706 | | Realist Doc # 575136 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing | | 0; Arm's Length | | 0; Arm's Length | | 0; Arm's Length | |
| Concessions | | Conv / DOM 182 | | Conv / DOM 182 | | Cash / DOM 40 | |
| Date of Sale/Time | N/A | 11/2016;10/2016 | | 04/2016;03/2016 | 52,000 | 05/2015;03/2015 | 310,000 |
| Location | Quiet Residential | Cul-de-sac/Good | -50,000 | Cul-de-sac/Good | -50,000 | Cul-de-sac/Good | -50,000 |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 31,000sf | 7763sf | 230,000 | 33841sf | | 24266sf | |
| View | Mtns/Good | City Lights/Super | -100,000 | Residential/Inf | 100,000 | City Lights/Super | -100,000 |
| Design (Style) | Mediterranean | Mediterranean | | Mediterranean | | French | |
| Quality of Construction | Good | Good | | Average | 50,000 | Good | |
| Actual Age | 28 Years | 36 Years | | 22 Years | | 24 Years | |
| Condition | Fair/Damaged | Superior | -50,000 | Superior | -50,000 | Superior | -50,000 |
| Above Grade | Total 9 Bdrms. 5 Baths 4.1 | Total 10 Bdrms. 5 Baths 4.1 | | Total 9 Bdrms. 4 Baths 3.1 | 10,000 | Total 10 Bdrms. 5 Baths 6.1 | -40,000 |
| Room Count | | | | | | | |
| Gross Living Area | 150.00 4,882 sq. ft. | 3,258 sq. ft. | 243,600 | 3,384 sq. ft. | 224,700 | 5,775 sq. ft. | -134,000 |
| Basement & Finished | 0sf | 0sf | | 0sf | | 0sf | |
| Rooms Below Grade | | | | | | | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | FWA C/Air | FWA C/Air | | FWA C/Air | | FWA C/Air | |
| Energy Efficient Items | None | None | | None | | None | |
| Garage/Carport | 3 Car Garage | 3 Car Garage | | 3 Car Garage | | 3, Garage | |
| Porch/Patio/Deck | Patio/Deck | Patio/Deck | | Patio | | Patio | |
| Amenities | 2 F/P,T/Crts/BBQ | 2 F/P | 50,000 | 3 F/P,RV Crtyrd | 50,000 | Gated/Sport Crt | 0 |
| Pools | Pool,Spa | Saltwtr Pool,Spa | 0 | Pool,Spa | 0 | Pool,Spa | 0 |
| AP | 2076-009-031 | 2076-015-050 | | 2076-006-064 | | 2076-006-074 | |
| Net Adjustment (Total) | | X + - $ | 323,600 | X + - $ | 386,700 | + X - $ | 64,000 |
| Adjusted Sale Price | | Net Adj. 27.7% | | Net Adj. 33.6% | | Net Adj. -4.1% | |
| of Comparables | | Gross Adj. 61.8% $ | 1,493,600 | Gross Adj. 51.0% $ | 1,536,700 | Gross Adj. 44.1% $ | 1,488,500 |

Summary of Sales Comparison Approach   The subject is located in a small planned development (the Heights) and there have been few recent sales. The subject and project are more recently built than most single family dwellings and of superior quality and size. The subject has a good canyon/residential view and sloping hillside topography. The selection of comparables focused on recent sales, dated sales and active listings in the same neighborhood that bracket size, quality, age and design. SALE 1 through 3 are located in the same planned development. SALE 1 is the most recent comparable, although with a smaller size and small backyard. SALE 2 is a dated comparable that brackets size and site utility. SALE 2 has inferior quality refinements. All 3 properties are adjusted for superior condition based on cost-to-cure. Lessor weight placed on SALE 4 located in a competing tract. PENDING SALE 5 is the most recent sale in the project, however the sale has not yet closed. See text addendum...

### COST APPROACH TO VALUE

Site Value Comments

| | | | | | |
|---|---|---|---|---|---|
| ESTIMATED ☐ REPRODUCTION OR ☐ REPLACEMENT COST NEW | | | OPINION OF SITE VALUE . . . . . . . . . . . . . . . . . . . . . . . . . . . = $ | | |
| Source of cost data | | | Dwelling | Sq. Ft. @ $ | . . . . . . . . . . = $ |
| Quality rating from cost service | | Effective date of cost data | | Sq. Ft. @ $ | . . . . . . . . . . = $ |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | | | Garage/Carport | Sq. Ft. @ $ | . . . . . . . . . . = $ |
| | | | Total Estimate of Cost-New | . . . . . . . . . . = $ | |
| | | | Less | Physical Functional External | |
| | | | Depreciation | = $ ( ) | |
| | | | Depreciated Cost of Improvements . . . . . . . . . . . . . . . . . . . . = $ | | |
| | | | "As-is" Value of Site Improvements . . . . . . . . . . . . . . . . . . . . = $ | | |
| | | | INDICATED VALUE BY COST APPROACH . . . . . . . . . . . . . . . . . . = $ | | |

### INCOME APPROACH TO VALUE

Estimated Monthly Market Rent $ _____ X Gross Rent Multiplier _____ = $ _____ Indicated Value by Income Approach _____

Summary of Income Approach (including support for market rent and GRM) _____

| Indicated Value by: Sales Comparison Approach $ | Cost Approach (if developed) $ | Income Approach (if developed) $ |
|---|---|---|

INCOME APPROACH: Not Developed: Typically used for income areas. Not typically developed in owner occupied neighborhoods due to the lack of verifiable rental data and lack of support for gross rent multipliers. No necessary for credible assignment results.

COST APPROACH: Not Developed: Not necessary due to the lack of precision in estimating depreciation & lack of site sales.

SALES COMPARISON APPROACH: Developed: Best approach since it typifies that actions of buyers and sellers in the market.

This appraisal is made ☒ "as is," ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed ☐ subject to the following:

Based on the scope of work, assumptions, limiting conditions and appraiser's certification, my (our) opinion of the defined value of the real property that is the subject of this report is $ 1,500,000 as of 01/04/2017 , which is the effective date of this appraisal.



Produced using ACI software, 800.234.8727 www.aciweb.com
Page 2 of 4
This form Copyright © 2005-2010 ACI Division of ISO Claims Services, Inc., All Rights Reserved.
(gPAR™) General Purpose Appraisal Report 05/2010
GPAR1004_10 05262010

The Appraisal Place

**APPRAISAL REPORT**
**Residential Appraisal Report**                                             File No. 559H4-Ana

| FEATURE | SUBJECT | COMPARABLE SALE NO. 4 | | COMPARABLE SALE NO. 5 | | COMPARABLE SALE NO. 6 | |
|---|---|---|---|---|---|---|---|
| Address 4705 Excelente Dr Woodland Hills, Ca 91364 | | 4424 Dulcinea Ct Woodland Hills, Ca 91364 | | 4800 Azucena Rd Woodland Hills, Ca 91364 | | 5096 Llano Dr Woodland Hills, Ca 91364 | |
| Proximity to Subject | | 0.71 miles SE | | 0.18 miles NE | | 0.72 miles NE | |
| Sale Price | $ N/A | $ | 1,350,000 | $ | 1,499,000 | $ | 1,800,000 |
| Sale Price/Gross Liv. Area | $ 0.00 sq. ft. | $ 348.75 sq. ft. | | $ 356.14 sq. ft. | | $ 347.29 sq. ft. | |
| Data Source(s) | | MLS/CLAW- SR16073825 | | MLS/CLAW- SR16109023 | | MLS/CLAW- SR16134474 | |
| Verification Source(s) | | Realist Doc # 771362 | | Org: $1,895,000 | | Org: $1,800,000 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing Concessions | | 0; Arm's Length Conv / DOM 182 | | PENDING DOM 217 | | DOM 199 | |
| Date of Sale/Time | N/A | 07/2016;05/2016 | 48,000 | 12/2016 | | LISTING | -180,000 |
| Location | Quiet Residential | Cul-de-sac/Good | -50,000 | Cul-de-sac/Good | -50,000 | Quiet Residential | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 31,000sf | 20,189sf | 0 | 24266saf | | 12238sf | 190,000 |
| View | Mtns/Good | Mtns/Limited | 50,000 | Mtns/Good | | Mtns/Good | |
| Design (Style) | Mediterranean | Traditional | 0 | Traditional | 0 | Villa | 0 |
| Quality of Construction | Good | Good | | Good | | Good | |
| Actual Age | 28 Years | 36 Years | | 21 Years | | 26 Years | |
| Condition | Fair/Damaged | Superior | -50,000 | Superior | -50,000 | Superior | -50,000 |
| Above Grade | Total 9  Bdrms. 5  Baths 4.1 | Total 10  Bdrms. 5  Baths 5 | -5,000 | Total 12  Bdrms. 6  Baths 4.1 | | Total 11  Bdrms. 5  Baths 4 | 5,000 |
| Room Count | | | | | | | |
| Gross Living Area 150.00 | 4,882 sq. ft. | 3,871 sq. ft. | 151,700 | 4,209 sq. ft. | 101,000 | 5,183 sq. ft. | -45,200 |
| Basement & Finished Rooms Below Grade | 0sf | 0sf | | 0sf | | 0sf | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | FWA C/Air | FWA C/Air | | FWA C/Air | | FWA C/Air | |
| Energy Efficient Items | None | None | | None | | None | |
| Garage/Carport | 3 Car Garage | 3 Car Garage | | 3 Car Garage | | 2, Garage | |
| Porch/Patio/Deck | Patio/Deck | Por/Patio/Deck | | Patio | | Balcony/Deck | |
| Amenities | 2 F/P,T/Crts/BBQ | 3 F/P | 50,000 | 1 F/P, BBQ | 50,000 | 1 F/P | 50,000 |
| Pools | Pool,Spa | Slate Pool,Spa | 0 | Pool,Spa | 0 | None | 80,000 |
| AP | 2076-009-031 | 2173-014-003 | | 2170-002-043 | | 2169-023-063 | |
| Net Adjustment (Total) | | [X] + ☐ - | $ 194,700 | [X] + ☐ - | $ 51,000 | [X] + ☐ - | $ 49,800 |
| Adjusted Sale Price of Comparables | | Net Adj. 14.4% Gross Adj. 30.0% | $ 1,544,700 | Net Adj. 3.4% Gross Adj. 16.7% | $ 1,550,000 | Net Adj. 2.8% Gross Adj. 33.3% | $ 1,849,800 |

Summary of Sales Comparison Approach    See text addendum and additional comments above the Cost Approach

*(vertical label at left)* SALES COMPARISON APPROACH



gpar™
general purpose appraisal report.

## APPRAISAL ADDENDUM

**NEIGHBORHOOD DESCRIPTION**

**Description and Predominant Values**

The subject is located in the City of Los Angeles within the area known as Woodland Hills.  There are several submarkets within Woodland Hills including North and South of Ventura Blvd, Westchester Estates, Vista De Oro, Carlton Terrace, Walnut acres and the Valley Circle Estates to name a few.   The subject is specifically south of Ventura Blvd within the area west of Topanga Canyon boulevard and East of the City of Calabasas. The neighborhood is bounded at Topanga Canyon to avoid the golf course influence and $1,000,000+ custom sales in Vista De Oro and in the Westchester Estates located in the same zip code.

Although early construction in Woodland Hills dates back to 1920s, within the subject's immediate submarket construction in does not begin on tract-built housing until 1948. Construction continued consistently over the next 20 years.  As the lower end predominant is less than 1500 square feet without upgrades and on a smaller lot without a contributory view off these homes can sell for as low as $545,000 although few homes are available this low price.  The lowest active listing as the effective date is $599,000.  Property values tend to maximize at $1,300,000 for renovated properties over 3500 square feet with good city lights views.  There are no gated projects or planned developments within this area of Woodland Hills, which accounts for the lower predominate high as compared to competing area of the zip code.  Per MLS stats, most single family dwellings are 2000 to 2200 square feet and tend to sell at, or near $800,000.  These figures represent predominant values only.  Isolated high and low extremes are excluded from the range. In addition, analyzing predominant values by zip code or city name will produce a much wider range.

The neighborhood is accessed via the (101) Ventura Freeway connecting to the (405) San Diego Freeway within six miles. The Warner Center Business District and easy access to the Ventura Corridor provide for a steady employment base. There are several small retail strip centers along Ventura Blvd. and two regional malls within five minutes. No adverse conditions noted. Due to the hillside nature of the area, both public and private septic are typical to the area.

**Marketing Conditions**

General

Marketing conditions changed significantly over the past decade with real estate peaks in 2006 followed by the subprime meltdown of 2007, and collapse of Fannie Mae and Freddie Mac by 2008. The foreclosure crises continued into 2010, however lowering interest rates helped stabilize the market in 2012, with market off-and-on market increases from 2013 into 2016.

Specific

We have analyzed properties throughout each quarter of the 12 month period immediately preceding the effective date, and have extended the marketing conditions analysis into 2015. We have analyzed properties in the same 91364 zip code ranging from 3500 to 6000 square feet.  This produced the following figures:

| Time Period | # of Sales | Median Price | Median Size (sf) | $ per Sq.Ft | DOM | List/Sell Ratio |
|---|---|---|---|---|---|---|
| 01/04/2015 to 04/03/2015 | 8 | $1,016,000 | 3816 | $266 | 105 | 97% |
| 01/04/2016 to 04/03/2016 | 6 | $1,122,500 | 4165 | $270 | 56 | 100% |
| 04/04/2016 to 07/03/2016 | 7 | $1,120,000 | 3785 | $296 | 76 | 100% |
| 07/04/2016 to 10/03/2016 | 5 | $1,355,000 | 3755 | $361 | 40 | 99% |
| 10/04/2016 to 01/04/2017 | 8 | $1,345,000 | 4083 | $329 | 54 | 96% |

The figures above represent a continuation of increases throughout each quarter with a 22% increase in the median "price per square foot" over the past 12 months.  Exposure times are low, list-to-sell ratios high and the market undersupplied due to increased competition from buyers taking advantage of historically low interest rates. Properties are purchased by investors as rental units or possible long term holds.  Conventional financing is readily available with interest rates beginning to rise.

**Listings**

| ACTIVE | 21 | $1,469,900 | 3980 | $369 | 76 | 8-10 Mo Supply |
|---|---|---|---|---|---|---|

There is an abundance of competitive listings in the neighborhood which may be an indicator of stabilizing values although there are no active listings in the same Heights Submarket.

**Subject Listing History**

The subject was listed for $2,200,000 on 05/18/2016 with the asking price reduced to $1,895,000 on 06/20/2016. The listing expired on 11/13/2016 per ML# 16105866.  As property values were rising throughout this listing period and the market undersupplied, the fact that the property did not sell is an indicator of a high asking price. The listing expired, which tends to indicate that the asking price was higher than the market value of the property.

*The Appraisal Place*

## APPRAISAL ADDENDUM

**SUBJECT PROPERTY**

**Prior Sale**

None

**Improvements**

General: The subject is a two-story Mediterranean style property built in 1989.  The improvements are larger and more recently built than most single family dwellings in the same neighborhood.  The design features detailed, high-quality interior refinements and detail. The workmanship, materials, and finishes throughout the dwelling are generally of high quality.  The improvements feature obvious deferred maintenance and are in need of some significant repairs.  See Damages below.

First Floor: Entry is into a foyer area that has high ceilings with upper fixed windows, custom doors with leaded-glass, circular in-laid marble floors and a wrought iron light fixture.  There is a Living room (LR) off one side of the foyer and a Den/Office off the opposite side. The LR has short ceilings, recessed lighting, fireplace and arched interior walls. The Office has similar polished marble floors, custom drapes and bay windows. There is a Dining room off the LR with similar marble floors and a good quality kitchen with granite counters, granite Center Island, good quality cabinets and gourmet quality appliances (i.e. Viking). A Family room is off the kitchen with short ceilings, recessed lighting, French exterior doors, marble top wet bar and marble floors.  There is one bedroom on the first floor with an original bathroom, and one additional bathroom off the hallway with travertine floors and a pedestal sink.

Second Floor: There are 4 additional bedrooms on the second floor (5 in total) inclusive of a large master suite. The bedrooms have wood floors and pitched ceilings. 2 bedrooms share "jack-and-Jill" bathrooms in original condition and of average quality with tile counters and tile floors. The master bathroom has a corner jetted tub, separate shower, wood floors and tile counters. The master bedroom has a marble-trim fireplace, sitting area, walk-in closets and wood floors. Some of the bedrooms lead out to a balcony or exterior deck.

Additional Features:  Pool with waterfall spa, water feature, barbecue, Saltillo paver decking, lighted Tennis court, covered patio, coffered ceilings, marble trim fireplaces, pitched ceilings and insulated windows.

Damage

The improvements are damaged with observable cracks in the tile floors, cracks on the interior/exterior walls, ceiling damage, doors out-of-plumb and concrete patios separating from the main house. The total damage based on the report prepared by Desi Kepe indicates that the cosmetic and seismic upgrades recommended by Robert Mayer's assessment are between $25,000 and $45,000.

**Extraordinary Assumption (defined)**

*An assumption, directly related to a specific assignment, as of the effective date of the assignment results, which if found to be false, could alter the appraiser's opinions and conclusions.*

*Extraordinary assumptions presume as fact otherwise uncertain information about physical legal or economic characteristics of the subject property.*

Since the appraiser is not an acknowledged expert in slope failure, or the cost to repair damaged improvements, we have assumed the $25,000 to $45,000 figure is credible.  Consistent with the use of an extraordinary assumption, if these figures are found to be false, this could alter or change my opinion

**Site Comments**

The subject site is a rectangular-shaped corner lot with 31,000 square foot size per the Los Angeles County Subdivision (Plat) Maps.  The size is above average for the neighborhood although with partially downsloping topography which restricts the usable size to approximately 12,000 to 18,000 square feet.  The usable size is an estimated based on personal inspection and Los Angeles County terrain maps.

The site has a canyon / residential view from the backyard and more expansive panoramic view from the second floor bedroom and deck. There is no positive or negative affect due to the corner lot location as both streets are residential with minimal traffic.  The zoning is consistent with the current use.  We have not been provided with a detailed survey of the property or with title evidence that would indicate the presence of easements or restrictions to the property. No title report was reviewed for this study.  All relevant characteristics are summarized directly on the body of the form.

**Highest and Best Use (HABU)**

The highest and best use of the subject analyzed "as vacant" and is based on its current zoning and surrounding properties.

**ZONING DATA**

Zoning information was derived from public records or other sources deemed reliable. The accuracy of the data, however, cannot be guaranteed.

## APPRAISAL ADDENDUM

**SALES COMPARISON APPROACH**

Since not every subject can be compared to "ideal" comparable sales, the appraiser has chosen what are believed to be the best comparable sales available from a thorough and extensive search for comparable sales data in the subject's market. The sales selected for use in the analysis are considered to be the best indicators of value for the subject property. Other sales reviewed would have required excessive adjustments and were not considered to be as reliable as the sales chosen. Adjustments within the Sales Comparison Analysis are based on the market extraction method, generally employing the matched pair process, and not specifically based on cost figures.

**Comparable Selection**

The subject is a recently-built Mediterranean style property with good quality interior refinements and larger-than-average size. The location is in the hillsides above Ventura Blvd in a small planned development known as "the heights." There are tight winding streets, sloping lots and varying degrees of mountain and City lights views. The selection of comparables focused on single family dwellings of similar age or quality due to remodeling. Primary adjustments reflect differences in views, location, lot size and size. These adjustments are applied as follows:

**Adjustments**

Size:  In this report, we have utilized $150 per square foot to adjust for differences in the gross living area of the subject when compared to larger or smaller sales. When applicable, the adjustment includes differences in bedroom counts. Bathrooms adjusted separately at $10,000 per full.

Views: The subject has a panoramic mountain/residential view off the back of the property.  This is superior to properties without views Comparables with panoramic city lights views are considered superior especially during the evening hours.  We have adjusted the comparables in steps of $100,000. This is typical for the neighborhood expressly at this price range.

Condition:  The subject has a maximum of $45,000 in damages.  We have allocated a $50,000 cost to cure adjustment on each of the comparable sales to compensate.

Location: The subject has a neutral location with residential traffic. Comparables on beneficial cul-de-sac streets are considered superior due to privacy.  We have adjusted these properties modestly at $50,000. The adjustment is conservative due to the quiet residential location of the subject.

Lot Size: Due to the subject's partially sloping lot, small differences in lot sizes are not adjusted. SALE 4 and LIST COMP 6 however have small backyards with less utility without the possibility of tennis courts or flat grass areas. LIST COMP 6 may not even have enough area for a pool. This limits marketability. Both properties are adjusted for inferior lot sizes. The remaining comparables are not adjusted.

Time: Marketing conditions analysis indicates increasing values in the median price from the earliest period analyzed into the most recent.  Adjustments for time applied at one-half percent per month on sales that closed over 4 months from the effective date. Based on this information, SALE 2 is adjusted for 9 months of increasing values (4.5%), while SALE 4 is adjusted for 7 months (3.5%).  The oldest comparable selected as COMP 3 is adjusted 20%.

Age: No actual age adjustments applied as the subject and comparables are analyzed based on effective age and condition rather than chronological age.

Negotiation:  The sale price listed for comparables #5 AND #6 is the listing prices, which have been adjusted down 5% for buyer/seller negotiations.

# APPRAISAL ADDENDUM

**Comparable Sales Analysis**

SALE 1: Recent sale located in the same "Heights" submarket and with similar quality refinements including custom copper doors, 12" crown moulding trim, rosewood floors, high ceilings, recessed lighting, hidden elevator, crystal chandelier, coffered ceilings, granite counters, double Thermador oven vs, central vacuum and built-in refrigerator.  The location is on a beneficial cul-de-sac without through traffic and with a north-facing city lights view superior to the canyon view of the subject.  The lot size is substantially larger and adding a tennis court similar to the subject would not be possible. Originally listed for $1,299,000 on 05/20/2016 and reduced to $1,199,000 by 09/19/2016 resulting in a contract sale on 10/31/2016 after 182 days exposure.

SALE 2: Less recent sale located in the same Heights submarket. This is an inferior quality property with inferior vinyl windows, ceilings without crown trim, laminate kitchen cabinets, average quality appliances, tiled bathrooms and original doors/fixtures. There is no significant view. The location fronts to a beneficial cul-de-sac without through traffic. Originally listed for $1,150,000 on 02/17/2016 resulting in contract sale at list price on 03/01/2016 after 14 days exposure. MLS is reporting a longer exposure time incorrectly extending it to the close of escrow date.

SALE 3: Dated comparable located in the same project.  Woodland hills is a locational a sensitive area and selecting comparables in the same neighborhood as a better indicator of value, than selecting more recent sales in competing neighborhoods.  The improvements have similar quality refinements that bracket the subject size.  There is a custom French design and Superior City lights view.  The lot is similar in usable lot size and with gated entry, circular drive and pool. The property was listed on 01/26/2015 resulting in a contract sale on 03/07/2015 after 40 days exposure.

SALE 4: Recent sale located in a competing neighborhood.  This is an older home in good condition with dark stained hardwood floors, crown moulding trim, recessed lighting and remodeled kitchen with granite counters, coffered ceilings, gloss-white cabinets and good quality appliances. The second floor has average quality carpet and original bathrooms however no adjustment is applied. The site as a possible view from the upstairs, beneficial cul-de-sac location and similar usable lot size.  Listed for $1,345,000 on 04/09/2016 resulting in a contract sale over the asking price on 04/22/23016 after 13 days exposure.

COMP 5: Very good comparable due to recentness of sale date and similarity in interior refinements. The site is similar in usable size and with the same type of expansive backyard. There are new wood floors, high ceilings interior decorative columns, remodeled chef's kitchen with Silestone counters, breakfast bar, Center Island, custom cabinets and similar gourmet (SS or Viking appliances). The bathrooms are slightly dated. Few adjustments warranted outside of the smaller size. Listed similar to the subject at $1,895,000 and reduced 4 times to $1,499,000 by 12/06/2016 before selling on 12/23/2016 after 216 days. The property has not yet closed escrow.

COMP 6: No active listings in the same "Heights" submarket. We have selected this comparable since the property would compete for the same buyers due to the sloping topography, similar view more recently the improvements.  There are no interior or exterior photographs uploaded on the MLS.  Aerial photographs indicate limited utility and no room for a backyard pool or tennis court.  This accounts for the draw large lot size adjustment applied. Listed for $1,800,000 on 06/18/2016 for a total of 199 days exposure.  The property does not appear seriously listed and therefore a large 10% adjustment is applied for negotiation

**Reconciliation of Comparables Sales**

All comparables are located in the same old and hills market south of Ventura Blvd.  This comparables are located in the same project.  This is primarily true of sales one through three.  Sale one is the most recent sale in the project although a smaller home with a superior view.  SALE 3 brackets the property size supporting adjustments at $150 a square foot.  Primary weight placed on these two sales.  Secondary weight placed on sale two due to the smaller size and less recent sale date.  Lesser weight placed on sale four due to the location outside the tract.  Least weight placed on the active listings.  To one pending sale has been used and supports the estimated value arrived at by all other comparables

## FINAL RECONCILIATION

INCOME APPROACH: The subject is located in an owner occupied neighborhood and therefore the Income Approach is not developed. Purchasers are more concerned with amenities and features than with the income producing capabilities of the property. Most single-family dwellings are owner occupied, and therefore the Income Approach is unreliable in appraising detached homes within the market.

The COST APPROACH is not developed.  This is due to the lack of precision in estimating depreciation on older single-family dwellings and lack of land sales.  This approach is best used on special purpose properties without resale activity.  Based on the intended use of the appraisal, this approach is not necessary for credible assignment results.

The SALES COMPARISON APPROACH is based upon recent sales within the same area as the subject. This approach is given the greatest weight in determining value as it best reflects the actions of Buyers and Sellers in the market

**Data Verification**

To the best of the appraisers knowledge, all comparable sales were sold with no special or creative financing or sales concessions. Closing cost paid by the sellers of the comparable properties is equivalent to typical financing terms offered by third party institutional lenders in the local market. In the appraiser's opinion, these sales represent typical market financing transactions. The sales prices are not considered to be inflated due to special or excessive financing concessions. The indicated values of the comparable sales reflect the value of the subject real estate and include only those sellers closing cost normally paid by tradition or law in the market area. Gross living areas shown for the comparable sales are estimates based on information from one or more of the following sources: Multiple Listing Service (MLS), county/city tax records, real estate agents, homeowners, builders, appraisers, interoffice data bank or actual measurements. Slight variations in size will have no effect on the estimate of value. All comparable sales are settled to the best of the appraiser's knowledge. Verification is with county records and/or Realtor.

*The Appraisal Place*

# APPRAISAL ADDENDUM

**DEFINITIONS AND DISCLOSURES**

**MARKET VALUE DEFINITION***

Market Value means the most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably, and assuming the price is not affected by undue stimulus.  Implicit in this definition are the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:

(l)     Buyer and seller are typically motivated:
(2)     Both parties are well informed or well advised, and acting in what they consider their own best interests;
(3)     A reasonable time is allowed for exposure in the open market;
(4)     Payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and
(5)     The price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale.

* The market value definition printed on this form and as used in this report is consistent with the Financial Institutions Reform Recovery and Enforcement act (FIRREA) of 1989.

**EXPOSURE TIME**

According to the Uniform Standards of Professional Appraisal Practice, exposure time is defined as:

*The estimated length of time the property interest being appraised would have been offered on the market prior to the hypothetical consummation of a sale at market value on the effective date of the appraisal; a retrospective opinion based on an analysis of past events assuming a competitive and open market.*

The exposure time for the subject is approximately 4 to 6 months

**PROPERTY RIGHTS**

The property rights being appraised are Fee Simple. Fee Simple is defined as:

The maximum possible estate one can possess in Real property. A Fee Simple estate is the least limited interest and the most complete and absolute ownership in land; it is of indefinite duration, freely transferable, and inequitable.

**INTENDED USE / USER**

The report is intended for use only by the client "Alana B. Anaya."  Intended users may include opposing counsel, and members of the court hearing the case. No other users are intended.

The intended use is for litigation purposes only in US Bankruptcy Court. The report is identified as an "Appraisal Report" as per the Uniform Standards of Professional Appraisal Practice (USPAP) summarizing most of the information developed.

**FUNCTION OF THE APPRAISAL**

The use of this report is to estimate the "as-is" market value of the real property interest as of a current effective date.

**PRIOR SALE AND LISTING HISTORY**

The subject was purchased for $600,000 on 07/24/2015 from an original asking price of $925,000 per ML# 314033389. The sale was a short pay purchased at auction (all cash). The property has an Interspousal Deed Transfer for No $ amount on 11/20/2013.

**APPRAISAL PROCEDURES – SCOPE OF WORK**

The Sales Comparison Approach was exclusively used to conclude the value opinion.  The cost and income approaches were not considered since most buyers do not value a residential property by adding building and land costs together or by the properties ability to generate income from rents. The appraiser has analyzed the subject's neighborhood, marketing conditions and highest and best use in preparation of the final value estimate.

**CONDITION DISCLAIMER**

This appraisal may note adverse conditions observed at the property at the time of inspection, may call out for further inspections by experts in particular area, and/or may incorporate estimates for repairs into value estimates. However, this report is not intended for use by the client specifically for the purpose of identifying any adverse conditions in the subject's systems and components, which might be revealed by any inspections by licensed professionals in any relevant field. Any adverse conditions noted are for the purpose of estimating their effect on subject value, and do not in any way signify that this appraisal inspection is intended for use for the purpose of defect detection. This appraisal does not guarantee that the subject property is free of undetected problems, possible defects or environmental hazards that could exist, detection of which is beyond the scope of inspection of this appraisal**.**

**MEASUREMENTS**

The measurements and dwelling sketch supplied in the appraisal report are for appraiser purposes of comparison to the comparable sales analyzed in the Sales Comparison Analysis. The supplied sketch is not an architectural rendering of the subject dwelling and is not to be considered as such as the appraiser is not a licensed architect. The Gross Living Area stated in this report may or may not agree with the Gross Living Area published by the tax assessor, the MLS or the builder for the subject or for the comparable sales. Those stated square foot areas have no bearing on the comparison/bracketing/delimiting of the value range analysis utilized in the Sales Comparison Analysis of this appraisal report**."**

*The Appraisal Place*

# APPRAISAL ADDENDUM

**APPRAISAL CERTIFICATION**

The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

9. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

10. I have knowledge and experience in appraising this type of property in this market area.

11. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

12. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

13. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

14. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

15. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

16. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

17. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event.

18. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report.

19. I have performed professional services as an appraiser regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

Daniel R. Bone
State-Certified AR 009434
01/15/2017

*The Appraisal Place*

**APPRAISAL ADDENDUM**

# *EXHIBITS*

**FLOORPLAN SKETCH**

| | | |
|---|---|---|
| Client: Alana B. Anaya | File No.: 559H4-Ana | |
| Property Address: 4705 Excelente Dr | Case No.: | |
| City: Woodland Hills | State: CA | Zip: 91364 |



Sketch by Apex Sketch v5 Standard™

Comments:

## AREA CALCULATIONS SUMMARY

| Code | Description | Net Size | Net Totals |
|---|---|---|---|
| GLA1 | First Floor | 2534.50 | 2534.50 |
| GLA2 | Second Floor | 2534.50 | |
| | Open to Below | -187.50 | 2347.00 |
| GAR | Garage | 630.00 | 630.00 |
| | Net LIVABLE Area | (rounded) | 4882 |

## LIVING AREA BREAKDOWN

| | Breakdown | | | | Subtotals |
|---|---|---|---|---|---|
| **First Floor** | | | | | |
| | | 60.5 | x | 38.0 | 2299.00 |
| | | 5.5 | x | 14.0 | 77.00 |
| | | 5.5 | x | 15.0 | 82.50 |
| 0.5 x | | 4.0 | x | 4.0 | 8.00 |
| 0.5 x | | 3.0 | x | 3.0 | 4.50 |
| | | 6.0 | x | 4.0 | 24.00 |
| | | 9.0 | x | 3.0 | 27.00 |
| 0.5 x | | 4.0 | x | 4.0 | 8.00 |
| 0.5 x | | 3.0 | x | 3.0 | 4.50 |
| **Second Floor** | | | | | |
| | | 15.0 | x | 5.5 | 82.50 |
| | | 5.5 | x | 14.0 | 77.00 |
| | | 38.0 | x | 60.5 | 2299.00 |
| 0.5 x | | 3.0 | x | 3.0 | 4.50 |
| 0.5 x | | 4.0 | x | 4.0 | 8.00 |
| | | 9.0 | x | 3.0 | 27.00 |
| | | 6.0 | x | 4.0 | 24.00 |
| 0.5 x | | 3.0 | x | 3.0 | 4.50 |
| 0.5 x | | 4.0 | x | 4.0 | 8.00 |
| **Open to Below** | | | | | |
| | | 15.0 | x | 12.5 | -187.50 |
| 19 Items | | | (rounded) | | 4882 |

| | | |
|---|---|---|
| Client:  Alana B. Anaya | File No.:  559H4-Ana | |
| Property Address: 4705 Excelente Dr | Case No.: | |
| City: Woodland Hills | State: CA | Zip: 91364 |

| GROSS BUILDING AREA (GBA) | | 4,882 | |
|---|---|---|---|
| **GROSS LIVING AREA (GLA)** | | **4,882** | |

| Area(s) | Area | % of GLA | % of GBA |
|---|---|---|---|
| Living | 4,882 | | 100.00 |
| Level 1 | 2,535 | 51.93 | 51.93 |
| Level 2 | 2,347 | 48.07 | 48.07 |
| Level 3 | 0 | 0.00 | 0.00 |
| Other | 0 | 0.00 | 0.00 |
| Basement | GBA   0 | | |
| Garage | 630 | | |

| Area Measurements | | | | Area Type | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Measurements | Factor | Total | | Level 1 | Level 2 | Level 3 | Other | Bsmt. | Garage |
| 38.00 x 60.50 x 1.00 = | | 2,299.00 | | X | | | | | |
| 14.00 x 5.50 x 1.00 = | | 77.00 | | X | | | | | |
| 15.00 x 5.50 x 1.00 = | | 82.50 | | X | | | | | |
| 4.00 x 4.00 x 0.50 = | | 8.00 | | X | | | | | |
| 3.00 x 3.00 x 0.50 = | | 4.50 | | X | | | | | |
| 4.00 x 6.00 x 1.00 = | | 24.00 | | X | | | | | |
| 3.00 x 9.00 x 1.00 = | | 27.00 | | X | | | | | |
| 4.00 x 4.00 x 0.50 = | | 8.00 | | X | | | | | |
| 3.00 x 3.00 x 0.50 = | | 4.50 | | X | | | | | |
| 5.50 x 15.00 x 1.00 = | | 82.50 | | | X | | | | |
| 14.00 x 5.50 x 1.00 = | | 77.00 | | | X | | | | |
| 60.50 x 38.00 x 1.00 = | | 2,299.00 | | | X | | | | |
| 3.00 x 3.00 x 0.50 = | | 4.50 | | | X | | | | |
| 4.00 x 4.00 x 0.50 = | | 8.00 | | | X | | | | |
| 3.00 x 9.00 x 1.00 = | | 27.00 | | | X | | | | |
| 4.00 x 6.00 x 1.00 = | | 24.00 | | | X | | | | |
| 3.00 x 3.00 x 0.50 = | | 4.50 | | | X | | | | |
| 4.00 x 4.00 x 0.50 = | | 8.00 | | | X | | | | |
| 21.00 x 30.00 x 1.00 = | | 630.00 | | | | | | | X |
| 12.50 x 15.00 x 1.00 = | | 187.50 | | | X | | | | |

SUBJECT

**4705 Excelente Dr, Woodland Hills, CA 91364-4008, Los Angeles County**

## Owner Information

| | | | |
|---|---|---|---|
| Owner Name: | **Harutyunyan Anahit** | Tax Billing Zip: | **91364** |
| Tax Billing Address: | **4705 Excelente Dr** | Tax Billing Zip+4: | **4008** |
| Tax Billing City & State: | **Woodland Hills, CA** | Owner Occupied: | **Yes** |

## Location Information

| | | | |
|---|---|---|---|
| Zoning: | **LARE40** | Subdivision: | **9098** |
| Waterfront Influence: | **Corner** | Flood Zone Code: | **X** |
| Tract Number: | **9098** | Flood Zone Panel: | **06037C1288F** |
| School District: | **Los Angeles** | Flood Zone Date: | **09/26/2008** |
| Census Tract: | **1374.02** | | |

## Tax Information

| | | | |
|---|---|---|---|
| APN: | **2076-009-031** | Tax Area: | **37** |
| % Improved: | **10%** | Lot #: | **209** |
| Legal Description: | **TRACT NO 9098 EX OF ST LOT 209** | | |

## Assessment & Tax

| Assessment Year | 2016 | 2015 | 2014 |
|---|---|---|---|
| **Assessed Value - Total** | $600,000 | $1,275,065 | $1,250,089 |
| **Assessed Value - Land** | $540,000 | $701,820 | $688,073 |
| **Assessed Value - Improved** | $60,000 | $573,245 | $562,016 |
| **YOY Assessed Change (%)** | -52.94% | 2% | |
| **YOY Assessed Change ($)** | -$675,065 | $24,976 | |

| Tax Year | Total Tax | Change ($) | Change (%) |
|---|---|---|---|
| 2014 | $15,871 | | |
| 2015 | $16,345 | $475 | 2.99% |
| 2016 | $7,764 | -$8,582 | -52.5% |

| Special Assessment | Tax Amount |
|---|---|
| Flood Control 62 | $64.92 |
| Laco Vectr Cntrl80 | $8.97 |
| City Lt Maint 21 | $176.18 |
| County Park Dist21 | $13.48 |
| Mrca Fire-Os #2 80 | $19.00 |
| Lacity Park Dist21 | $35.59 |
| Mrca Opnspace #280 | $40.00 |
| Trauma/Emerg Srv86 | $202.67 |
| La Stormwater 21 | $51.75 |
| Total Of Special Assessments | $612.56 |

## Characteristics

| | | | |
|---|---|---|---|
| County Land Use: | **Single Family Resid** | Full Baths: | **4** |
| Universal Land Use: | **SFR** | Half Baths: | **MLS: 1** |
| Lot Acres: | **0.7175** | Heat Type: | **Central** |
| Lot Area: | **31,253** | Cooling Type: | **Central** |
| Lot Shape: | **Irregular** | Garage Capacity: | **MLS: 3** |
| Building Sq Ft: | **4,780** | Pool: | **Pool** |
| Stories: | **MLS: 2** | Year Built: | **1989** |
| Total Units: | **1** | Effective Year Built: | **1989** |
| Bedrooms: | **5** | # of Buildings: | **1** |
| Total Baths: | **Tax: 4 MLS: 5** | | |

## Estimated Value

| | | | |
|---|---|---|---|
| RealAVM™ (1): | **$832,457** | Confidence Score (2): | **74** |
| RealAVM™ Range: | **$707,588 - $957,326** | Forecast Standard Deviation (3): | **15** |
| Value As Of: | **12/23/2016** | | |

(1) RealAVM™ is a CoreLogic® derived value and should not be used in lieu of an appraisal.
(2) The Confidence Score is a measure of the extent to which sales data, property information, and comparable sales support the property valuation analysis process. The confidence score range is 60 - 100. Clear and consistent quality and quantity of data drive higher confidence scores while lower confidence scores indicate diversity in data, lower quality and quantity of data, and/or limited similarity of the subject property to comparable sales.
(3) The FSD denotes confidence in an AVM estimate and uses a consistent scale and meaning to generate a standardized confidence metric. The FSD is a statistic that measures the likely range of dispersion an AVM estimate will fall within, based on the consistency of the information available to the AVM at the time of estimation. The FSD can be used to create confidence that the true value has a statistical degree of certainty.

## Listing Information

| | | | |
|---|---|---|---|
| MLS Listing Number: | **OC16105866** | MLS Current List Price: | **$1,895,000** |

**AERIAL MAP**

| Client: Alana B. Anaya | File No.: 559H4-Ana |
|---|---|
| Property Address: 4705 Excelente Dr | Case No.: |
| City: Woodland Hills | State: CA    Zip: 91364 |



Subject
4705 Excelente Dr
Woodland Hills, CA 91364

**APPRAISAL ADDENDUM**

# *Photograph*

# *Addendum*

| Client: Alana B. Anaya | | File No.: 559H4-Ana |
|---|---|---|
| Property Address: 4705 Excelente Dr | | Case No.: |
| City: Woodland Hills | State: CA | Zip: 91364 |



**FRONT VIEW OF SUBJECT PROPERTY**

Date: January 4, 2017
Appraised Value: $ 1,500,000



**REAR VIEW OF SUBJECT PROPERTY**



**STREET SCENE**

| Client:  Alana B. Anaya | File No.:   559H4-Ana |
| Property Address: 4705 Excelente Dr | Case No.: |
| City: Woodland Hills | State: CA | Zip: 91364 |



**SIDE DOWNSLOPE**



**POOL / SPA / WATER FEATURE**



**TENNIS COURT**



**BARBECUE**



**VIEW**



**VIEW**

| | |
|---|---|
| Client: Alana B. Anaya | File No.: 559H4-Ana |
| Property Address: 4705 Excelente Dr | Case No.: |
| City: Woodland Hills | State: CA Zip: 91364 |



**FRONT VIEW**



**STREET VIEW**



**LIVING ROOM**



**DINING ROOM**



**LIVING ROOM TO FOYER**



**DEN / OFFICE**

| | |
|---|---|
| Client: Alana B. Anaya | File No.: 559H4-Ana |
| Property Address: 4705 Excelente Dr | Case No.: |
| City: Woodland Hills | State: CA Zip: 91364 |



**WET BAR**



**FAMILY ROOM**



**NOOK**



**KITCHEN**



**BATHROOM**



**BEDROOM**

| | |
|---|---|
| Client: Alana B. Anaya | File No.: 559H4-Ana |
| Property Address: 4705 Excelente Dr | Case No.: |
| City: Woodland Hills | State: CA | Zip: 91364 |



**FOYER - MARBLE**



**HALF BATHROOM**



**BEDROOM**



**BEDROOM**



**BATHROOM**



**LANDING / OPEN TO BELOW**

| | |
|---|---|
| Client:  Alana B. Anaya | File No.:   559H4-Ana |
| Property Address: 4705 Excelente Dr | Case No.: |
| City: Woodland Hills | State: CA              Zip: 91364 |



**MASTER BEDROOM**



**MASTER BATHROOM**



**MASTER BEDROOM FIREPLACE**



**LANDING**



**BATHROOM**



**BEDROOM**

| | |
|---|---|
| Client:  Alana B. Anaya | File No.:   559H4-Ana |
| Property Address: 4705 Excelente Dr | Case No.: |
| City: Woodland Hills | State: CA          Zip: 91364 |



**CONCRETE SEPARATION**



**MARBLE CRACKS**



**MARBLE CRACKS**



**COUNTER CRACKS**



**WALL CRACKS**



**WALL CRACKS**

**LOCATION MAP**

| | | |
|---|---|---|
| Client: Alana B. Anaya | File No.: 559H4-Ana | |
| Property Address: 4705 Excelente Dr | Case No.: | |
| City: Woodland Hills | State: CA | Zip: 91364 |



| Client:  Alana B. Anaya | | File No.:  559H4-Ana |
| Property Address: 4705 Excelente Dr | | Case No.: |
| City: Woodland Hills | State: CA | Zip: 91364 |



**COMPARABLE SALE #1**

22541 Uhea Rd
Woodland Hills, Ca 91364
Sale Date: 11/2016;10/2016
Sale Price: $ 1,170,000



**COMPARABLE SALE #2**

4808 Reforma Rd
Woodland Hills, Ca 91364
Sale Date: 04/2016;03/2016
Sale Price: $ 1,150,000



**COMPARABLE SALE #3**

4801 Azucena Rd
Woodland Hills, Ca 91364
Sale Date: 05/2015;03/2015
Sale Price: $ 1,552,500

COMPARABLE PROPERTY PHOTO ADDENDUM

| | | |
|---|---|---|
| Client: Alana B. Anaya | | File No.: 559H4-Ana |
| Property Address: 4705 Excelente Dr | | Case No.: |
| City: Woodland Hills | State: CA | Zip: 91364 |



**COMPARABLE SALE #4**

4424 Dulcinea Ct
Woodland Hills, Ca 91364
Sale Date: 07/2016;05/2016
Sale Price: $ 1,350,000



**COMPARABLE SALE #5**

4800 Azucena Rd
Woodland Hills, Ca 91364
Sale Date: 12/2016
Sale Price: $ 1,499,000



**COMPARABLE SALE #6**

5096 Llano Dr
Woodland Hills, Ca 91364
Sale Date: LISTING
Sale Price: $ 1,800,000

**THE APPRAISAL PLACE**

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for litigation purposes.

**INTENDED USER:** The intended user(s) of this appraisal report are identified on Page 1 of the form.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

THE APPRAISAL PLACE

# Uniform Residential Appraisal Report

File No. Anaya

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1.  I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2.  I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3.  I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4.  I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5.  I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6.  I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7.  I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8.  I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9.  I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

THE APPRAISAL PLACE

## Uniform Residential Appraisal Report

File No. Anaya

22.  I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations.  Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23.  The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24.  If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25.  Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

26. I have performed no services as an appraiser or in any other capacity regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

**SUPERVISORY APPRAISER'S CERTIFICATION:**  The Supervisory Appraiser certifies and agrees that:

1.  I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2.  I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3.  The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4.  This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5.  If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if  a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name Daniel R. Bone | Name |
| Company Name The Appraisal Place | Company Name |
| Company Address 6279-D Variel Ave | Company Address |
| Woodland Hills, CA 91367 | |
| Telephone Number 818-715-0943 | Telephone Number |
| Email Address tap95@pacbell.net | Email Address |
| Date of Signature and Report 01/15/2017 | Date of Signature |
| Effective Date of Appraisal 01/04/2017 | State Certification # |
| State Certification # AR009434 | or State License # |
| or State License # | State |
| or Other (describe) _____ State # _____ | Expiration Date of Certification or License _____ |
| State CA | |
| Expiration Date of Certification or License 09/22/2018 | |

ADDRESS OF PROPERTY APPRAISED
4705 Excelente Dr
Woodland Hills, Ca. 91367

APPRAISED VALUE OF SUBJECT PROPERTY $ 1,500,000

LENDER/CLIENT
Name N/A
Company Name N/A
Company Address N/A
N/A
Email Address

SUBJECT PROPERTY
☐ Did not inspect subject property
☐ Did inspect exterior of subject property from street
   Date of Inspection
☐ Did inspect interior and exterior of subject property
   Date of Inspection _____

COMPARABLE SALES
☐ Did not inspect exterior of comparable sales from street
☐ Did inspect exterior of comparable sales from street
   Date of Inspection _____

Freddie Mac Form 70 March 2005          UAD Version 9/2011          Produced using ACI software, 800.234.8727 www.aciweb.com          Fannie Mae Form 1004 March 2005
Page 6 of 6                                                                 1004_05UAD 12182015

The Appraisal Place

# Exhibit "C"

# ICONIC BUILDERS, INC

6520 platt ave 920 west hills ca 91307
818-534-4540   Lic: 982384

January 10, 2017

Dear Mr. Bone,

To complete the cosmetic and seismic upgrade recommended by Robert Mayer's assessment the cost of the repairs would be between $25,000-$45,000.

Thank you.

Desi Kepe

## DECLARATION OF ROBERT MAYER

I, ROBERT MAYER, do declare and state as follows:

1.     I am over the age of 18 years old and am not a party to this action.  I have personal knowledge of the facts stated herein, if called upon, I could and would testify competently thereto.

2.     I am both a licensed Civil Engineer and Structural Engineer by the State of California. I first obtained by Civil Engineering License in 1973 and my Structural Engineering License in 1975.  I am member of the of the Structural Engineers Association of California, Consulting Structural Engineers society and the American Society of Civil Engineers.

3.     On January 4, 2017, I visited the property commonly known as 4705 Excelente Dr, Woodland Hills, CA 91364.  During my inspection of the property I observed superficial cracks throughout the property.  A true and correct copy of my report is attached hereto as Exhibit "A".

4.     During my inspection I did not observe any cracks or other damage to the property indicating that the property was subject to any catastrophic failure.  Based on my inspection the house was in good condition.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this _18_ th day of January, 2017  in Westlake Village, California.

_____
Robert Mayer

# Exhibit "A"

# RMSE

## Robert Mayer *Structural Engineer*
**14402 Haynes Street, Suite #202, Van Nuys, CA 91401**
**Tel. (818)-989-9002, Fax (818)-989-9016**

# S T R U C T U R A L   E N G I N E E R I N G   R E P O R T

**Date:** 1-6-2017

**To:** Alana Anaia                                    tel.: 805-230-9222
Lawgroup

**Re:** 4705 Excellente Drive
Woodland Hills, CA  91364

**General:** The purpose of this report is to confirm the condition of the residence.

**Observation type:** Visual inspection per ATC-20 (Applied Technology Council).

## Observations:

1. The house is a two story, slab on grade, residence type V construction..
2. It was built in 1989 before the 1994 Northridge Earthquake.
3. The house in general is good condition.
4. The first floor covered with marble finish shows cosmetic cracks throughout the first floor.
5. The walls show seismic cracks originating at doors and window corners. Some of this cracks are patched.
6. Some cracks were noted under the roof hips
7. NW wall shear crack is noticed at pavement/wall base..
8. The downspouts and gutters the painting is peeling off.
9. At the entrance near the stairs the floor is damaged and cracked.
10. The swimming pool shows water at a higher level on one side and a lower level on the other side (close to the slope).

## Conclusions:

1. The house in general is good condition.
2. A seismic upgrade is recommended with new shear wall design and details.

1

3. The walls have to be re-finished. Existing signs of cracks shall be removed.

4. The floor marbles maybe removed and the damaged floor finishes shall be repaced.

5. The downspouts and gutters shall be repainted.

6. The damaged floor at the entry close to the stairs shall be repaired.

7. The crack at the base of the N-W wall shall be cleaned.

If there are any additional questions please don't hesitate to contact me at (818)-989-9002.

Thank you,

Robert Mayer P.E., S.E.

1

## DECLARATION OF JONATHAN MALEK

2    I, JONATHAN MALEK, do declare and state as follows:

3    1.   I am an attorney at law, duly license to practice law in all courts in the State of

4  California.   I have personal knowledge of the facts stated herein, if called upon, I could and

5  would testify competently thereto.

6    2.    In the state court action, my office propounded form interrogatories on Defendant

7  HARUTYUNYAN .   Attached hereto as Exhibit "A" are true and correct copies of the form

8  interrogatories and the response thereto.

9    3.    Our office also obtained a copy of the Deposition Transcript of ANAHIT

10  HARUTYUNYAN, which was taken in the matter of Savadian v. Martirosian.  True and

11  correct portions of the deposition transcript are attached hereto as Exhibit "B".

12    4.    On January 17, 2017, I conducted a google search of 4705 Excellente  and

13  could not find any websites detailing the alleged damage to the property.  A true and correct

14  copy of the results are attached hereto as Exhibit "C" and printouts from various websites are

15  attached hereto as Exhibit "D"

16    5.    A google images overview of the property demonstrates that there are no

17  neighbors behind the pool area.  A true and correct copy of the printout from google maps is

18  attached hereto as Exhibit "E"

19    6.    Attached hereto as Exhibit "F" is a true and correct copy of Debtors Schedule

20  "A" filed in the underlying bankruptcy.

21    7.    Attached hereto as Exhibit "G" are true and correct copies of the excerpts of

22  the testimony of Jamal Dawood from the December 27, 2016, hearing.

23    8.    Attached hereto as Exhibit "H" are true and correct copies of excerpts from the

24  courts oral ruling at the December 27, 2016, hearing.

25    9.    Attached hereto as Exhibit "I", a copies of DWP statement provided by

26  counsel for HARUTYUNYAN, indicating that she was receiving utilities at the property at issue

27  on a low income discount and copies of the income qualification requirements for the low

28  income discount.

10.    Attached hereto as Exhibit "J" is a copy of the docket in bankruptcy case no. 2:16-bk-26852-DS filed by HARUTYUNYAN.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 23th day of January, 2017  in Westlake Village, California.

_/s/JONATHAN MALEK_____
JONATHAN MALEK

# Exhibit "A"

DISC-001

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State ear number, and address):*<br>Alana B. Anaya, Esq. SBN: 195758<br>Anaya Law Group<br>2629 Townsgate Road, Suite 140<br>Westlake Village, CA 91361<br><br>TELEPHONE NO.: (805) 230-9222<br>FAX NO. *(Optional):* (805) 230-9221<br>E-MAIL ADDRESS *(Optional):* alana@anayalawgroup.com<br>ATTORNEY FOR *(Name):* VAZGEN KHACHATRYAN | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
Superior Court, County of Los Angeles
North Valley District

SHORT TITLE OF CASE: KHACHATRYAN v. MARTIROSIAN

| FORM INTERROGATORIES—GENERAL | CASE NUMBER: |
|---|---|
| Asking Party: VAZGEN KHACHATRYAN<br><br>Answering Party: ANAHIT HARUTYUNYAN<br>Set No.: One | PC056789 |

## Sec. 1.    Instructions to All Parties

(a)   Interrogatories are written questions prepared by a party to an action that are sent to any other party in the action to be answered under oath.  The interrogatories below are form interrogatories approved for use in civil cases.

(b)   For time limitations, requirements for service on other parties, and other details, see Code of Civil Procedure sections 2030.010–2030.410 and the cases construing those sections.

(c)   These form interrogatories do not change existing law relating to interrogatories nor do they affect an answering party's right to assert any privilege or make any objection.

## Sec. 2.    Instructions to the Asking Party

(a)   These interrogatories are designed for optional use by parties in unlimited civil cases where the amount demanded exceeds $25,000.  Separate interrogatories, Form *Interrogatories—Limited Civil Cases (Economic Litigation)* (form DISC-004), which have no subparts, are designed for use in limited civil cases where the amount demanded is $25,000 or less; however, those interrogatories may also be used in unlimited civil cases.

(b)   Check the box next to each interrogatory that you want the answering party to answer. Use care in choosing those interrogatories that are applicable to the case.

(c)   You may insert your own definition of **INCIDENT** in Section 4, but only where the action arises from a course of conduct or a series of events occurring over a period of time.

(d)   The interrogatories in section 16.0, Defendant's Contentions—Personal Injury, should not be used until the defendant has had a reasonable opportunity to conduct an investigation or discovery of plaintiff's injuries and damages.

(e)   Additional interrogatories may be attached.

## Sec. 3.    Instructions to the Answering Party

(a)   An answer or other appropriate response must be given to each interrogatory checked by the asking party.

(b)   As a general rule, within 30 days after you are served with these interrogatories, you must serve your responses on the asking party and serve copies of your responses on all other parties to the action who have appeared.  See Code of Civil Procedure sections 2030.260–2030.270 for details.

(c)   Each answer must be as complete and straightforward as the information reasonably available to you, including the information possessed by your attorneys or agents, permits. If an interrogatory cannot be answered completely, answer it to the extent possible.

(d)   If you do not have enough personal knowledge to fully answer an interrogatory, say so, but make a reasonable and good faith effort to get the information by asking other persons or organizations, unless the information is equally available to the asking party.

(e)   Whenever an interrogatory may be answered by referring to a document, the document may be attached as an exhibit to the response and referred to in the response.  If the document has more than one page, refer to the page and section where the answer to the interrogatory can be found.

(f)   Whenever an address and telephone number for the same person are requested in more than one interrogatory, you are required to furnish them in answering only the first interrogatory asking for that information.

(g)   If you are asserting a privilege or making an objection to an interrogatory, you must specifically assert the privilege or state the objection in your written response.

(h)   Your answers to these interrogatories must be verified, dated, and signed. You may wish to use the following form at the end of your answers:

*I declare under penalty of perjury under the laws of the State of California that the foregoing answers are true and correct.*

_____        _____
        *(DATE)*                                   *(SIGNATURE)*

## Sec. 4.   Definitions

Words in **BOLDFACE CAPITALS** in these interrogatories are defined as follows:

(a) *(Check one of the following):*

☐ (1)  **INCIDENT** includes the circumstances and events surrounding the alleged accident, injury, or other occurrence or breach of contract giving rise to this action or proceeding.

| | | |
|---|---|---|
| Form Approved for Optional Use<br>Judicial Council of California<br>DISC-001 [Rev. January 1, 2008] | **FORM INTERROGATORIES—GENERAL** | Code of Civil Procedure,<br>§§ 2030.010–2030.410, 2033.710 |

Legal
Solutions
Plus

[X] **(2) INCIDENT** means *(insert your definition here or on a separate, attached sheet labeled "Sec. 4(a)(2)"):* the facts as alleged at paragraphs 7 through 38 in the complaint filed in this case (Case No. PC056789) on December 22, 2015.

**(b) YOU OR ANYONE ACTING ON YOUR BEHALF** includes you, your agents, your employees, your insurance companies, their agents, their employees, your attorneys, your accountants, your investigators, and anyone else acting on your behalf.

**(c) PERSON** includes a natural person, firm, association, organization, partnership, business, trust, limited liability company, corporation, or public entity.

**(d) DOCUMENT** means a writing, as defined in Evidence Code section 250, and includes the original or a copy of handwriting, typewriting, printing, photostats, photographs, electronically stored information, and every other means of recording upon any tangible thing and form of communicating or representation, including letters, words, pictures, sounds, or symbols, or combinations of them.

**(e) HEALTH CARE PROVIDER** includes any **PERSON** referred to in Code of Civil Procedure section 667.7(e)(3).

**(f) ADDRESS** means the street address, including the city, state, and zip code.

**Sec. 5. Interrogatories**

The following interrogatories have been approved by the Judicial Council under Code of Civil Procedure section 2033.710:

CONTENTS

1.0  Identity of Persons Answering These Interrogatories
2.0  General Background Information—Individual
3.0  General Background Information—Business Entity
4.0  Insurance
5.0  *[Reserved]*
6.0  Physical, Mental, or Emotional Injuries
7.0  Property Damage
8.0  Loss of Income or Earning Capacity
9.0  Other Damages
10.0  Medical History
11.0  Other Claims and Previous Claims
12.0  Investigation — General
13.0  Investigation — Surveillance
14.0  Statutory or Regulatory Violations
15.0  Denials and Special or Affirmative Defenses
16.0  Defendant's Contentions Personal Injury
17.0  Responses to Request for Admissions
18.0  *[Reserved]*
19.0  *[Reserved]*
20.0  How the Incident Occurred—Motor Vehicle
25.0  *[Reserved]*
30.0  *[Reserved]*
40.0  *[Reserved]*
50.0  Contract
60.0  *[Reserved]*
70.0  Unlawful Detainer *[See separate form DISC-003]*
101.0  Economic Litigation *[See separate form DISC-004]*
200.0  Employment Law *[See separate form DISC-002]*
       Family Law *[See separate form FL-145]*

**1.0  Identity of Persons Answering These Interrogatories**

[X] 1.1 State the name, **ADDRESS**, telephone number, and relationship to you of each **PERSON** who prepared or assisted in the preparation of the responses to these interrogatories. (*Do not identify anyone who simply typed or reproduced the responses.*)

**2.0  General Background Information—individual**

[X] 2.1 State:
(a) your name;
(b) every name you have used in the past; and
(c) the dates you used each name.

[X] 2.2 State the date and place of your birth.

[ ] 2.3 At the time of the **INCIDENT**, did you have a driver's license?  If so, state:
(a) the state or other issuing entity;
(b) the license number and type;
(c) the date of issuance; and
(d) all restrictions.

[ ] 2.4 At the time of the **INCIDENT**, did you have any other permit or license for the operation of a motor vehicle?  If so, state:
(a) the state or other issuing entity;
(b) the license number and type;
(c) the date of issuance; and
(d) all restrictions.

[X] 2.5 State:
(a) your present residence **ADDRESS**;
(b) your residence **ADDRESSES** for the past five years; and
(c) the dates you lived at each **ADDRESS**.

[X] 2.6 State:
(a) the name, **ADDRESS**, and telephone number of your present employer or place of self-employment; and
(b) the name, **ADDRESS**, dates of employment, job title, and nature of work for each employer or self-employment you have had from five years before the **INCIDENT** until today.

[X] 2.7 State:
(a) the name and **ADDRESS** of each school or other academic or vocational institution you have attended, beginning with high school;
(b) the dates you attended;
(c) the highest grade level you have completed; and
(d) the degrees received.

[X] 2.8 Have you ever been convicted of a felony?  If so, for each conviction state:
(a) the city and state where you were convicted;
(b) the date of conviction;
(c) the offense; and
(d) the court and case number.

[X] 2.9 Can you speak English with ease?  If not, what language and dialect do you normally use?

[X] 2.10 Can you read and write English with ease?  If not, what language and dialect do you normally use?

**FORM INTERROGATORIES—GENERAL**

DISC-001

[X] 2.11 At the time of the **INCIDENT** were you acting as an agent or employee for any **PERSON**? If so, state:

(a) the name, **ADDRESS**, and telephone number of that **PERSON**: and

(b) a description of your duties.

[X] 2.12 At the time of the **INCIDENT** did you or any other person have any physical, emotional, or mental disability or condition that may have contributed to the occurrence of the **INCIDENT**? If so, for each person state:

(a) the name, **ADDRESS**, and telephone number;

(b) the nature of the disability or condition; and

(c) the manner in which the disability or condition contributed to the occurrence of the **INCIDENT**.

[ ] 2.13 Within 24 hours before the **INCIDENT** did you or any person involved in the **INCIDENT** use or take any of the following substances: alcoholic beverage, marijuana, or other drug or medication of any kind (prescription or not)? If so, for each person state:

(a) the name, **ADDRESS**, and telephone number;

(b) the nature or description of each substance;

(c) the quantity of each substance used or taken;

(d) the date and time of day when each substance was used or taken;

(e) the **ADDRESS** where each substance was used or taken;

(f) the name, **ADDRESS**, and telephone number of each person who was present when each substance was used or taken; and

(g) the name, **ADDRESS**, and telephone number of any **HEALTH CARE PROVIDER** who prescribed or furnished the substance and the condition for which it was prescribed or furnished.

### 3.0 General Background Information — Business Entity

[ ] 3.1 Are you a corporation? If so, state:

(a) the name stated in the current articles of incorporation;

(b) all other names used by the corporation during the past 10 years and the dates each was used;

(c) the date and place of incorporation;

(d) the **ADDRESS** of the principal place of business; and

(e) whether you are qualified to do business in California.

[ ] 3.2 Are you a partnership? If so, state:

(a) the current partnership name;

(b) all other names used by the partnership during the past 10 years and the dates each was used;

(c) whether you are a limited partnership and, if so, under the laws of what jurisdiction;

(d) the name and **ADDRESS** of each general partner; and

(e) the **ADDRESS** of the principal place of business.

[ ] 3.3 Are you a limited liability company? If so, state:

(a) the name stated in the current articles of organization;

(b) all other names used by the company during the past 10 years and the date each was used;

(c) the date and place of filing of the articles of organization;

(d) the **ADDRESS** of the principal place of business; and

(e) whether you are qualified to do business in California.

[ ] 3.4 Are you a joint venture? If so, state:

(a) the current joint venture name;

(b) all other names used by the joint venture during the past 10 years and the dates each was used;

(c) the name and **ADDRESS** of each joint venturer; and

(d) the **ADDRESS** of the principal place of business.

[ ] 3.5 Are you an unincorporated association?
If so, state:

(a) the current unincorporated association name;

(b) all other names used by the unincorporated association during the past 10 years and the dates each was used; and

(c) the **ADDRESS** of the principal place of business.

[ ] 3.6 Have you done business under a fictitious name during the past 10 years? If so, for each fictitious name state:

(a) the name;

(b) the dates each was used;

(c) the state and county of each fictitious name filing; and

(d) the **ADDRESS** of the principal place of business.

[ ] 3.7 Within the past five years has any public entity registered or licensed your business? If so, for each license or registration:

(a) identify the license or registration;

(b) state the name of the public entity; and

(c) state the dates of issuance and expiration.

### 4.0 Insurance

[X] 4.1 At the time of the **INCIDENT**, was there in effect any policy of insurance through which you were or might be insured in any manner (for example, primary, pro-rata, or excess liability coverage or medical expense coverage) for the damages, claims, or actions that have arisen out of the **INCIDENT**? If so, for each policy state:

(a) the kind of coverage;

(b) the name and **ADDRESS** of the insurance company;

(c) the name, **ADDRESS**, and telephone number of each named insured;

(d) the policy number;

(e) the limits of coverage for each type of coverage contained in the policy;

(f) whether any reservation of rights or controversy or coverage dispute exists between you and the insurance company; and

(g) the name, **ADDRESS**, and telephone number of the custodian of the policy.

[X] 4.2 Are you self-insured under any statute for the damages, claims, or actions that have arisen out of the **INCIDENT**? If so, specify the statute.

### 5.0 *[Reserved]*

### 6.0 Physical, Mental, or Emotional Injuries

[ ] 6.1 Do you attribute any physical, mental, or emotional injuries to the **INCIDENT**? (*If your answer is "no," do not answer interrogatories 6.2 through 6.7*).

[ ] 6.2 Identify each injury you attribute to the **INCIDENT** and the area of your body affected.

DISC-001

6.3 Do you still have any complaints that you attribute to the **INCIDENT?** If so, for each complaint state:
(a) a description;
(b) whether the complaint is subsiding, remaining the same, or becoming worse; and
(c) the frequency and duration.

6.4 Did you receive any consultation or examination (except from expert witnesses covered by Code of Civil Procedure sections 2034.210–2034.310) or treatment from a **HEALTH CARE PROVIDER** for any injury you attribute to the **INCIDENT?** If so, for each **HEALTH CARE PROVIDER** state:
(a) the name, **ADDRESS,** and telephone number;
(b) the type of consultation, examination, or treatment provided;
(c) the dates you received consultation, examination, or treatment; and
(d) the charges to date.

6.5 Have you taken any medication, prescribed or not, as a result of injuries that you attribute to the **INCIDENT?** If so, for each medication state:
(a) the name;
(b) the **PERSON** who prescribed or furnished it;
(c) the date it was prescribed or furnished;
(d) the dates you began and stopped taking it; and
(e) the cost to date.

6.6 Are there any other medical services necessitated by the injuries that you attribute to the **INCIDENT** that were not previously listed (for example, ambulance, nursing, prosthetics)? If so, for each service state:
(a) the nature;
(b) the date;
(c) the cost; and
(d) the name, **ADDRESS,** and telephone number of each provider.

6.7 Has any **HEALTH CARE PROVIDER** advised that you may require future or additional treatment for any injuries that you attribute to the **INCIDENT?** If so, for each injury state:
(a) the name and **ADDRESS** of each **HEALTH CARE PROVIDER;**
(b) the complaints for which the treatment was advised; and
(c) the nature, duration, and estimated cost of the treatment. treatment.

**7.0  Property Damage**

7.1 Do you attribute any loss of or damage to a vehicle or other property to the **INCIDENT?** If so, for each item of property:
(a) describe the property;
(b) describe the nature and location of the damage to the property;

(c) state the amount of damage you are claiming for each item of property and how the amount was calculated; and
(d) if the property was sold, state the name, **ADDRESS,** and telephone number of the seller, the date of sale, and the sale price.

7.2 Has a written estimate or evaluation been made for any item of property referred to in your answer to the preceding interrogatory? If so, for each estimate or evaluation state:
(a) the name, **ADDRESS,** and telephone number of the **PERSON** who prepared it and the date prepared;
(b) the name, **ADDRESS,** and telephone number of each **PERSON** who has a copy of it; and
(c) the amount of damage stated.

7.3 Has any item of property referred to in your answer to interrogatory 7.1 been repaired? If so, for each item state:
(a) the date repaired;
(b) a description of the repair;
(c) the repair cost;
(d) the name, **ADDRESS,** and telephone number of the **PERSON** who repaired it;
(e) the name, **ADDRESS,** and telephone number of the **PERSON** who paid for the repair.

**8.0  Loss of Income or Earning Capacity**

8.1 Do you attribute any loss of income or earning capacity to the **INCIDENT?** *(If your answer is "no," do not answer interrogatories 8.2 through 8.8).*

8.2 State:
(a) the nature of your work;
(b) your job title at the time of the **INCIDENT;** and
(c) the date your employment began.

8.3 State the last date before the **INCIDENT** that you worked for compensation.

8.4 State your monthly income at the time of the **INCIDENT** and how the amount was calculated.

8.5 State the date you returned to work at each place of employment following the **INCIDENT.**

8.6 State the dates you did not work and for which you lost income as a result of the **INCIDENT.**

8.7 State the total income you have lost to date as a result of the **INCIDENT** and how the amount was calculated.

8.8 Will you lose income in the future as a result of the **INCIDENT?** If so, state:
(a) the facts upon which you base this contention;
(b) an estimate of the amount;
(c) an estimate of how long you will be unable to work; and
(d) how the claim for future income is calculated.

**FORM INTERROGATORIES—GENERAL**

DISC-001

#### 9.0 Other Damages

9.1    Are there any other damages that you attribute to the INCIDENT? If so, for each item of damage state:
(a) the nature;
(b) the date it occurred;
(c) the amount; and
(d) the name, ADDRESS, and telephone number of each PERSON to whom an obligation was incurred.

9.2    Do any DOCUMENTS support the existence or amount of any item of damages claimed in interrogatory 9.1? If so, describe each document and state the name, ADDRESS, and telephone number of the PERSON who has each DOCUMENT.

#### 10.0 Medical History

10.1    At any time before the INCIDENT did you have complaints or injuries that involved the same part of your body claimed to have been injured in the INCIDENT? If so, for each state:
(a) a description of the complaint or injury;
(b) the dates it began and ended; and
(c) the name, ADDRESS, and telephone number of each HEALTH CARE PROVIDER whom you consulted or who examined or treated you.

10.2    List all physical, mental, and emotional disabilities you had immediately before the INCIDENT. *(You may omit mental or emotional disabilities unless you attribute any mental or emotional injury to the INCIDENT.)*

10.3    At any time after the INCIDENT, did you sustain injuries of the kind for which you are now claiming damages? If so, for each incident giving rise to an injury state:
(a) the date and the place it occurred;
(b) the name, ADDRESS, and telephone number of any other PERSON involved;
(c) the nature of any injuries you sustained;
(d) the name, ADDRESS, and telephone number of each HEALTH CARE PROVIDER who you consulted or who examined or treated you; and
(e) the nature of the treatment and its duration.

#### 11.0 Other Claims and Previous Claims

11.1    Except for this action, in the past 10 years have you filed an action or made a written claim or demand for compensation for your personal injuries? If so, for each action, claim, or demand state:
(a) the date, time, and place and location (closest street ADDRESS or intersection) of the INCIDENT giving rise to the action, claim, or demand;
(b) the name, ADDRESS, and telephone number of each PERSON against whom the claim or demand was made or the action filed;

(c) the court, names of the parties, and case number of any action filed;
(d) the name, ADDRESS, and telephone number of any attorney representing you;
(e) whether the claim or action has been resolved or is pending; and
(f) a description of the injury.

11.2    In the past 10 years have you made a written claim or demand for workers' compensation benefits? If so, for each claim or demand state:
(a) the date, time, and place of the INCIDENT giving rise to the claim;
(b) the name, ADDRESS, and telephone number of your employer at the time of the injury;
(c) the name, ADDRESS, and telephone number of the workers' compensation insurer and the claim number;
(d) the period of time during which you received workers' compensation benefits;
(e) a description of the injury;
(f) the name, ADDRESS, and telephone number of any HEALTH CARE PROVIDER who provided services; and
(g) the case number at the Workers' Compensation Appeals Board.

#### 12.0 Investigation—General

[X] 12.1    State the name, ADDRESS, and telephone number of each individual:
(a) who witnessed the INCIDENT or the events occurring immediately before or after the INCIDENT;
(b) who made any statement at the scene of the INCIDENT;
(c) who heard any statements made about the INCIDENT by any individual at the scene; and
(d) who YOU OR ANYONE ACTING ON YOUR BEHALF claim has knowledge of the INCIDENT (except for expert witnesses covered by Code of Civil Procedure section 2034).

[X] 12.2    Have YOU OR ANYONE ACTING ON YOUR BEHALF interviewed any individual concerning the INCIDENT? If so, for each individual state:
(a) the name, ADDRESS, and telephone number of the individual interviewed;
(b) the date of the interview; and
(c) the name, ADDRESS, and telephone number of the PERSON who conducted the interview.

[X] 12.3    Have YOU OR ANYONE ACTING ON YOUR BEHALF obtained a written or recorded statement from any individual concerning the INCIDENT? If so, for each statement state:
(a) the name, ADDRESS, and telephone number of the individual from whom the statement was obtained;
(b) the name, ADDRESS, and telephone number of the individual who obtained the statement;
(c) the date the statement was obtained; and
(d) the name, ADDRESS, and telephone number of each PERSON who has the original statement or a copy.

[X] 12.4  Do **YOU OR ANYONE ACTING ON YOUR BEHALF** know of any photographs, films, or videotapes depicting any place, object, or individual concerning the **INCIDENT** or plaintiff's injuries?  If so, state:
(a)  the number of photographs or feet of film or videotape;
(b)  the places, objects, or persons photographed, filmed, or videotaped;
(c)  the date the photographs, films, or videotapes were taken;
(d)  the name, **ADDRESS,** and telephone number of the individual taking the photographs, films, or videotapes; and
(e)  the name, **ADDRESS,** and telephone number of each **PERSON** who has the original or a copy of the photographs, films, or videotapes.

[X] 12.5  Do **YOU OR ANYONE ACTING ON YOUR BEHALF** know of any diagram, reproduction, or model of any place or thing (except for items developed by expert witnesses covered by Code of Civil Procedure sections 2034.210-2034.310) concerning the **INCIDENT**?  If so, for each item state:
(a)  the type (i.e., diagram, reproduction, or model);
(b)  the subject matter; and
(c)  the name, **ADDRESS,** and telephone number of each **PERSON** who has it.

[X] 12.6  Was a report made by any **PERSON** concerning the **INCIDENT**?  If so, state:
(a)  the name, title, identification number, and employer of the **PERSON** who made the report;
(b)  the date and type of report made;
(c)  the name, **ADDRESS,** and telephone number of the **PERSON** for whom the report was made; and
(d)  the name, **ADDRESS,** and telephone number of each **PERSON** who has the original or a copy of the report.

[ ] 12.7  Have **YOU OR ANYONE ACTING ON YOUR BEHALF** inspected the scene of the **INCIDENT**?  If so, for each inspection state:
(a)  the name, **ADDRESS,** and telephone number of the individual making the inspection (except for expert witnesses covered by Code of Civil Procedure sections 2034.210–2034.310); and
(b)  the date of the inspection.

**13.0  Investigation—Surveillance**

[X] 13.1  Have **YOU OR ANYONE ACTING ON YOUR BEHALF** conducted surveillance of any individual involved in the **INCIDENT** or any party to this action?  If so, for each surveillance state:
(a)  the name, **ADDRESS,** and telephone number of the individual or party;
(b)  the time, date, and place of the surveillance;
(c)  the name, **ADDRESS,** and telephone number of the individual who conducted the surveillance; and
(d)  the name, **ADDRESS,** and telephone number of each **PERSON** who has the original or a copy of any surveillance photograph, film, or videotape.

[X] 13.2  Has a written report been prepared on the surveillance?  If so, for each written report state:
(a)  the title;
(b)  the date;
(c)  the name, **ADDRESS,** and telephone number of the individual who prepared the report; and
(d)  the name, **ADDRESS,** and telephone number of each **PERSON** who has the original or a copy.

**14.0  Statutory or Regulatory Violations**

[X] 14.1  Do **YOU OR ANYONE ACTING ON YOUR BEHALF** contend that any **PERSON** involved in the **INCIDENT** violated any statute, ordinance, or regulation and that the violation was a legal (proximate) cause of the **INCIDENT**?  If so, identify the name, **ADDRESS,** telephone number of each **PERSON** and the statute, ordinance, or regulation that was violated.

[X] 14.2  Was any **PERSON** cited or charged with a violation of any statute, ordinance, or regulation as a result of this **INCIDENT**?  If so, for each **PERSON** state:
(a)  the name, **ADDRESS,** and telephone number of the **PERSON;**
(b)  the statute, ordinance, or regulation allegedly violated;
(c)  whether the **PERSON** entered a plea in response to the citation or charge and, if so, the plea entered; and
(d)  the name and **ADDRESS** of the court or administrative agency, names of the parties, and case number.

**15.0  Denials and Special or Affirmative Defenses**

[X] 15.1  Identify each denial of a material allegation and each special or affirmative defense in your pleadings and for each:
(a)  state all facts upon which you base the denial or special or affirmative defense;
(b)  state the names, **ADDRESSES,** and telephone numbers of all **PERSONS** who have knowledge of those facts; and
(c)  identify all **DOCUMENTS** and other tangible things that support your denial or special or affirmative defense, and state the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT.**

**16.0  Defendant's Contentions—Personal Injury**

[ ] 16.1  Do you contend that any **PERSON,** other than you or plaintiff, contributed to the occurrence of the **INCIDENT** or the injuries or damages claimed by plaintiff?  If so, for each **PERSON:**
(a)  state the name, **ADDRESS,** and telephone number of the **PERSON;**
(b)  state all facts upon which you base your contention;
(c)  state the names, **ADDRESSES,** and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(d)  identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

[ ] 16.2  Do you contend that plaintiff was not injured in the **INCIDENT**?  If so:
(a)  state all facts upon which you base your contention;
(b)  state the names, **ADDRESSES,** and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(c)  identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT** thing.

DISC-001

16.3  Do you contend that the injuries or the extent of the injuries claimed by plaintiff as disclosed in discovery proceedings thus far in this case were not caused by the **INCIDENT**?  If so, for each injury:
(a) identify it;
(b) state all facts upon which you base your contention;
(c) state the names, **ADDRESSES**, and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

16.4  Do you contend that any of the services furnished by any **HEALTH CARE PROVIDER** claimed by plaintiff in discovery proceedings thus far in this case were not due to the **INCIDENT**?  If so:
(a) identify each service;
(b) state all facts upon which you base your contention;
(c) state the names, **ADDRESSES**, and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

16.5  Do you contend that any of the costs of services furnished by any **HEALTH CARE PROVIDER** claimed as damages by plaintiff in discovery proceedings thus far in this case were not necessary or unreasonable?  If so:
(a) identify each cost;
(b) state all facts upon which you base your contention;
(c) state the names, **ADDRESSES**, and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

16.6  Do you contend that any part of the loss of earnings or income claimed by plaintiff in discovery proceedings thus far in this case was unreasonable or was not caused by the **INCIDENT**?  If so:
(a) identify each part of the loss;
(b) state all facts upon which you base your contention;
(c) state the names, **ADDRESSES**, and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

16.7  Do you contend that any of the property damage claimed by plaintiff in discovery Proceedings thus far in this case was not caused by the **INCIDENT**?  If so:
(a) identify each item of property damage;
(b) state all facts upon which you base your contention;
(c) state the names, **ADDRESSES**, and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

16.8  Do you contend that any of the costs of repairing the property damage claimed by plaintiff in discovery proceedings thus far in this case were unreasonable?  If so:
(a) identify each cost item;
(b) state all facts upon which you base your contention;
(c) state the names, **ADDRESSES**, and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

16.9  Do **YOU OR ANYONE ACTING ON YOUR BEHALF** have any **DOCUMENT** (for example, insurance bureau index reports) concerning claims for personal injuries made before or after the **INCIDENT** by a plaintiff in this case?  If so, for each plaintiff state:
(a) the source of each **DOCUMENT**;
(b) the date each claim arose;
(c) the nature of each claim; and
(d) the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT**.

16.10 Do **YOU OR ANYONE ACTING ON YOUR BEHALF** have any **DOCUMENT** concerning the past or present physical, mental, or emotional condition of any plaintiff in this case from a **HEALTH CARE PROVIDER** not previously identified (except for expert witnesses covered by Code of Civil Procedure sections 2034.210–2034.310)?  If so, for each plaintiff state:

(a) the name, **ADDRESS**, and telephone number of each **HEALTH CARE PROVIDER**;
(b) a description of each **DOCUMENT**; and
(c) the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT**.

**17.0  Responses to Request for Admissions**

[X] 17.1  Is your response to each request for admission served with these interrogatories an unqualified admission? If not, for each response that is not an unqualified admission:
(a) state the number of the request;
(b) state all facts upon which you base your response;
(c) state the names, **ADDRESSES**, and telephone numbers of all **PERSONS** who have knowledge of those facts; and
(d) identify all **DOCUMENTS** and other tangible things that support your response and state the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

**18.0**  *[Reserved]*

**19.0**  *[Reserved]*

**20.0  How the Incident Occurred—Motor Vehicle**

20.1  State the date, time, and place of the **INCIDENT** (closest street **ADDRESS** or intersection).

20.2  For each vehicle involved in the **INCIDENT**, state:
(a) the year, make, model, and license number;
(b) the name, ADDRESS, and telephone number of the driver;

(c) the name, **ADDRESS,** and telephone number of each occupant other than the driver;

(d) the name, **ADDRESS,** and telephone number of each registered owner;

(e) the name, **ADDRESS,** and telephone number of each lessee;

(f) the name, **ADDRESS,** and telephone number of each owner other than the registered owner or lien holder; and

(g) the name of each owner who gave permission or consent to the driver to operate the vehicle.

20.3  State the **ADDRESS** and location where your trip began and the **ADDRESS** and location of your destination.

20.4  Describe the route that you followed from the beginning of your trip to the location of the **INCIDENT,** and state the location of each stop, other than routine traffic stops, during the trip leading up to the **INCIDENT.**

20.5  State the name of the street or roadway, the lane of travel, and the direction of travel of each vehicle involved in the **INCIDENT** for the 500 feet of travel before the **INCIDENT.**

20.6  Did the **INCIDENT** occur at an intersection? If so, describe all traffic control devices, signals, or signs at the intersection.

20.7  Was there a traffic signal facing you at the time of the **INCIDENT?** If so, state:
(a) your location when you first saw it;
(b) the color;
(c) the number of seconds it had been that color; and
(d) whether the color changed between the time you first saw it and the **INCIDENT.**

20.8  State how the **INCIDENT** occurred, giving the speed, direction, and location of each vehicle involved:
(a) just before the **INCIDENT;**
(b) at the time of the **INCIDENT;** and
(c) just after the **INCIDENT.**

20.9  Do you have information that a malfunction or defect in a vehicle caused the **INCIDENT?**  If so:
(a) identify the vehicle;
(b) identify each malfunction or defect;
(c) state the name, **ADDRESS,** and telephone number of each **PERSON** who is a witness to or has information about each malfunction or defect; and
(d) state the name, **ADDRESS,** and telephone number of each **PERSON** who has custody of each defective part.

20.10 Do you have information that any malfunction or defect in a vehicle contributed to the injuries sustained in the **INCIDENT?**  If so:
(a) identify the vehicle;
(b) identify each malfunction or defect;
(c) state the name, **ADDRESS,** and telephone number of each **PERSON** who is a witness to or has information about each malfunction or defect; and

(d) state the name, **ADDRESS,** and telephone number of each **PERSON** who has custody of each defective part.

20.11 State the name, **ADDRESS,** and telephone number of each owner and each **PERSON** who has had possession since the **INCIDENT** of each vehicle involved in the **INCIDENT.**

**25.0** *[Reserved]*

**30.0** *[Reserved]*

**40.0** *[Reserved]*

**50.0  Contract**

50.1  For each agreement alleged in the pleadings:
(a) identify each **DOCUMENT** that is part of the agreement and for each state the name, **ADDRESS,** and telephone number of each **PERSON** who has the **DOCUMENT;**
(b) state each part of the agreement not in writing, the name, **ADDRESS,** and telephone number of each **PERSON** agreeing to that provision, and the date that part of the agreement was made;
(c) identify all **DOCUMENTS** that evidence any part of the agreement not in writing and for each state the name, **ADDRESS,** and telephone number of each **PERSON** who has the **DOCUMENT;**
(d) identify all DOCUMENTS that are part of any modification to the agreement, and for each state the name, **ADDRESS,** and telephone number of each **PERSON** who has the **DOCUMENT;**
(e) state each modification not in writing, the date, and the name, **ADDRESS,** and telephone number of each **PERSON** agreeing to the modification, and the date the modification was made;
(f) identify all **DOCUMENTS** that evidence any modification of the agreement not in writing and for each state the name, **ADDRESS,** and telephone number of each **PERSON** who has the **DOCUMENT.**

50.2  Was there a breach of any agreement alleged in the pleadings? If so, for each breach describe and give the date of every act or omission that you claim is the breach of the agreement.

50.3  Was performance of any agreement alleged in the pleadings excused? If so, identify each agreement excused and state why performance was excused.

50.4  Was any agreement alleged in the pleadings terminated by mutual agreement, release, accord and satisfaction, or novation?  If so, identify each agreement terminated, the date of termination, and the basis of the termination.

50.5  Is any agreement alleged in the pleadings unenforce-able?  If so, identify each unenforceable agreement and state why it is unenforceable.

50.6  Is any agreement alleged in the pleadings ambiguous? If so, identify each ambiguous agreement and state why it is ambiguous.

**60.0** *[Reserved]*

## PROOF OF SERVICE

I declare that I am employed in the County of Ventura, California. I am over the age of eighteen years and not a party to the within case; my business address is: 2629 Townsgate Road Suite 140, Westlake Village, CA 91361.

On <u>March 21, 2016,</u> I served the foregoing document described as:

**FORM   INTERROGATORIES   -   GENERAL   TO   DEFENDANT   ANAHIT HARUTYUNYAN, SET ONE**

On the following interested party in this action:

Jilbert Tahmazian                          Richard Avetisyan
Law Offices of Jilbert Tahmazian           Avetisyan Law Group
1518 West Glenoaks Blvd.                    1700 W. Magnolia, Suite 200
Glendale, CA 91201                         Burbank, CA 95106

[X]   **(BY MAIL)   [ ] (BY CERTIFIED MAIL)**
[X]   by placing a true copy thereof in a sealed envelope with postage fully prepaid. I am readily familiar with the business practice of Anaya Law Group for collection and processing of correspondence for mailing with the United States Postal Service, and the correspondence would be deposited with the United States Postal Service that same day in the ordinary course of business.

[] by depositing the seal envelope with the United States Postal Service with postage fully prepaid.

[ ]   **(BY TELEFACSIMILE TRANSMISSION)** at approximately___[ ] AM [ ] PM, from the telefacsimile transmitting machine at the Anaya Law Group, 2629 Townsgate Road Suite 140, Westlake Village, CA 91361 [facsimile number (805) 230-9221], to the attention of the following interested parties in this action, at addressee's facsimile numbers set forth in the attached facsimile cover sheet. This transmission was reported as complete and without error.

[ ]   **(BY PERSONAL SERVICE)** at approximately___[ ] AM [ ] PM, I personally served the above documents on the above mentioned person at the

[ ]   **(BY OVERNIGHT DELIVERY)**
      [ ]      BY FEDERAL EXPRESS DELIVERY

[ X ]   (State) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on <u>March 21, 2016</u> at Westlake Village, California.

[ ]   (Federal) I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made.  I declare under perjury under the laws of the State of California that the foregoing is true and correct.

____Joan Roy____
     name                                        signature

---

JILBERT TAHMAZIAN, [SBN 143574]
ARAM GREGORIAN, [SBN 292012]
TAHMAZIAN LAW FIRM, P.C.
1518 West Glenoaks Boulevard
Glendale, California 91201
Telephone No. (818) 242-8201
Facsimile No. (818) 242-8246

Attorneys for Defendants SHAHEN MARTIROSIAN;
CPI REAL ESTATE GROUP, INC., d.b.a.
REALTY EXECUTIVES PREMIERE ESCROW DIVISION;
ANAHIT HARUTYUNYAN; and VIRGINIA MARTIROSIAN

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES - NORTH VALLEY JUDICIAL DISTRICT

| | |
|---|---|
| VAZGEN KHACHATRYAN,<br><br>            Plaintiff,<br><br>    v.<br><br>SHAHEN MARTIROSIAN; CPI REAL ESTATE GROUP, INC., doing business as REALTY EXECUTIVES PREMIERE ESCROW DIVISION; VIRGINIA MARTIROSIAN; ANAHIT HARUTYUNYAN; 4705 EXCELENTE INC., a California corporation and DOES 1 to 100 inclusive,<br><br>            Defendants. | CASE NO.:  PC056789<br>Dept. : F47<br>Judge: Hon. Melvin D. Sandvig<br><br>Complaint Filed: December 22, 2015<br><br>**DEFENDANT ANAHIT HARUTYUNYAN'S RESPONSES TO PLAINTIFF'S FORM INTERROGATORIES, SET ONE** |

**PROPOUNDING PARTY:**      Plaintiff VAZGEN KHACHATRYAN

**RESPONDING PARTY:**      Defendant ANAHIT HARUTYUNYAN

**SET NO.:**      One

Pursuant to California <u>Code of Civil Procedure</u>, Section 2030.010 et seq., Defendant

ANAHIT HARUTYUNYAN (hereinafter, "HARUTYUNYAN" or this "Responding Party")

hereby responds to Plaintiff VAZGEN KHACHATRYAN'S (hereinafter, "Plaintiff") form

interrogatories as follows:

\\\

1

DEFENDANT ANAHIT HARUTYUNYAN'S RESPONSES TO PLAINTIFF'S FORM
INTERROGATORIES, SET ONE

## Preliminary Statement and General Objections:

1. Investigation and discovery by this Responding Party is continuing in nature.

2. As discovery proceeds, witnesses, facts and evidence may be discovered which are not set forth herein, but which may be responsive to a particular request.

3. Facts and evidence now known may be imperfectly understood, or the relevance or consequences of such facts and evidence may, in good faith, not be included in the following responses.

4. This Responding Party reserves all rights to refer to, conduct discovery with reference to, or offer into evidence at the time of trial any and all such witnesses, facts and evidence, notwithstanding the absence of reference to such witnesses, facts and evidence in these responses.

5. In addition, this Responding Party assumes no obligation to voluntarily supplement or amend these responses to reflect witnesses, facts and evidence discovered following the filing of these responses.

6. Further, these requests are read, in conformity with <u>Code of Civil Procedure</u> Section 2030.010, as not requesting privileged information, including, but not limited to, materials prepared subsequent to the filing of the instant litigation or gathered, prepared or utilized in the defense of this case.

7. In answering these interrogatories, this Responding Party objects to requests seeking the identification and/or production of documents on the grounds that each request has already been asked and answered; each request seeks information that is equally available to the asking party; each request is burdensome and oppressive in that it is over broad that it calls for information that is protected from disclosure under privilege. Subject to and without waiving the foregoing objections, and in the spirit of good faith discovery cooperation, this Responding Party states that, where applicable, if this Responding Party knows or comes into possession of any documents responsive to any request for same, and if any should exist, this Responding Party will identify those relevant and non-privileged documents for the propounding party and all other

**DEFENDANT ANAHIT HARUTYUNYAN'S RESPONSES TO PLAINTIFF'S FORM INTERROGATORIES, SET ONE**

1   parties. This Responding Party also objects to the extent these interrogatories seek disclosure of

2   the Responding Party's counsel's legal analysis regarding laws, statutes, ordinances and/or trial

3   secrets, as well as information that is available to all parties equally, which is violative of the

4   attorney work product privilege. This Responding Party further objects where the interrogatories

5   call for a legal conclusion which is beyond the percipient knowledge of this Responding Party.

6   This Responding Party objects still further on the grounds that the information sought by this

7   interrogatory violates Penal Code § 1016.5 and Evidence Code § 1153. See also County of Los

8   Angeles v. Civil Service Com., 39 Cal.App.4th 620 (1995); Witkin, California Evidence, Vol. 1,

9   §684, 3rd Ed. 1986.

10          8.      Finally, because some of these responses may have been ascertained by the

11   Responding Party's attorneys and investigators, this Responding Party may not have personal

12   knowledge of the information from which these responses are derived.

13                                          **RESPONSES**

14          Subject to and without waiving the foregoing General Objections, HARUTYUNYAN

15   responds to Plaintiff's Form Interrogatories as follows:

16   1.1    Law Offices of Jilbert Tahmazian

17          1518 W. Glenoaks Blvd.

18          Glendale, CA 91201.

19          (818) 242-8201.

20   2.1    (A) Anahit Harutyunyan

21          (B) Not applicable

22          (C) Not applicable

23   2.2    DOB: 1960

24          Place of Birth: Yerevan, Armenia

25   2.5    (A) 1815 N. Normandie Ave. #12 Los Angeles, CA 90027

26          (B) Same Address

27          (C) Not applicable

28

**DEFENDANT ANAHIT HARUTYUNYAN'S RESPONSES TO PLAINTIFF'S FORM
INTERROGATORIES, SET ONE**

1    2.6    (A) Self Employed at:

2    Name: 4705 Excelente Inc.

3    Address: 4705 Excelente Dr. Woodland Hills, CA 91364

4    Telephone: (323) 877-8171

5    (B) Same Employment. Freelance designer.

6    2.7    (A) "125" High School: Yerevan, Armenia, 1977.

7    Ceramic School. 1977-1979

8    Sow and Pattern Design School. 1986-1989

9    (C) Diploma.

10    (D) No United States equivalent.

11    2.8    No.

12    2.9    No. Armenian.

13    2.10    No. Armenian.

14    2.11    (a) through (d): HARUTYUNYAN objects to this Interrogatory on the grounds that it is

15    vague, overly broad, subject to varying interpretations, ambiguous, and unintelligible with

16    respect to the term "INCIDENT," so as to make a response impossible without

17    speculation as to the meaning of the question, and requires the review of an outside

18    document to try to understand its meaning.

19    2.12    (a) through (c): HARUTYUNYAN objects to this Interrogatory on the grounds that it is

20    vague, overly broad, subject to varying interpretations, ambiguous, and unintelligible with

21    respect to the term "INCIDENT," so as to make a response impossible without

22    speculation as to the meaning of the question, and requires the review of an outside

23    document to try to understand its meaning. HARUTYUNYAN further objects this

24    Interrogatory on the grounds that it is neither relevant to the asserted claims and defenses

25    of any party in the litigation, nor likely to lead to the discovery of admissible evidence in

26    connection herewith.

27    4.1    (a) through (g): HARUTYUNYAN objects to this Interrogatory on the grounds that it is

28

**DEFENDANT ANAHIT HARUTYUNYAN'S RESPONSES TO PLAINTIFF'S FORM
INTERROGATORIES, SET ONE**

1   vague, overly broad, subject to varying interpretations, ambiguous, and unintelligible with

2   respect to the term "INCIDENT," so as to make a response impossible without

3   speculation as to the meaning of the question, and requires the review of an outside

4   document to try to understand its meaning.

5   4.2   HARUTYUNYAN objects to this Interrogatory on the grounds that it is vague, overly

6   broad, subject to varying interpretations, ambiguous, and unintelligible with respect to the

7   term "INCIDENT," so as to make a response impossible without speculation as to the

8   meaning of the question, and requires the review of an outside document to try to

9   understand its meaning.

10   12.1   (a) through (d): HARUTYUNYAN objects to this Interrogatory on the grounds that it is

11   vague, overly broad, subject to varying interpretations, ambiguous, and unintelligible with

12   respect to the term "INCIDENT," so as to make a response impossible without

13   speculation as to the meaning of the question, and requires the review of an outside

14   document to try to understand its meaning.

15   12.2   (a) through (c): HARUTYUNYAN objects to this Interrogatory on the grounds that it is

16   vague, overly broad, subject to varying interpretations, ambiguous, and unintelligible with

17   respect to the term "INCIDENT," so as to make a response impossible without

18   speculation as to the meaning of the question, and requires the review of an outside

19   document to try to understand its meaning. HARUTYUNYAN further objects this

20   Interrogatory on the grounds and to the extent it violates attorney-client and attorney work

21   product privileges.

22   12.3   (a) through (d): HARUTYUNYAN objects to this Interrogatory on the grounds that it is

23   vague, overly broad, subject to varying interpretations, ambiguous, and unintelligible with

24   respect to the term "INCIDENT," so as to make a response impossible without

25   speculation as to the meaning of the question, and requires the review of an outside

26   document to try to understand its meaning. HARUTYUNYAN further objects this

27   Interrogatory on the grounds and to the extent it violates attorney-client and attorney work

28

**DEFENDANT ANAHIT HARUTYUNYAN'S RESPONSES TO PLAINTIFF'S FORM
INTERROGATORIES, SET ONE**

1    product privileges.

2    12.4    (a) through (e): HARUTYUNYAN objects to this Interrogatory on the grounds that it is

3    vague, overly broad, subject to varying interpretations, ambiguous, and unintelligible with

4    respect to the term "INCIDENT," so as to make a response impossible without

5    speculation as to the meaning of the question, and requires the review of an outside

6    document to try to understand its meaning.

7    12.5    (a) through (c): HARUTYUNYAN objects to this Interrogatory on the grounds that it is

8    vague, overly broad, subject to varying interpretations, ambiguous, and unintelligible with

9    respect to the term "INCIDENT," so as to make a response impossible without

10    speculation as to the meaning of the question, and requires the review of an outside

11    document to try to understand its meaning.

12    12.6    (a) through (d): HARUTYUNYAN objects to this Interrogatory on the grounds that it is

13    vague, overly broad, subject to varying interpretations, ambiguous, and unintelligible with

14    respect to the term "INCIDENT," so as to make a response impossible without

15    speculation as to the meaning of the question, and requires the review of an outside

16    document to try to understand its meaning. HARUTYUNYAN further objects this

17    Interrogatory on the grounds and to the extent it violates attorney-client and attorney work

18    product privileges.

19    13.1    (a) through (d): HARUTYUNYAN objects to this Interrogatory on the grounds that it is

20    vague, overly broad, subject to varying interpretations, ambiguous, and unintelligible with

21    respect to the term "INCIDENT," so as to make a response impossible without

22    speculation as to the meaning of the question, and requires the review of an outside

23    document to try to understand its meaning.

24    13.2    (a) through (d): HARUTYUNYAN objects to this Interrogatory on the grounds that it is

25    vague, overly broad, subject to varying interpretations, ambiguous, and unintelligible with

26    respect to the term "INCIDENT," so as to make a response impossible without

27    speculation as to the meaning of the question, and requires the review of an outside

28

**DEFENDANT ANAHIT HARUTYUNYAN'S RESPONSES TO PLAINTIFF'S FORM
INTERROGATORIES, SET ONE**

1    document to try to understand its meaning.

2    14.1   HARUTYUNYAN objects to this Interrogatory on the grounds that it is vague, overly

3    broad, subject to varying interpretations, ambiguous, and unintelligible with respect to the

4    term "INCIDENT," so as to make a response impossible without speculation as to the

5    meaning of the question, and requires the review of an outside document to try to

6    understand its meaning.

7    14.2   HARUTYUNYAN objects to this Interrogatory on the grounds that it is vague, overly

8    broad, subject to varying interpretations, ambiguous, and unintelligible with respect to the

9    term "INCIDENT," so as to make a response impossible without speculation as to the

10    meaning of the question, and requires the review of an outside document to try to

11    understand its meaning.

12    15.1    -    (A) General Denial. Pursuant to California Code of Civil Procedure, Defendant

13    generally and specifically denies each and every allegation contained in the

14    Complaint, and each and every part thereof, and each and every cause of action

15    therein. Defendant further denies any and all wrongful conduct, whether or not

16    alleged in Plaintiff's Complaint. Defendant also denies that Plaintiff has suffered

17    or incurred or will incur or will suffer any injury, loss or damages by reason of any

18    act or omission by Defendant or its agents, servants and/or employees, and further

19    denies Plaintiff is entitled to any relief whatsoever.

20    (B) Tahmazian Law Firm, P.C., 1518 W. Glenoaks Blvd., Glendale, CA 91201.

21    (C) Plaintiff's Complaint, which is available to Plaintiff or is in his possession.

22    -    (A) First Affirmative defense. Plaintiff's failure to state a claim against

23    Defendant upon which relief may be granted.

24    (B) Tahmazian Law Firm, P.C., 1518 W. Glenoaks Blvd., Glendale, CA 91201

25    (C) Plaintiff's Complaint, which is available to Plaintiff or is in his possession.

26    -    (A) Second Affirmative defense. Plaintiff fails to state facts sufficient to constitute

27    a valid cause of action.

28

7

**DEFENDANT ANAHIT HARUTYUNYAN'S RESPONSES TO PLAINTIFF'S FORM
INTERROGATORIES, SET ONE**

(B)  Tahmazian Law Firm, P.C., 1518 W. Glenoaks Blvd., Glendale, CA 91201

(C)  Plaintiff's Complaint, which is available to Plaintiff or is in his possession.

- (A) Third Affirmative defense.

(B) Shahen Matirosian,  Tahmazian Law Firm, P.C., 1518 W. Glenoaks Blvd., Glendale, CA 91201.

(C) Plaintiff's Complaint, which is available to Plaintiff or is in his possession.

- (A) Fourth Affirmative defense.

(B) Shahen Matirosian,  Tahmazian Law Firm, P.C., 1518 W. Glenoaks Blvd., Glendale, CA 91201.

(C) Plaintiff's Complaint, which is available to Plaintiff or is in his possession.

- (A) through (C) Fifth Affirmative defense. HARUTYUNYAN is unaware of any facts that support the assertion of this defense at this time. Discovery and investigation into the facts of this matter is continuing.

- (A) through (C) Sixth Affirmative defense. HARUTYUNYAN is unaware of any facts that support the assertion of this defense at this time. Discovery and investigation into the facts of this matter is continuing.

- (A) through (C) Seventh Affirmative defense. HARUTYUNYAN is unaware of any facts that support the assertion of this defense at this time. Discovery and investigation into the facts of this matter is continuing.

- (A) through (C) Eight Affirmative defense. HARUTYUNYAN is unaware of any facts that support the assertion of this defense at this time. Discovery and investigation into the facts of this matter is continuing.

- (A) through (C) Ninth Affirmative defense. HARUTYUNYAN is unaware of any facts that support the assertion of this defense at this time. Discovery and investigation into the facts of this matter is continuing.

- (A) through (C) Tenth Affirmative defense. HARUTYUNYAN is unaware of any facts that support the assertion of this defense at this time. Discovery and

**DEFENDANT ANAHIT HARUTYUNYAN'S RESPONSES TO PLAINTIFF'S FORM INTERROGATORIES, SET ONE**

investigation into the facts of this matter is continuing.

- (A) through (C) Eleventh Affirmative defense. HARUTYUNYAN is unaware of any facts that support the assertion of this defense at this time. Discovery and investigation into the facts of this matter is continuing.

- (A) through (C) Twelfth Affirmative defense. HARUTYUNYAN is unaware of any facts that support the assertion of this defense at this time. Discovery and investigation into the facts of this matter is continuing.

- (A) through (C) Thirteenth Affirmative defense. HARUTYUNYAN is unaware of any facts that support the assertion of this defense at this time. Discovery and investigation into the facts of this matter is continuing.

- (A) through (C) Fourteenth Affirmative defense. HARUTYUNYAN is unaware of any facts that support the assertion of this defense at this time. Discovery and investigation into the facts of this matter is continuing.

- (A) through (C) Fifteenth Affirmative defense. HARUTYUNYAN is unaware of any facts that support the assertion of this defense at this time. Discovery and investigation into the facts of this matter is continuing.

- (A) through (C) Sixteenth Affirmative defense. HARUTYUNYAN is unaware of any facts that support the assertion of this defense at this time. Discovery and investigation into the facts of this matter is continuing.

- (A) through (C) Seventeenth Affirmative defense. HARUTYUNYAN is unaware of any facts that support the assertion of this defense at this time. Discovery and investigation into the facts of this matter is continuing.

- (A) through (C) Eighteenth Affirmative defense. HARUTYUNYAN is unaware of any facts that support the assertion of this defense at this time. Discovery and investigation into the facts of this matter is continuing.

- (A) through (C) Nineteenth Affirmative defense. HARUTYUNYAN is unaware of any facts that support the assertion of this defense at this time. Discovery and

**DEFENDANT ANAHIT HARUTYUNYAN'S RESPONSES TO PLAINTIFF'S FORM INTERROGATORIES, SET ONE**

investigation into the facts of this matter is continuing.

-    (A) through (C) Twentieth Affirmative defense. HARUTYUNYAN is unaware of any facts that support the assertion of this defense at this time. Discovery and investigation into the facts of this matter is continuing.

-    (A) through (C) Twenty-first Affirmative defense. HARUTYUNYAN is unaware of any facts that support the assertion of this defense at this time. Discovery and investigation into the facts of this matter is continuing.

17.1    (A) 1, 2 , 3, 4, 5, 6, 8, 9, 10, 12,14, 16, 17, 18, 19, 20, 21, 22, 24

(B)

1.    Assuming it is actually supposed to be "4705 Excelente Dr, Los Angeles, CA 91364," HARUTYUNYAN does not reside there.

2.    Assuming it is actually supposed to be "4705 Excelente Dr, Los Angeles, CA 91364," HARUTYUNYAN does not reside there.

3.    Assuming it is actually supposed to be "4705 Excelente Dr, Los Angeles, CA 91364," HARUTYUNYAN does not reside there.

4.    HARUTYUNYAN and Shahen Matriosian are not related and have no familial relation.

5.    No such motives existed.

6.    It was a valid and legal transfer.

8.    Only HARUTYUNYAN has made such payments.

9.    Only HARUTYUNYAN has made such payments.

10.    Only HARUTYUNYAN has made such payments. (Incorrectly labeled as "No. 9")

12.    There is an agreement between HARUTYUNYAN and Virginia Matirosyan. (Incorrectly labeled as "No. 11")

14.    HARUTYUNYAN appears on the mortgage payments. (Incorrectly labeled as

**DEFENDANT ANAHIT HARUTYUNYAN'S RESPONSES TO PLAINTIFF'S FORM
INTERROGATORIES, SET ONE**

"No. 13")

16.    HARUTYUNYAN has now made insurance payments. (Incorrectly labeled as "No. 15")

17.    It was purchased through an escrow account. (Incorrectly labeled as "No. 16")

18.    There are no such communications.   (Incorrectly labeled as "No. 17")

19.    There are no such communications.   (Incorrectly labeled as "No. 18")

20.    There are no such communications.(Incorrectly labeled as "No. 19")

21.    There is an agreement. (Incorrectly labeled as "No. 20")

22.    HARUTYUNYAN cannot admit or deny because has no personal knowledge.(Incorrectly labeled as "No. 21")

24.    A loan was obtained. (Incorrectly labeled as "No. 23")

(C)

1.    Defendants in this case; Christina Martirossian, 21500 Burbank Blvd, #110, Woodland Hills, CA 91634, 818-245-0476; Melissa Martirossian, San Diego, CA, 619-317-3736; Massoud Eskandari, Mission Viejo, CA, 949-677-7557.

2.    Defendants in this case; Christina Martirossian, 21500 Burbank Blvd, #110, Woodland Hills, CA 91634, 818-245-0476; Melissa Martirossian, San Diego, CA, 619-317-3736; Massoud Eskandari, Mission Viejo, CA, 949-677-7557.

3.    Defendants in this case; Christina Martirossian, 21500 Burbank Blvd, #110, Woodland Hills, CA 91634, 818-245-0476; Melissa Martirossian, San Diego, CA, 619-317-3736; Massoud Eskandari, Mission Viejo, CA, 949-677-7557.

4.    Defendants in this case; Christina Martirossian, 21500 Burbank Blvd, #110, Woodland Hills, CA 91634, 818-245-0476; Melissa Martirossian, San Diego, CA, 619-317-3736; Massoud Eskandari, Mission Viejo, CA, 949-677-7557.

5.    Defendants in this case.

6.    Defendants in this case.

8.    Defendants in this case.

**DEFENDANT ANAHIT HARUTYUNYAN'S RESPONSES TO PLAINTIFF'S FORM
INTERROGATORIES, SET ONE**

9. Defendants in this case.

10. Defendants in this case.

12. Defendants in this case.

14. Defendants in this case.

16. Defendants in this case, City National Finance

17. Defendants in this case; Escrow Company

18. Defendants in this case.

19. Defendants in this case.

20. Defendants in this case.

21. Defendants in this case.

22. HARUTYUNYAN.

24. HARUTYUNYAN, Virginia Martirosyan.

(D)

1. Utility bills, HARUTYUNYAN

2. Utility bills, HARUTYUNYAN

3. Utility bills, HARUTYUNYAN

4. Not applicable

5. Not applicable

6. Escrow Paperwork, HARUTYUNYAN

8. Mortgage Payment Checks, HARUTYUNYAN

9. Mortgage Payment Checks, HARUTYUNYAN

10. Mortgage Payment Checks, HARUTYUNYAN

12. Purchase Agreement, HARUTYUNYAN

14. Mortgage Statements, HARUTYUNYAN

16. Insurance Payment, HARUTYUNYAN

17. Escrow Paperwork, HARUTYUNYAN

18. Escrow Paperwork, HARUTYUNYAN

**DEFENDANT ANAHIT HARUTYUNYAN'S RESPONSES TO PLAINTIFF'S FORM
INTERROGATORIES, SET ONE**

19. Not applicable

20. Not applicable

21. Not applicable

22. No personal knowledge.

24. Loan Paperwork

DATED: April ⅔?, 2016          TAHMAZIAN LAW FIRM, P.C.

BY: _____
JILBERT TAHMAZIAN, ESQ.
Attorney for Defendants SHAHEN
MARTIROSIAN and CPI REAL ESTATE
GROUP, INC., d.b.a. REALTY EXECUTIVES
PREMIERE ESCROW DIVISION;
ANAHIT HARUTYUNYAN; and VIRGINIA
MARTIROSIAN

**DEFENDANT ANAHIT HARUTYUNYAN'S RESPONSES TO PLAINTIFF'S FORM
INTERROGATORIES, SET ONE**

## VERIFICATION

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I have read the foregoing _____ *Responses to Form Interrogatories* _____
_____ and know its contents.

☐ **CHECK APPLICABLE PARAGRAPHS**

[X]   I am a party to this action. The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

☐   I am ☐ an Officer ☐ a partner _____ ☐ a _____ of _____ a party to this action, and am authorized to make this verification for and on its behalf, and I make this verification for that reason. [X] I am informed and believe and on that ground allege that the matters stated in the foregoing document are true. ☐ The matters stated in the foregoing document are true of my own knowledge, except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

☐   I am one of the attorneys for _____ a party to this action. Such party is absent from the county of aforesaid where such attorneys have their offices, and I make this verification for and on behalf of that party for that reason. I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

Executed on _____ 4.29.15 _____, at _____ Glendale _____, California.
I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

ANAHIT HARUTYUNYAN
_____          _____
     Type or Print Name                    Signature

## PROOF OF SERVICE
1013a (3) CCP Revised 5/1/88

STATE OF CALIFORNIA, COUNTY OF

I am employed in the county of _____, State of California.
I am over the age of 18 and not a party to the within action; my business address is: _____

On, _____ I served the foregoing document described as _____

_____ on _____ in this action

☐ by placing the true copies thereof enclosed in sealed envelopes addressed as stated on the attached mailing list:
☐ by placing ☐ the original ☐ a true copy thereof enclosed in sealed envelopes addressed as follows:

☐ **BY MAIL**
    ☐ *I deposited such envelope in the mail at _____, California.
    The envelope was mailed with postage thereon fully prepaid.
    ☐ As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at _____ California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.
    Executed on _____, at _____, California.
☐   **(BY PERSONAL SERVICE)** I delivered such envelope by hand to the offices of the addressee.
    Executed on _____, at _____, California.
☐ (State)   I declare under penalty of perjury under the laws of the State of California that the above is true and correct.
☐ (Federal)   I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

_____          _____
     Type or Print Name                    Signature

*(BY MAIL SIGNATURE MUST BE OF PERSON DEPOSITING ENVELOPE IN MAIL SLOT, BOX, OR BAG)
**(FOR PERSONAL SERVICE SIGNATURE MUST BE THAT OF MESSENGER)



Legal
Solutions
& Plus          Rev. 7/99

1

## PROOF OF SERVICE
### C.C.P. § 1013(a)

2

STATE OF CALIFORNIA            )
3                                        )     ss
COUNTY OF LOS ANGELES     )

4

5       I am employed in the county of Los Angeles, State of California in the offices of a
member of the State Bar of California at whose direction this service was made. I am over the
6   age of 18 and not a party to the within action. My business address is 1518 West Glenoaks Blvd.,
Glendale, California 91201.

7       On the date set forth below, I served the foregoing document described as **DEFENDANT
ANAHIT HARUTYUNYAN'S RESPONSES TO PLAINTIFF'S FORM
8   INTERROGATORIES, SET ONE** on the interested parties in this action by placing true copies
thereof enclosed in sealed envelope with postage thereon fully prepaid and addressed as set forth
9   in the attached master mailing list and/or as follows:

10   ALANA B. ANAYA
JONATHAN MALEK
11   ANAYA LAW GROUP
2629 Townsgate Road, Suite 140
12   West Lake, California 91361
Tel: (805) 230-9222
13   Fax: (805) 230-9221

14       __X__  **BY MAIL.** I am "readily familiar" with the firm's practice of collecting and
processing correspondence for mailing. Under that practice, the mail would be deposited
15   with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los
Angeles, California in the ordinary course of business. I am aware that upon motion of
16   the party served, service is presumed invalid if the postal cancellation date or postal meter
date is more than one day after the date of deposit for mailing an affidavit.

17

18       ___  **BY PERSONAL SERVICE.** By personally delivering such envelope by hand to the
offices of the addressee noted on the attached master mailing list and/or as listed above.

19       ___  **BY FACSIMILE.** By transmitting a copy of above listed document by a "FAX"
20   machine to the FAX number noted on the attached master mailing list and/or as listed
above.

21       I declare under penalty of perjury and the laws of the State of California that the
foregoing is true and correct. Executed on ~~April~~ 02, 2016, in the City of Glendale, State of
22   California.                                    MAY

23

24       _Alenoosh Asatourian_
Declarant: Alenoosh Asatourian

25

26

27

28

---

**14**
**DEFENDANT ANAHIT HARUTYUNYAN'S RESPONSES TO PLAINTIFF'S FORM
INTERROGATORIES, SET ONE**

# Exhibit "B"

1          UNITED STATES BANKRUPTCY COURT

2          CENTRAL DISTRICT OF CALIFORNIA,

3          SAN FERNANDO VALLEY DIVISION

4                    - - -

5    In re:                          )
                                     )
6    Shahen Martirosian             )
     _____)
7                                    )
     Norair Savadian, an individual, )
8                                    )
                    Savadian,        )
9                                    )   CASE NO. 1:15-bk-11139
            vs.                      )            -MB
10                                   )
     Shahen Martirosian aka Shahen   )
11   Martirosyan aka Shawn Martirosian )
     aka Shawn Martirosyan, an       )
12   individual; Commercial Property )
     Investment, Inc. aka/dba CPI Real )
13   Estate Group, Inc., First Class )
     Team Mortgage aka/dba Realty     )
14   Executives North Hollywood aka/dba )
     Realty Executives Premiere;      )
15   Virginia Martirosian; and DOES 1 )
     through 10, inclusive,           )
16                                    )
                    Defendants.       )
17   _____)

18               DEPOSITION

19          ANAHIT HARUTYUNYAN

20          GLENDALE, CALIFORNIA

21          NOVEMBER 9, 2016

22   ATKINSON-BAKER, INC.
     COURT REPORTERS
23   (800) 288-3376
     www.depo.com
24   REPORTED BY:  CYNTHIA DOMINIQUE, CSR No. 13252

25   FILE NO.:  AA0AB2B

1

Atkinson-Baker Court Reporters
www.depo.com

1           UNITED STATES BANKRUPTCY COURT

2           CENTRAL DISTRICT OF CALIFORNIA,

3              SAN FERNANDO VALLEY DIVISION

4                     - - -

5   In re:                        )
                                  )
6   Shahen Martirosian            )
    ──────────────────────────────)
7                                 )
    Norair Savadian, an individual, )
8                                 )
                Savadian ,        )
9                                 )   CASE NO.  1:15-BK-11139
            vs.                   )              -MB
10                                )
    Shahen Martirosian aka Shahen )
11  Martirosyan aka Shawn Martirosian )
    aka Shawn Martirosyan, an     )
12  individual; Commercial Property )
    Investment, Inc. aka/dba CPI Real )
13  Estate Group, Inc., First Class )
    Team Mortgage aka/dba Realty  )
14  Executives North Hollywood aka/dba )
    Realty Executives Premiere;   )
15  Virginia Martirosian; and DOES 1 )
    through 10, inclusive,        )
16                                )
                Defendants.       )
17  ──────────────────────────────)

18

19

20      DEPOSITION OF ANAHIT HARUTYUNYAN, taken on behalf of

21  the Plaintiff, at 500 North Brand Boulevard, Third Floor,

22  Glendale, California, commencing at 1:36 p.m., Wednesday,

23  November 9, 2016, before CYNTHIA DOMINIQUE, CSR No. 13252,

24  pursuant to Notice.

25

2

Atkinson-Baker Court Reporters
www.depo.com

```
 1                    MAGDELINA AVETISYAN,

 2          was sworn to interpret from English

 3          into Armenian and from Armenian into

 4          English to the best of her ability.

 5

 6                    ANAHIT HARUTYUNYAN,

 7          having first been duly sworn, was

 8          examined and testified through the

 9          interpreter as follows:

10

11          THE INTERPRETER:   My name is

12  Magdelina Avetisyan.   My number is 301269.   I'm a

13  state-certified court interpreter.

14

15                    EXAMINATION

16  BY MS. AGEMIAN:

17      Q     Please state your name.

18      A     Anahit Harutyunyan.

19      Q     And it's spelled A-n-a-h-i-t?

20      A     Yes.

21      Q     And the last name is H-a-r-u-t-y-u-n-y-a-n?

22      A     H-a-r-u-t-y-u-n-y-a-n, yes.

23      Q     All right.   We have a -- we have an interpreter

24  for you.   The best way to have this go forward without to

25  many interruptions is if you pay no attention to me,
```

6

Atkinson-Baker Court Reporters
www.depo.com

1   on the inside?

2        A    No.  We were looking at it from the outside.

3        Q    So this was a week after the initial meeting.

4   When did you fill out any application for a loan?

5        A    It was, like, in May, we were filling out the

6   application.

7        Q    At the time, what was your employment?

8        A    At the time -- I'm a designer.

9        Q    Of what?

10        A    I'm sewing clothing for actors and dancers.

11        Q    Had you ever met Virginia Martirossian before you

12   met the broker?

13        A    No.

14        Q    Ever met Shahen Martirosian before you met the

15   broker?

16        A    No.

17        Q    Now, you said the broker came to your house and

18   met with you, but the "you" was plural.  Who else was there

19   at the meeting?

20        A    No.  It's just what I said.

21        Q    You had said -- 'cause I can understand Armenian,

22   that's why we're also having a problem.  You had said he met

23   with us.

24        A    I didn't say with us.

25        Q    Okay.  Okay.  All right.  So you lived alone in

14

Anahit Harutyunyan
November 9, 2016

Atkinson-Baker Court Reporters
www.depo.com

1     Q     Which branch?

2     A     Hollywood and Vermont.

3     Q     And the account would be in your personal name or

4  someone else?

5     A     My name.

6     Q     If, at some point, Mr. Tahmazian --

7           MR. TAHMAZIAN:  Send you a copy of those?

8           MS. AGEMIAN:  If you would.  Thank you.  I

9  don't know.  I just like to collect paper.

10  BY MS. AGEMIAN:

11     Q     Prior to the purchase of the Excelente property,

12  had you purchased any other properties?

13     A     No.

14     Q     Prior to the purchase of the Excelente property,

15  had you been involved in attempting to purchase any other

16  properties?

17     A     No.

18     Q     I have no further questions of Miss Harutyunyan.

19           I wish you were the last court reporter.  I could

20  have said same stipulation.  'Cause I remember I had

21  difficulty.

22           I offer the following stipulation that the court

23  reporter be relieved of her duties for possession of the

24  deposition transcript, that the original deposition

25  transcript be sent to Mr. Tahmazian's office, that the

27

Anahit Harutyunyan
November 9, 2016

# Exhibit "C"



| 4705 Excelente Drive, CA | 🔍 |
|---|---|

All    Maps    Images    Shopping    News    More        Settings    Tools

About 2,760,000 results (0.51 seconds)



4705 Excelente Dr, Woodland Hills, CA 91364       Get directions

### 4705 Excelente Dr, Woodland Hills, CA 91364 | MLS# 314033389 ...
https://www.redfin.com › California › Los Angeles › Woodland Hills ▾
5 bed, 4 bath, 4780 sq. ft. house located at **4705 Excelente Dr**, Woodland Hills, **CA** 91364 sold for
$600000 on Jul 24, 2015. MLS# 314033389. Entertainer's ...

### 4705 Excelente Dr, Woodland Hills, CA 91364 | Zillow
www.zillow.com › California › Los Angeles › 91364 › Woodland Hills ▾
View 23 photos of this 5 bed, 5.0 bath, 4780 sqft Single Family that sold on 7/24/15 for $600000.
Luxurious estate, situated over a 31000 sq. ft lot i...
You visited this page on 1/13/17.

### 4705 Excelente Dr, Woodland Hills, CA 91364 - realtor.com®
www.realtor.com › California › Los Angeles County › Woodland Hills › Excelente Dr ▾
$672,155.00
Nov 23, 2016 - Visit property details for **4705 Excelente Dr**, Woodland Hills, **CA** 91364 a single family
home is 4780 square foot home with 5 beds & 5 baths.

### 4705 Excelente Drive, Woodland Hills, CA 91364 - MLS 314033389 ...
https://www.coldwellbankerhomes.com › ... › Woodland Hills Home Sales ▾
$600,000.00
Nov 14, 2014 - Sold - **4705 Excelente Drive**, Woodland Hills, **CA** - $600,000. View details, map and
photos of this single family property with 5 bedrooms and 4 ...

### 4705 Excelente Dr, Woodland Hills, CA 91364 | Trulia
https://www.trulia.com/.../3169000329-**4705-Excelente-Dr**-Woodland-Hills-**CA**-9136... ▾
**4705 Excelente Dr** Woodland Hills, **CA** 91364 (Woodland Hills). See your commute times. Single-
Family Home; 5 Bedrooms; 4 full Bathrooms; 4,780 sqft ...

### 4705 Excelente Drive, Woodland Hills, CA, 91364 - Estately
www.estately.com › California › Los Angeles › South Valley ▾
**4705 Excelente Drive** Woodland Hills, **CA** 91364 — Los Angeles County. Report a problem. Delisted
house. This property was delisted 2 months ago and is no ...

### 4705 Excelente Drive, Woodland Hills, CA 91364 | Dilbeck Real Estate
dilbeck.com/listings/**CA**/Woodland-Hills/91364/16116125/**4705-Excelente-Drive**/
May 18, 2016 - Property Description. Luxurious estate, situated over a 31,000 sq. ft lot in "The Heights"
located South of the Blvd. Grand entrance marble foyer ...

### 4705 Excelente Drive, Woodland Hills, CA 91364 - Open Listings
https://www.openlistings.com › Los Angeles County › Los Angeles › Woodland Hills ▾
Get a 50% commission refund buying this 5 bed, 4.5 bath, 4780 sq ft home at **4705 Excelente Drive**,
Woodland Hills, **CA** 91364.

4705 Excelente Dr Woodland Hills, CA 91364 - HotPads
https://hotpads.com › CA › Los Angeles › Glenview ▾
Home for Sale at **4705 Excelente Drive**: 5 beds, $1.9m. Map it and view 23 photos and details on HotPads.

4705 Excelente Drive, Woodland Hills, CA 91364 | Homesnap
www.homesnap.com/**CA**/Woodland-Hills/**4705**-**Excelente**-**Drive** ▾
**4705 Excelente Drive** is worth about $1772500 and is located in Woodland Hills, **CA**. This home has 5 bedrooms, 4 bathrooms, and approximately 4780 sqft of ...

**1**  2  3  4  5  6  7  8  9  10        Next

---

Thousand Oaks, CA - From your phone (Location History) - Use precise location - Learn more

Help        Send feedback        Privacy        Terms

# Exhibit "D"



**GET MORE INFO**    ♡ **SAVE**    ⊘ **HIDE**    **GET UPDATES**    **SHARE**    **MORE** ▾

City, State, or Zip 🔍

**Public View**     Owner View        California · Los Angeles · 91364 · Woodland Hills · 4705 Excelente Drive





# 4705 Excelente Dr, Woodland Hills, CA 91364

**5 beds · 5 baths · 4,780 sqft**

**SOLD:**

**$600,000**

Sold on 07/24/15

Zestimate®:

**$1,958,191**

Ask an agent



## Waiting

Ask an agent about market conditions in your neighborhood.

| Your name |
| Phone |
| Email |
| I own this home and would like to ask an agent about selling 4705 |

**Contact Agent**

Or call 818-918-3228 for more info

---

### Thinking About Selling?

Find a local agent who can give you a professional estimate of your home value.

Find an Agent

Luxurious estate, situated over a 31,000 sq. ft lot in "The Heights" located South of the Blvd. Grand entrance marble foyer leading to a formal living, dining room. Kitchen w/ custom Italian cabinets, w/ center island, granite countertops. Walk in pantry. Laundry Room. Downstairs BD w/ attached bathroom. Large Master BD upstairs, with jacuzzi tub, walk-in closets, fireplace, private balcony with mountain-top views. BBQ, pool/spa, tennis court.



# Virgin America Fare Sale

## Grab Some of Our Best Deals on Nonstop Flights by Jan 23rd.



virginamerica.com    >

Report this ad

### Similar Homes for Sale



**FOR SALE**

**$1,600,000**

4 beds, 4.5 baths, 3212 s...

22621 Macfarlane Dr, W...

See listings near 4705 Excelente Dr

## FACTS

- Baths: 4 full, 1 half
- Lot: 0.71 acres
- Single Family
- Built in 1989
- All time views: 12,216
- 92 shoppers saved this home
- HOA Fee:
- Heating: Forced air
- Last sold: Jul 2015 for $600,000
- Last sale price/sqft:

Report this ad

**NEARBY CITIES**

Glendale Real Estate

Inglewood Real Estate

Lancaster Real Estate

Long Beach Real Estate

Los Angeles Real Estate

More

**NEARBY NEIGHBORHOODS**

Cahuenga Pass Real Estate

Civic Center-Little Tokyo Real Estate

Fashion District Real Estate

Hollywood Real Estate

Koreatown Real Estate

More

**NEARBY ZIP CODES**

90004 Real Estate

90011 Real Estate

90019 Real Estate

90025 Real Estate

90026 Real Estate

More

**OTHER WOODLAND HILLS TOPICS**

Apartments for Rent in 91364

Houses for Sale in 91364

Houses for Rent in 91364

91364 Real Estate

Los Angeles Condos

More

4705 Excelente Dr, Woodland Hills, CA, 91364 is a single family home of 4,780 sqft on a lot of 30,927 sqft (or 0.71 acres). Zillow's Zestimate® for 4705 Excelente Dr is $1,958,191 and the Rent Zestimate® is $7,750/mo. This single family home has 5 bedrooms, 5 baths, and was built in 1989. The 4 bed single family home at 22621 Macfarlane Dr in Woodland Hills is comparable and priced for sale at $1,600,000. This home is located in Woodland Hills, Woodland Hills in zip code 91364. Cahuenga Pass and Civic Center-Little Tokyo are nearby neighborhoods. Nearby ZIP codes include 90025 and 90066. Monte Nido, Kagel Canyon, and Santa Clarita are nearby cities.

ABOUT    ZESTIMATES    RESEARCH    JOBS    HELP    ADVERTISE    TERMS OF USE & PRIVACY    AD CHOICE

COOKIE PREFERENCES    BLOG    MOBILE APPS

 © 2006-2017 Zillow    Follow us     

# REDFIN

**4705 Excelente Dr**
Woodland Hills, CA 91364
Status: Closed Sale

| $1,794,079 Redfin Estimate | $600,000 Sold Jul 24, 2015 | 5 Beds | 4 Baths | 4,780 Sq. Ft. $375 / Sq. Ft. |
|---|---|---|---|---|

Built: 1989



SOLD 07/24/15



Street View

**Arto Poladian**
REDFIN  Real Estate Agent

★★★★★
163 client reviews

Talk to Arto About Selling

‹   1 of 4 Redfin Agents in this area   ›

📞 (818) 272-8166
Questions? Call Arto's Team

**Track This Home's Estimate**

✉ I'm the Owner

Track this home's value in our Home Report email and on your Owner Dashboard.

Entertainer's delight! This 5 bed 4 bath home offers a separate dining, living and family room.

| Property Type | Single Family Residence | View | Mountain |
|---|---|---|---|
| Community | WHLL - Woodland Hills | County | Los Angeles |
| MLS# | 314033389 | | |

Listing provided courtesy of
Artur Ambarachyan, National Properties
BRE #01351863

Source
i-Tech MLS

Buyer's Agent
Vic Arutyunyan, Citilink Realty Group
BRE #01506788

Redfin last checked: 3 minutes ago | Last updated: 10 months ago

Redfin has the best data. Why?



Map Nearby Homes For Sale          Expand Map    Street View    Directions

# Redfin Estimate for 4705 Excelente Dr

## $1,794,079

+$1.2M since sold in 2015

Estimate based on 5 beds, 4 baths, 4,780 sq. ft.

Edit Facts

**Track this Estimate**     Track this home's value in our free Home Report email.

Comparable Homes

| | A  SOLD 11/18/16 | | | | B  SOLD 12/21/16 | | | |
|---|---|---|---|---|---|---|---|---|
| | **$1,170,000** | 5 Beds | 4.5 Baths | 3,258 Sq. Ft. | **$1,137,000** | 4 Beds | 3 Baths | 3,706 Sq. Ft. |
| | 22541 Uhea Rd Woodland Hills, CA 91364 | | | | 22760 Avenue San Luis Woodland Hills, CA 91364 | | | |



Estimate based on these comparable homes. Does something look off? Send Feedback

# Home Sale Proceeds

| Redfin Agent | vs | Traditional Agent |
|---|---|---|
| **$1.24M** | Total Proceeds | **$1.22M** |
| $27K (1.5%) | Seller Agent Commission | $45K (2.5%) |

| Home Sale Price | Outstanding Mortgage |
|---|---|
| $1,794,079 | $468,000 |

Redfin vs Traditional Agent Services ⌄

Additional Taxes & Fees ⌄

## Contact a Redfin Agent who can:

✓ Save you money on commissions with a 1.5% listing fee

✓ Sell your home for $4,300 more on average

First Name

Last Name

Email

Phone

(xxx) xxx-xxxx

**Contact Listing Agent**

By signing up you agree to the Terms of Service and Privacy Policy.

# Property Details for 4705 Excelente Drive

| Interior Features |
|---|

**Bathroom Information**
- # of Baths (Full): 4

**Fireplace Information**
- Gas, Family Room, Living Room
- Has Fireplace

**Flooring Information**
- Wall-To-Wall Carpet, Hardwood

**Interior Features**
- Levels: Two

| Parking / Garage, Exterior Features, Taxes / Assessments, Location Details |
|---|

**Parking / Garage Information**
- # of Garage Spaces: 3
- # of Parking Spaces: 3

**Exterior Features**
- Pool Features: In Ground
- Has Pool

**Assesments Information**
- Assessments: Unknown
- Has Assessments

**Location Information**
- Subdivision Name: NAWHLL
- Zoning: LARE40

| Property / Lot Details |
|---|

**Lot Information**
- Lot Size Source: Assessor's Data

**Property Information**
- Common Walls: No Common Walls
- Living Area Source: Assessor's Data
- Parcel Number: 2076009031
- Total # of Stories: 0
- Has View

Details provided by i-Tech MLS and may not match the public record. Learn More.

# Redfin Tour Insights for 4705 Excelente Dr

## No Tour Insights on This Listing
We haven't left any insights about this home yet, but as soon as we do, we'll leave our thoughts here.

# Property History for 4705 Excelente Drive

| Date | Event & Source | Price |
|---|---|---|
| Nov 12, 2016 | Delisted (Expired)<br>CRMLS #OC16105866 | — |
| Jun 20, 2016 | Price Changed<br>CRMLS #OC16105866 | * |
| May 18, 2016 | Listed (Active)<br>CRMLS #OC16105866 | * |
| Jul 24, 2015 | **Sold (Public Records)**<br>Public Records | $600,000 |

| Date | Event & Source | Price |
|------|----------------|-------|
| Jul 24, 2015 | **Sold (MLS) (Closed)**<br>i-Tech MLS #314033389 | $600,000 |
| Jan 14, 2015 | Pending<br>i-Tech MLS #314033389 | — |
| Jan 12, 2015 | Price Changed<br>i-Tech MLS #314033389 | $795,000 |
| Nov 13, 2014 | Listed (Active)<br>i-Tech MLS #314033389 | $979,000 |
| Jul 16, 2001 | Delisted<br>TheMLS #01-003231 | — |
| Apr 5, 2001 | **Sold (Public Records)**<br>Public Records | $878,000 |
| Jan 16, 2001 | Listed<br>TheMLS #01-003231 | * |
| Jan 10, 2001 | Delisted<br>TheMLS #00-416767 | — |
| Oct 24, 2000 | Listed<br>TheMLS #00-416767 | * |
| Apr 5, 1991 | **Sold (Public Records)**<br>Public Records | $850,000 |
| Aug 3, 1989 | **Sold (Public Records)**<br>Public Records | $280,000 |
| Jun 8, 1988 | **Sold (Public Records)**<br>Public Records | $200,000 |

For completeness, Redfin often displays two records for one sale: the MLS record and the public record. Learn More.

## Public Facts for 4705 Excelente Drive

### Taxable Value

| | | |
|---|---|---|
| Land | $540,000 | Taxes (2015) |
| Additions | $60,000 | **$16,345** |
| Total | $600,000 | |

## Home Facts



| | | | |
|---|---|---|---|
| Beds | 5 | Lot Size | 31,253 |
| Baths | 4 | Style | Single Family Residential |
| Finished Sq. Ft. | 4,780 | Year Built | 1989 |
| Unfinished Sq. Ft. | — | Year Renovated | 1989 |
| Total Sq. Ft. | 4,780 | County | Los Angeles County |
| Floors | — | APN | 2076009031 |

Home facts updated by county records on Nov 26, 2016.

## Activity for 4705 Excelente Dr



| 704 | 9 | 17 | 0 |
|:---:|:---:|:---:|:---:|
| Views | Favorites | X-Outs | Redfin Tours |

# Schools

Serving This Home    Elementary    Middle    High

| School Name & GreatSchools Rating | Distance |
|---|---|
| (9) Calabash Charter Academy | 0.8 mi |
| (8) George Ellery Hale Charter Academy | 2.3 mi |
| (NR) El Camino Real Senior High School | 1.9 mi |

School data provided by GreatSchools. School service boundaries are intended to be used as reference only. To verify enrollment eligibility for a property, contact the school directly.

# Neighborhood Info for 4705 Excelente Dr

California  >  Los Angeles  >  Woodland Hills

## Transportation in Woodland Hills

| Walk Score® | Transit Score® | Bike Score™ |
|:---:|:---:|:---:|
| 28 | 24 | 18 |

This area is car dependent — most errands require a car. Transit is barely an option, and almost all errands require a car. There is a minimal amount of infrastructure for biking.

## Area Overview for Woodland Hills (Last 90 days)



| Median List Price | $789,950 | Avg. # Offers | 3.0 |
|---|---|---|---|
| Median $ / Sq. Ft. | $379 | Avg. Down Payment | — |
| Median Sale / List | 98% | # Sold Homes | 82 |

## What It Takes to Win an Offer near Woodland Hills



~$700K Price | 3 Beds | 1.75 Baths | ~1,250 Sq. Ft.

*We were up against multiple offers but because of having no loan or appraisal contingency (all cash offer) as well as having the highest offered price, we were able to have the winning offer.*

Hooman Zahedi
Redfin Agent

**WINNING OFFER**

100%  Offer-to-list ratio
37   Days on market
3   Competing Offers
—   Down payment

~$700K Price | 3 Beds | 2 Baths | ~1,500 Sq. Ft.

*Multiple offer situation; we were 1st back up as we did not want to purchase the additional lot. But, we found another home in Oak Park and got our offer accepted!*

**OFFER NOT ACCEPTED**

93%  Offer-to-list ratio
53   Days on market



## Median Real Estate Values

| Location | List Price | $ / Sq. Ft. | Sale / List |
|---|---|---|---|
| Woodland Hills | $789,950 | $379 | 98.1% |
| South Valley | $669,780 | $376 | 98.9% |
| 91364 | $882,000 | $367 | 97.2% |
| Los Angeles | $699,000 | $411 | 99.1% |
| Los Angeles County | $609,000 | $372 | 99.2% |

## $/Sq. Ft. Houses in 91364

# Similar Homes to 4705 Excelente Dr

### Nearby Homes for Sale
Homes similar to 4705 Excelente Dr are listed between $105K to $1,995K at an average of $395 per square foot.

### Nearby Sold Homes
Nearby homes similar to 4705 Excelente Dr have recently sold between $700K to $1,635K at an average of $310 per square foot.



## Nearby Properties

| Address | Redfin Estimate | Address | Redfin Estimate |
|---|---|---|---|
| 22560 Uhea Rd<br>Los Angeles, CA<br>3 Beds \| 4 Baths \| 3660 Sq. Ft. | $822,820 | 22560 Uhea Rd<br>Los Angeles, CA<br>- Beds \| - Baths \| - Sq. Ft. | $696,864 |
| 22500 Margarita Dr<br>Los Angeles, CA<br>4 Beds \| 3 Baths \| 3394 Sq. Ft. | $938,714 | 22502 Quinta Rd<br>Los Angeles, CA<br>4 Beds \| 3 Baths \| 3082 Sq. Ft. | $961,058 |
| 22560 Uhea Rd<br>Los Angeles, CA<br>- Beds \| - Baths \| - Sq. Ft. | - | 22525 Quinta Rd<br>Los Angeles, CA<br>- Beds \| - Baths \| - Sq. Ft. | - |
| 4715 Excelente Dr<br>Los Angeles, CA<br>5 Beds \| 5 Baths \| 5758 Sq. Ft. | - | 22541 Quinta Rd<br>Los Angeles, CA<br>4 Beds \| 6 Baths \| 4411 Sq. Ft. | $1,475,499 |

Show More ⌄

About

Press

Research

Blog

GreatSchools Ratings provided by GreatSchools.org.

Jobs

Builders

Referrals

Mobile

Feedback

Contact Us

Help

Updated January 2016: By searching, you agree to the Terms of Use, Privacy Policy, and End-User License Agreement.

Copyright: © 2017 Redfin. All rights reserved. Patent pending.

California BRE #01521930

# Exhibit "E"

Google Maps     4705 Excelente Dr



Imagery ©2017 Google, Map data ©2017 Google     10 ft



## 4705 Excelente Dr

Woodland Hills, CA 91364



# Exhibit "F"

B6A (Official Form 6A) (12/07)

In re   **Shahen Martirosyan**                                                                ,   Case No.   **1:15-bk-11139**
                                                                Debtor

# SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim." If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| **4705 Excelente Drive**<br>**Woodland Hills, Ca. 91364** | **Fee simple** | - | **700,000.00** | **2,093,663.36** |

|  |  |  |
|---|---|---|
| Sub-Total > | **700,000.00** | (Total of this page) |
| Total > | **700,000.00** |  |

  **0**   continuation sheets attached to the Schedule of Real Property

(Report also on Summary of Schedules)

Software Copyright (c) 1996-2014 - Best Case, LLC - www.bestcase.com

Best Case Bankruptcy

Exhibit "G"

```
 1                 UNITED STATES BANKRUPTCY COURT

 2        CENTRAL DISTRICT OF CALIFORNIA - SAN FERNANDO VALLEY

 3                           --oOo--

 4  In Re:                    )  Case No. 1:15-bk-11139-MB
                              )
 5  SHAHEN MARTIROSIAN,       )  Chapter 7
                              )
 6  Debtor.                   )  San Fernando Valley, CA
                              )  Tuesday, 10:39 A.M.
 7  ---------------------------X  December 27, 2016
    KHACHATRYAN,              )
 8                            )
                 Plaintiff,   )
 9                            )
                 v.           )  Adv.   1:16-ap-01091-MB
10                            )
    MARTIROSIAN,              )
11  et al.,                   )
                              )
12               Defendants.  )
    ---------------------------X
13                               EMERGENCY MOTION FOR A
                                 TEMPORARY RESTRAINING
14                               ORDER TO PREVENT
                                 DECEMBER 28, 2016,
15                               FORECLOSURE FROM
                                 PROCEEDING
16
                      TRANSCRIPT OF PROCEEDINGS
17        BEFORE THE HONORABLE MARTIN R. BARASH
               UNITED STATES BANKRUPTCY JUDGE
18
    APPEARANCES:
19
    For Plaintiff:           ALANA B. ANAYA, ESQ.
20                           JONATHAN A. MALEK, ESQ.
                             Anaya Law Group
21                           2629 Townsgate Road
                             Suite #140
22                           Westlake Village, California 91361

23

24

25
```



```
 1   For the Defendant,          FILEMON KEVIN SAMSON, ESQ.
     Ben Yrungaray and           Samson Law Office
 2   City National Finance:      970 N. Tustin Avenue
                                 Suite # 205
 3                               Anaheim, California  92807

 4   For the Defendants,         LAURA C. CRAWFORD, ESQ.
     Martirosian,                8541 Calvin Avenue
 5   Harutyunyan, CPI Real       Northridge California  91324
     Estate Group, 4705
 6   Excelente Inc.:

 7   Court Recorder:             Kathy Ogier
                                 U.S. Bankruptcy Court
 8                               Central District of California
                                 21041 Burbank Boulevard
 9                               Woodland Hills, California  91367
                                 (855) 460-9641
10
     Court Transcriptionist:     Mary C. Clark, C.E.R.T.*D-214
11                               Ben Hyatt Certified Deposition
                                    Reporters
12                               17835 Ventura Boulevard, Suite 310
                                 Encino, California  91316
13

14

15

16

17

18

19

20

21

22

23

24
     Proceedings produced by electronic sound recording;
25   transcript produced by transcription service.
```

**P 888.272.0022  F 818.343.7119**  BEN HYATT  www.benhyatt.com
Certified Deposition Reporters

Page                                                                    3

1                         INDEX

2    PLAINTIFF'S WITNESSES:    DIRECT    CROSS    REDIRECT    RECROSS

3    Vazgen Khachatryan         39        44

4                                         44

5    DEFENDANT'S WITNESSES:

6    Jamal Dawood               51        64       123         138

7                                                  147         149

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

P 888.272.0022  F 818.343.7119



BENHYATT
Certified Deposition Reporters          www.benhyatt.com

Page                                                                          51

1    a representative of City National Finance.

2              THE COURT:  All right.  Well, you can flush that

3    out -- that foundation out during the testimony.

4              MR. SAMSON:  Thank you, Your Honor.

5              THE COURT:  All right.  Please stand and raise

6    your right hand.

7              JAMAL DAWOOD, DEFENDANT'S WITNESS, SWORN

8              THE COURT:  Okay.  Please take a seat.  Please

9    state your full name.  I notice you've used initials on

10   your declaration, but please give your full name and spell

11   your last name.

12             THE WITNESS:  J-a-m-a-l.  Last name D-a-w-o-o-d.

13             THE COURT:  Okay.  And you heard my admonition

14   earlier about waiting for the end of the question and try

15   not to talk over each other.  So --

16             THE WITNESS:  Yes, Your Honor.

17             THE COURT:  Very good.  All right.  Mr. Samson,

18   go ahead.

19                        DIRECT EXAMINATION

20   BY MR. SAMSON:

21   Q.   What is -- Mr. Dawood, what is your position with City

22   National?

23   A.   I'm a loss mitigation officer.

24   Q.   Okay.  Is part of that position assessing valuations

25   for the purpose of loaning money?

Page                                                              54

1       I said let's just start with the computer first.  So I

2   googled the property and I saw some pictures of the

3   disaster.  I don't know what happened.  Must have -- the

4   doors were sideways.  They weren't closing.  The front

5   was -- the back was sinking.  The -- you know, there's like

6   Internet pictures across the board.

7       So I said so that's crazy.  I mean why would you want

8   to buy something like this.  She said I want to buy it

9   because I think the values in this area can appreciate and

10  I can get somebody to build a retaining wall around the

11  property, stabilize it, and sell it and make some money.

12  So I said, you know, not a bad idea.  Let me -- I have to

13  see the property.

14      So I said I can't make a commitment without doing a

15  walk-through.  So she said okay.  Come, bring whoever you

16  want.  No problem.  I made an appointment, showed up to the

17  property, looked at the property, inspected, I saw the

18  sinking side of the property, and essentially, I told her

19  what's the retaining wall going to cost.  She says a

20  million dollars.  I said it doesn't pencil out -- doesn't

21  make any sense.

22      She goes, well -- her response to me was why do you

23  care if it pencils out.  The property -- the land is worth

24  more than 600,000 all day long, right?  I said if you bring

25  it to me without the pad, maybe, but if I have to destroy

Page                                                                      60

1   some improvements took place on the property, but the --

2   the majority of the -- the retaining wall, the

3   stabilization was still not there.

4        So that was basically our indication to just -- this

5   is not going to go anywhere other than foreclosure.

6   Q.   Okay.   Two more questions:   How much are you currently

7   owed?   Give me the total amount you're owed and also the

8   amount of the arrears.

9             MR. SAMSON:   I'll (indiscernible) the compound

10  question, Your Honor.

11  BY MR. SAMSON:

12  Q.   But the total amount you're owed and the amount of any

13  arrears if you're owed any.

14  A.   What we're seeking at this point is roughly $250,000

15  just to stabilize what we put out in terms of attorney's

16  fees, collection costs, taxes that have not been paid by

17  the borrower, impounds that have not been paid by the

18  borrower, points, fees that we paid to licensed brokers

19  that brought the deal to our desk that were not paid by the

20  borrower.   So with that, we figured with all the chaos

21  that's going on, we thought that if we actually offer the

22  asset at an auction equally available to the public

23  including the person -- the plaintiff in this matter, if

24  they paid the $250,000 tomorrow morning, they could be the

25  proud owners of that asset, and we're not stopping you from

Page                                                                      61

1   doing that.

2   Q.    $250,000.  Okay.

3   A.    That's correct.

4            THE COURT:  Now I'm confused.  How much are you

5   owed?  Walk me through that again.

6            THE WITNESS:  No.  We basically funded two loans,

7   Your Honor.  One was 600,000.  One was $108,000.

8            THE COURT:  Right.

9            THE WITNESS:  And so roughly with the taxes and

10  the payouts, the impounds that we did, was straight roughly

11  800,000 in total and then we have approximately $200,000 in

12  attorney's fees and -- and interest and -- in excess of

13  200,000 in interest and penalties and attorney's fees that

14  were put onto the asset.  So if I was --

15           THE COURT:  That's a lot of attorney's fees.

16           THE WITNESS:  Actually, the attorney's fees

17  probably comprise about $60,000 of that.

18           THE COURT:  Oh, okay.

19           THE WITNESS:  Which is not that much, but

20  there's -- we have two -- two pending cases, Your Honor.

21  This is not just the only plaintiff.  This has been a

22  nightmare for -- for us to deal with.  We actually have two

23  matters and we're fighting both matters.  This is just one

24  of two.  There's another claimant and we have another we're

25  engaged --

Page                                                                    84

1  attorney, that's the best address because we don't want to

2  miss anything.

3  Q.    What language did you speak to Ms. Harutyunyan in?

4  A.    I speak English and I speak French and I speak Arabic

5  but no -- nothing other than those three languages.

6  Q.    What did you speak to her in?

7  A.    English.

8  Q.    Okay.  And was she fluent in English in your opinion?

9  A.    She understood what I had to say and she knew what she

10 was doing.  In terms of can I qualify her as a great

11 English person, I don't know her reading skill.  I don't

12 know her writing skill, but I can tell you that I went

13 through the loan line by line and explained to her what --

14 when it's due and what she's signing up for and when

15 payments are to be made and everything.

16 Q.    Okay.

17 A.    And she understood that in English.

18      MS. ANAYA:  I'll just represent to this Court

19 that she recently had her deposition taken and requested an

20 Armenian translator and one was such provided indicating

21 she does not speak English.

22 BY MS. ANAYA:

23 Q.    Okay.  Did she come in with a real estate agent?

24 A.    I can't recall.  She -- she didn't -- she came with a

25 couple people, but I don't know exactly, you know, who they



Page                                                                    99

1   A.   Various sites -- if you plug in the 4705 Excelente and

2   you look at, you know, MLS homes, Radar, this -- there's

3   like a slew -- there's like ten -- ten on the first page.

4   If you click there, it'll give you like pictures of the

5   home on the inside and the damage and the history behind

6   the home.

7        But again, I'm not the one that's actually accepting a

8   short sale, so that's on Nationstar to figure out, you

9   know, the damage and assess that.  That's why I don't take

10  that into my file because that's -- that's old stuff.  I'm

11  more concerned about the decision that Nationstar made and

12  are we comfortable with the borrower from this point

13  forward.  So all the damage that you're talking about

14  didn't happen on my shift.  The damage happened prior to

15  our shift.

16  Q.   So that leads me to the question of all these items

17  you just testified to you saw on the Internet, you did not

18  print any of it and make it part of the City National file,

19  correct?

20  A.   Because I'm not doing a short sale to our --

21  Q.   Will you please just answer the question.

22  A.   I did not print, but I did view it personally and I

23  communicated with Nationstar to verify its content.

24  Q.   And none of it became part of the file for City

25  National.

P 888.272.0022  F 818.343.7119       BENHYATT   www.benhyatt.com
Certified Deposition Reporters

Page                                                                    104

1   recollection.  I think there was a -- another female in

2   the -- in the property.

3   Q.  So how did it come to be that a few weeks after the --

4   we'll call it the purchase money loan -- the $600,000 loan

5   funds, there's another 108,600 and some dollars being

6   loaned out to Ms. Harutyunyan?  How did that come about?

7   A.   Very simple.  At the -- the 600,000 was what

8   Nationstar needed immediately to basically shut down the

9   foreclosure.  Now, we told Anahit Harutyunyan that we need

10  108,000 and some change prior to funding.  She couldn't

11  bring us the money.  So she signed contemporaneously on the

12  15th, she signed to 108-.  She said give me a few days, a

13  week, I'm going to try to get that money back in your

14  hands.  She did not want a second on the property as a --

15  as a guarantee.  To guarantee the six-month minimum impound

16  that the investor needed along with taxes, along with the

17  broker fees and commissions, we wanted to make sure that

18  that 108- was received in hand.

19      Now, she did not comply.  She did not come back and

20  basically deliver the funds.  So we had to, you know,

21  basically record that lien.  So it was not our intention to

22  give her more than 600,000.  She was supposed to bring in

23  the 108-, but I almost feel like we got tricked because she

24  needed that money like today, right now, to close the deal

25  and then she said -- and then when we saw the urgency of



Page                                                                                    147

1   and -- to date as of the date of the notice of sale.

2   Q.   And if you were to proceed with foreclosure on the

3   $108,000 loan, that would be subject to the $600,000 which

4   is the first deed of trust, right?

5   A.   That is correct.  I mean that's just standard --

6   that's how it operates.

7              MS. ANAYA:  Okay.  Thank you.

8              THE COURT:  All right.  Any redirect?

9              MR. SAMSON:  Yes, Your Honor.

10                   REDIRECT EXAMINATION

11  BY MR. SAMSON:

12  Q.   Just briefly.  In your previous testimony, you gave

13  testimony about what you personally observed.  When was the

14  last time you've been to the subject property?

15  A.   It was roughly around the time that we commenced

16  foreclosure proceedings.

17  Q.   The date more or less?

18  A.   I would say around August -- August -- mid-August is

19  my recollection.

20  Q.   And at that time --

21  A.   Mid-August 2016.  I apologize.

22  Q.   At that time, did you observe any major repairs or

23  corrections to address the structural damage that you --

24  about which you previously gave testimony?

25  A.   I noticed outside is getting worse, meaning the



Page                                                                    149

1  Q.   That's interesting.  So do you believe if the property

2  were allowed to sit and nothing continued -- no structural

3  repairs continue to be done there's a risk that this pool

4  you said could slide onto the neighbor's --

5  A.   Absolutely.  That's why we want to get in, get out.  I

6  mean we've already given it almost two years of -- you

7  know, we're going onto two years now on a six-month bridge

8  loan and, like I said, I'm just hoping that we don't get

9  stuck with the property because we don't want to the

10 property obviously.  And I'm hoping that somebody that sees

11 value there can pay and then could resolve all these

12 outstanding issues that everybody has.

13           MR. SAMSON:  Thank you.

14           THE WITNESS:  Sure.

15           THE COURT:  Anything else?

16           MS. ANAYA:  Yes.

17                      RECROSS-EXAMINATION

18 BY MS. ANAYA:

19 Q.   You testified to various conversations with Anahit

20 Harutyunyan.  Were all of these direct without a

21 translator?

22 A.   She's never -- I've talked to her with no translator,

23 but she always told me that her English is not good and she

24 doesn't understand everything perfect, so I always offered

25 her that if she wants a friend, translator, whatever to



# Exhibit "H"

<pre>
 1                  UNITED STATES BANKRUPTCY COURT

 2       CENTRAL DISTRICT OF CALIFORNIA - SAN FERNANDO VALLEY

 3                          --oOo--

 4  In Re:                    )  Case No. 1:15-bk-11139-MB
                              )
 5  SHAHEN MARTIROSIAN,       )  Chapter 7
                              )
 6  Debtor.                   )  San Fernando Valley, CA
                              )  Tuesday, 3:31 P.M.
 7  ---------------------------X  December 27, 2016
    KHACHATRYAN,              )
 8                            )
                Plaintiff,    )
 9                            )
                v.            )  Adv No. 1:16-ap-01091-MB
10                            )
    MARTIROSIAN,              )
11  et al.,                   )
                              )
12              Defendants.   )
    ---------------------------X
13                               EMERGENCY MOTION FOR A
                                 TEMPORARY RESTRAINING
14                               ORDER TO PREVENT
                                 DECEMBER 28, 2016,
15                               FORECLOSURE FROM
                                 PROCEEDING
16
                       TRANSCRIPT OF PROCEEDINGS
17           BEFORE THE HONORABLE MARTIN R. BARASH
                  UNITED STATES BANKRUPTCY JUDGE
18
    APPEARANCES:
19
    For Plaintiff:            ALANA B. ANAYA, ESQ.
20                            JONATHAN A. MALEK, ESQ.
                              Anaya Law Group
21                            2629 Townsgate Road
                              Suite #140
22                            Westlake Village, California 91361

23

24

25
</pre>



Page                                                                24

1   It's also well established that the plaintiff seeking a

2   preliminary injunction must establish that he's likely to

3   succeed on the merits, that he's likely to suffer

4   irreparable harm in the absence of a preliminary relief,

5   that the balance of equity tips in his favor, and that an

6   injunction is in the public interest.

7

8           I also note that in the Ninth Circuit, there's a

9   sort of sliding scale approach to preliminary injunctions.

10  Under this sliding scale, a preliminary injunction may

11  issue when a plaintiff demonstrates that serious questions

12  going to the merits were raised and the balance of

13  hardships tip sharply in the plaintiff's favor as long as

14  the other two factors have been met.  So it's a flexible

15  concept is the point.

16

17          I note that this is -- a TRO like a preliminary

18  injunction is an extraordinary remedy and ought not be

19  granted unless the movant has made a clear showing -- has

20  carried the burden of proof by a clear showing.

21

22          So onto the merits.  I think there's a mountain

23  of circumstantial evidence here that the plaintiff was the

24  victim of fraud and that this property was involved in

25  fraudulent transfers intended to hinder, delay, defraud

Page                                                                        25

1   creditors or, in other words, that there was an actual

2   intent of fraudulent transfer, one or more of them here.

3       I think that that -- and when I say that that

4   pertains to the -- that includes the transfers from

5   Virginia Martirosian to Anahit Harutyunyan as well as from

6   Ms. Harutyunyan to the entity -- the Excelente entity

7   that's a named defendant that currently holds title to the

8

9   property.

10      And I think that there's a very high likelihood

11  of success on the merits on the claims based on what I've

12  seen at this stage of the process.

13      Now, City National Finance opposes the

14  preliminary injunction.  They argue, well, look, it's not

15  so clear that the plaintiffs are going succeed in avoiding

16

17  or canceling the deeds of trust that we have on these

18  properties.  We have our rights under state law and we

19  should be permitted to proceed and no, we didn't do

20  anything wrong and they haven't proven that we've done

21  anything wrong.

22      I think that the problem with that response is

23  that I don't think that I have to conclude for purposes of

24  this temporary restraining order whether or not you would

25

Page                                                                28

1   testimony was that the broker or whoever the professional

2   was that was asked to give advice to City National was

3   asked to give a land value only.  That was the testimony.

4
5         So I conclude that the property has to be worth

6   something more than the land value, at least there's been a

7   sufficient showing of that.  There was sort of an attempt,

8   I think, by the defendant, City National, to suggest that

9   the value wasn't -- couldn't be anything more than that,

10  and I didn't find that persuasive.

11        City National's only interested in obtaining a

12  recovery on its position.  It doesn't have the interest of

13  other creditors at heart and the one witness offered is not

14  a broker, is not an engineer, is not a geologist.  There

15  was no -- there was I've been doing deals for a long time

16  and I know what things are worth.  I didn't find that

17
18  credible or persuasive.

19        So just to summarize, I think the harm -- the

20  potential for irreparable harm to the plaintiffs is

21  extremely high here.  I think the balance of equities or

22  the balance of harms is that it's much greater than it is

23
24  to the lender that's seeking to foreclose at this point.

25        The land isn't going anywhere.  The testimony

Page                                                                    29

1   suggesting that a swimming pool might fall down into the

2   downhill neighbor or that there were serious cracks that it

3   was intimated might somehow impact the land value, I didn't

4   find credible or persuasive at all.

5           They were entirely without expertise or

6   foundation and again, I don't think City National

7   necessarily would have acted contrary to its economic

8   interest, but it valued the property at what was the

9   absolute bare minimum that we would get out of this because

10  that's the kind of loan that they were making.

11          So in terms of the public interest, I acknowledge

12  that lenders have -- that there's a public interest in

13  allowing lenders to enforce their state law rights.  I also

14  think that there's a public interest in preventing folks

15  who have defrauded others from profiting from their

16  fraudulent conduct.

17          And again, this ruling and my issuing the TRO --

18  I'm going to issue the TRO -- again, is not dependent on a

19  finding that City National necessarily did anything wrong

20  at this point, although in many respects, I did not find

21  their witness credible.

22          It is, however, abundantly clear to me that

23

24

25

P 888.272.0022  F 818.343.7119      BENHYATT
                                    Certified Deposition Reporters      www.benhyatt.com

Exhibit "I"

 Los Angeles Department of Water & Power

www.ladwp.com

| BILL DATE | | Page 1 of 2 |
| Jul 7, 2016 | DATE DUE |
| | Jul 26, 2016 |
| ACCOUNT NUMBER | AMOUNT DUE |
| 030 446 0000 |  |

## CUSTOMER SERVICE
1-800-DIAL-DWP (342-5397)
Monday-Friday: 7 a.m. - 7 p.m.
Saturday: 7 a.m. - 2 p.m.

### Paying Your Bill

 **AUTOMATIC PAYMENT**
Automatically pay from your
checking, savings or credit card by
logging in at *www.ladwp.com/billpay*

 **ONLINE**
Pay from your checking, savings or
credit card any time by logging in at
*www.ladwp.com/myaccount*

 **BY PHONE**
Pay from your checking, savings or
credit card any time by calling
1-800-DIAL-DWP and selecting "Make a
Payment."

 **BY MAIL**
Place your payment stub and your
check or money order in the
envelope provided with the bill.

 **IN PERSON**
Pay at any Customer Service Center.
Locations are listed on the back of
your payment stub and at
*www.ladwp.com/servicecenters*

 **IMPORTANT SUMMER ELECTRIC RELIABILITY UPDATE** WHAT YOU NEED TO KNOW
USAGE
See story in *Connections*

## CLOSING BILL

This acknowledges your request to stop services at your service address. Thank you for the opportunity to serve you.

**The Low Income Discount on your bill has expired.**
Our records indicate that you have not complied with the city ordinance requiring you to update your application for eligibility. If you wish to reapply, you may call us at 1-800-342-5397.

## Account Summary

| | | |
|---|---|---|
| Previous Account Balance | | |
| Payment Received | *No payment received* | |
| Remaining Balance | | |
| | | **Total Amount Due** |
| | | **Total New Charges** |



---

PLEASE KEEP THIS PORTION FOR YOUR RECORDS. IF PAYING IN PERSON, BRING ENTIRE BILL TO CUSTOMER SERVICE CENTER.

PLEASE RETURN THIS PORTION WITH YOUR PAYMENT, MAKING SURE THE RETURN ADDRESS SHOWS IN THE ENVELOPE WINDOW.

 Los Angeles Department of Water & Power

P.O. Box 30808 • Los Angeles, CA 90030-0808

ELECTRONIC SERVICE REQUESTED

**THIS IS YOUR BILL**

For paperless billing, go to
www.ladwp.com/myaccount

## CLOSING BILL

**ACCOUNT NUMBER**
030 446 0000

| DATE DUE | Jul 26, 2016 |
| AMOUNT DUE | |

20506 1 AV 0.376          20506 /3344
ANAHIT HARUTYUNYAN
4705 EXCELENTE DR
WOODLAND HILLS CA 91364-4008



Please enter amount enclosed
$

Write account number on check or money order
and make payable to LADWP.

030446000000000000000003029



LADWP Home    News & Media    Outage Information    Careers    About Us    Español

**1-800-DIAL DWP** (1-800-342-5397)    Contact Us ▾

My Account    Customer Service    Save Money    Go Green    Financial Assistance

LADWP  >  Residential  >  Financial Assistance  >  Discount Rates

# Financial Assistance

Payment Arrangements

**Discount Rates**

Assistance Programs

## Discount Rates



LADWP offers discount rate programs to make water and electricity more affordable for qualifying families who are experiencing difficulties paying their bills.

### Low Income Discount Program

If your income and household size qualify for this rate, the LADWP will apply a discount to your electric and/or water bill. For your convenience, you may download, print, and mail in a paper application form.

Low Income Discount Program Application🔒    (online)

Low Income Discount Program Application (PDF)

To submit Proof of Income documentation separately from the application, please print the Cover Sheet below, fill in all of the information, attach your proof of income documentation, and send the Cover Sheet with the documentation to the address or fax number noted below.

Low Income Discount Program Cover Sheet

### Household Income Requirements

| Members in Household | Maximum Annual Gross Income* |
|---|---|
| 1 | $32,040 |
| 2 | $32,040 |
| 3 | $40,320 |
| 4 | $48,600 |
| 5 | $56,880 |
| 6 | $65,160 |
| 7 | $73,460 |
| 8 | $81,780 |
| Each additional member: | Add $8,320 to income |

*Effective July 1, 2016

### Verification Policy

Customers participating in this program will be required to verify and declare their eligibility on a recurring basis. Customers who do not provide proof of income, or households not meeting the eligibility guidelines, will not be eligible for the program or for renewal.

### Program Mailing Address and Fax Number

**Do you qualify for financial assistance?**

Fill out our Financial Assistance Qualification form to see which programs you qualify for.

Go to the form

**Low Income Discount Program Video**

Interested in obtaining more information on the Low Income Discount Program?

Watch our Low Income Discount Program Video

Los Angeles Department of Water and Power
LIDP, Room L63
PO Box 515407
Los Angeles, CA 90051-6707
Fax: (213) 241-1465

**Contact Us**

- Call us at 1-800-DIAL-DWP (1-800-342-5397)
- Hearing impaired with a Teletype device (TDD) may call
  1-800-HEAR-DWP (1-800-432-7397)
- Send us an email

**Senior Citizen / Disability Lifeline Rate**

**Life-Support Equipment Discount**

**Physician Certified Allowance Discount**

 Download Adobe Acrobat Reader

Residential | Commercial | Partners | Contact Us | Privacy / Terms | Sitemap

Copyright © 2013 Los Angeles Department of Water and Power. All rights reserved.

# Exhibit "J"

Incomplete, DISMISSED

# U.S. Bankruptcy Court
## Central District of California (Los Angeles)
### Bankruptcy Petition #: 2:16-bk-26852-DS

|  |  |
|---|---|
|  | *Date filed:* 12/27/2016 |
| *Assigned to:* Deborah J. Saltzman | *Debtor dismissed:* 01/13/2017 |
| Chapter 7 | *341 meeting:* 02/07/2017 |
| Voluntary | *Deadline for objecting to discharge:* 04/10/2017 |
| No asset | *Deadline for financial mgmt. course:* 04/10/2017 |

*Debtor disposition:* Dismissed for Failure to File
Information

| **Debtor** | represented by **Steven M Gluck** |
|---|---|
| **Anahit Harutyunyan** | 1313 Post Ave |
| 1815 No Normandy #12 | Torrance, CA 90501 |
| Los Angeles, CA 90027 | 818-887-8205 |
| LOS ANGELES-CA | Email: sgluck@juno.com |
| SSN / ITIN: xxx-xx-1859 |  |

**Trustee**
**Jason M Rund (TR)**
Sheridan & Rund
840 Apollo Street, Suite 351
El Segundo, CA 90245
(310) 640-1200

**U.S. Trustee**
**United States Trustee (LA)**
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017
(213) 894-6811

| Filing Date | # | Docket Text |
|---|---|---|
| 12/27/2016 | <u>1</u><br>(9 pgs; 2 docs) | Chapter 7 Voluntary Petition for Individuals . Fee Amount $335 Filed by Anahit Harutyunyan Statement of Intention for Individuals Filing Under Chapter 7 (Form 108) due 01/26/2017. Summary of Assets and Liabilities (Form 106Sum or 206Sum ) due 01/10/2017. Schedule A/B: Property (Form 106A/B or 206A/B) due 01/10/2017. Schedule C: The Property You Claim as Exempt (Form 106C) |

| | | |
|---|---|---|
| | | due 01/10/2017. Schedule D: Creditors Who Have Claims Secured by Property (Form 106D or 206D) due 01/10/2017. Schedule E/F: Creditors Who Have Unsecured Claims (Form 106E/F or 206E/F) due 01/10/2017. Schedule G: Executory Contracts and Unexpired Leases (Form 106G or 206G) due 01/10/2017. Schedule H: Your Codebtors (Form 106H or 206H) due 01/10/2017. Schedule I: Your Income (Form 106I) due 01/10/2017. Schedule J: Your Expenses (Form 106J) due 01/10/2017. Declaration About an Individual Debtors Schedules (Form 106Dec) due 01/10/2017. Declaration Under Penalty of Perjury for Non-Individual Debtors (Form 202) due 01/10/2017. Statement of Financial Affairs (Form 107 or 207) due 01/10/2017. Chapter 7 Statement of Your Current Monthly Income (Form 122A-1) Due: 01/10/2017. Statement of Exemption from Presumption of Abuse (Form 122A-1Supp) Due: 01/10/2017. Chapter 7 Means Test Calculation (Form 122A-2) Due: 01/10/2017. Incomplete Filings due by 01/10/2017. (Gluck, Steven) WARNING: Item subsequently amended to include deficiency for Declaration of Debtor Employment Income Due: 01/10/2017 and Verification of List of Creditor Matrix Due: 01/10/2017. Incomplete Filings due by 01/10/2017. Modified on 12/28/2016 (Lewis, Litaun). (Entered: 12/27/2016) |
| 12/27/2016 | 2 (1 pg) | Certificate of Credit Counseling Filed by Debtor Anahit Harutyunyan. (Gluck, Steven) (Entered: 12/27/2016) |
| 12/27/2016 | 3 (1 pg) | Electronic Filing Declaration (LBR Form F1002-1) Filed by Debtor Anahit Harutyunyan. (Gluck, Steven) (Entered: 12/27/2016) |
| 12/27/2016 | 4 | Statement About Your Social Security Number (Official Form 121) Filed by Debtor Anahit Harutyunyan. (Gluck, Steven) (Entered: 12/27/2016) |
| 12/27/2016 | 6 (3 pgs) | Meeting of Creditors with 341(a) meeting to be held on 02/07/2017 at 09:00 AM at RM 2, 915 Wilshire Blvd., 10th Floor, Los Angeles, CA 90017. Objections to Discharge due by 04/10/2017. Cert. of Financial Management due by 04/10/2017 for Debtor and Joint Debtor (if joint case). Proof of Claim due by 05/08/2017. (Gluck, Steven) (Entered: 12/27/2016) |
| 12/27/2016 | | Receipt of Voluntary Petition (Chapter 7)(2:16-bk-26852) [misc,volp7] ( 335.00) Filing Fee. Receipt number 43943110. Fee amount 335.00. (re: Doc# 1) (U.S. Treasury) (Entered: |

| | | |
|---|---|---|
| | | 12/27/2016) |
| 12/27/2016 | **5**<br>(1 pg) | Notice of Dismissal of Case If Required Documents Are Not Filed Within 72 Hours (BNC) . (Lewis, Litaun) (Entered: 12/28/2016) |
| 12/27/2016 | | Set Case Commencement Deficiency Deadlines (ccdn) (RE: related document(s)1 Voluntary Petition (Chapter 7) filed by Debtor Anahit Harutyunyan) Declaration by Debtors as to Whether Income was Received from an Employer within 60-Days of the Petition Date (LBR Form F1002-1) due by 1/10/2017. Verification of Master Mailing List of Creditors (LBR Form F1007-1) due 1/10/2017. (Lewis, Litaun) (Entered: 12/28/2016) |
| 12/27/2016 | **7**<br>(1 pg) | ORDER to comply with bankruptcy rule 1007/3015(b) and notice of intent to dismiss case re: deficient document Statement of Intention for Individuals Filing Under Chapter 7 (Form 108) due 01/26/2017. Summary of Assets and Liabilities (Form 106Sum or 206Sum ) due 01/10/2017. Schedule A/B: Property (Form 106A/B or 206A/B) due 01/10/2017. Schedule C: The Property You Claim as Exempt (Form 106C) due 01/10/2017. Schedule D: Creditors Who Have Claims Secured by Property (Form 106D or 206D) due 01/10/2017. Schedule E/F: Creditors Who Have Unsecured Claims (Form 106E/F or 206E/F) due 01/10/2017. Schedule G: Executory Contracts and Unexpired Leases (Form 106G or 206G) due 01/10/2017. Schedule H: Your Codebtors (Form 106H or 206H) due 01/10/2017. Schedule I: Your Income (Form 106I) due 01/10/2017. Schedule J: Your Expenses (Form 106J) due 01/10/2017. Declaration About an Individual Debtors Schedules (Form 106Dec) due 01/10/2017. Declaration Under Penalty of Perjury for Non-Individual Debtors (Form 202) due 01/10/2017. Statement of Financial Affairs (Form 107 or 207) due 01/10/2017. Chapter 7 Statement of Your Current Monthly Income (Form 122A-1) Due: 01/10/2017. Statement of Exemption from Presumption of Abuse (Form 122A-1Supp) Due: 01/10/2017. Chapter 7 Means Test Calculation (Form 122A-2) Due: 01/10/2017. Incomplete Filings due by 01/10/2017. (Gluck, Steven) WARNING: Item subsequently amended to include deficiency for Declaration of Debtor Employment Income Due: 01/10/2017 and Verification of List of Creditor Matrix Due: 01/10/2017. Incomplete Filings due by 01/10/2017(BNC) (RE: related document(s)1 Voluntary Petition (Chapter 7) filed by Debtor Anahit |

| | | |
|---|---|---|
| | | Harutyunyan) (Lewis, Litaun) (Entered: 12/28/2016) |
| 12/28/2016 | [8](#) (2 pgs) | Declaration by Debtor as to Whether Debtor(s) Received Income From an Employer Within 60 Days of Petition (LBR Form F1002-1) Filed by Debtor Anahit Harutyunyan (RE: related document(s) Set Case Commencement Deficiency Deadlines (ccdn)). (Gluck, Steven) (Entered: 12/28/2016) |
| 12/28/2016 | [9](#) (2 pgs) | Disclosure of Compensation of Attorney for Debtor (Official Form 2030) Filed by Debtor Anahit Harutyunyan. (Gluck, Steven) (Entered: 12/28/2016) |
| 12/29/2016 | [10](#) (3 pgs) | Verification of Master Mailing List of Creditors (LBR Form F1007-1) , List of Creditors (Amended). Fee Amount $31 Filed by Debtor Anahit Harutyunyan (fee not paid) (RE: related document(s) Set Case Commencement Deficiency Deadlines (ccdn)). (Francis, Dawnette) Modified on 12/29/2016 (Francis, Dawnette). (Entered: 12/29/2016) |
| 12/29/2016 | [11](#) (1 pg) | Notice of Deficiency of Filing Fees Required to Add Additional Creditors (BNC) (RE: related document(s)[10](#) Verification of Master Mailing List of Creditors (LBR F1007-1) filed by Debtor Anahit Harutyunyan, Amended List of Creditors (Fee)) (Francis, Dawnette) (Entered: 12/29/2016) |
| 12/30/2016 | [12](#) (4 pgs) | BNC Certificate of Notice (RE: related document(s)[6](#) Meeting (AutoAssign Chapter 7a)) No. of Notices: 5. Notice Date 12/30/2016. (Admin.) (Entered: 12/30/2016) |
| 12/30/2016 | [13](#) (2 pgs) | BNC Certificate of Notice (RE: related document(s)[1](#) Voluntary Petition (Chapter 7) filed by Debtor Anahit Harutyunyan) No. of Notices: 1. Notice Date 12/30/2016. (Admin.) (Entered: 12/30/2016) |
| 12/30/2016 | [14](#) (2 pgs) | BNC Certificate of Notice (RE: related document(s)[7](#) ORDER to comply with bankruptcy rule 1007/3015(b) and notice of intent to dismiss case (Ch 7/13) (BNC)) No. of Notices: 1. Notice Date 12/30/2016. (Admin.) (Entered: 12/30/2016) |
| 12/30/2016 | [15](#) (2 pgs) | BNC Certificate of Notice (RE: related document(s)[5](#) Notice of Dismissal of Case If Required Documents Are Not Filed Within 72 Hours (VAN-197) (BNC)) No. of Notices: 1. Notice Date 12/30/2016. (Admin.) (Entered: 12/30/2016) |

| | | |
|---|---|---|
| 01/01/2017 | **16**<br>(2 pgs) | BNC Certificate of Notice (RE: related document(s)**11** Notice of Deficiency of Filing Fees Required to Add Additional Creditors (BNC)) No. of Notices: 1. Notice Date 01/01/2017. (Admin.) (Entered: 01/01/2017) |
| 01/03/2017 | | Receipt of Amendment Filing Fee - $31.00 by 20. Receipt Number 20214717. (admin) (Entered: 01/03/2017) |
| 01/03/2017 | | Receipt of Amendment Filing Fee - $31.00 by 20. Receipt Number 20214717. (admin) (Entered: 01/04/2017) |
| 01/13/2017 | **17**<br>(1 pg) | ORDER and notice of dismissal for failure to file schedules, statements, and/or plan - **Debtor** Dismissed. (BNC) Signed on 1/13/2017 (RE: related document(s)**1** Voluntary Petition (Chapter 7) filed by Debtor Anahit Harutyunyan, **6** Meeting (AutoAssign Chapter 7a)). (Lewis, Litaun) (Entered: 01/13/2017) |
| 01/15/2017 | **18**<br>(2 pgs) | BNC Certificate of Notice (RE: related document(s)**17** ORDER and notice of dismissal for failure to file schedules, statements, and/or plan (Option A or Option B) (BNC)) No. of Notices: 6. Notice Date 01/15/2017. (Admin.) (Entered: 01/15/2017) |
| 01/17/2017 | | Chapter 7 Trustee's Report of No Distribution: I, Jason M Rund (TR), having been appointed trustee of the estate of the above-named debtor(s), report that this case was dismissed or converted. I have neither received any property nor paid any monies on account of this estate. I hereby certify that the chapter 7 estate of the above-named debtor(s) has been fully administered through the date of conversion or dismissal. I request that I be discharged from any further duties as trustee. Key information about this case as reported in schedules filed by the debtor(s) or otherwise found in the case record: This case was pending for 0 months. Assets Abandoned (without deducting any secured claims): Not Applicable, Assets Exempt: Not Applicable, Claims Scheduled: Not Applicable, Claims Asserted: Not Applicable, Claims scheduled to be discharged without payment (without deducting the value of collateral or debts excepted from discharge): Not Applicable. Filed by Trustee Jason M Rund (TR). (Rund (TR), Jason) (Entered: 01/17/2017) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 01/23/2017 15:58:12 | | | |
| **PACER Login:** | anayalawgroup:3106179:0 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:16-bk-26852-DS Fil or Ent: filed From: 10/25/2016 To: 1/23/2017 Doc From: 0 Doc To: 99999999 Term: included Format: html Page counts for documents: included |
| **Billable Pages:** | 3 | **Cost:** | 0.30 |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 2629 Townsgate Road, Suite 140, Westlake Village, CA 91361

A true and correct copy of the foregoing document entitled (*specify*): **Supplemental Brief with Declarations of Bone, Mayer and Malek** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On 1/23/2017, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Alana B Anaya ☐ ☐ alana@anayalawgroup.com, alana.anaya@sbcglobal.net
- Amy L Goldman (TR) ☐ ☐ gabriela.garcia@lewisbrisbois.com, AGoldman@iq7technology.com
- Jilbert Tahmazian ☐ ☐ jilbert@jilbertlaw.com, aram@jilbertlaw.com
- United States Trustee (SV) ☐ ☐ ustpregion16.wh.ecf@usdoj.gov
- Benjamin A Yrungaray ☐ ☐ attorney@denovofirm.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On 1/23/2017, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

| | |
|---|---|
| Hon. Martin R. Barash<br>United States Bankruptcy Court<br>21041 Burbank Boulevard, Suite 342 / Courtroom 303<br>Woodland Hills, CA 91367 | |

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _12/22/16_____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 1/23/2017 | Jonathan Malek | /s/Jonathan Malek |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                 **F 9013-3.1.PROOF.SERVICE**